CAUSE NO. 18-2793-431

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF a/k/a | § | |
| Dean Anderson d/b/a BV Files, ViaView Files | § | |
| L.L.C., and ViaView Files | § | |
|     Defendant. | § | DENTON COUNTY, TEXAS |

**PLAINTIFF'S VERIFIED ORIGINAL PETITION AND
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I. **DISCOVERY CONTROL PLAN AND LOCAL RULE DISCLOSURE**

1.1 Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure. Plaintiff seeks damages in the amount of one million dollars or more.

II. **PARTIES**

2.1 Plaintiff, Jason Lee Van Dyke, ("Van Dyke"), an individual, is a resident of Denton County, Texas whose address is 108 Durango Drive, Crossroads, TX 76227.

2.2 Defendant, Thomas Christopher Retzlaff a/k/a Dean Anderson d/b/a ViaView Files LLC, BV Files, and ViaView Files ("Retzlaff"), an individual, may be served with process at PO Box 46424, Phoenix AZ 85063

2.3 Subject matter jurisdiction is appropriate in this Court because Plaintiff seeks damages within the jurisdictional limits of this Court. Personal jurisdiction over the Defendant is appropriate in this Court because Defendant has committed numerous tortious acts against a resident of this state. It should further be noted that Defendant has voluntarily litigated in this state in multiple separate occasions and has previously been declared a vexatious litigant in this state.

ORIGINAL PETITION AND APPLICATION FOR TRO

Page 1 of 45

2.4     Venue in this state is mandatory in Denton County, Texas pursuant to Tex. Civ. Prac. & Rem. Code § 15.016 because Plaintiff resided in Denton County on the date that his causes of action for defamation and for invasion of privacy accrued.

### III.     FACTS

3.1     Van Dyke is an attorney licensed to practice law in the State of Texas who represents both individuals and small-to-medium sized businesses in a variety of matters which include, but are not limited to, criminal defense, civil litigation, family law, and consumer law. He was, until March 28, 2018, employed by Karlseng, LeBlanc & Rich L.L.C. ("KLR") for the purpose of investigating claims and litigating cases on behalf of Maverick Title of Texas L.L.C. d/b/a Texas Title ("Texas Title").

3.2     Retzlaff is a convicted felon and a vexatious litigant. A copy of the order declaring Retzlaff a vexatious litigant is attached hereto as Exhibit "A" and incorporated by reference herein. A copy of Retzlaff's criminal history in Texas is attached hereto as Exhibit "B" and incorporated by reference herein.

3.3     On or around December 20, 2017, Retzlaff filed a frivolous grievance against Plaintiff with the State Bar of Texas in which he made the following claim:

> "Earlier this year I found out that he had gotten a job as an Assistant District Attorney for Victoria County, Texas, in charge of felony prosecutions. So I contacted Steve Tyler, the District Attorney (who I know because I live in San Antonio) and said "Do not hire this dude - he is a flicking lunatic." I then pointed out that I am convinced that Van Dyke is a drug addict who suffers from a very profound mental illegal that looks to be untreated and he regularly gets into "flame wars" and disputes with random people on the internet. I pointed out that

ORIGINAL PETITION AND APPLICATION FOR TRO

Van Dyke is likely posting on Storm Front (a white nationalist website) as the user "WNLaw". Van Dyke has since been posting online that he is going to murder me because I am the one who cost him his jobw ith Victoria County. He further threatens to murder my family, and many others. Unfortunately for Van Dyke, he has come up against a person who simply cannot be intimidated. You all need to disbar this retard ASAP. On March 24, 2017, Van Dyke filed a Rule 202 Pre-suit Discover petition in the 377th District Court in Victoria County trying to uncover the reasons why he lost that job at the District Attorney's office. On June 16, 2017, the petition was denied when the judge ruling against Van Dyke poured him out of court for being an idiot for filing such a thing to begin with. Van Dyke's legal action was clearly in retaliation for my exercising my First Amendment rights and was in violation of the Texas Citizens Participation Act. See In re Chris Elliott, 504 S.W.3d 455 (tex.App. - Austin 2016, no pet.)."

Plaintiff is not suing Defendant for the act of filing the grievance. However, he is suing Defendant in part for the allegations made by him in the grievance and for tortious conduct that he has committed against Plaintiff since the filing of the grievance. The facts and circumstances surrounding the grievance also demonstrate that Defendant controls a website that has been responsible for tortious conduct against Van Dyke.

3.4   The grievance referenced in paragraph 3.3 above was initially dismissed by the State Bar of Texas as an inquiry. Defendant appealed this decision to the Board of Disciplinary Appeals (BODA), which reversed this determination on or around March 1, 2018. On or around the same date, the website known as "BV Files", which can be located at www.viaviewfiles.net (referred to herein as "BV Files", posted a copy of the letter sent to

Defendant from BODA. As matters of this nature before the State Bar of Texas and BODA are confidential, it stands to reason that the person responsible for the content of BV Files is, in fact, Defendant. A true and correct copy of the relevant excepts forom

3.5 On March 25, 2018, Retzlaff made the following statements of fact concerning Van Dyke on his website at the following link (http://www.viaviewfiles.net/tag/jason-van-dyke/):

(a) Van Dyke is a Nazi;

(b) Van Dyke is a white supremacist;

(c) Van Dyke has a criminal record for abusing women; and

(d) Van Dyke has committed professional misconduct against him (Retzlaff).

He also posted pictures of the principals of KLR and Texas Title, referring specifically to Robert Karlseng as a "Nazi Paymaster". He also posted the address of Van Dyke's employer. A true and correct copy of the relevant except from this post is attached hereto as Exhibit "D" and incorporated by reference herein.

3.6 In addition to the foregoing, Plaintiff learned that Retzlaff sent numerous e-mail messages to Robert Karlseng and Claude Rich. In one e-mail communication he wrote:

"I thought that I would contact management before I go to Facebook and Twitter and blast this out all over the world. This guy has been working for you for a very long time and I am shocked that nothing has been done." In the same e-mail string, Retzlaff threatened to contact every judge and opposing counsel in every case that Van Dyke is currently involved in. "

It should be noted that, in these communications, Retzlaff used the name "Dean Anderson" in an apparent attempt to mask his tortious conduct against Van Dyke. In these messages, Defendant stated that he would be calling all of Van Dyke's clients, the

opposing counsel in all of his cases, and the judges in all of his cases. Similar threats were made to Plaintiff in the electronic communications attached hereto as Exhibit "E" and Exhibit "F" and incorporated by reference herein.

3.7 On March 27, 2018, Plaintiff was informed that he was being terminated from his employment with KLR due to the postings made by Defendant. But for the harassment of KLR and its principals by Defendant, Plaintiff would not have lost his job.

### IV. CAUSES OF ACTION

4.1 Plaintiff incorporates paragraphs 1.1 – 3.7 above into each cause of action below by reference.

### ( Libel Per Se )

4.2 Defendant published the statements of fact concerning Plaintiff referenced in paragraph 3.5 and 3.6 above, and in an electronic communication to Plaintiff's employer.

4.3 The statements were false and defamatory.

4.4 With regard to making the statements, the Defendant was acting with actual malice.

4.5 Damages are presumed in favor of Plaintiff and against Defendant because he made statements which tended to (a) injure Van Dyke in his office, profession, or occupation; and (b) falsely charges Van Dyke with the commission of a crime. *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984). Nevertheless, Plaintiff has suffered actual monetary loss due to the loss of his employment as a result of Defendant's conduct.

4.6 Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of exemplary damages on his claim for libel per se.

### ( Intrusion on Seclusion )

4.7 Retzlaff intentionally intruded on Van Dyke's solitude, seclusion or private affairs. While this tort has always included physical intrusions, it has also included non-physical intrusions such as following, spying-on, or harassing a plaintiff. *Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App. – Dallas 1984, writ ref'd n.r.e).

4.8 This type of intrusion into ones private affairs (repeated demands to plaintiff's boss with the clear intent that Van Dyke's employment be terminated) would be highly offensive to a reasonable person. *Household Credit Servs. v. Driscol*, 989 S.W.2d 72, 84-85 (Tex. App. – El Paso 1998, pet. denied); *Donnel v. Lara*, 703 S.W.2d 257, 259 (Tex. App. – San Antonio 1985, writ ref'd n.r.e).

4.9 Van Dyke has suffered injury as a result of Retzlaff's intrusion. In this case, Van Dyke has suffered the complete loss of his employment and severe emotion distress concerning that loss of employment. He has also suffered emotional distress due to the ongoing and continuing harassment by Retzlaff.

### ( Tortious Interference With Contract – Victoria County )

4.10 Plaintiff had an existing contract with the Victoria County District Attorney for employment as a felony prosecutor, which he had been scheduled to begin on April 3, 2017 at a salary of $63,600.00 plus other employment benefits.

4.11 Through the actions to which Defendant has freely admitted, and which is recited in paragraph 3.3 above, Defendant willfully and intentionally interfered with the contract between Plaintiff and Victoria County.

4.12 Defendant's interference with the contract was the proximate cause of Plaintiff's injury, to wit, the loss of his employment, as well as earnest money he had placed a house

located at 110 Teakwood in Victoria, Texas and severe damage to his professional reputation.

4.13 Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of exemplary damages on his claim for tortious interference

( Tortious Interference With Contract – KLR )

4.14 Plaintiff had an existing contract with KLR for employment. To wit, Plaintiff was employed as an associate attorney with KLR for a salary of sixty thousand dollars ($60,000) per year, plus health and other employment benefits.

4.15 Through the actions outlined in paragraphs 1.1 – 3.7 above, Defendant willfully and intentionally interfered with the contract between Plaintiff and KLR.

4.16 Defendant's interference with the contract was the proximate cause of Plaintiff's injury, to wit, the loss of his employment.

4.17 Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of exemplary damages on his claim for tortious interference.

( Intentional Infliction of Emotional Distress )

4.18 The conduct of Defendant as alleged in paragraphs 1.1 – 3.7 above was intentional, extreme, and so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

4.19 Defendant's conduct has caused Plaintiff severe emotional distress due to the loss of his job and ongoing harassment by Defendant.

## V. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

5.1  Plaintiff reincorporates the allegations contained in paragraphs 1.1 –4.19 above.

**(Temporary Restraining Order)**

5.2  Pursuant to Tex. R. Civ. P. 680, Plaintiff requests that a temporary restraining orders be entered against Defendant. An affidavit in support of the temporary restraining order is attached hereto as Exhibit "F" and incorporated by reference herein.

5.3  The evidence contained in the affidavit demonstrates that Defendant has harassed Plaintiff in an extreme and outrageous matter, that he has caused Plaintiff to lose his job, and that he is likely to interfere with Plaintiff's clients and other possible means of employment. He has expressly stated that he intends to destroy Plaintiff's career and continue this conduct into the foreseeable future.

5.4  Defendant is well known to Texas courts, to the Texas legal community, and to the public at large for engaging in this type of behavior. In fact, he has engaged in similar conduct toward attorneys in this county (Evan Stone) in the past. Plaintiff has already suffered irreparable injury and damage. Defendant also represents an imminent threat to continued immediate and irreparable injury, loss, or damage due to his threats to continue harassing Plaintiff and contacting his clients.

5.5  Plaintiff has a substantial likelihood of success on their claims. The evidence attached to this petition could not possibly be more damning and the conduct committed by Defendant is extreme and outrageous to such an extent that it is nearly without precedent. Injunctive relief is Plaintiff's sole remedy to stop continuing damage to his livelihood and reputation.

5.6  Texas courts have held that injunctive relief is appropriate in cases when restraining the

publication of a defamatory statement is essential to avoid impending danger or to protect a business or other property interest that is threatened by intimidation or coercion. *Kinney v. Barnes*, 443 S.W.3d 87, 99 (Tex. 2014) (permitting injunctive relief in a defamation case to avoid impending danger); *Ex parte Tucker*, 220 S.W.75, 76 (Tex. 1920) (permitting injunctive relief to protect against intimidation or coercion). A constant barrage of false and defamatory statements directed toward an individual's employer and his clients is not protected by the First Amendment; it is tortious conduct that this Court clearly has the power to prohibit. Such a prohibition is especially appropriate in this case, where Defendant has managed to cause extreme harm to Plaintiff in a very short period of time.

5.7  The relief which Plaintiff immediately requests from this Court is that Defendant be enjoined and restrained from:

    (a)    having further contact of any kind with Plaintiff, unless Defendant represents himself as a *pro se*, and in that case, only to the minimum extent necessary to comply with the Texas Rules of Civil Procedure.

    (b)    having any contact with any employer of Plaintiff;

    (c)    having any contact with any potential employer of Plaintiff;

    (d)    having any contact with any past, current, or future client of Plaintiff;

    (e)    making any further publication, on the Internet or elsewhere, which relate or pertain to Plaintiff in any way;

5.8  Plaintiff asks that the Court set bond at no more than $100.00. This bond is reasonable in light of the fact that Plaintiff just lost his job due to Defendant's wrongful conduct and is currently making only $24,000.00 per year at what used to be his second job.

### (Temporary Injunction)

5.9 Pursuant to Tex. R. Civ. P. 681-84, Plaintiff requests that Defendant be cited to appear, and following such a hearing, for the Court to enter a temporary injunction enjoining and restraining the conduct referenced in paragraph 5.7 above.

5.10 Plaintiff requests that the temporary injunctive relief under paragraph 5.7 begin to run at the time this Court signs a temporary restraining order (or temporary injunction) and terminate at the conclusion of this lawsuit's trial.

5.11 Plaintiff asks that the Court set bond at no more than $100.00.

### ( Permanent Injunction )

5.12 At the conclusion of trial, Van Dyke requests that any injunction entered as requested in paragraphs 5.1 – 5.11 above be made permanent. Plaintiff also requests that Defendant be ordered to remove any and all content that he has published concerning Plaintiff that is adjudged to be defamatory. *Kinney*, 443 S.W.3d at 93.

### VI. PRAYER

6.1 Plaintiff prays that—

    a. Defendant be cited to appear and answer;

    b. Plaintiff be awarded actual damages against Defendant that were incurred as a result of his wrongful conduct including, but not limited to, damages for mental anguish, loss to personal reputation, loss to professional reputation, and loss of business, in the amount of at least thirty million dollars ($30,000,000.00);

    d. Plaintiff be awarded exemplary damages against Defendant in the amount of at least seventy million dollars ($70,000,000.00);

    e. Plaintiff be granted a temporary restraining order for the relief requested in paragraphs 5.7 until a hearing on the issue can be held;

    f. That upon such hearing on the request for injunctive relief set forth above, that this Court will order, restrain, and enjoin Defendant as plead in

    paragraphs 5.7 and 5.9 – 5.11 above;

  g.  Plaintiffs be granted permanent injunctive relief against Defendant;

  h.  Plaintiffs be granted judgment for all costs of court; and

  i.  Plaintiffs be granted all further relief to which it may be entitled.

              Respectfully submitted,

              /s/ Jason Lee Van Dyke
              Jason L. Van Dyke
              State Bar No. 24057426
              108 Durango Drive
              Crossroads, TX 76227
              P – (469) 964-5346
              F – (972) 421-1830
              Email: jason@vandykelawfirm.com

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2.1.3

I certify that, to the best of my knowledge, the party against whom relief is sought ex parte is not represented by counsel in the matter made the basis of the relief sought. Upon investigating this case, I came to believe that Retzlaff was represented by Jeffrey Dorrell of Hanszen LaPorte. I spoke with Mr. Dorrell prior to filing this lawsuit and he stated to me that he does not represent Mr. Retzlaff. Accordingly, Retzlaff is not, to the best of my knowledge, represented by counsel.

              /s/ Jason Lee Van Dyke
              JASON L. VAN DYKE