**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 4:18cv247 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF | § | |
| a/k/a Dean Anderson d/b/a BV Files, Via | § | |
| View Files L.L.C., and ViaView Files | § | |
| Defendant | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

### I.     PARTIES

1.1     Plaintiff, Jason Lee Van Dyke, ("Van Dyke"), an individual, is a resident of Denton

County, Texas whose address is 108 Durango Drive, Crossroads, TX 76227.

1.2     Defendant, Thomas Christopher Retzlaff a/k/a Dean Anderson d/b/a ViaView Files LLC,

BV Files, and ViaView Files ("Retzlaff"), an individual, may be served with process at

PO Box 46424, Phoenix AZ 85063

### II.     JURISDICTION

2.1     This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because the

suit it between citizens of different U.S. states and the amount in controversy exceeds

$75,000, excluding interest and costs.

2.2     Defendant has waived his objection to personal jurisdiction by filing a document

sufficient to constitute an answer in the 431st District Court in and for Denton County,

Texas prior to the removal of this case to federal court and prior to filing a challenge to

personal jurisdiction in that Court.  See *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th

Cir. 2010).

SECOND AMENDED COMPLAINT

2.3     The Texas Supreme Court has held that a Defendant who timely files a pro se answer by

a signed letter that identifies the parties, the case, and the defendant's current address, has

sufficiently appeared by answer and deserves notice of any subsequent proceedings in the

case.  *Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex. 1992).

2.4     The profane letters filed by Defendant in state court were sufficient to constitute an

"answer" under Rule 83 of the Texas Rules of Civil Procedure.

### III.     VENUE

3.1     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of

the events or omissions giving rise to this claim occurred in this district.

3.2     Specifically, Plaintiff is an attorney licensed to practice law in this state and who

regularly practices law in this district.

3.3     Plaintiff lost his job at Karlseng, LeBlanc & Rich L.L.C. ("KLR"), a law firm with its

principal place of business located in this district, as a result of communications from

Defendant that were directed to KLR in this district.

### IV.     CONDITIONS PRECEDENT

4.1     All conditions precedent to Plaintiff's claim for relief have been performed or have

occurred.

### V.     FACTS

5.1     Plaintiff is an attorney licensed to practice law in the State of Texas who represents both

individuals and small-to-medium sized businesses in a variety of matters which include,

but are not limited to, criminal defense, civil litigation, family law, and consumer law.

5.2     Plaintiff was, until March 28, 2018, employed by KLR for the purpose of investigating

claims and litigating cases on behalf of Maverick Title of Texas L.L.C. d/b/a Texas Title

("Texas Title").

5.3     Retzlaff is a convicted felon and a vexatious litigant.  A copy of the order declaring

        Retzlaff a vexatious litigant is attached hereto as Exhibit "A" and incorporated by

        reference herein.  A copy of Retzlaff's criminal history in Texas is attached hereto as

        Exhibit "B" and incorporated by reference herein.

5.3     On or around December 20, 2017, Retzlaff filed a frivolous grievance against Plaintiff

        with the State Bar of Texas.

5.4     The grievance was initially dismissed by the State Bar of Texas as an inquiry.

5.5     Defendant appealed this decision to the Board of Disciplinary Appeals (BODA), which

        reversed this determination on or around March 1, 2018.

5.6     On or around March 8, 2018, the website known as "BV Files", which can be located at

        www.viaviewfiles.net ("BV Files"), posted a copy of the letter sent to Defendant from

        BODA.

5.7     As matters of this nature before the State Bar of Texas and BODA are confidential, it

        stands to reason that the person responsible for the content of BV Files is, in fact,

        Defendant.

5.8     There is additional circumstantial evidence that Defendant is responsible for the content

        of BV Files.  Specifically, the website contains numerous personal photographs of

        Defendant and copies of pleadings and papers from court proceedings involving

        Defendant.  The posting of such pleadings and papers are typically made on the same

        date that they are filed with the court (such was the case with the notice of removal in this

        proceeding).

5.9     Between March 25, 2018 and April 11, 2018, Defendant made the following statements

SECOND AMENDED COMPLAINT

of fact concerning Plaintiff:

(a)      Plaintiff is a Nazi;

(b)      Plaintiff is a pedophile;

(c)      Plaintiff is a drug addict;

(d)      Plaintiff has a criminal record for abusing women; and

(e)      Plaintiff has committed professional misconduct against him (Retzlaff).

5.10     Although his statements to the State Bar of Texas are not the subject of this lawsuit,

Defendant also referred to Plaintiff as a white supremacist and a drug addict in filings

with the State Bar.

5.11     On March 25, 2018, Defendant post a picture of Plaintiff on BV Files with the following

caption "[t]his man claims to be a 'Nazi' but he has a criminal record for abusing women

and he likes to file frivolous and vexatious LOLsuits."

5.12     On March 25, 2018, Defendant posted pictures of the principals of KLR and Texas Title,

referring specifically to Robert Karlseng as a "paymaster to 'Nazis' / white

supremacists."

5.13     On March 25, 2018, Defendant posted pictures of three members of the Texas Title

management with the caption "How about one of these three people.  Are any of them

Nazis?"

5.14     On March 25, 2018, Defendant posted "So why does Bob Karlseng give money and

economic support to racists?"  A true and correct copy of the relevant excepts from the

posts referred to in paragraphs 5.9 - 5.14 is attached hereto as Exhibit "C" and

incorporated by reference herein.

5.15     In addition to the foregoing, Plaintiff learned that Retzlaff sent numerous e-mail

SECOND AMENDED COMPLAINT

messages to Robert Karlseng and Claude Rich.  In one e-mail communication he wrote:

> "I thought that I would contact management before I go to Facebook and Twitter and blast this out all over the world.  This guy has been working for you for a very                 long time and I am shocked that nothing has been done."

5.16    In the same e-mail string, Defendant threatened "to contact every judge and opposing counsel in every case that [Plaintiff] is currently involved in." Similar threats were made to Plaintiff in the electronic communications attached hereto as Exhibit "D" and incorporated by reference herein.

5.17    On March 27, 2018, Plaintiff was informed that he was being terminated from his employment with KLR due to the postings made by Defendant.  But for the harassment of KLR and its principals by Defendant, Plaintiff would not have lost his job.

5.18    On April 1, 2018, Defendant posted that "Denton, Texas attorney Jason Lee Van Dyke (DOB: April 3, 1980) is a pedophile, according to recently filed court documents!"  This was an apparent reference to the statement by Defendant in his state court filing on March 30, 2018 stating "No doubt Van Dyke is a pedophile, too. He has that "look" about him."

5.19    On April 1, 2018, Defendant also wrote "[w]e will post more later about Denton attorney Jason Van Dyke and our efforts at identifying ALL of his clients, as well as the court records regarding him being a pedophile."

5.20    On April 6, 2018, Plaintiff was the primary target of Defendant's blog posting, which began with the statement "[d]o we here at the BV Files give two shits about restraining orders from small town judges way far away?  No!  We do not - 100% verified!!  Thus we will continue to talk about [Plaintiff] as much as we want to, as well as conducting a public awareness campaign aimed at informing the public that this is a bad man."

SECOND AMENDED COMPLAINT

5.21   On April 6, 2018, Defendant wrote that "Denton, Texas, attorney Jason Lee Van Dyke, in addition to being a Nazi drug addict, is clearly a mentally retarded person."

5.22   On April 6, 2018, Defendant wrote that Plaintiff has a profile on a white supremacist website known as "Stormfront."

5.23   An update to the April 6, 2018 post was made on April 10, 2018, wherein Defendant wrote, in reference to the removal to this court, as follows: "Does anyone here think that Christine [referring to the Magistrate Judge assigned to this case] is a big fan of Nazi's or drug addicted crazy people who file $100 million LOLsuits?"

## VI.   CAUSES OF ACTION

6.1   Plaintiff incorporates paragraphs 1.1 – 5.23 above into each cause of action below by reference.

### ( Count One - Libel Per Se - BV Files )

6.2   Defendant, through his BV Files Blog, published certain statements of fact concerning Plaintiff to a website that Defendant owns or which is under Defendant's control.  To wit (a) Plaintiff is a Nazi; (b) Plaintiff is a pedophile; (c) Plaintiff is a drug addict; (d) Plaintiff has a criminal record for abusing women; and (e) Plaintiff has committed professional misconduct against Defendant.

6.3   These statements are defamatory

6.4   These statements are false.

6.5   With regard to making the statements, the Defendant was acting with actual malice.

6.6   Damages are presumed in favor of Plaintiff and against Defendant because he made statements which tended to injure Van Dyke in his office, profession, or occupation and because they falsely suggest that Plaintiff has committed a criminal offense involving

SECOND AMENDED COMPLAINT

violence against women.

6.7    Plaintiff lost in job primarily because of the posts made by Defendant about both Plaintiff
and KLR on BV Files.

6.8    Plaintiff specifically alleges that he can prove his claim against Defendant by clear and
convincing evidence, including actual malice, and that he is entitled to recover of
punitive damages on his claim for libel per se.

( <strong>Count Two - Intrusion on Seclusion</strong> )

6.9    Defendant intentionally intruded on Plaintiff's solitude, seclusion or private affairs.
While this tort has always included physical intrusions, it has also included non-physical
intrusions such as following, spying-on, or harassing a plaintiff.  *Kramer v. Downey*, 680
S.W.2d 524, 525 (Tex. App. – Dallas 1984, writ ref'd n.r.e).

6.10   This type of intrusion into ones private affairs (in this case, contacting an private
employer for the purpose of having Plaintiff's employment terminated) would be highly
offensive to a reasonable person.  *Household Credit Servs. v. Driscol*, 989 S.W.2d 72,
84-85 (Tex. App. – El Paso 1998, pet. denied); *Donnel v. Lara*, 703 S.W.2d 257, 259
(Tex. App. – San Antonio 1985, writ ref'd n.r.e)

6.11   Plaintiff has suffered injury as a result of Defendant's intrusion.  In this case, Plaintiff has
lost his job due to Defendant's tortious conduct and has suffered severe emotion distress
concerning the loss of his job.  He has also suffered emotional distress due to the ongoing
and continuing harassment by Defendant.

( <strong>Count Three - Tortious Interference with an Existing Contract</strong> )

6.12   Plaintiff had an existing contract with KLR for employment.  To wit, Plaintiff was
employed as an associate attorney with KLR for a salary of sixty thousand dollars

SECOND AMENDED COMPLAINT

($60,000) per year, plus health and other employment benefits.

6.13   Through the actions outlined in paragraphs 5.9 - 5.16 above, Defendant willfully and

intentionally interfered with the contract between Plaintiff and KLR.

6.14   Defendant's interference with the contract was the proximate cause of Plaintiff's injury,

to wit, the loss of his employment.

6.15   Plaintiff specifically alleges that he can prove his claim against Defendant by clear and

convincing evidence, including actual malice, and that he is entitled to recover of

punitive damages on his claim for tortious interference.

## VII.   PRAYER

7.1   For these reasons, Plaintiff asks for a judgment against Defendant for the following:

a.      Plaintiff be awarded actual damages against Defendant that were incurred
as a result of his wrongful conduct including, but not limited to, damages
for mental anguish, loss to personal reputation, loss to professional
reputation, and loss of business, in the amount of at least thirty million
dollars ($30,000,000.00);

b.      Plaintiff be awarded punitive damages against Defendant in the amount of
at least seventy million dollars ($70,000,000.00);

c.      Plaintiffs be granted judgment for all costs of suit; and

d.      All other relief the Court deems appropriate.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
State Bar No. 24057426
108 Durango Drive
Crossroads, TX 76227
P – (469) 964-5346
F – (972) 421-1830
Email:  jason@vandykelawfirm.com

SECOND AMENDED COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 11, 2018 a copy of Plaintiff's Second Amended Complaint was served by U.S. Mail to Thomas Christopher Retzlaff at PO Box 46424, Phoenix AZ 85063.

<u>/s/ Jason Lee Van Dyke</u>
JASON L.VAN DYKE

SECOND AMENDED COMPLAINT