IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



APR 16 2018

Clerk, U.S. District Court
Texas Eastern

JASON LEE VAN DYKE,
*Plaintiff,*

v.

CASE NO. 4:18-CV-00247-ALM-
CAN

THOMAS RETZLAFF,
*Defendant.*

## DEFENDANT THOMAS RETZLAFF'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant files this motion to dismiss plaintiff's suit for lack of personal jurisdiction, as authorized by Federal Rule of Civil Procedure 12(b)(2).

### A. INTRODUCTION

1.   Plaintiff is Jason Lee Van Dyke; defendant is Thomas Retzlaff.

2.   In his 2nd amended complaint, Van Dyke sued Retzlaff for libel per se, intrusion on seclusion, and tortious interference with an existing contract.   By amending his complaint, Van Dyke dismissed his claims of tortious interference with his alleged employment contract with the Victoria County District Attorney's office, intentional infliction of emotional distress, and his requests injunctive relief in the

form of both a temporary restraining order and a permanent injunction, that were all contained within his original petition.  ECF 3 at ¶4.10-4.13, 4.18-5.12.

3.    Defendant Retzlaff is a nonresident of Texas and has had no purposeful contacts with Texas.  Defendant is an individual and does not reside or do business in Texas.  Defendant resides in Phoenix, Arizona.

4.    The case arises from an attempt by plaintiff Van Dyke – a former public official and former Assistant District Attorney for Victoria County, Texas, and a current member of the State Bar of Texas (licensed in Texas, Colorado, Georgia, and the District of Columbia), to silence free speech and online criticism of Van Dyke due to Van Dyke's openly bragging about being a member of a white supremacist hate group called the *Proud Boys*.  Van Dyke has made numerous media appearances over the years and claims to be the attorney and General Counsel for *The Proud Boys* organization, which claims a nationwide membership of over 5,000 individuals.

5.    For example:   On Wednesday, August 9, 2017, a U.S. federal trademark registration was filed for PROUD BOYS by JLVD Holdings L.L.C., Crossroads, TX 76227. The USPTO has given the PROUD BOYS trademark serial number of 87561573. The current federal status of this trademark filing is PUBLISHED FOR OPPOSITION. The correspondent listed for PROUD BOYS is JASON L. VAN DYKE of THE VAN DYKE LAW FIRM P.L.L.C., 108 DURANGO DRIVE, CROSSROADS, TX 76227. The PROUD BOYS trademark is filed in the category of Advertising, Business & Retail Services. The description provided to the USPTO for

PROUD BOYS is Association services, namely, organizing chapters of a fraternity and promoting the interests of the members thereof.

6.     Both the Anti-Defamation League and the Southern Poverty Law Center have designated the *Proud Boys* to be a white supremacist hate group.  Van Dyke is one of their leaders, as well as their attorney and official spokesman.

7.     On January 9, 2018, the Oakland Raider's NFL football team announced that it was filing a trademark violation against the *Proud Boys* for violation of the team's trademarked logo.  Van Dyke is representing the *Proud Boys* in this matter.

8.     Van Dyke is a public figure who has, or appears to the public to have, a significant role in the business of government and public affairs as a public official and governmental employee of high rank.  Alternatively, he is also a member of the Texas State Bar and legal counsel for the *Proud Boys* white supremacist group, and is a Public Figure within the meaning of the Texas Citizens Participation Act / anti-SLAPP statute having inserted himself into numerous controversies over the past several years and having made numerous media appearances regarding the subject of governmental affairs and racism.  Van Dyke is extremely open with his racist, violent views on society and government, being a prolific user of numerous social media platforms such as Twitter, Facebook, and YouTube via posts using his Official Law Firm's accounts.  As such, he is the fair subject of criticism, even intense criticism.



9. The *Proud Boys* have been involved in violent racial incidents all across the country. Van Dyke regularly posts photographs on social media of himself armed with assault-style weapons and openly bragging about wanting to kill "niggers", "faggots", and "liberals."

**B. ARGUMENT**

10. Before getting started here, defendant Retzlaff, who is appearing *pro se*, would like to remind the court that Pro se litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. *Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3rd Cir. 1996); *United States v. Day*, 969 F.2d 39, 42 (3rd Cir. 1992)(holding pro se petition cannot be held to same standard as pleadings drafted by attorneys); *Then v. I.N.S.*, 58 F.Supp.2d 422, 429 (D.N.J. 1999).

11. The courts provide pro se parties wide latitude when construing their pleadings and papers. When interpreting pro se papers, the Court should use common sense to determine what relief the party desires. *S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992). See also, *United States v. Miller*, 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation to construe pro se litigants' pleadings liberally); *Poling v. K. Hovnanian Enterprises*, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000).

12. Federal courts do not have jurisdiction over a nonresident defendant unless the nonresident defendant has purposefully established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "fair play and substantial

justice." *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 754 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443-44 (7th Cir. 2010).



**Jason L. Van Dyke**
@MeanTXLawyer

Follow

@dividedly_ I don't waste my breath on niggers like you. I hang them.

3:21 PM - 29 Dec 2014

13. Because Retzlaff is a nonresident, the exercise of personal jurisdiction over him must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution.  A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with the [d]ue [p]rocess clause of the Fourteenth Amendment." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*, 818 F.3d 193, 212 (5th Cir. 2016) (internal quotation marks and citation omitted); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). "[T]he Texas long-arm statute extends as far as constitutional due process permits." *Int'l*

*Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 212.  Therefore, for all claims in the case sub judice, the Court "simply need[s] to determine whether a suit in Texas is consistent with the due process clause of the Fourteenth Amendment." *See id.* (internal citation omitted).

14.  Under due process analysis, a defendant may be subject to either general or specific personal jurisdiction.  See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984).  When confronted with a motion to dismiss, the plaintiff bears the burden of establish that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d at 1015.  The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint are taken as true.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The court does "not assume the truth of the allegations in a pleading which are contradicted by affidavit."

15.  Here, Plaintiff cannot not allege that Retzlaff is subject to general jurisdiction in this judicial district.   Moreover, Plaintiff cannot allege that the court may exercise specific jurisdiction over the defendant.   During all times relevant to this lawsuit, Retzlaff was never physically present within the state of Texas.

## "DIRECTED-A-TORT" TEST HAS BEEN REJECTED

16.  Van Dyke claims that "personal jurisdiction over the Defendant is appropriate in this court because Defendant has committed numerous tortious acts against a resident of this state."  See SAC at ¶2.3 – ECF 3.  In interpreting the United States

Supreme Court instructions in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), involving personal jurisdiction, the Texas Supreme Court has rejected a jurisdictional test "based solely upon the effects or consequences" in the forum state, such as that argued by Van Dyke in his petition, because the Texas Supreme Court has expressly rejected the "directed-a-tort" test for specific jurisdiction in its holding in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005).

17.  This fundamental holding has been reaffirmed by the Texas Supreme Court in *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016).  Specifically, three principles guide the analysis of whether a nonresident has purposefully availed itself of the privilege of conducting activities in Texas:

> *First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage[,] or profit by availing itself of the jurisdiction.*

*TV Azteca*, 490 S.W.3d at 38.

18.  No one disputes that Van Dyke resides in Texas and the brunt of any injuries he suffered from Retzlaff's alleged actions occurred in Texas.  But as the Texas Supreme Court explained in *Michiana*, courts cannot base specific jurisdiction merely on the fact that the defendant "knows that the brunt of the injury will be felt by a particular resident in the forum state." *Michiana*, 168 S.W.3d at 788.  "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are

violated.'" *Walden*, 134 S. Ct. at 1122 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)).

## NO MINIMUM CONTACTS

19. Under minimum-contacts analysis, a court must determine whether the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by conducting activities within the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780, 2787-88 (2011) (plurality op.); *Steinbuch v. Cutler*, 518 F.3d 580, 585-86 (8th Cir. 2008). In measuring minimum contacts, a court should consider the following: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts, (3) the relation of the claim to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Steinbuch*, 518 F.3d at 586. Minimum contacts are not established unless a court finds it has either specific or general jurisdiction over the defendant. *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012). In the case at hand, the only contacts between plaintiff and defendant Retzlaff (assuming the allegations in the petition as true, which defendant does not), took place on the internet on computer servers that might or might not physically exist in Texas. During the times relevant to this lawsuit, Retzlaff denies ever being physically present in Texas. Thus, said contacts would not have intentionally taken place in Texas, and said contacts would not have been

"substantial" contacts of the kind envisioned by the US Supreme Court in *Walden* or in the Texas Supreme Court cases outlined above.

### HARMING A PERSON IN THE FORUM STATE DOES NOT CONSTITUTE 'MINIMUM CONTACTS' FOR PERSONAL JURISDICTION

20.  Since the Supreme Court's recent decision in *Walden v. Fiore*, - U.S. -, 134 S. Ct. 1115 (2014) *"there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum' . . . [a]ny decision that implies otherwise can no longer be considered authoritative."* Because of this, federal courts all across the country are dismissing lawsuits for lack of personal jurisdiction on identical factual and legal grounds that plaintiff herein assert against this defendant.

21.  In *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), the Seventh Circuit Court of Appeals held alleged commercial torts and violations of the *Lanham Act* directed against the Indiana plaintiff were insufficient contacts with Indiana to confer specific personal jurisdiction over the defendants.

22.  As in this case here, the defendants in *Advanced Tactical* were accused of sending emails into Indiana and harming plaintiff's business in Indiana as a result.  In the case at hand, in plaintiff's SAC, plaintiff alleges no physical entry into Texas by defendant.  Van Dyke only alleges that defendant sent emails to his employers and made postings on social media that caused harm to plaintiff's business interests and/or reputation.

23. The *Advanced Tactical* court rejected as insufficient minimum contacts *Real Action's* e-mail and interactive website.  In analyzing *Real Action's* online activities for the minimum contacts analysis, the court questioned how *Real Action* had "purposefully exploited" the Indiana market.  It held that:

  • Maintaining and utilizing an e-mail list of past customers does not show a relationship between Real Action and Indiana.

  • Operation of an interactive website does not show that a defendant has formed a contact with the forum state.

  • Any interactivity in this case had no effect on the alleged trademark infringement.

In so holding, the Seventh Circuit explained that e-mail "does not exist in any location at all" and any connection that it may make with a recipient's in-state location is "entirely fortuitous."  Further, the court minimized the role that a website's interactivity may play a role in the personal jurisdiction analysis.  *Advanced Tactical*, 751 F.3d at 801.

24.  According to the Supreme Court's holding in *Walden*, the relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. *Id.* (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)).  Crucially, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's ***suit-related*** conduct must create a substantial connection with the forum State." *Id.* at 1121 (emphasis added).  The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126.  Furthermore, the relation between the

defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum … ." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement. *Id.*; see *Walden,* 134 S. Ct. at 1122.

25.  Again, according to plaintiff's SAC, the only contacts that plaintiff is alleging to exist here are contacts between the defendant and other third parties (such as the State Bar of Texas and employers of plaintiff) via email or postings on random websites.  In one bare sentence regarding jurisdictional claims in the SAC, plaintiff does not allege that defendant had any other contacts with Texas outside of those email contacts that he allege took place that involved plaintiff's employers, other than a vague claim that "Defendant has voluntarily litigated in this state in multiple separate occasions and has previously been declared a vexatious litigant in this state." ECF 3 at ¶2.3.

## MULTIPLE CLAIMS ANALYZED INDEPENDANTLY

26.  A plaintiff bringing multiple claims arising from different contacts of the defendant must establish specific jurisdiction for each claim.  See *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006) (specific jurisdiction is a claim-specific inquiry).  In the case at hand, plaintiff has alleged a HUGE hodgepodge of "kitchen sink" allegations that are very broad and sweeping.  So for each specific claim that plaintiff makes against this defendant, he must establish exactly how this court has specific jurisdiction.  Plaintiff has not done so.

would be inconsistent with the constitutional requirements of due process. *See Int'l Shoe*, 326 U.S. at 316.   The Court should decline to exercise jurisdiction over defendant for the following reasons:

> a.   The Court's assumption of jurisdiction over defendant and his property would place an extraordinary burden on defendant. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 479-80 (4th Cir. 1993); *see TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1292-93 (10th Cir. 2007).   None of the records, files, or witnesses that would be favorable to Retzlaff are located in the forum state.   Additionally, according to Van Dyke's own pleadings, ALL of the witnesses in this case that Van Dyke intends to depose (with the exception of Robert Karlseng) reside outside of Texas (thus, are outside this court's subpoena / deposition range anyways).   Defendant is of very limited financial means who would have no ability to subpoena witnesses or items favorable to him in the forum state.   He would also have no ability to attend or participate in any hearings or the trial.   On the other hand, plaintiff is a successful attorney for many years and claims a large income.   The economic disparity between the two parties is substantial.

> b.   The Court's assumption of jurisdiction over defendant and his property would serve no interest of the forum state. *Ellicott Mach. Corp.*, 995 F.2d at 479-80; *see TH Agric. & Nutrition, LLC*, 488 F.3d at 1293-94.

> c.   The Court's assumption of jurisdiction over defendant and his property would allow plaintiff to prosecute its suit in the forum state even though he could obtain convenient and effective relief in federal court in the proper forum. *TH Agric. & Nutrition, LLC*, 488 F.3d at 1294; *Ellicott Mach. Corp.*, 995 F.2d at 479-80.

## C.  ALL OF THE ALLEGATIONS IN THE PLEADING ARE CONTRADICTED

30.  Just to be abundantly clear – pursuant to the attached affidavit, ALL of the allegations in plaintiff's second amended complaint have been contradicted by affidavit.  Retzlaff further denies ever being physically present in Texas during the

times in question outlined in plaintiff's lawsuit when these torts supposedly happened.  Retzlaff's Declaration at ¶3.  Thus, the burden is upon plaintiff to prove each and every claim with ADMISSIBLE evidence (as opposed to the ridiculous FAKE "evidence" he has used before, such as internet gossip and unauthenticated screen shots from random websites).

### D. CONCLUSION

31.  Defendant has had no minimum contacts with Texas, other than the fact that he consistently finds himself the target of SLAPP suits filed by a bunch of lunatics. He was not physically present in Texas when the torts were supposedly committed and, in fact, Van Dyke claims that Retzlaff was out of state when he allegedly "directed" his torts towards Van Dyke by filing the State Bar grievance against Van Dyke and when he allegedly emailed an employer of Van Dyke.  Furthermore, the Court's assumption of jurisdiction over defendant would offend traditional notions of fair play and substantial justice and would be inconsistent with due process of law.

For these reasons, defendant asks the Court to dismiss all of plaintiff's claims.

Respectfully submitted,

Thomas Retzlaff
PO Box 46424
Phoenix, AZ 85063-6424
(210) 317-9800
email: Retzlaff@texas.net

DEFENDANT, PRO SE

## CERTIFICATE OF SERVICE

I certify that on April 11, 2018, a copy of this document was served upon plaintiff via 1st class US Mail at his residence of:

**Jason L. Van Dyke, 108 Durango Dr., Aubrey, TX 76227-2341.**

_____

Thomas Retzlaff