IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON LEE VAN DYKE**, | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **NO. 4:18-CV-247-ALM** |
| **THOMAS CHRISTOPHER** | § | |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a VIA VIEW FILES,** | § | |
| **L.L.C., and VIAVIEW FILES,** | § | |
| *Defendant* | § | |

**DEFENDANT THOMAS RETZLAFF'S SECOND AMENDED TCPA MOTION TO
DISMISS ALL OF PLAINTIFF'S CLAIMS**

> **The Court should dismiss all of plaintiff's claims because: (i) plaintiff's suit arises from, is in response to, or relates to Retzlaff's exercise of the right of free speech or petition, as those terms are defined by the Texas Citizens Participation Act ("TCPA"), TEX. CIV. PRAC. & REM. CODE § 27.001, *et seq.*; (ii) Retzlaff proves by a preponderance of the evidence all elements of at least one affirmative defense to plaintiff's claims; and (iii) plaintiff does not have clear and specific evidence of each element of each of his claims.**

## I. INTRODUCTION

1.      Plaintiff is licensed attorney Jason Lee Van Dyke, representing himself *pro se*; defendants are Thomas Christopher Retzlaff, "a/k/a Dean Anderson, d/b/a Via View Files, L.L.C., and ViaView Files."

2.      On March 28, 2018, plaintiff sued Retzlaff in the 431st State District Court of Texas, obtaining an *ex parte* restraining order constituting an unconstitutional, content-based prior restraint on speech.

3.     On April 10, 2018, Retzlaff, acting on his own behalf *pro se*, removed plaintiff's case to this Court because there is complete diversity between the parties.  *See* 28 U.S.C. § 1322(a).  As of the date of this filing, plaintiff had not moved to remand.  Since more than 30 days have passed since removal, the time for seeking remand has now expired.  *See* ***G.E. Betz, Inc. v. Zee***, 718 F.3d 615, 626-27 (7th Cir. 2013).

4.     On May 9, 2018, the undersigned counsel filed notice of appearance on behalf of defendant Thomas Christopher Retzlaff.  (Doc. 37.)

5.     Retzlaff has not been served with a summons and copy of the complaint.  On May 9, 2018, plaintiff requested that Retzlaff waive service of summons and complaint.  On May 13, 2018, counsel for Retzlaff notified plaintiff that Retzlaff would "sign and return the waiver form waiving service within 30 days of receiving the required copies of the waiver form and prepaid means for returning it as required by Rule 4(1)(C)."  As of the filing of this motion, the required copies of the waiver had not been received.

6.     Retzlaff seeks relief under the TCPA without waiving his challenge to the Court's personal jurisdiction over him and objects to being required to participate in any proceedings until his jurisdictional challenge has been determined.

## II. THE BROAD REACH OF THE TCPA

## A. The TCPA Applies in Federal Court

7.    The Texas Citizens Participation Act applies to cases before a federal court sitting in diversity jurisdiction.   *See **Brown v. Wimberly***, 477 Fed.Appx. 214, 215 (5th Cir. 2012) (applying Louisiana anti-SLAPP statute in federal court); ***Henry v. Lake Charles American Press, LLC***, 566 F.3d 174 (5th Cir. 2009) (same); ***Williams v. Cordillera Comms., Inc***., 2014 WL 2611746 at *2 (S.D.Tex. 2014) (applying Texas anti-SLAPP statute in federal court), citing ***Brown***, 477 Fed.Appx. at 215, and ***Henry***, 566 F.3d at 164.   The ***Williams*** court observed:

> **There is no material difference between the Louisiana and Texas anti-SLAPP statutes.**

***Williams***, 2014 WL 2611746 at *2.   Other federal courts—including this one—have agreed that the TCPA is both substantive and procedural.   ***Allen v. Health***, 2016 WL 7971294 at *4 (E.D.Tex. May 6, 2016) ("while the TCPA provides a procedural mechanism for early dismissal, it ultimately provides a basis for dismissal that is inextricably tied to the substantive nature of plaintiff's claims"). The Fifth Circuit appears to agree.   *See **Diamond Consortium, Inc., v., Hammervold***, 2018 WL 2077910 at *3-*4 (5th Cir. May 3, 2018) (applying the TCPA and affirming this Court's analysis doing the same).

### B. The Growing Problem of "SLAPP" Suits and the Legislative Response

8.     SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." *See Entravision Comm's Corp. v. Salinas*, 487 S.W.3d 276, 278 n.2 (Tex. App.—Corpus Christi 2016, pet. denied).  The growing use of SLAPPs to squelch public criticism was so pervasive that the Texas Legislature adopted TEX. CIV. PRAC. & REM. CODE § 27 by a unanimous vote in both houses in 2011. To date, 28 other states and the District of Columbia have also adopted anti-SLAPP statutes: Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Nevada, New Mexico, New York, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Utah, Vermont, and Washington.

9.     The TCPA encourages and safeguards the constitutional rights of a defendant to speak freely and otherwise participate in government to the extent provided by law.  TEX. CIV. PRAC. & REM. CODE § 27.002.  The TCPA requires the Court to determine at an early stage whether a legal action affecting such rights has merit.  Courts must construe the TCPA liberally to fully effectuate its purpose and intent to encourage and safeguard a defendant's constitutional rights.  *See id.* §§ 27.002, 27.011.

10.     Retzlaff invoked the Court's determination by filing his motion, and now the instant amended motion.  *Id.* § 27.003(a), (b).  The motion suspends all discovery until the Court rules on the motion.  *Id*. §27.003(c).  A hearing must be held within 60 days of service of the motion, in most cases.  *Id*. § 27.004(a).  The

Court must rule on the motion "not later than the 30th day following the date of the hearing on the motion." *Id*. § 27.005(a).  In ruling on the motion, the Court "shall consider the pleadings and supporting and opposing affidavits stating facts on which liability or defense is based." *Id*. § 27.006(a).  The TCPA neither contemplates nor allows an evidentiary hearing.  *Id*.; ***Pena v. Perel***, 417 S.W.3d 552, 556 (Tex. App.—El Paso 2013, no pet.) (trial court's decision on a TCPA motion to dismiss is not based on live testimony but the pleadings and supporting and opposing affidavits).

11.   The trial court "*shall* dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right to petition." *Id*. § 27.005(b)(2) [emphasis added]; ***Johnson-Todd v. Morgan II***, 480 S.W.3d 605, 606 (Tex. App.—Beaumont 2015, pet. denied).  The exception:

> **The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.**

§ 27.005(c).

12.   Even if the party bringing the legal action meets his evidentiary burden in response to a TCPA motion to dismiss, the Court must *still* dismiss plaintiff's legal action if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TCPA § 27.005(d).   ***Johnson-Todd II***, 480 S.W.3d at 610 n.3 ("[A]ll of [plaintiff's] claims are subject to the judicial communications privilege.

Accordingly, we hold the trial court erred by denying [defendant's] motion to dismiss….").

13.     It is beyond serious doubt that the word "shall" in TCPA § 27.009(a)(1) *requires* courts to award attorney's fees, court costs, and litigation expenses to the successful movant. ***Sullivan v. Abraham***, 488 S.W.3d 294, 299 (Tex. 2016); ***Rauhauser v. McGibney***, 508 S.W.3d 377, 389 (Tex. App.—Fort Worth 2014, no pet.) (attorney's fees and sanctions are "mandatory" under TCPA), *reversed on other grounds*, 2018 WL 1866080; ***James v. Calkins***, 446 S.W.3d 135, 150 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). A trial court errs by not awarding the successful movant for dismissal reasonable attorney's fees incurred—untempered by nebulous considerations of "justice and equity" once thought by a few courts to apply.  *See* TCPA § 27.009(a); ***Sullivan***, 488 S.W.3d at 299.

14.     Uniquely in Texas law, sanctions, too, are *mandatory* when a court grants a TCPA motion to dismiss.  TCPA § 27.009(2).  Texas courts have awarded TCPA sanctions "to deter the filing of similar actions" of **$450,000.00**,[1] **$250,000.00**,[2] **$150,000.00**,[3] **$85,000.00**,[4] **$75,000.00**,[5] **$63,000.00**,[6] and many smaller amounts.

---

[1]     February 22, 2017, order in Cause No. 2016-79698; ***Landry's, Inc. v. Animal League Defense Fund***; in the 334th District Court of Harris County, Texas; awarding attorney's fees of **$174,480.26** and sanctions of **$450,000.00**.  The case is notable for the fact that it had been on file *less than 90 days* at the time of the dismissal and award of fees.

[2]     Order in Cause No. 2014-13621; ***Schlumberger v. Rutherford***; in the 127th District Court of Harris County, Texas; awarding attorney's fees of **$350,000.00** and sanctions of

### C. The Importance of Judicial Deterrence in the Case at Bar

15.     Laura Lee Prather published jointly with Hon. Jane Bland a note on the use of Texas' Anti-SLAPP statute to protect victims from the use of lawsuits designed to bully them.  In that note, Prather & Bland write:

> **When a miscreant manipulates the legal system to intimidate and silence people who are telling the truth, such manipulation threatens core values of democracy—the right to freely speak, petition the government, and associate.**

Prather & Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 TEX. TECH L. REV. 725, 727 (2015); *see **Johnson-Todd v. Morgan II***, 480 S.W.3d 605, 606 (Tex. App.—Beaumont 2015, pet. denied).

16.     What Prather & Bland refer to in the abstract is a good description of the legal mischief plaintiff attempts to work upon Retzlaff in the case at bar.  The instant suit is a notorious public figure's angry retaliation for Retzlaff's having criticized his fitness to be a member of the State Bar of Texas or to hold an office of public trust.  How the TCPA prevents plaintiff from punishing Retzlaff's exercise of his constitutional rights in this way is briefed below.

---

**$250,000.00**.  These awards were undisturbed on appeal.  *See **Schlumberger v. Rutherford***; 472 S.W.3d 881 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

[3]     Order in Cause No. 67-270669-14; ***McGibney v. Retzlaff***; in the 67th District Court of Tarrant County, Texas; awarding attorney's fees of **$300,000.00** and sanctions of **$150,000.00**, *reversed and remanded*, 2018 WL 1866080.

[4]     Cause No. 2011-CI-13290; ***Simpton v. High Plains Broadcasting, Inc.***; in the 285th District Court of Bexar County, Texas; orders dated July 23, 2012, 2014, awarding sanctions totaling **$85,000.00**.

[5]     ***Kinney v. BCG Attorney Search, Inc.***, 2014 Tex. App. LEXIS 3998 at *38 (Tex. App.—Austin 2014, pet. denied).

[6]     *See* Cause No. 14-11-22851; ***Digilio v. Provost***, in the 506th District Court of Waller County, Texas; order dated September 19, 2016, awarding **$135,109.00** in trial and appellate attorney's fees and **$63,000.00** in sanctions.

### III. FACTS PERTAINING TO THIS MOTION

17.     Originally brought as a libel suit for Retzlaff's statements in a grievance to the Texas State Bar (Doc. 7, ¶ 5.3), plaintiff now narrows his suit to alleged Retzlaff statements in a letter to Hon. Jonathan Bailey of the 431st District Court (where **Van Dyke v. Retzlaff** was pending) or on a "blog" Retzlaff allegedly owns.  Plaintiff does not identify the statements themselves in the complaint, but *characterizes* them as including the following "statements of fact:"

     (i)     plaintiff is a Nazi;

     (ii)    plaintiff is a pedophile;

     (iii)   plaintiff is a drug addict;

     (iv)   plaintiff has a criminal record for abusing women;

     (v)    plaintiff has committed professional conduct against Retzlaff.

(Doc. 7, ¶ 6.2).  Based on plaintiff's own characterizations, plaintiff sues for:

     (i)     libel per se;

     (ii)    intrusion upon seclusion; and

     (iii)   tortious interference with existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC);

     (iv)   intentional infliction of emotion[al] distress. (Doc. 7, ¶ 6.11.)

(Doc. 7, ¶ 6.2).  Plaintiff abandons his claims of tortious interference with a prospective contract and libel in Retzlaff's grievance.  (Doc. 40, ¶ 16.)

18.     In a March 30, 2018, letter to Judge Bailey (Doc. 40-4, p. 34-38), Retzlaff wrote, "Jason Lee Van Dyke is a Nazi, racist piece of human shit who has

no business being a lawyer." Even if not privileged as a judicial communication in a pending adjudicatory proceeding, Retzlaff is entitled to hold—and to caustically express—his *opinion* that plaintiff is "a person with extreme racist or authoritarian views," or "a person who seeks to impose his views on others in a very autocratic or inflexible way"—a common meaning of the word "Nazi" in wide usage:

Nazi | ˈnätsē |

noun (plural **Nazis**)

* *historical* a member of the National Socialist German Workers' Party.
* *derogatory* a person with extreme racist or authoritarian views.
* a person who seeks to impose his views on others in a very autocratic or inflexible way: *I learned to be more open and not such a Nazi in the studio.*

*See, e.g.*, Oxford University Press, *New Oxford American Dictionary*, 2010. Plaintiff admits membership in, and leadership of, "The Proud Boys," an organization group the Southern Poverty Leadership Center has designated a "hate group." Plaintiff frequently expresses his extreme views on social media sites in racist and authoritarian ways.

19.    In the same March 30, 2018, letter to Judge Bailey, Retzlaff wrote, "No doubt Van Dyke is a pedophile, too. He has that look about him." Even if not privileged as a judicial communication in a pending adjudicatory proceeding, Retzlaff is entitled to hold—and to express—his *opinion* that plaintiff has the "look" of a pedophile (whatever that is). The other statements plaintiff sues upon are either true or are nonactionable expressions of opinion.

## IV. ARGUMENT & AUTHORITIES

## A. Why Does the TCPA Apply to This Suit?

20.     The TCPA applies to a suit based on, related to, or in response to exercise of the right (1) of free speech; or (2) to petition.  *Id*. §§ 27.005(b)(1) and (2); ***Rehak Creative Servs., Inc. v. Witt***, 404 S.W.3d 716, 723 (Tex. App.— Houston [14[th] Dist.] 2013, pet. denied), *disapproved on other grounds*, ***In re Lipsky***, 460 S.W.3d 579, 587, 591 (Tex. 2015).  "Exercise of the right of free speech" means a communication made "in connection with a matter of public concern." *Id*., § 27.001(3); ***Rehak***, 404 S.W.3d at 723.  A "communication" includes "a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1); ***Rehak***, 404 S.W.3d at 723.

21.     The TCPA defines "matter of public concern" extremely broadly to include any issue related to "health or safety," "community well-being," "the government," "a public official or other public figure," and "a good, product, or service in the marketplace."  TCPA §§ 27.001(7)(A)-(E).  Statements relating to legal services offered by attorney in the marketplace are matters of public concern. ***Deaver v. Desai***, 483 S.W.3d 668, 673 (Tex. App.—Houston [14[th] Dist.] 2015, no pet.).  Retzlaff's communications regarding plaintiff's fitness to practice law or become an assistant district attorney[7] qualify under all statutory definitions.

---

[7]     Public officials include governmental employees who have, or appear to have, substantial responsibility for or control over the conduct of governmental affairs. ***Rosenblatt v. Baer***, 383 U.S. 75, 85 (1966).  Attorneys—with their ability to issue subpoenas and command appearances—appear to fall into this category.  An assistant district attorney is a "public official." ***Pardo v. Simons***, 148 S.W.3d 181, 189 (Tex. App.—Waco 2004, no pet.).  Even persons who

22.     "Exercise of the right to petition" means, among other things, "a communication in or pertaining to a judicial proceeding."  *Id*., § 27.001(4)(A)(i). It also includes any communication that "falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state."  *Id*., § 27.001(4)(E).  Retzlaff's correspondence to the judge of the 431st District Court where *Van Dyke v. Retzlaff* was pending was clearly a communication in or pertaining to a judicial proceeding.

23.     Nor must Retzlaff bring forth independent evidence that plaintiff's lawsuit was brought in response to the exercise of Retzlaff's exercise of constitutional rights.

> **"[T]he plaintiff's petition…, as so often has been said,  is the best and all-sufficient evidence of the nature of the action.'"   [Footnote omitted.]   The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations. [TCPA] section 27.005(b)'s requirement that a defendant moving for dismissal show the basis of the legal action by "a preponderance of the evidence" must be read in harmony with Section 27.006(a), rather than in conflict.   <u>When it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more.</u>**

*Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) [emphasis added].  To determine that plaintiff brought his suit against Retzlaff in response to Retzlaff's exercise of the right to free speech and to petition, the Court need look no further than plaintiff's pleadings and the exhibits plaintiff has filed in response to Retzlaff's

---

hold no government position can be considered public officials if the public has an independent interest in their qualifications and performance in a public capacity beyond the public's interest in the qualifications and performance of all government employees.  *Cloud v. McKinney*, 228 S.W.3d 326, 339-40 (Tex. App.—Austin 2007, no pet.).

TCPA motion to dismiss.   *See, e.g.*, ***Serafine v. Blunt***, 466 S.W.3d 352 (Tex. App.—Austin 2015, no pet.) (considering the plaintiff's response to TCPA motion to determine that TCPA applies).

24.     Thus, the TCPA applies and requires the Court to dismiss plaintiff's suit for one or *all* of the following four reasons:

(i)      plaintiff's suit is based on, related to, or in response to Retzlaff's exercise of his right of free speech on "a matter of public concern" as defined by TCPA §§ 27.001(7);

(ii)     plaintiff's suit is based on, related to, or in response to Retzlaff's exercise of his right to petition;

(iii)    plaintiff cannot prove by clear and specific evidence each element of each cause of action; and

(iv)     Retzlaff proves by a preponderance of the evidence each element of at least one affirmative defense to plaintiff's suit.

### B. How Hateful Can Comment on Matters of Public Concern Be Without Losing Constitutional Protection?

25.     There may be no legal limit to the causticity of public comment, as American history and jurisprudence amply supports—from long before the Texas Legislature's adoption of the TCPA in 2011.   The right to criticize public figures harshly—*even cruelly and unfairly*—is one the framers of the First Amendment used with relish.   For example, in the presidential election of 1800, one political opponent wrote in the "blogs" of his day that incumbent president John Adams was "old, querulous, bald, blind, crippled, [and] toothless."[8]   An operative hired by Thomas Jefferson, who was challenging Adams for the presidency, added:

> **John Adams is a hideous hermaphroditical character with neither the force and firmness of a man, nor the gentleness and sensibility of a woman.**[9]

In retort, the Adams camp called Jefferson "a mean-spirited, low-lived fellow, the son of a half-breed Indian squaw, sired by a Virginia mulatto father."[10]   Jefferson's and Adams' comments were both probably "designed to inflict emotional distress and anguish" upon each other.   However, this is not actionable.   Here is why.

26.     "Public figures" are not limited to those who, like Jefferson and Adams, hold public office.   In 1983, self-described "smut peddler" Larry Flynt, the publisher of *Hustler Magazine* and 28 other admittedly "tasteless" publications, published a parody of a well-known print ad for Campari Liqueur

---

[8]       McCullough, David, ***John Adams***, p. 500, quoting a letter written by Abigail Adams to Mary Cranch.

[9]       Swint, Kerwin, "Founding Fathers' Dirty Campaign," CNN Living (Online), August 22, 2008.

running nationally under the tag line, "My First Time."   In the parody, Jerry

Falwell, a respected Baptist minister, was depicted as confessing that his "first

time" having sex was while he was drunk and with his own mother in an outhouse.

See ***Hustler Magazine, Inc. v. Falwell***, 485 U.S. 46, 48 (1988).  *Hustler* presented

a mock interview in which Falwell says, "We were drunk off our God-fearing

asses," and, "Mom looked better than a Baptist whore with a $100 donation."[11]

27.     Like plaintiff in the case at bar, Falwell sued *Hustler* for defamation

and intentional infliction of emotional distress.  ***Hustler Magazine, Inc.***, 485 U.S.

at 47-48.  Falwell obtained a judgment in the trial court that was upheld in the U.S.

Court of Appeals for the Fourth Circuit.   However, in one of the most dramatic

First Amendment cases of the 20th Century, the U.S. Supreme Court unanimously

struck down the award and held that *Hustler's* ad parody was protected speech:

> **Despite their sometimes caustic nature, from the early cartoon
> portraying George Washington as an ass down to the present day,
> graphic depictions and satirical cartoons have played a prominent
> role in public and political debate ... [and] undoubtedly had an effect
> on the course and outcome of contemporaneous debate.  Lincoln's tall,
> gangling posture, Teddy Roosevelt's glasses and teeth, and Franklin
> D. Roosevelt's jutting jaw and cigarette holder have been
> memorialized by political cartoons with an effect that could not have
> been obtained by the photographer or the portrait artist.  From the
> viewpoint of history it is clear that our political discourse would have
> been considerably poorer without them.**

***Hustler Magazine, Inc.***, 485 U.S. at 54-55.   As the U.S. Supreme Court

previously observed in an earlier case:

---

[10]     *Id*.

[11]     *Hustler Magazine*, November 1983, inside front cover.

> **[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it.  Indeed, if it is the speaker's opinion that gives offense,** *that consequence is a reason for according it constitutional protection.*

*FCC v. Pacifica Foundation*, 438 U.S. 726, 745-46 (1978) [emphasis added].

28.     In its first major free-speech decision of the 21st century, the U.S. Supreme Court extended the protection of free speech even further in ***Snyder v. Phelps***, 131 S.Ct. 1207 (2011).  In ***Snyder***, the court held for the first time that the target of the offensive speech *did not* have to be a public figure for the speech to be protected.  *Id*. at 1228 (dissent by Alito, J.).  ***Snyder*** involved Rev. Fred Phelps, whose Westboro Baptist Church believes God hates and punishes the United States for tolerating homosexuality, particularly in the military.  *Id*. at 1213.  The church frequently communicates its views by picketing, often at military funerals. *Id*.  Marine Lance Corporal Matthew Snyder was killed in Iraq in the line of duty. *Id*.  Snyder's funeral was at the Catholic church in the Snyders' hometown of Westminster, Maryland.  *Id*.  At the funeral, Phelps and his family members carried signs that read "Fag Troops," "God Hates Fags," "Fags Doom Nations," "America is Doomed," "Pope in Hell," and "Priests Rape Boys."  *Id*. and at 1216.

29.     The ***Snyder*** court vacated the damages award to the dead soldier's father for intentional infliction of emotional distress, holding that Phelps' speech was protected by the First Amendment.  *Id*.  The ***Snyder*** court found Phelps' speech to be on "matters of public concern"—speech that "occupies the highest

rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id*. at 1215 [citation omitted].  The court concluded:

> **Speech is powerful. It can stir people to action, move them to tears of both joy and sorrow, and—as it did here—inflict great pain. On the facts before us, we cannot react to that pain by punishing the speaker. As a Nation we have chosen a different course—to protect even hurtful speech on public issues to ensure that we do not stifle public debate.  That choice requires that we shield Westboro from tort liability for its picketing in this case.**

*Id*. at 1223.  It is impossible to conclude that a court constrained by ***Snyder's*** precepts could find Retzlaff's comments anything other than constitutionally protected criticism of plaintiff for projecting his violent, racist beliefs onto an Internet audience of 7.5 billion people—with such posts as this:



## C. Analysis of Plaintiff's Claims

30.     The following is not intended to exhaustively analyze every possible element of every challenged claim.  The TCPA does not require Retzlaff to do this.  The following analysis points out only the most glaring deficiencies in plaintiff's claims.  The TCPA nevertheless requires plaintiff to marshal clear and specific evidence of each element of each of his claims, whether specifically challenged in this motion or not.

### 1. Libel Per Se

31.     Libel per se is a defamatory statement that tends to injure a person's reputation "in her office, profession, or occupation."  *Hancock v. Variyam*, 400 S.W.3d 59, 62 (Tex. 2013).   In *Hancock*, the Texas Supreme Court held statements that a physician lacked veracity and dealt in half-truths were not defamatory per se because they did not injure the physician in his professions by ascribing that he lacked a necessary skill peculiar or unique to the profession of being a physician.  *Id*. at 67.

> **Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's trade or profession.**

RESTATEMENT (SECOND) OF TORTS § 573 cmt. e (cited approvingly in *Hancock*, 400 S.W.3d at 67); *see also* *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017).  The alleged "statements of fact" plaintiff relies on to support his libel per se claim fall short.

32.     Furthermore, the threshold requirement of defamation is a false statement of fact to a third party. *Dallas Morning News, Inc. v. Tatum*, 2018 WL 2182625 at *3 (Tex. May 11, 2018), citing *ExxonMobil v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017); *see Milkovich v. Lorain Journal Co*., 497 U.S. 1, 20-21 (1990); *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002).   To determine whether a statement implies an assertion of fact, courts must look at the entire context in which the statement was made.   *Bentley*, 94 S.W.3d at 579.   If a statement is not verifiable as false, it is not defamatory.   *Dallas Morning News*, 2018 WL 2182625 at *3, citing *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (citing *Milkovich*).

> **[E]ven when a statement *is* verifiable as false, it does not give rise to liability if the "entire context in which it was made" discloses that it is merely an opinion masquerading as a fact.**

*Dallas Morning News*, 2018 WL 2182625 at *3 [emphasis in original], quoting *Bentley*, 94 S.W.3d at 581.

33.     If the entire context in which the Retzlaff statements were made is examined, it is no more possible to conclude that the statements implied assertions of fact about plaintiff than the U.S. Supreme Court held it was possible that Hustler Magazine's ad parody was implying the "fact" that revered minister Jerry Falwell had sex with his mother, drunk in an outhouse.   *See Hustler Magazine, Inc.*, 485 U.S. at 54-55.   This is permissible comment, particularly about a public figure such as plaintiff.   Without clear and specific evidence of a statement of objectively verifiable fact, the Court must dismiss this claim.

## 2. Intrusion Upon Seclusion

34.     Plaintiff's formbook recitation of the elements of a claim for intrusion upon seclusion (Doc. 7, ¶¶ 6.9-6.11) provides no facts showing how Retzlaff allegedly committed this tort.   Examples of "intrusion" that have been held to be actionable include wiretapping,[12] setting up a camera in plaintiff's bedroom without permission,[13] making repeated or harassing phone calls,[14] entering the plaintiff's home without permission,[15] and searching an employee's personal locker and her purse.[16]  If the intrusion involves a public place or public matters, the defendant is not liable for invasion of privacy.  *See, e.g.*, ***Floyd v. Park Cities People, Inc.***, 685 S.W.2d 96, 97-98 (Tex. App.—Dallas 1985, no writ).   Retzlaff can find no authority supporting an actionable "intrusion upon seclusion" based on writing letters or making public comments about the qualifications or fitness of a person to be a member of the State Bar of Texas or to be employed as an officer to prosecute crime.  Without clear and specific evidence of each element of the cause of action of intrusion upon seclusion, the Court must dismiss this claim.

---

[12]     ***Billings v. Atkinson***, 489 S.W.2d 858, 860 (Tex. 1973).

[13]     ***Clayton v. Richards***, 47 S.W.3d 149, 156 (Tex. App.—Texarkana 2001, pet. denied).

[14]     ***Household Credit Servs. v. Driscoll***, 989 S.W.2d 72, 84-85 (Tex. App.—El Paso 1998, pet. denied).

[15]     ***Gonzales v. Southwestern Bell Tel. Co.***, 555 S.W.2d 219, 222 (Tex. App.—Corpus Christi 1977, no writ).

[16]     ***K-Mart Corp. v. Trotti***, 677 S.W.2d 632, 637-38 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

### 3. Tortious Interference With Existing Contract

35.    Among the other elements of this claim, plaintiff must bring forth clear and specific evidence that Retzlaff induced or caused another party to breach its contract with plaintiff.  ***John Paul Mitchell Sys. v. Randall's Food Markets, Inc***., 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet. denied).  Inducing a party to do what it had a right to do does not constitute tortious interference.  ***ACS Investors, Inc. v. McLaughlin***, 943 S.W.2d 426, 430  (Tex. 1977).  The Texas Supreme Court has strongly implied that an at-will employment contract is incapable of being interfered with.  *See **El Paso Healthcare Sys. v. Murphy***, 518 S.W.3d 412, 422 (Tex. 2017) (at-will employee of a medical practice did not establish that a hospital interfered with her employment by asking the medical practice not to schedule her for any shifts because the medical practice was not required to schedule her for any shifts at all).  Furthermore, a defendant must have actual knowledge of a contract in order to interfere with it.  ***Frost Nat'l Bank v. Alamo Nat'l Bank***, 421 S.W.2d 153, 156 (Tex. App.—San Antonio 1967, writ ref'd n.r.e.).  Plaintiff has no clear and specific evidence that Retzlaff subjectively knew of any "contract" with plaintiff's employer, much less induced its breach.

36.    Without evidence that Retzlaff induced plaintiff's employer to *breach* some contract Retzlaff knew about—as opposed to incidentally causing plaintiff's employer to terminate plaintiff's at-will employment—no cause of action for tortious interference with existing contract can lie.  The Court should dismiss it.

### 4. Intentional Infliction of Emotional Distress ("IIED")

37.     IIED was "never intended to supplant or duplicate existing statutory or common-law remedies." ***Creditwatch, Inc. v. Jackson***, 157 S.W.3d 814, 816 (Tex. 2005).   IIED is a "gap-filler" tort created to allow recovery "in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." ***Hoffmann-La Roche, Inc. v. Zeltwanger***, 144 S.W.3d 438, 447 (Tex. 2004) (citing with approval three defamation cases where IIED was not available as an independent claim); *see also **Draker v. Schreiber***, 271 S.W.3d 318, 322-23 (Tex. App.—San Antonio 2008, no pet.).   If a plaintiff "does not allege facts that are independent of her defamation claim and that could support a claim for IIED," the plaintiff's IIED claim "fails as a matter of law." ***Tubbs v. Nicol***, 675 Fed.Appx. 437, 440 (5th Cir. 2017).

38.     In response to appellants' TCPA motion, plaintiff must bring forth clear and specific evidence of emotional distress so extreme—and inflicted by Retzlaff in such an unusual way—as to leave plaintiff no other remedy for it. Plaintiff cannot.   Generally, "insensitive or even rude" behavior does not constitute extreme and outrageous conduct. ***GTE Sw. Inc. v. Bruce***, 998 S.W.2d 605, 612 (Tex. 1999).   Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*.

## D. What Affirmative Defenses to Plaintiff's Suit Can Retzlaff Prove?

### 1. Plaintiff's Failure to Comply With the Defamation Mitigation Act

39.     Since 2013, the Defamation Mitigation Act ("DMA") has prescribed a condition precedent to any person's filing a cause of action for defamation:

> **A person may maintain an action for defamation only if the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant.**

TEX. CIV. PRAC. & REM. CODE § 73.055(a).  In pertinent part, the DMA provides:

> **A request for correction, clarification, or retraction is sufficient if it … states with particularity the statement alleged to be false and defamatory….**

*Id.*, § 73.055(d)(3).  A person receiving such a request has 30 days to respond.  *Id.*, § 73.057(a).

40.     Plaintiff did not make a "timely and sufficient request for a correction, clarification, or retraction" from Retzlaff before filing his suit. Without having made such a request, plaintiff may not state a claim for defamation.  *See **Tubbs v. Nicol***, 675 Fed.App'x. 437, 439 (5th Cir. 2017).  Since plaintiff cannot maintain his suit without proving he complied with the DMA, the Court should dismiss plaintiff's claims under the TCPA on this ground alone.

## 2. Retzlaff's Absolute Judicial Communications Privilege

41.     Under the judicial communications privilege, statements made in the due course of judicial proceedings cannot serve as the basis of civil actions for libel or slander, regardless of the negligence or malice with which the statements may have been made. ***James v. Brown***, 637 S.W.2d 914, 916 (Tex. 1982); ***Johnson-Todd II***, 480 S.W.3d at 610.  This privilege is properly understood as an immunity, and extends to statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including in any pleadings or other papers filed in a case. ***James***, 637 S.W.2d at 916-17. The privilege also attaches to communications made, as here, preliminary to a proposed judicial proceeding. *Id.*, quoting RESTATEMENT (SECOND) OF TORTS § 588 (1981).

> **An absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in a civil action for libel or slander.**

***Reagan v. Guardian Life Ins. Co***., 166 S.W.2d 909, 912 (Tex. 1942). This is true even if the communication was false and published with express malice. *Id.*; ***Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.***, 291 S.W.3d 448, 451 (Tex. App.—Fort Worth 2009, no pet.).

42.     Retzlaff's communications to the judge of the 431st State District Court where ***Van Dyke v. Retzlaff*** was pending were clearly made in a judicial proceeding. ***James***, 637 S.W.2d at 916-17. When absolute privilege protects a communication, it functions "as an immunity" because it is based on the actor's

personal position or status and not on the actor's motivation. ***Hurlbut v. Gulf Atl. Life Ins. Co***., 749 S.W.2d 762, 768 (Tex. 1987); ***Jenevein v. Friedman***, 114 S.W.3d 743, 745-46 (Tex. App.—Dallas 2003, no pet.). "Absolute privilege is not a defense.   Rather, absolutely privileged communications are not actionable." ***CEDA Corp. v. City of Houston***, 817 S.W.2d 846, 849 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

43.    Absolute privileges protect public policy interests deemed sufficiently important to trump the rights of individuals who would otherwise have a claim.  *See **Reagan***, 166 S.W.2d at 913 (privilege is founded on public policy "that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual"); ***Zarate v. Cortinas***, 553 S.W.2d 652, 654 (Tex. Civ. App.—Corpus Christi 1977, no writ) (privilege applies to conduct that otherwise would be actionable "because the defendant is acting in furtherance of some interest of social importance which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation"). *See* RESTATEMENT (SECOND) OF TORTS ch. 25, topic 2, tit. B, intro. note (1977) (privileges protect persons when law wants individuals to "be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests.").

44.    To be privileged, the communication must bear some relationship to pending or proposed litigation. ***Bell v. Lee***, 49 S.W.3d 8, 11 (Tex. App.—San Antonio 2001, no pet.) (privilege attaches if statement has some relationship to

*contemplated* proceeding, whether or not it actually furthers representation). Whether a communication is related to a proposed or existing judicial proceeding is a question of law. ***Thomas v. Bracey***, 940 S.W.2d 340, 343 (Tex. App.—San Antonio 1997, no writ). When deciding the issue, "the court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding." ***Daystar Residential, Inc. v. Collmer***, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). "All doubts should be resolved in favor of relevancy." ***Jenevein***, 114 S.W.3d at 747.

45.    Retzlaff proves the immunity of the judicial communications privilege with plaintiff's own evidence. Therefore, the Court must dismiss all of the claims in plaintiff's suit whether he brings forth "clear and specific evidence" of the claims or not. TCPA § 27.005(d); ***Johnson-Todd***, 480 S.W.3d at 610.

### 3. Plaintiff is Libel-Proof

46.    Attached as Exhibit A is Retzlaff's unsworn declaration appending various derogatory articles and other published matter—some authored by plaintiff himself—showing plaintiff is libel-proof. If plaintiff ever had a reputation to lose, he lost it after the broad publication of these articles and facts. *See **Swate v. Schiffers***, 975 S.W.2d 70, 74-75 (Tex. App.—San Antonio 1998, pet. denied) (physician whose reputation had already been ruined by derogatory newspaper articles and public censure from medical disciplinary boards was libel-proof and could not hold the defendant liable for misstating new criminal charges).

## E. Which of Plaintiffs' Various Claims *Must*[17] the Court Dismiss?

47.     *All* of them.   Plaintiff's suit was designed to chill both Retzlaff's exercise of his right to free speech and to petition—precisely what the TCPA exists to punish and deter.   It is important for the Court to recognize the expansive breadth of the Legislature's definition of "legal action" in the TCPA—which is not limited to a speech-based cause of action such as libel:

> **"Legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.**

TCPA § 27.001(6).   The breadth of the TCPA must be understood as intentional. If the Legislature had wanted to enact a narrower law, it had a full menu of restrictive examples to choose from.   For instance, Tennessee's 1997 anti-SLAPP law protects only communications made to government agencies regarding matters of concern to such agencies.   *See* TENN. CODE ANN. §§ 4-21-1003(a).   Florida and Hawaii chose similarly narrow statutes.   *See, e.g.,* FLA. STAT. § 720.304(4)(b) (limiting protection to "parcel owners"); HAW. REV. STAT. § 634F-1 (limiting protection to communications submitted or made to governmental body "during the course of a governmental proceeding").

48.     By contrast, the Texas Legislature chose to enact this:

---

[17]     TCPA § 27.005(b) uses the mandatory language "shall dismiss."   Retzlaff believes there is no difference between the mandatory implications of the words "must" and "shall."

> **If a legal action is <u>based on</u>, <u>relates to</u>, or is <u>in response to</u> a party's exercise of the right of free speech, to petition, or right of association, that party may file a motion to dismiss the legal action.**

TCPA § 27.003(a) [emphasis added]. *See **Johnson-Todd II***, 480 S.W.3d at 610;

***Rehak Creative Servs., Inc. v. Witt***, 404 S.W.3d 716, 733 (Tex. App.—Houston

[14th Dist.] 2013, pet. denied), *disapproved on other grounds*, ***In re Lipsky***, 460

S.W.3d 579, 587 and 591 (Tex. 2015), citing §§ 27.001(6), 27.005(b)(1).

49.    And there is also this:

> **[A] court <u>shall</u> dismiss a legal action against the moving party if the party shows by a preponderance of the evidence that the legal action is <u>based on</u>, <u>relates to</u>, or is <u>in response to</u> the party's exercise of:**
>
> **(1)    the right of free speech;**
> **(2)    the right to petition; or**
> **(3)    the right of association.**

TCPA § 27.005(b) [emphasis added]; ***Rehak*** 404 S.W.3d at 723.   And as if that

were not enough, the Legislature then bolstered this extremely broad language

with a specific instruction that courts construe it "liberally."  *Id*. § 27.011(b).

50.    Courts have applied the TCPA's broad "related-to" language to

dismiss "tag-along"[18] torts and other "legal actions" that, at first blush, might not

appear to be within the TCPA's ambit.   To date, these have included declaratory

judgment actions,[19] claims for injunctive relief,[20] invasion of privacy,[21]

negligence,[22] abuse of process,[23] claims under the theft liability act,[24]

---

<table>
<tr><td>18</td><td><i>See <b>Rehak</b></i>, 404 S.W.2d at 733.</td></tr>
<tr><td>19</td><td><i>See <b>Johnson-Todd II</b></i>, 480 S.W.3d at 610-11.</td></tr>
<tr><td>20</td><td><i>Id</i>.</td></tr>
<tr><td>21</td><td><i>Id</i>.</td></tr>
<tr><td>22</td><td><i>Id</i>.</td></tr>
<tr><td>23</td><td><i>Id</i>.</td></tr>
</table>

misappropriation,[25] conversion,[26] misappropriation of trade secrets,[27] breach of fiduciary duty,[28] conspiracy,[29] and even Rule 202 petitions for pre-suit discovery.[30]

51.     The rationale of the Legislature's choice is compelling.  From the perspective of the defendant engaging in protected conduct (Retzlaff in the case at bar), it makes little difference whether the weaponized "legal action" happens to be a claim for defamation or for intentional infliction of emotional distress, negligence, or injunctive relief.  *Any* baseless legal action can be used as a cudgel to squelch protected activity.  For instance, a political activist might bring an offensive protest sign to a candidate's fundraiser.  In response to that protected conduct, the candidate might retaliate with a trespass claim.  The candidate might say the trespass claim is based on unauthorized entry to property, not the speech on the sign.  That sly distinction would be no better-founded than an argument that plaintiffs' claims for negligence, IIED, and injunctive relief are beyond anti-SLAPP scrutiny merely because they are not "defamation."

52.     To prevent retaliatory gamesmanship such as this, the TCPA applies to any broadly-defined "legal action" *related to* the protected conduct—not just to certain causes of action.  Thus, in order to dismiss all of plaintiff's claims in the

---

[24]     *See Schlumberger Ltd. v. Rutherford*, 473 S.W.3d 881, 895 (Tex. App.—Houston [1st Dist.] 2015, no pet.).
[25]     *Id.*; *Rehak*, 404 S.W.3d at 733.
[26]     *Id.*
[27]     *Schlumberger*, 473 S.W.3d at 895.
[28]     *Id.*
[29]     *See Rehak*, 404 S.W.2d at 733.
[30]     *See In re Elliott*, 504 S.W.3d 455, 466 (Tex. App.—Austin 2016) (orig. proceeding).

case at bar under the TCPA, the Court need be satisfied only that these claims "*related to*" Retzlaff's exercise of the right to speech or petition in some way.  "In ordinary use, 'relates to' means to have a connection with, to refer to, or to concern."  ***Tex. Dept. of Pub. Safety v. Abbott***, 310 S.W.3d 670, 674-75 (Tex. App.—Austin 2010, no pet.).  Plaintiff's suit is *expressly* "related to" Retzlaff's exercise of his rights to speech and petition.

53.      Where the Legislature intended to exempt legal actions from the TCPA's all-encompassing scope, it did so expressly.  *See* TCPA §§27.010(c)-(d) (exempting all claims for personal injury, wrongful death, survival, or breach of an insurance contract).  The Legislature's omission from the TCPA of any exemption for legal actions for negligence, IIED, and injunctive relief means no exclusion can be inferred.  *See **Unigard Sec. Ins. Co. v. Schaefer***, 572 S.W.2d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply.").

54.      *All* of plaintiff's claims and causes of action must be dismissed.

## V. CONCLUSION

55.      Plaintiff's retaliatory suit seeks to punish and deter Retzlaff's exercise of his right of free speech on a matter of clear public concern.  Plaintiff's suit also seeks to punish and deter the exercise of Retzlaff's right to petition. Thus, Retzlaff is immune from plaintiffs' baseless, harassing suit.  And even if Retzlaff is not immune, plaintiff is libel-proof because he has no reputation to lose.

## VI. PRAYER

56.     For these reasons, Retzlaff prays that the Court dismiss all of plaintiff's claims and award Retzlaff his attorney's fees and mandatory sanctions sufficient to deter the filing of similar such suits in the future. Retzlaff prays the Court grant him such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

## HANSZEN✦LAPORTE

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
State Bar No. 00787386
Federal ID # 18465
jdorrell@hanszenlaporte.com
**ANTHONY L. LAPORTE**
State Bar No. 00787876
alaporte@hanszenlaporte.com
**KENT M. HANSZEN**
State Bar No. 00784210
khanszen@hanszenlaporte.com
**WM CARL WILSON**
State Bar No. 24090472
cwilson@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF SERVICE

I certify that on _____5-22____, 2018, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

> Mr. Jason Lee Van Dyke
> Plaintiff, Pro Se
> 108 Durango Drive
> Crossroads, Texas 76227
> Telephone: 469-964-5346
> FAX: 972-421-1830
> jason@vandykelawfirm.com

_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**