# EXHIBIT "G"

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DENTON | § |

### AFFIDAVIT OF JASON L. VAN DYKE

Before me, the undersigned notary, on this day personally appeared Jason L. Van Dyke, a person whose identity is known to me. After I administered an oath to him, upon his oath he stated:

1. "My name is Jason L. Van Dyke. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I hold the degree of Bachelor of Arts, with a major in Politics, from the University of Dallas. I also hold the degree of Juris Doctor, as well as a Certificate of Concentration in Advocacy, from Stetson University College of Law. I am an attorney licensed to practice law in the State of Texas and have been so licensed since February 8, 2007. I am also licensed to practice law before a number of other jurisdictions outside the State of Texas.

3. This lawsuit was initially filed after Defendant, Thomas Christopher Retzlaff, used his "Dean Anderson" pseudonym to cause my employment with Karlseng, LeBlanc, & Rich L.L.C. ("KLR") to be terminated. Defendant's assertions that this lawsuit was filed in retaliation for a bar complaint are false. The state bar grievance referred to by Defendant had been pending since approximately December 20, 2017. Plaintiff was fired as a result of Defendant's tortious conduct on March 27, 2018. This lawsuit was filed in state court on March 28, 2018.

4. On or around April 1, 2018, I learned that my social security number had been posted in the comments section of Defendant's BV Files blog. I have monitored the blog regularly since that time to obtain evidence of Defendant's ongoing tortious conduct and criminal activity so that appropriate preventative and defensive measures can be taken. Defendant named many of my clients in both the blog itself and the comments section. Some of these posts have contained the personal information of my clients. These clients include, but are not limited to, Claude Rich, Christine Scallin, Chris David Roberts, Jason McNiel Williams, Spencer Dyson, Jon Langbert, Michael Levy, and Gavin McInnes.

5. I first learned that Defendant was continuing to reach out to his clients when, on or around April 24, 2018, I was terminated from representing Claude and Catia Rich in Cause No. DC-17-06085, styled *Claude Rich, et al. v. Big D Concrete, Inc., et. al.* pending in the 160th District Court in and for Dallas County, Texas. Mr. Rich confirmed to me that Defendant was continuing to contact him. He stressed that the termination had everything to do with Defendant's continued stalking behavior and nothing to do with my skill as an attorney.

6. On May 3, 2018, I was present in the 367th District Court in and for Denton County, Texas for the purpose of a divorce prove-up in Cause No. 17-10442-431, styled *In The Matter of the Marriage of Jennifer Melisa Jaynes and Chris David Roberts*. After the prove-up I spoke with attorney Jared Julian, the opposing counsel in the case, who stated to me that he had been contacted by Defendant about both Plaintiff and Hon. Jonathan Bailey of the 431st District Court. I informed Mr. Julian that Defendant has been stalking me and further advised him not to correspond with Defendant in any way.

7. Between May 4, 2018 and May 21, 2018, I received communications from other potential clients that they could not hire me because they had read about this case and were fearful that Defendant might take action against them. While seeking local counsel for a case in Michigan, attorneys in that state expressed similar hesitancy about working with me.

8. I was interviewed by Pawl Bazile on or around May 22, 2018 concerning, among other things, how I have been stalked by Defendant over the past fourteen months. The interview was published on Dangerous.com on May 24, 2018.

9. On May 25, 2018, Gavin Innes (my client) informed me that he had received from Mr. Bazile a copy of the correspondence which is attached as Exhibit "A" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support. I immediately notified Defendant's counsel that Defendant was again interfering with my clients and demanded that this interference stop immediately.

10. On May 26, 2018, Mr. Bazile contacted me directly and forwarded him additional correspondence from Defendant, which is attached as Exhibit "B" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

11. The correspondence reference in paragraph 10 above contained a letter apparently sent by Defendant to Mr. McInnes on or around May 22, 2018. That letter is attached as Exhibit "C" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

12. During the morning of May 28, 2018, I learned that Defendant published another post to his "BV Files" blog. The post contained a copy of the correspondence referenced in paragraph eleven above. It contained portions of the electronic communications to Defendant's counsel referenced in paragraph nine above. The post contained pictures of Mr. McInnes, his wife, and his children. It contained an address allegedly associated with Mr. McInnes and a picture of their home. It also contained the message "Antifa members are especially encouraged to show up as milk and cookies are always available." The entire post is attached as Exhibit "D" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

13. During the afternoon of May 28, 2018, I learned that Defendant had sent a third communication to Mr. Bazile which, in addition to other false and defamatory material about me, continued to promise action against Mr. McInnes. It also suggested that the *Proud Boys*, a fraternity in which I am a member, would suffer "collateral damage" if it continued to associate with me. This letter is attached as Exhibit "E" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

14. On the morning of May 29, 2018, I received additional harassing correspondence from Defendant through his "Dean Anderson" pseudonym, which is attached as Exhibit "F" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

15. The frequency of Defendant's correspondence, as well as the nature of it, demonstrates to this Court precisely what I have been forced to endure at the hands of Defendant. He has intruded into as many possible areas of my private life as possible. He has already caused irreparable injury to my law practice and my legal career as a whole over the course of the past fourteen months. There is no doubt that Defendant will continue to behave in this manner during the pendency of this lawsuit unless he is compelled to stop.

16. My previous efforts to confer with Defendant's counsel for to negotiate an end to Defendant's tortious conduct – as well as to reach a resolution of this lawsuit under which Defendant will finally leave me alone – have failed in all respects. Defendant's counsel is unable to control his client. Defendant has very publicly stated that he will accept only my "unconditional surrender" and that it is his goal to put a permanent end to my legal career. Accordingly, this case is likely to continue for years and be the subject of multiple appeals by one or both parties. I have no remedy at law other than a preliminary injunction to protect myself and my law practice during the pendency of what is likely to be very lengthy litigation.

17. I am willing to post security for a temporary injunction as required by Rule 65(c) of the Federal Rules of Civil Procedure. However, I remain unemployed as a result of Defendant's tortious conduct against me and can only afford to post nominal bond.

JASON LEE VAN DYKE
Affiant

SWORN AND SUBSCIBED TO before me, the undersigned authority, on May 29, 2018.

MARISA PETROVIC
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 1-23-2019

Notary Public
State of Texas