**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON LEE VAN DYKE<br>Plaintiff | §<br>§<br>§ | |
| v. | § | Case No. 4:18cv247 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF<br>a/k/a Dean Anderson d/b/a BV Files, Via View Files L.L.C., and ViaView Files<br>Defendant | §<br>§<br>§<br>§<br>§ | |

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DENTON** | § |

**AFFIDAVIT OF JASON L. VAN DYKE**

Before me, the undersigned notary, on this day personally appeared Jason L. Van Dyke, a person whose identity is known to me. After I administered an oath to him, upon his oath he stated:

1. "My name is Jason L. Van Dyke. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I hold the degree of Bachelor of Arts, with a major in Politics, from the University of Dallas. I also hold the degree of Juris Doctor, as well as a Certificate of Concentration in Advocacy, from Stetson University College of Law. I am an attorney licensed to practice law in the State of Texas and have been so licensed since February 8, 2007.

3. I was previously an employee of Karlseng, LeBlanc & Rich L.L.C. ("KLR"). The electronic communications attached as Exhibit "A" to Plaintiff's Response to Defendant's Anti-SLAPP Motion" are true and correct copies of email communications between myself and both Robert Karlseng and Claude Rich which relate or pertain to my employment with KLR and certain communications received by KLR attacking my character and reputation. I regularly send and receive e-mail communications from a number of individuals, including clients and supervisors, in my law practice. As an attorney licensed to practice law in the State of Texas, it is my practice to keep all electronic mail communications sent to and received by my for a period of six months or more as records of my law practice.

4. The documents attached as Exhibit "B" to Plaintiff's Response to Defendant's Anti-SLAPP Motion" constitute the relevant portions of the "BV Files" blog (www.viaviewfiles.com) that I accessed on or around March 8, 2018. My reason for accessing the website was due to a friend informing me that a confidential letter from the Board Of Disciplinary Appeals concerning a grievance that had been filed against



EXHIBIT 3

me by Thomas Christopher Retzlaff ("Defendant") had appeared on the blog. My knowledge of the confidentiality requirements Texas Rules of Disciplinary Procedure is what first caused me to believe that Defendant either owned "BV Files" or was responsible for the content of "BV Files". I also took note of that fact that content contained on the "BV Files" blog was remarkably similar to language used by Defendant in his complaint against me.

5. The documents attached as Exhibit "C" to "Plaintiff's Response to Defendant's Anti-SLAPP Motion" constitute the relevant portions of the "BV Files" blog (www.viaviewfiles.com) that I accessed on or around March 26, 2018. Immediately prior to my termination from KLR, I learned from my supervisor, Robert Karlseng, that he had been contacted by "Dean Anderson" (a person that, at this time, I suspected of actually being Thomas Retzlaff) had been sending him false and defamatory content about both me and my former employer. Robert Karlseng was specifically singled out and referred to as a "Paymaster to Nazis". Due to the Defendants antics in his communications with KLR and on the BV Files blog, I was terminated from KLR on May 27, 2018. I filed suit against Defendant the following day.

6. The documents attached as Exhibit "D" to "Plaintiff's Response to Defendant's Anti-SLAPP Motion" constitutes the entire "BV Files" blog (www.viaviewfiles.com) that I accessed on or around April 1, 2018. I considered this post as being particularly revealing with respect to Defendant's ownership of BV Files. He has recently filed an answer in the state court case claiming that I was a pedophile. This false allegation became the headline for the next posting on the BV Files blog. The posting also referenced the allegations of drug use that had previously been raised with the State Bar of Texas in Defendant's grievance against me dated December 20, 2017. The continued similarities in the allegations against me that were brought by Defendant before the State Bar of Texas, together with those contained in the e-mails to KLR and the postings on BV Files further confirmed my suspicion that Defendant was the same person as Dean Anderson and that he either owned or controlled the content of BV Files. My suspicions concerning Defendant's identity were later confirmed when I discovered the affidavits of Brittany Retzlaff and Collin Retzlaff from a similar case that was litigated in California.

7. I have never been convicted of domestic violence and I have never been accused, arrested, or otherwise charged with assaulting a woman. I was briefly charged with domestic violence stemming from an argument between myself and a male college roommate in November of 2000. That case, and all cases related to it (including a misdemeanor weapons charge that I was initially convicted of but which was later vacated), have been dismissed and expunged since September of 2006.. I have no criminal record aside from minor traffic violations.

8. I am not now, nor have I ever been, an unlawful user of illicit drugs or controlled substances. Defendant was the first person who ever made this accusation against me, and the accusation was made in the grievance he filed against me with the State Bar of Texas on December 20, 2017. I have never been charged or arrested for any type of drug charge. I have offered to submit to hair follicle testing on multiple occasions

to prove that Defendant's allegations are false.

9. I am not now, nor have I ever been, a pedophile. Defendant is the first person that has ever accused me of pedophilia and did so in a court filing where he stated that I "had that look about me." This accusation was later repeated on the BV Files blog as stated in paragraph six above.

10. I am not now, nor have I ever been, a "Nazi" or a "white supremacist". I have previously been a member of the Libertarian Party and am currently a member of the Republican Party. In 2000, I was chairman of "Students for Alan Keyes" at Michigan State University. I supported the Alan Keyes campaign again in 2008 and later campaigned for Ron Paul. In 2012, I initially supported Herman Cain and then campaigned for Ron Paul. In 2016, I supported and campaigned for Donald Trump. I have never supported any candidate that has any sort of affiliation with the ideals of the Nazi party or with actual white supremacy. I have never been a member of any organization that supports, or has supported, the ideals of the Nazi party or of white supremacy.

11. Defendant has asserted that I am a "Nazi" or a "white supremacist" based upon my membership in a men's fraternal organization known as the Proud Boys. I am a member of the Proud Boys and have been a member since May of 2017. I am currently an officer in the Dallas/Ft. Worth chapter of the organization, but I have no national leadership role. I am occasionally asked to represent the organization as a whole or its individual members in legal matters. I have applied for a trademark of the name "Proud Boys" as per the instructions of the fraternity's founder, Gavin McInnes. Proud Boys is not a white supremacist organization. It is a men's fraternity open to both heterosexual and homosexual men of all races, ethnicities, and national origins. It has thousands of members worldwide in chapters located in the United States, Canada, the United Kingdom, Australia, and Israel. Persons associated with white nationalism, white supremacy, and the so-called "alt-right" are specifically prohibited from membership.

12. Defendant has continued a malicious smear campaign against me during the pendency of this lawsuit. I was informed that Defendant had retained his current counsel at approximately 5:30 p.m. on May 9, 2018. At approximately 7:30 p.m. that same evening, I received from Defendant the documents attached as Exhibit "H" to "Plaintiff's Response to Defendant's Anti-SLAPP Motion". I later located an additional response, which is attached as Exhibit "G" to "Plaintiff's Response to Defendant's Anti-SLAPP Motion".

13. The document attached as Exhibit "G" specifically referenced a portion of a settlement communication that I had sent to Mr. Dorrell earlier in the evening. Defendant appears to respond publically to this communication by saying "It's not about the money, bitch. I've got money to burn. It's about the lulz and putting you out of business -- 100% VERIFIED." The document attached as Exhibit "H", which was forwarded to a number of news organizations and contained a press release is additional evidence of Defendant's intention to simply do as much damage to Plaintiff and his legal career as possible.

14. I have not been able to obtain full time employment as an attorney since my termination from KLR. I have returned to being a solo practitioner and am working part time in the practice of law for a yearly salary of approximately $30,000.00. My employment with KLR paid $60,000.00 per year and included standard benefits including health care. I can no longer afford health insurance or the other benefits that I had as a KLR employee. I was also terminated by Claude Rich from representing him in a lawsuit that I had accepted, with the permission of KLR, outside of my employment with KLR. I am now regularly contact by both current clients, previous clients, and opposing counsel in my cases concerning direct e-mail contact from Defendant.

15. I have been required to spend a substantial amount of time litigating this case. The time spent on this case includes, but is not limited to, the efforts that I have made preparing a response to Defendant's TCPA motion in this case. My normal hourly billing rate is $200.00 per hour. I have expended a total of 14.7 hours researching and drafting my response to Defendant's TCPA motion. The total value of my time in responding to this motion is $2,940.00. It is my opinion, as a licensed attorney with eleven years of experience, that this is a fair and reasonable fee for the drafting and filing of a response of this nature when considering my experience, my reputation, my ability, the time limitations imposed, and the nature of this suit.

JASON LEE VAN DYKE
Affiant

SWORN AND SUBSCIBED TO before me, the undersigned authority, on May 15, 2018.

Notary Public
State of Texas

MARISA PETROVIC
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 1-23-2019

AFFIDAVIT