IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | Case No. 4:18cv247 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF | § | |
|     Defendant | § | |

**<u>PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSE TO DEFENDANT'S
MOTION TO DISMISS UNDER THE TEXAS CITIZENS PARTICIPATION ACT</u>**

      Plaintiff, Jason Lee Van Dyke, files this first supplemental response to address the additional issues raised in the amended motion to dismiss under the Texas Citizens Participation Act ("TCPA") filed by Defendant.

**A.    INTRODUCTION**

1.    Defendant and his counsel have artfully claimed that this lawsuit is "angry retaliation for [Defendant's] having criticized his fitness to be a member of the State Bar of Texas or to hold an office of public trust." ECF 43, ¶ 16. This, like most of the words that escape from Defendant's lips, is nothing more than a damnable lie. The basis of this lawsuit is abundantly clear to anyone willing to read the pleadings: this lawsuit was brought due to Defendant's continuous harassment of Plaintiff over the course of the past fourteen months which, during that time, has cost Plaintiff his full-time employment on two separate occasions and which has caused him to lose multiple clients.

2.    Plaintiff does not tolerate, and never will tolerate, his life being interfered with in this manner. Defendant has continued to interfere with Plaintiff's life and business since the filing of this lawsuit. ECF 46.

## B. OBJECTIONS TO DEFENDANT'S TCPA EVIDENCE

3. Plaintiff objects to paragraphs 10 - 12 (ECF 44-1) of Defendant's unsworn declaration on the basis that it purports to be expert testimony by a person who has not been qualified as an expert pursuant to Rule 702 of the Federal Rules of Evidence. Defendant is not competent to testify on the question as to whether his daughter's signature is forged except, possibly, for the purpose of authenticating that item under Fed R. Evid. 902(b)(1), but the affidavit of Brittany Retzlaff is self-authenticating under Fed. R. Evid. Rule 902(8).

4. In additional to the foregoing problems with Defendant's statements concerning the affidavit of his daughter, a press release issued by either Defendant or his counsel states that both Defendant and Brittany Retzlaff are represented by Hanszen Laporte. If this is true, Defendant should have no trouble obtaining a forgery affidavit from his daughter and defense counsel should have no trouble obtaining a forgery affidavit from its client. A copy of the press release is attached hereto as Exhibit "A" and incorporated by reference herein. In construing the evidence in the light most favorable to Plaintiff, this Court should accept all contents of the affidavit of Brittany Retzlaff as true for the purpose of this motion and, during discovery of this case, permit both parties ample opportunity to depose this important witness.

5. Plaintiff objects to paragraph 13 of Defendant's unsworn declaration (ECF 44-1) pursuant to Rule 402 of the Federal Rules of Evidence on the basis that Defendant's testimony pertaining to James McGibney is not relevant to this lawsuit and on the basis that the proper foundation is lacking for his assertion that

    the affidavit of his son, Collin Retzlaff, is a bogus document. Defendant is presumably able to contact his son and obtain a proper forgery affidavit if, in fact, the document is a forgery. In construing the evidence in the light most favorable to Plaintiff, this Court should accept all contents of the affidavit of Brittany Retzlaff as true for the purpose of this motion and, during discovery of this case, permit both parties ample opportunity to depose this important witness

6.  Plaintiff objects to the admissibility of Exhibit 1 (ECF 44-2, p. 1 - 6). These supposed court documents have not been authenticated in accordance with Fed. R. Evid. 901(a). If Defendant wishes for this Court to consider these public records, he must submit public records that comply with the requirement of Fed. R. Evid. 902 and 1005.

7.  Plaintiff objects to the admissibility of Exhibit 2 (ECF 44-2, p. 7 - 15), Exhibit 3 (ECF 44-2, p. 16 - 18), Exhibit 4 (ECF 44-2, p. 19 - 20), Exhibit 5 (ECF 44-2, p. 21 - 27), Exhibit 7 (ECF 44-2, p. 39 - 47), Exhibit 8 (ECF 44-2, p. 48 - 50), Exhibit 9 (ECF 44-2, p. 51 - 54), Exhibit 11 (ECF 44-2, p. 57 - 58), Exhibit 12 (ECF 44-2, p. 59 - 62), Exhibit 13 (ECF 44-2, p. 63 - 64), and Exhibit 14 (ECF 44-2, p. 65 - 68) in support of Defendant's motion to dismiss under the TCPA because the statements of third parties contained in these articles are inadmissible as hearsay under Fed. R. Evid. 802. Defendant has also failed to identify any relevant portions of this articles that are non-hearsay under Fed. R. Evid. 801(d) or which constitute exceptions to the hearsay rule under Fed. R. Evid. 803. To the extent that these articles contain non-hearsay or hearsay exceptions, Defendant has failed to identify the relevance of those portions of the article under Fed. R.

Evid. 401. As these are all either newspaper articles or blog posts written by sources that are highly biased against Plaintiff, they are also objectionable under Rule 403 because their probative value is almost nothing while their prejudicial effect is high.

8. Plaintiff objects to Exhibit 6 (ECF 44-2, p. 28 - 38) and Exhibit 18 (ECF 44-2, p. 79 - 99) in support of his motion to dismiss under the TCPA because the statements of third parties contained in the article are inadmissible as hearsay under Fed. R. Evid. 802. Even if they were admissible, none of the statements contained in this article reasonably relate or pertain to Plaintiff, and hence, they are completely irrelevant under Fed. R. Evid. 402.

9. Plaintiff does not object to the admissibility of Exhibit 10. ECF 44-2, p. 55 - 56.

10. Plaintiff objects to the admissibility of Exhibit 15 (ECF 44-2, p. 69) on the basis that is simply shows a link to a recording of Plaintiff made in 2000, and therefore, fails to satisfy the rule of completeness. Fed. R. Evid. 106. Plaintiff objects to all portions of this exhibit, except for the portion of the captions which reads "In this video from 2000, Jason L. Van Dyke complains that far-right views are censored on college campuses."

11. Plaintiff objects to the admissibility of Exhibit 16 (ECF 44-2, p. 70 - 72) and Exhibit 17 (ECF 44-2, p. 73 – 79) on the basis that they are not relevant under Fed. R. Evid. 402. The evidence proffered by Defendant in each of these exhibits are satirical stories written by Plaintiff about critics. Neither the stories themselves, nor the contents of these stories, have any possible relevance to this case.

12. Defendant's unsworn declaration and his "evidence" do little other than demonstrate to this Court what Plaintiff has been arguing since the day this lawsuit was filed in state court: Defendant has, for the past fourteen months, been waging an ongoing campaign to destroy Plaintiff's legal career and ruin his personal life. Plaintiff did not know of Defendant's involvement until approximately December 20, 2017. This lawsuit was filed when, on March 27, 2018, Plaintiff lost his second job in the course of a single years as a result of Defendant's lies and tortious conduct. It is for this conduct of Defendant that Plaintiff seeks damages.

### C. ARGUMENT AND CITATION TO AUTHORITIES
### ( The TCPA Is *Still* Not Applicable In Federal Court )

13. Defendant argues that the 5th Circuit made the TCPA applicable in federal court in the court of a recent appeal. See *Diamond Consortium, Inc. v. Hammervold*, 2018 WL 2077910 (5th Cir. May 3, 2018).

14. As this is a very recent and unpublished opinion, Plaintiff has taken the liberty of attaching the entire opinion to this supplement as Exhibit "B", and would direct this Court's attention to the footnote beginning on page five, which states verbatim:

> "Although the issue remains unresolved, neither party disputed below nor raised here the appropriateness of applying the TCPA in federal court in light of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). *Cf. Block v. Tanenhaus,* 867 F.3d 585, 589 (5th Cir. 2017) ("The applicability of state Anti-SLAPP statutes, such as the TCPA, in federal court is an important and unresolved issue in this circuit.") Because we conclude that the TCPA does not apply to the civil conspiracy claim against Hammervold, we follow previous panels in assuming without deciding that Texas's anti-SLAPP statute applies in federal court. See Culbertson v. Lykos, 790 F.3d 608, 631 (5th Cir. 2015) ("Because we determine that the TCPA by its

        own terms has not been shown to apply, we again pretermit the fundamental issue of its applicability in federal court.").

    While this may not have been the intention of defense counsel, any inference that the 5th Circuit has conclusively held that the TCPA is applicable in federal court is false. The issue remains undecided. While other litigants before this and other courts may have waived the important *Erie* considerations with respect to the TCPA, Plaintiff declines to err in the same manner.

15. While the procedural implications of the TCPA are important in considering its applicability in federal court, there is also no way to reconcile the burdens of proof required by the TCPA with those set forth in Rules 12(d), 11, and 56 of the Federal Rules of Civil Procedure. As stated in Plaintiff's initial response to Defendant's motion, the TCPA imposes an evidentiary burden on a non-movant that is in direct conflict with any evidentiary burden found to be applicable in federal court. Accordingly, this Court should deny Defendant's motion to dismiss under the TCPA and enter an order prohibiting him from filing an interlocutory appeal.

                      **( There Are No Public Figures Or Matters Of Public Concern In This Case)**

16. Contrary to Defendant's assertions, Plaintiff is not now (nor has he ever been) a public figure and the statements for which Defendant is being sued in this action are not matters of public concern. Defendant claims that Plaintiff became a public figure the moment that he was hired by the Victoria County District Attorney despite the fact he never actually began work in that capacity. ECF 43, ¶ 21. Plaintiff cannot be considered a public figure because, for a period of approximately 23 days, he was preparing to begin a job as a felony prosecutor (a

career that may have been successful but for Defendant's behavior).

17. Defendant further attempts to argue that *all* attorneys are public figures despite the fact that no court has ever specifically made this holdings. ECF 43, n. 7. While an attorney who is a judge, some other type of elected official, or who is employed by the government may very well be either public figure or a limited purpose public figure, an attorney in private practice employed by a small law firm primarily engaged in real estate law is clearly not.

18. It is certainly true that the TCPA permits *truthful* commentary on legal services offered by an attorney in the marketplace. In this case, Defendant was never a client of Plaintiff and made absolutely no commentary concerning the quality of the legal services offered by Plaintiff. Instead, Defendant made direct attacks on Plaintiff's character through libelous claims that he is associated with Nazism or white supremacy, that he is an abuser of women, that he is a drug addict, and that he is a pedophile. These are completely false attacks of a highly personal nature that have nothing to do with any of the legal services offered by Plaintiff in the marketplace.

**( Defendant's Specific Statements and Behavior )**

19. Defendant writes that an Anti-SLAPP statute is designed to protect victims of lawsuits designed to bully them, citing a note stating "[w]hen a miscreant manipulates the legal system to intimidate and silence people who are telling the truth, such manipulation threatens core values of democracy – the right to freely speak, petition the government, and associate." ECF 43, ¶ 15. The problem with Defendant's argument is simple: He is the bully, the miscreant, and the liar in this

case.

20. Contrary to Defendant assertions, this case was never brought due to Defendant's filing of a grievance with the State Bar of Texas. It was also not brought for any statements made by Defendant to Judge Jonathan Bailey of the 431st District Court. Defendants assertions to the contrary (ECF 43, ¶ 17 – 24) are nothing more than a distraction from the actual issue in this lawsuit: Plaintiff is being stalked by a lunatic who has continuously interfered with his employment, and more recently, his contracts with individual clients over the course of the past fourteen months.

21. The original petition in this case was brought for the following:

    (a) Statements concerning Plaintiff that Defendant, by his own admission, made to Victoria County District Attorney Stephen Tyler. The statements included false accusations that Plaintiff " is a drug addict who suffers from a very profound mental [illness] that looks to be untreated" and that "[Plaintiff] is likely posting on Storm Front (a white nationalist website) as the user WNLaw."  Plaintiff had already been offered the felony prosecutor job at the time these statements were made, had put earnest money on a house, had closed his law practice, and had made plans to permanently move to Victoria.  Although Plaintiff no longer seeks recovery on this claim, behavior of that nature is *precisely* what the jurisprudence surrounding defamation is designed to prevent.

    (b) Statements made by Defendant to Robert Karlseng, of Karlseng, LeBlanc, & Rich L.L.C. ("KLR") concerning Plaintiff's ongoing employment with

    KLR. Defendant sent the following statement concerning Plaintiff in a direct e-mail to his supervisor:

> " To whom can I report an employee who is responsible for creating a very hostile work environment with regards to open racism, posting death threats on social media, and claims to be a Nazi. The guy is literally threatening to MURDER people who get into disagreements with him!!! This is absolutely no joke and when I say the dude is a white supremacist / Nazi, that is what he really is. Plus, he has a criminal record for assaulting women! I thought that I would contact management before I go to Facebook and Twitter and blast this out all over the world. This guy has been working for you for a very long time and I am shocked that nothing has been done. #TimesUp #MeToo." ECF 40-1.

    This is false and defamatory content concerning Plaintiff combined with a a clear demand that Plaintiff be fired and a threat of retaliation if he isn't fired. Plaintiff seeks substantial recovery for this behavior on all three of his claims with damages sufficient to deter Defendant from ever again interfering with Plaintiff's private employment.

22. There is no legitimate dispute that Defendant owns, operates, administers, or otherwise controls content on the "BV Files" blog (www.viaviewfiles.net). On that blog, Defendant made the following statements concerning Plaintiff:

(a) "This man claims to be a Nazi but he has a criminal record for abusing women and he likes to file frivolous and vexatious LOLsuits. He is the attorney for Texas Title Company / Maverick Title of Texas. Robert Karlseng has given Van Dyke a great deal of money over the years and knows he has a Nazi / white supremacist on his payroll. How do his female employees and employees of color feel? How do the customers of Texas Title Company feel? And what is the State Bar of Texas doing." ECF 40-3. Plaintiff is not

now, nor has he ever been, a Nazi or a white supremacist. He has no criminal record for abusing women (or anyone else for that matter). Plaintiff has also not engaged in the professional misconduct described in this paragraph.

(b) "Who is the self-admitted white supremacist / Nazi on the payroll of Texas Title Company? Guess correctly and win a new car!!" Is it these two guys? (next to pictures of Plaintiff's two supervisors). How about these three people? Are any of them Nazis? (next to pictures of three of Plaintiff's co-workers). Maybe its one of these young ladies instead? (next to pictures of three different female co-workers of Plaintiff). So have you guessed who the Nazi / white supremacist is? It is this guy right here! (above a video of Plaintiff). ECF 40-3. Plaintiff is not now, nor has he ever been, a Nazi or a white supremacist.

(c) "A disbarment action is pending against Van Dyke for violations of several Disciplinary Rules of Professional Conduct." ECF 40-3. This is completely false, and in fact, there is no such thing as a "disbarment action" in Texas.

(d) "Do not do business with this man or his company. Robert Karlseng, owner Texas Title Company and paymaster to Nazis." ECF 40-3. This is a reference to Plaintiff as a Nazi and part of Defendant's successful efforts in compelling KLR to fire Plaintiff.

(e) "Texas Nazi Attorney Jason Van Dyke Is Also A Pedophile – Court Records Claim." (Title of the entire blog post). ECF 40-4. Plaintiff is not a pedophile.

(f) "Denton Attorney Jason Lee Van Dyke, in addition to being a Nazi drug addict, is clearly a mentally retarded person." ECF 40-4. Plaintiff is not a

Nazi, is not a drug addict, and is not mentally retarded.

(g) "The State Bar of Texas has decided to initiate disbarment proceedings against Van Dyke, with a petition soon to be filed in Denton County District Court." ECF 40-4. This is entirely false and imputes professional misconduct to Plaintiff that he did not commit.

(h) "Thanks to the miracle of electronic filing, we . . . can quickly and easily monitor the Texas e-filing system and federal PACER system for any sign that Van Dyke has been hired. Should that happen, we will (of course) make contact with these clients." ECF 40-4. It should be noted that, while this particular statement is neither false nor defamatory, it shows clear evidence of actual malice by Defendant and those acting in concert with him.

(i) "Just a few months ago, Van Dyke applied for admission to the Alaska State Bar. That application was rejected." ECF 40-4. Plaintiff had initially planned to move to Alaska following Defendants initial smear campaign against him with the Victoria County District Attorney, but voluntarily withdrew his application when his employment situation appeared to have stabilized in Texas.

(j) "So is Jason Van Dyke a Nazi or a white supremacist? Here is his profile on Stormfront." ECF 40-4. Plaintiff is not a Nazi or a white supremacist and he has never created an account or profile on the website known as Stormfront.

(k) "Does anyone here think that Christine is a big fan of Nazis or drug addicted crazy people who file $100 million LOLsuits". In this case, Defendant is referring to Plaintiff as a "Nazi" and "drug addicted crazy [person]". The

        name "Christine" is a reference to U.S. Magistrate Judge Christine Nowak, and her picture is included in his blog post. ECF 40-4.

    (l) "Who would be willing to represent a Nazi / white supremacist who openly advocates for the murder of minorities and members of the LGBT community?" ECF 40-4. This was a clear reference in Plaintiff and was part of the blog post about Alan Kramer Taggart, an attorney who is representing Plaintiff in unrelated matters. The post goes on to state that "even accused Nazi's need attorneys" and posts links to Mr. Taggart's resume and the address to one or more of his private residences.

**( Defendant's Speech Is Not Parody Or Satire As In *Hustler Magazine* )**

23. Defendant correctly cites the *Hustler Magazine* as an example of when an ad parody was held by the U.S. Supreme Court as protected speech. ECF 43, ¶ 26 – 27. Defendant has attempted to admit Plaintiff's own satirical writings as evidence against him in support of this motion. ECF 43-2, p. 70 – 79. These writings by Plaintiff, while certainly offensive, were satirical stories written by Plaintiff for *West Is The Best Magazine* about two of his harshest critics. In these stories, as well as the *Hustler Magazine* Campari advertisement, it was clear from the context that none of the allegations contained therein were meant to be taken seriously.

24. The case at bar is clearly different from the type of speech at issue in the *Hustler Magazine* case. A satirical story or advertisement is meant to lampoon a critic or some other figure in a manner that is not intended to be taken seriously. In this case, Defendant clearly intended for his words to be taken seriously. Although

his statements to the State Bar of Texas are not legally actionable, he initially accused Plaintiff of being a drug addict and suffering from mental disability in an official grievance proceeding. Specifically, he writes that Plaintiff is "a violent person suffering from very profound mental illness that self-medicates with illegal drugs." ECF 22-1. #8. These same claims are later repeated on his blog. See *supra* ¶ 22(f) and 22(k).

25. Although Plaintiff is suing Defendant for the statements made on his "BV Files" blog, his actions toward Plaintiff's former employer are the primary basis for this lawsuit. No reasonable person could possibly construe the electronic mail communications from Defendant, using his "Dean Anderson" pseudonym, as either satire or parody. They were libelous statements, combined both with threats and false and defamatory posts and Plaintiff's employer, that were clearly made for the sole purpose of causing the termination of Plaintiff's employment.

**( Defendant's Speech Is Not Merely Offensive Political Speech As In *Phelps* )**

26. In the *Phelps* case, the U.S. Supreme Court shielded the Westboro Baptist Church of Topeka Kansas from tort liability of intentional infliction of emotional distress for picketing the funeral of fallen soldiers with signs containing highly offensive language such as "God Hates Fags" and "Fags Doom Nations." ECF 43, ¶ 28. Once again, this case is highly distinguishable from Phelps because the statements made by Defendant were not designed merely to offend and were also not designed merely to bring his beliefs on certain political issues to light: they were completely false statements specifically designed to cause as much personal and financial harm to a specific person as possible.

27. The statements made by Defendant to Robert Karlseng, and the statements made on his blog, are neither parody nor satire in the tradition of *Hustler Magazine, Inc. v. Falwell*. ECF 43, ¶ 26 – 27. It is not political speech of the type protected by the court in *Snyder v. Phelps*. ECF 43, ¶ 28 – 29. They are statements of fact designed, by their very nature, to cause as much financial harm to Plaintiff as possible. A blog post criticizing Plaintiff for his association with the *Proud Boys,* or the Republican Party for that matter, is an example of constitutionally protected speech. A private e-mail to Plaintiff's direct supervisor referring to Plaintiff as a Nazi, a white supremacist, and a domestic abuser is not.

28. In this case, Defendant fulfilled the threat he made to Plaintiff's former employer by posting pictures of Plaintiff's supervisors and co-workers, together with the suggestion that they too are members of the Nazi party (in an obvious – and successful – effort to have Plaintiff fired) is not constitutionally protected speech. See ECF 40-3. He has repeated posted assertions on his BV Files blog that Plaintiff is a drug addict, that he is a pedophile, that he has committed professional misconduct against him, and that he has assaulted women. While such assertions may be legally privileged when made in judicial proceedings, they lose their privileged status once they are repeated to the public outside the context of those proceedings.

### ( Plaintiff's Claims Must Be Allowed To Proceed )

29. Which of Plaintiff's claims should be permitted to proceed? *All of them.*

30. It is abundantly clear from the proof provided in Plaintiff's initial response to Defendant's TCPA motion that Defendant made numerous statements of fact

concerning Plaintiff. These are addressed in further detail above. *See supra* ¶ 22. Plaintiff is not a public figure and it can never be permissible comment to falsely refer to Plaintiff as a Nazi, a white supremacist, a pedophile, a drug addict, and an abuser of women. If these statements are *not* legally actionable as defamation, Plaintiff would suggest to this Court that defamation torts no longer exist.

31. The same is true for Defendant's invasion of Plaintiff's privacy. Plaintiff was employed as a private attorney with a private entity. Defendant willfully and intentionally interfered with Plaintiff's employment in a manner that was clearly calculated to have him fired. It is well settled law that intrusion on seclusion includes action any type of intrusion into a Plaintiff's private affairs. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). A physical intrusion is not required. *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex App. -- Tyler 2006, no pet.).

32. Even if Plaintiff cannot recover on a theory of intrusion on seclusion for Defendant's interference with his private employment, he may still recover for tortious interference with a contract. It is clear from the evidence that Defendant and "Dean Anderson" are one and the same person and that Defendant is responsible for the content of "BV Files". This has been made even more apparent since the filing of this lawsuit. *See generally* ECF 46. Plaintiff has submitted far more evidence than what is sufficient to make a prima facie case.

### ( Defendant's Affirmative Defenses )

33. Plaintiff" first affirmative defense is failure to comply with the defamation mitigation act. Despite the fact that it is clear from Defendant's behavior that he has no intent to stop libeling Plaintiff or interfering with his personal life,

Defendant's remedy under the act is clear: abatement of this suit as provided by Tex. Civ. Prac. & Rem. Code § 73.062 - not dismissal. Of course, in this case abatement would be a waste of time because Plaintiff's remaining claims and incapable of being severed from his defamation claim, and Defendant has already made it very clear that he has no intention of stopping his harassment of Plaintiff.

34. Defendant's judicial communications privilege is inapplicable in the case at bar because Defendant is not being sued for any statements made in the context of judicial proceedings. He is only being sued for statements made to Plaintiff's former employer and made on his "BV Files" blog.

35. Plaintiff is not libel proof, as evidenced by the fact that he was employed by a law firm until such a time that Defendant chose to interfere with his employment. Additionally, the articles referenced by Defendant primarily reference Plaintiff's association with the *Proud Boys*. While Plaintiff may be libel proof with respect to his association with his fraternity, he is certainly not libel-proof with respect to the allegations upon which Defendant has sued. While affirmatively proving that someone is a "Nazi" or a "white supremacist" may be difficult in the politically charged climate in which we live, convictions for criminal offenses involving drugs, domestic abuse, and pedophilia are certainly capable of being proven and Plaintiff is not libel-proof with respect to allegations of that nature.

### D.     CONCLUSION

36. Plaintiff's lawsuit is far from baseless. If anyone has been harassed, it has been Plaintiff - who has been subject to relentless and ongoing stalking activity by a sociopath for over fourteen months. Defendant is not immune from false and

defamatory statements, combined with threats, that were sent to Plaintiff's former employer for the sole purpose of having him fired. While he is immune from statements made in the context of a judicial proceeding, Defendant lost his immunity for those statements when he published them on his "BV Files" blog and sent them to other individuals (including, as of late, Plaintiff's clients). Defendant has absolutely no constitutional right to stalk Plaintiff and prevent him from practicing law. This stalking behavior is exactly why Defendant has been sued - and for no other reason.

37. The TCPA is inapplicable in federal court. Defendant's motion should be denied on that basis alone. However, even if the TCPA is applicable in federal court, Defendant's motion should be denied because the statements for which Defendant is being sued are not matters of public concern. Even if they were matters of public concern, Plaintiff can make a *prima facie* case for all of the elements of his claims. Defendant cannot make a *prima facie* case for any of this affirmative defenses.

### E. PRAYER FOR RELIEF

38. Plaintiff prays that this Court enter an order denying Defendant's motion to dismiss under the TCPA.

        Respectfully submitted,

        /s/ Jason Lee Van Dyke
        Jason L. Van Dyke
        State Bar No. 24057426
        108 Durango Drive
        Crossroads, TX 76227
        P – (469) 964-5346
        F – (972) 421-1830
        Email: jason@vandykelawfirm.com

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE