IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON LEE VAN DYKE**, | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THOMAS CHRISTOPHER** | § | **NO. 4:18-CV-247-ALM** |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a BV FILES, VIA** | § | |
| **VIEW FILES, L.L.C., and VIAVIEW** | § | |
| **FILES,** | § | |
| *Defendant* | § | |

**DEFENDANT THOMAS RETZLAFF'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**[1]

Defendant Thomas Retzlaff files his response to plaintiff's motion for a
preliminary injunction.

## I. INTRODUCTION

1.      Plaintiff is licensed attorney Jason Lee Van Dyke, representing
himself pro se; defendants are Thomas Christopher Retzlaff, a/k/a Dean Anderson,
d/b/a BV Files, Via View Files, L.L.C., and ViaView Files.[2]

2.      Plaintiff filed this case in the 431st Texas State District Court.
Retzlaff removed to this Court on April 10, 2018, pursuant to 28 U.S.C. § 1446(a)
because there is complete diversity between the parties. *See* 28 U.S.C. § 1322(a).

---

[1]      Doc. 47.
[2]      The "a/k/a" and "d/b/a" designations are plaintiff's.  No evidence has ever been
proffered to establish that these defendants are alter egos of each other.  Retzlaff is the only
defendant who has appeared.  No other defendant appears to have been served.

## II. FACTS

3.     Originally brought as a suit for Retzlaff's allegedly libelous statements to the State Bar of Texas in an allegedly "frivolous" grievance (Doc. 7, ¶ 5.3), plaintiff's second amended complaint (Doc. 7) altered the basis of this suit to the statements plaintiff claims to have been made in correspondence to a state court judge or on a "blog" allegedly controlled by Retzlaff.   The statements themselves are not provided in the complaint, only plaintiff's *characterizations* of the statements as having included the following "statements of fact:"

(i)     plaintiff is a Nazi;

(ii)    plaintiff is a pedophile;

(iii)   plaintiff is a drug addict;

(iv)   plaintiff has a criminal record for abusing women;

(v)    plaintiff has committed professional conduct against Retzlaff.

(Doc. 7, ¶ 6.2).  Based on these claimed statements, plaintiff sues for:

(i)     libel per se;

(ii)    intrusion upon seclusion; and

(iii)   tortious interference with existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC);

(iv)   internal infliction of emotional distress.

 (Doc. 7, ¶ 6.2).  Plaintiff has now abandoned his claims of tortious interference with an alleged prospective contract with the Victoria County District Attorney's Office and all claims based on statements in Retzlaff's grievance.  (Doc. 40, ¶ 16.)

4.     Although Retzlaff agreed to waive service of the summons and complaint, plaintiff never served the required waiver forms.  Retzlaff was never served.  On May 21, 2018, Retzlaff abandoned his challenge to the Court's personal jurisdiction over him and answered in this case without ever having been served.

5.     On April 10, 2018, Retzlaff (acting pro se) filed his motion to dismiss all of plaintiff's claims under the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001, *et seq*., the Texas Citizens Participation Act ("TCPA").  (Doc. 5.)   On May 21, 2018, Retzlaff (through the undersigned counsel) filed his first amended TCPA motion to dismiss.  (Doc. 43.)  On May 22, 2018, Retzlaff filed his second amended motion to dismiss plaintiff's claims under the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001, *et seq*., the Texas Citizens Participation Act ("TCPA").  (Doc. 44.)  On June 11, 2018, the parties jointly moved for a clarifying order regarding the applicability of the TCPA's discovery suspension in federal court.  (Doc. 55.)  On July 3, 2018, Retzlaff filed his motion to set a hearing on his TCPA motion.  (Doc. 59.)

6.     Retzlaff's second amended TCPA motion to dismiss remains pending, as do the two related motions (Doc. 55 and Doc. 59) filed since Retzlaff's TCPA motion (Doc. 44) was filed.

7.     Plaintiff now seeks injunctive relief to prevent the various named defendants from speaking to the public "concerning plaintiff" through "any kind of communications medium."  (Doc. 46, ¶ 13.)

### III. ARGUMENT & AUTHORITIES

7.      The purpose of a preliminary injunction is to preserve the status quo pending a final determination of the merits.  *University of Tex. v. Camenisch*, 451 U.S.  390 395 (1981).  A preliminary injunction is "an extraordinary remedy that does not issue as a matter of right."  *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 204 (Tex. 2002).  As briefed below, there are at least three problems with the preliminary injunction plaintiff seeks that prevent the Court from granting plaintiff his requested relief.

### A. Plaintiff Has Failed to Join All Required Parties

8.      Before the Court can grant preliminary injunctive relief, the plaintiff must join all required parties under FED. R. CIV. P. 19.  *See Klaus v. Hi-Shear Corp*., 528 F.2d 225, 234-35 (9th Cir. 1975).  According to plaintiff's second amended complaint, one of the defendants is a limited liability company named "Via View Files, L.L.C.," through whose blog "BV Files" Retzlaff's allegedly "tortious" speech is uttered.  Via View Files, L.L.C., has no connection to Retzlaff.  **Exhibit 1**.  Via View Files, L.L.C., does not appear ever to have been served in the suit, but has a legally protected interest in its First Amendment right of free speech.  Plaintiff cannot under any circumstances obtain injunctive relief curtailing Via View Files, L.L.C.'s First Amendment rights in the absence of Via View Files, L.L.C., from the suit.  *Dawavendewa v. Salt River Project Agric. Imprv. & Power Dist*., 276 F.3d 1150, 1155 (9th Cir. 2002).

## B. Equity Will Not Restrain Even *Defamatory* Speech

9.      A hallmark of free speech under both the U.S. and Texas Constitutions is the maxim that prior restraints are a heavily disfavored infringement of that right.  ***Kinney v. Barnes***, 443 S.W.3d 87, 87 (Tex. 2014).

> **So great is our reticence to condone prior restraints that we refuse to allow even unprotected speech to be banned if restraining such speech would also chill a substantial amount of protected speech.**

*Id*.  Enshrined in the Texas Constitution since 1836,[3] the fundamental "liberty to speak, write, or publish" one's opinions recognizes the "transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions, and the happiness of individual men."  TEX. CONST. art. I, § 8 interp. commentary (West 2007).

10.      The Texas Supreme Court has long held that—while abuse of the right to speak subjects the speaker to proper penalties—"'pre-speech sanctions' are presumptively unconstitutional."  ***Kinney***, 443 S.W.3d at 87, quoting ***Davenport v. Garcia***, 834 S.W.2d 4, 9 (Tex. 1992).  The First Amendment of the U.S. Constitution is also suspicious of prior restraints, which include judicial orders "forbidding certain communications" that are "issued in advance of the time that such communications are to occur."  ***Alexander v. United States***, 509 U.S. 544, 550 (1993) (citation and internal quotation marks omitted).  The U.S. Supreme Court has long recognized that "prior restraints on speech and

---

[3]      *See* TEX. CONST. art. I, § 8.  The provision as currently worded dates back only to 1876, but a similar provision was part of the 1836 Texas Independence Constitution.  ***Davenport v. Garcia***, 834 S.W.2d 4, 7-8 (Tex. 1992).

publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also id*. As such, they "bear[] a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). This cornerstone of First Amendment protections has been reaffirmed time and again by the U.S. Supreme Court,[4] the Texas Supreme Court,[5] Texas courts of appeals,[6] legal treatises,[7] and even popular culture.[8] As the Texas Supreme Court reaffirmed in 2014:

> **We have squarely held that a temporary injunction prohibiting allegedly defamatory speech is an unconstitutional prior restraint….**

*Kinney*, 443 S.W.3d at 87.

11. "The traditional rule of Anglo-American law is that equity has no jurisdiction to enjoin defamation." Chemerinsky, 57 SYRACUSE L. REV. at 167 (explaining that the rule dates back to eighteenth-century England and was

---

[4]      *See, e.g., Stuart*, 427 U.S. at 561 ("[I]t is … clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

[5]      *Davenport*, 834 S.W.2d at 9; *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (per curiam).

[6]      *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.) ("[P]rior restraints on speech are presumptively unconstitutional."); *San Antonio Express-News v. Roman*, 861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding) (per curiam).

[7]      *See* Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 173 (2007) ("[N]ever in the 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case…"); A. Siegel, *Injunctions for Defamation, Juries, and the Clarifying Lens of 1868*, 56 BUFF. L. REV. 655, 656 (2008).

[8]      THE BIG LEBOWSKI (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint.").

adopted "with remarkable uniformity" by nineteenth- and twentieth-century American courts).  United States federal courts also so hold.

> **[T]he maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law.**

*See **Kramer v. Thompson***, 947 F.2d 666, 677 (3d Cir. 1991).  The Texas Supreme Court's treatment of the temporary injunctions in ***Ex parte Tucker***[9] and ***Hajek***[10] and its decision in ***Kinney*** leave no doubt that Texas law is in accord with the traditional rule with regard to future speech.

12.    Thus far, plaintiff's only response to Retzlaff's assertion of a First Amendment right to publicly speak on matters "concerning" plaintiff is plaintiff's declaration that such a concept is "patently absurd."  (Doc. 64, ¶ 2.)  This is so, says plaintiff, because plaintiff characterizes the speech as "felonious," "harassing," and "damaging" to plaintiff's law practice.  This is not enough to carve out a "Van Dyke Exception" to the longstanding constitutional precept that the First Amendment does not permit content-based prior restraints on speech. The Court cannot properly grant plaintiff's requested preliminary injunction to silence defendants from "communicating" in any way that plaintiff might subjectively regard as offensive.

---

[9]    220 S.W. 75, 76 (Tex. 1920).
[10]   647 S.W.2d 253, 255 (Tex. 1983).

## C. The Requested Injunction Sought is Insufficiently Specific

13.     A valid order for preliminary injunction must make certain specific statements.  The order must specifically state what is restrained.  FED. R. CIV. P. 65(d)(1)(C); *Hornbeck Offshore Servs. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013); *see Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).   When determining whether the order is sufficiently specific, courts look at whether the parties understand their obligations under the order; the degree of specificity required in the order depends on the nature of the subject matter.  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203-04 (11th Cir. 2001).  An ordinary person reading the order should be able to determine exactly what conduct is prohibited. *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1047-48 (9th Cir. 2013).

14.     Plaintiff's proposed injunction would restrain Retzlaff from "having any contact" (whatever that means) though "*any type of communications medium*," with plaintiff as well as his unnamed "co-workers or employees" and unnamed "members of plaintiff's family."  (Doc. 46-8.)  Retzlaff would also be restrained from "having any contact" through "*any type of communications medium*," with "any person or entity with whom plaintiff has an attorney-client relationship, their relatives, or their employers."  (*Id.*)  No individual in any of these broad categories is named, either in plaintiff's motion, in any supporting evidence, or in the proposed order.  How Retzlaff would be able to determine what persons Retzlaff is judicially restrained from "communicating" with is never explained.  Plaintiff's proposed injunction is impermissibly vague.

## V. PRAYER

15.     For these reasons, defendant Thomas Retzlaff prays the Court to deny injunctive relief to plaintiff in all things, and for such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

# HANSZEN✦LAPORTE

By: _____ /s/ Jeffrey L. Dorrell _____
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
**WM CARL WILSON**
State Bar No. 24090472
cwilson@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on _____7-20____, 2018, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

> Mr. Jason Lee Van Dyke
> Plaintiff, Pro Se
> 108 Durango Drive
> Crossroads, Texas 76227
> Telephone: 469-964-5346
> FAX: 972-421-1830
> jason@vandykelawfirm.com

_____ /s/ Jeffrey L. Dorrell _____
**JEFFREY L. DORRELL**