IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | |
|---|---|
| **JASON LEE VAN DYKE**, § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | NO. 4:18-CV-247-ALM |
| **THOMAS CHRISTOPHER** § | |
| **RETZLAFF, a/k/a DEAN** § | |
| **ANDERSON, d/b/a VIA VIEW FILES,** § | |
| **L.L.C., and VIAVIEW FILES,** § | |
| *Defendant* § | |

**DEFENDANT TOM RETZLAFF'S UNOPPOSED EMERGENCY MOTION TO STAY PROCEEDINGS PENDING APPEAL**

> The Court should stay all proceedings pending the resolution of Retzlaff's appeal of the Court's memorandum opinion and order (Doc. 71) holding that the Texas Citizens Participation Act does not apply in federal court under the *Erie* doctrine.

## I. INTRODUCTION

1. Plaintiff is licensed attorney Jason Lee Van Dyke, representing himself *pro se*; defendants are Tom Retzlaff, "a/k/a Dean Anderson, d/b/a Via View Files, L.L.C., and ViaView Files."

2. On March 28, 2018, plaintiff filed this $100,000,000 suit in the 431st State District Court of Texas, obtaining an *ex parte* restraining order constituting an unconstitutional, content-based prior restraint on speech.

3. Trial is set for August 2019.

## II. FACTS PERTAINING TO THIS MOTION

### A. The Genesis of Plaintiff's $100,000,000.00 Libel Suit

4. Plaintiff judicially admits he filed the instant suit in response to Retzlaff's filing a grievance against him with the State Bar of Texas. (Doc. 7, ¶ 5.3.) Even before this suit was filed, plaintiff openly bragged that he had sued "everyone who has ever filed a formal grievance against [him] with the State Bar:"

> Jason Lee Van Dyke <jason@vandykelawfirm.com>   Tue, Nov 12, 2013 at 5:02 PM
> To: Les Holtzman <57poker.pro@gmail.com>
>
> You stated that I filed a harmful and frivolous lawsuit. That is enough for me. . I will warn you: I have sued everyone who has ever filed a formal grievance against me with the State Bar. If you file some sort of groundless grievance with the State Bar I will make your life a living hell unlike anything you could imagine. I don't take such threats lightly. I will also warn you about that link you sent me: That information is false and defamatory. Any republication of the same by you or anyone under control will get you sued. I'd strongly advise you not to test me.

It appears plaintiff was continuing his stated policy when he filed the instant suit.

5. Plaintiff later narrowed his suit to alleged Retzlaff statements in a letter to Hon. Jonathan Bailey of the 431st District Court or on a "blog" Retzlaff allegedly owns. Plaintiff never identifies the allegedly defamatory statements themselves, but *characterizes* them as "statements of fact" that:

    (i)    plaintiff is a Nazi;

    (ii)    plaintiff is a pedophile;

    (iii)    plaintiff is a drug addict;

    (iv)    plaintiff has a criminal record for abusing women;

    (v)    plaintiff has committed professional conduct against Retzlaff.

(Doc. 7, ¶ 6.2). Based on plaintiff's own characterizations, plaintiff sues for:

    (i)     libel per se;

    (ii)    intrusion upon seclusion; and

    (iii)   tortious interference with existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC);

    (iv)   intentional infliction of emotion[al] distress. (Doc. 7, ¶ 6.11.)

(Doc. 7, ¶ 6.2). As plaintiff's pleadings evolved, plaintiff eventually abandoned his claims of tortious interference with a prospective contract and of libel based on Retzlaff's State Bar grievance. (Doc. 40, ¶ 16.)

    5.    In a March 30, 2018, letter to Judge Bailey (Doc. 40-4, p. 34-38), Retzlaff wrote, "Jason Lee Van Dyke is a Nazi, racist piece of human shit who has no business being a lawyer." Even if not privileged, Retzlaff is entitled to caustically express his *opinion* that plaintiff is "a person with extreme racist or authoritarian views," or "a person who seeks to impose his views on others in a very autocratic or inflexible way"—a common usage of the word "Nazi:"

> Nazi | ˈnätsē |
> noun (plural **Nazis**)
> - *historical* a member of the National Socialist German Workers' Party.
> - *derogatory* a person with extreme racist or authoritarian views.
> - a person who seeks to impose his views on others in a very autocratic or inflexible way: *I learned to be more open and not such a Nazi in the studio*.

*See, e.g.*, Oxford University Press, *New Oxford American Dictionary*, 2010. Plaintiff admits membership in "The Proud Boys," an organization the Southern Poverty Leadership Center has designated a "hate group." Plaintiff often expresses his extreme views on social media sites in racist and authoritarian ways.

6.     In the same March 30, 2018, letter to Judge Bailey, Retzlaff wrote, "No doubt Van Dyke is a pedophile, too.  He has that look about him."  Even if not privileged, Retzlaff is also entitled to hold—and to express—his *opinion* that plaintiff has the "look" of a pedophile (whatever that is).  The other statements plaintiff sues upon are also either true or are nonactionable expressions of opinion.

7.     Retzlaff's State Bar complaint and other criticism were precipitated by Van Dyke's well-documented history of energetically projecting violent, racist threats such as the following onto a planet-wide Internet audience:



As seen above, plaintiff does this unabashedly over his own name and personal photograph—even calling attention to the fact that plaintiff is a licensed attorney.

8. Attorneys obviously have the same First Amendment right as anyone else to express controversial, offensive opinions, but a lawyer who (i) actively seeks publicity for such opinions; and (ii) seeks employment as a felony prosecutor in a district attorney's office—as plaintiff did—becomes a limited-purpose public figure and makes his opinions "fair game" for harsh criticism.[1]

9. Relevant to the case at bar, after Victoria County DA Stephen Tyler rescinded his job offer in 2017, plaintiff sued Tyler and gave several public interviews to news media discussing the public opinions that led to rescission of the DA's offer.[2] Plaintiff claimed he lost his Victoria County opportunity because "someone ran their mouth." *Id*. Plaintiff said he sued to "find out who it is and what they said."[3] *Id*. Tyler noted "that there is plenty of information [about plaintiff] publicly available." *Id*. At least since 2007, reporting has described plaintiff as "a neo-Confederate lawyer." *Id*. Plaintiff denies he is a public figure and has never brought forth evidence of Retzlaff's malice.

---

[1] ***Kahl v. Bureau of Nat'l Affairs, Inc***.,[1] 857 F.3d 106, 115 (D.C. Cir. 2017)
[2] *See, e.g., Victoria Gazette*, April 22, 2017, "DA Faces Employment Lawsuit," https://www.victoriaadvocate.com/news/business/da-faces-employment-lawsuit/article_8f65ecc6-0652-5832-9353-3449f6a5676a.html, last accessed July 29, 2018.
[3] Plaintiff claims Retzlaff's communications to Tyler caused rescission of the job offer. Plaintiff's First Amended Petition (filed in state court on April 4, 2018), ¶¶ 4.1-4.7.

## B. Procedural History

10. Plaintiff appears never to have served any defendant with the summons and complaint. Only Retzlaff has appeared and answered in this cause.

11. Retzlaff moved to dismiss plaintiff's suit under TEX. CIV. PRAC. & REM. CODE § 27.001, the Texas Citizens Participation Act ("TCPA"), because (i) the libel claim is not based on objectively verifiable statements of fact; (ii) the "intrusion upon seclusion" claim is based only on writings; (iii) the "tortious interference" claim is based only on inducing one to do that which he had a legal right to do; (iv) IIED is not available; and (v) plaintiff did not comply with TEX. CIV. PRAC. & REM. CODE § 73.055(a), the Defamation Mitigation Act.[4]

12. On July 24, 2018, the Court issued a memorandum opinion and order denying Retzlaff's TCPA motion on the ground that the TCPA does not apply in federal court under the *Erie* doctrine.[5] (Doc. 71.)

13. On July 27, 2018, Retzlaff filed his notice of appeal.

14. A preliminary injunction hearing is set on **August 9, 2018**. Plaintiff has served written discovery requests and issued subpoenas duces tecum to nonparties. Plaintiff seeks depositions of Retzlaff, his daughter Britany, and Neal Rauhauser—none of whom lives in Texas. Even if the Fifth Circuit expedites the appeal, a decision is unlikely to be reached before hearings, motion practice, depositions, written discovery, and trial have all occurred.

---

[4] See *Tubbs v. Nicol*, 675 Fed.App'x. 437, 439 (5th Cir. 2017).
[5] See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### III. ARGUMENT & AUTHORITIES

15. A motion to stay proceedings pending an appeal ordinarily should first be brought in the district court. FED. R. APP. P. 8(a)(1)(A). Because of the currently scheduled **August 9, 2018**, evidentiary hearing on plaintiff's motion for preliminary injunction, Retzlaff respectfully asks the Court to rule on the instant motion on an emergency basis.

16. "[T]he decision to grant a stay, like the decision to grant an evidentiary hearing, is 'generally left to the sound discretion of district courts.'" *Ryan v. Gonzales*, 586 U.S. 57, 74 (2013), quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A trial court has broad discretion to stay proceedings to further judicial economy. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *Id.*, at 254.

17. In exercising such discretion, the Court should "'weigh competing interests and maintain an even balance' between the court's interest in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012), quoting *Landis*, 299 U.S. at 254-55. A stay would promote judicial economy and conserve the resources of both parties.

18. Finding the TCPA inapplicable in federal court in its memorandum opinion and order of July 24, 2018, (Doc. 71), this Court appears to have

overlooked the Fifth Circuit's holding that the *Louisiana* anti-SLAPP statute is applicable in federal court under the *Erie* doctrine. ***Henry v. Lake Charles Am. Press, LLC***, 566 F.3d 164, 168-69 (5th Cir. 2009). There, the court noted:

> **The purpose of [Louisiana's anti-SLAPP statute] is to free defendants from the burden and expense of litigation that has the purpose or effect of chilling the exercise of First Amendment rights. [The anti-SLAPP statute] thus provides a right not to stand trial, as avoiding the costs of trial is the very purpose of the statute.… [I]t … provide[s] defendants the right not to bear the costs of fighting a meritless defamation claim. <u>If [an anti-SLAPP] motion is erroneously denied and unappealable, then the case proceeds to trial and this right is effectively destroyed.</u>**

*Henry*, 566 F.3d at 178. There is no reason that *Henry* should not apply equally to the TCPA. The Court never mentions *Henry* in its July 24, 2018, opinion.

19. Further, this Court erred in articulating its *Erie* analysis this way:

> **First, the Court must determine whether the statute is procedural or substantive. State procedural statutes are not applied in federal courts. *Erie*, 304 U.S. at 78. Second, the Court determines whether the state substantive law conflicts with federal procedural rules; if so, the federal rule applies. [Citation omitted.]**

(Doc. 71.) But "that is no longer the initial question." ***Godin v. Schencks***, 629 F.3d 79, 86 (1st Cir. 2010) (finding anti-SLAPP statute applied in federal court).

> **In getting at the potential rub in the relationship between a Federal Rule of Procedure and the state law, courts now ask if the federal rule is "sufficiently broad to control the issue before the court**."

***Godin***, 629 F.3d at 86, quoting ***Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co***., 130 S.Ct. 1431, 1451 (2010) (Stevens, J. concurring). Joined in relevant part by four other justices, Justice Stevens held that whether the federal rule is valid depends not on the federal rule alone, but also on the nature of the state rule

it seeks to displace. *Id*., at 1452-53. The critical question is *not* "whether the state law at issue takes the form of what is traditionally described as substantive or procedural," but rather "<u>whether the state law actually is part of a State's framework of substantive rights or remedies</u>." *Id*., at 1449 [emphasis added].

20. Justice Stevens also noted that this inquiry "may well bleed back" into the inquiry of whether a federal rule is broad enough to control the issue before the court. *Id*. at 1452. This is so because a federal rule "cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term <u>but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right</u>." *Id*. [Emphasis added.] This is the precise issue with the TCPA. To avoid such a result, the concurrence concludes, "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." *Id*.

21. When the Supreme Court's **Shady Grove** jurisprudence is considered, it is easy to see why the Fifth Circuit in **Henry** and the First Circuit in **Godin** are not the only two federal appeals courts to decide that state anti-SLAPP statutes apply in federal court under the ***Erie*** doctrine. At least four other federal appellate courts have similarly held. See **Hilton v. Hallmark Cards**, 580 F.3d 874, 880 (9th Cir. 2009) (California anti-SLAPP statute applies in federal court); **Thomas v. Fry's Elecs., Inc**., 400 F.3d 1206, 1207 (9th Cir. 2005); **Batzel v. Smith**, 333 F.3d 1018, 1024-26 (9th Cir. 2003); **United States ex. rel. Newsham v.**

***Lockheed Missiles & Space Co***., 190 F.3d 963, 972-73 (9th Cir. 1999). And at least three Texas district courts have specifically applied the TCPA in federal court. *See **Khalil v. Memorial Hermann Health Sys***., 2017 WL 5068157, at *5 (S.D.Tex. Oct. 30, 2017); (finding Fifth Circuit's application of Louisiana anti-SLAPP statute in ***Henry*** persuasive); ***Banik v. Tamez***, 2017 WL 1228498, at *2 (S.D.Tex. April 4, 2017) ("state anti-SLAPP statutes have been entertained [in the Fifth Circuit] on the ground that they constitute substantive law"); *see also* ***Williams v. Cordillera Communications***, 2014 WL 2611746, at *1 (S.D.Tex. 2014) (finding TCPA enforceable in federal courts sitting in diversity).

22. If this Court was wrong not to follow the reasoning of the many other courts finding anti-SLAPP statutes applicable in federal court, then requiring Retlaff to participate in hearings, discovery, motion practice, and trial while his appeal of the Court's July 24, 2018, ruling to the Fifth Circuit is pending will destroy the very right Retzlaff is asking the Fifth Circuit to preserve—his right not to "bear the costs of fighting a meritless defamation claim." ***Henry***, 566 F.3d at 178.

23. The Court should stay all proceedings and discovery to allow the Fifth Circuit to determine whether the TCPA applies in federal court before forcing Retzlaff to expend extensive resources to defend plaintiff's meritless defamation case that would never have survived a TCPA review.

## IV. CONCLUSION

24. Forcing Retlaff to participate in evidentiary hearings, out-of-state depositions, discovery, motion practice, and trial while his appeal of the Court's July 24, 2018, ruling to the Fifth Circuit is pending will destroy the very right Retzlaff is asking the Fifth Circuit to preserve—his right *not* to "bear the costs of fighting a meritless defamation claim."

## V. PRAYER

25. For these reasons, Retzlaff prays that the Court stay all proceedings in this Court until Retzlaff's appeal to the U.S. Court of Appeals for the Fifth Circuit has been determined. Retzlaff prays the Court grant him such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

HANSZEN✦LAPORTE

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
State Bar No. 00787386
Federal ID # 18465
jdorrell@hanszenlaporte.com
**ANTHONY L. LAPORTE**
State Bar No. 00787876
alaporte@hanszenlaporte.com
**WM CARL WILSON**
State Bar No. 24090472
cwilson@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT TOM RETZLAFF**

## CERTIFICATE OF CONFERENCE

I certify that on July 25, 2018, I conferred with plaintiff Jason Van Dyke regarding the foregoing motion to stay all proceedings pending the outcome of Retzlaff's appeal to the U.S. Court of Appeals for the Fifth Circuit. Mr. Van Dyke is NOT opposed to this motion to stay proceedings because he believes a stay would serve the interests of judicial economy and conserve the parties' resources. Mr. Van Dyke remains opposed to the Court's granting any relief that Retzlaff seeks in his TCPA motion to dismiss.

Mr. Jason Lee Van Dyke
Plaintiff, Pro Se
108 Durango Drive
Crossroads, Texas 76227
Telephone: 469-964-5346
FAX: 972-421-1830
jason@vandykelawfirm.com

　　　　　/s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**

## CERTIFICATE OF SERVICE

I certify that on \_\_\_\_\_7-30\_\_\_\_, 2018, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

 Mr. Jason Lee Van Dyke
 Plaintiff, Pro Se
 108 Durango Drive
 Crossroads, Texas 76227
 Telephone: 469-964-5346
 FAX: 972-421-1830
 jason@vandykelawfirm.com


   /s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**