**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | Case No. 4:18cv247 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF | § | |
| a/k/a Dean Anderson d/b/a BV Files, Via | § | |
| View Files L.L.C., and ViaView Files | § | |
|     Defendant | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

### I. SUMMARY OF CLAIMS

1.1 Plaintiff bring this claim to put an end to Defendant's ongoing stalking and harassment of Plaintiff which has persisted since March of 2017. Plaintiff has sought numerous legal remedies to put an end to this stalking of him and members of his family/household by Defendant. Plaintiff brings this lawsuit to obtain substantial damages to compensate him for Defendants ongoing conduct against him, to obtain additional damages sufficient to severely punish Defendant and deter him continuing to engage in this conduct, and an injunction (enforceable by criminal contempt proceedings) to end Defendant's criminal stalking of Plaintiff once and for all

### II. PARTIES

2.1 Plaintiff, Jason Lee Van Dyke, ("Van Dyke" or "Plaintiff"), an individual, is a resident of Wise County, Texas whose address is PO Box 2618, Decatur, TX 76234. However, at the time this lawsuit was originally brought, Plaintiff was a resident of Denton County, Texas who had his principal place of business in Collin County, Texas.

2.2 Defendant, Thomas Christopher Retzlaff a/k/a Dean Anderson d/b/a ViaView Files LLC,

BV Files, and ViaView Files ("Retzlaff" or "Defendant"), an individual, may be served with process at PO Box 46424, Phoenix AZ 85063

### III. JURISDICTION AND VENUE

#### ( Jurisdiction )

3.1 This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because the suit it between citizens of different U.S. states and the amount in controversy exceeds $75,000, excluding interest and costs.

3.2 Defendant has waived his objection to personal jurisdiction by filing a document sufficient to constitute an answer in the 431st District Court in and for Denton County, Texas prior to the removal of this case to federal court and prior to filing a challenge to personal jurisdiction in that Court. See *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010). The Texas Supreme Court has held that a Defendant who timely files a pro se answer by a signed letter that identifies the parties, the case, and the defendant's current address, has sufficiently appeared by answer and deserves notice of any subsequent proceedings in the case. *Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex. 1992). The profane letters filed by Defendant in state court were enough to constitute an "answer" under Rule 83 of the Texas Rules of Civil Procedure.

3.3 Defendant has, in any case, waived service of process in this proceeding by participating in the underlying litigation and requesting relief from this Court in the form of a frivolous motion under the *Texas Citizen's Participation Act*.

#### ( Venue )

3.4 Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Specifically,

Plaintiff was formerly an attorney licensed to practice law in this state and who regularly practices law in this district.

3.5 Plaintiff lost his job at Karlseng, LeBlanc & Rich L.L.C. ("KLR"), a law firm with its principal place of business located in this district, as a result of communications from Defendant that were directed to KLR in this district.

3.6 Since the date of filing the second amended complaint in this lawsuit and this third amended complaint, Defendant has continued to criminally stalk Plaintiff and commit intentional torts against him in an ongoing and constant manner.

### IV. CONDITIONS PRECEDENT

4.1 All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

### V. FACTS

5.1 Plaintiff was formerly an attorney licensed to practice law in the State of Texas who represents both individuals and small-to-medium sized businesses in a variety of matters which include, but are not limited to, criminal defense, civil litigation, family law, and consumer law. Plaintiff is no longer an attorney and, due to the conduct of Defendant, has no intention of returning to the practice of law until such a time as Defendant's behavior against him is neutralized either by an injunction from or another Court (enforceable by criminal contempt), or the confinement of Defendant to a correctional institution.

5.2 Plaintiff was, until March 28, 2018, employed by KLR for the purpose of investigating claims and litigating cases on behalf of Maverick Title of Texas L.L.C. d/b/a Texas Title ("Texas Title").

5.3 Retzlaff is a convicted felon and a vexatious litigant. A copy of the order declaring

Retzlaff a vexatious litigant is attached hereto as Exhibit "A" and incorporated by reference herein. A copy of Retzlaff's criminal history in Texas is attached hereto as Exhibit "B" and incorporated by reference herein.

### ( Original Facts Relevant to This Lawsuit )

5.4  On or around December 20, 2017, Retzlaff filed a frivolous grievance against Plaintiff with the State Bar of Texas.

5.5  The grievance was initially dismissed by the State Bar of Texas as an inquiry.

5.6  Defendant appealed this decision to the Board of Disciplinary Appeals (BODA), which reversed this determination on or around March 1, 2018.

5.7  On or around March 8, 2018, the website known as "BV Files", which can be located at www.viaviewfiles.net ("BV Files"), posted a copy of the letter sent to Defendant from BODA.

5.8  As matters of this nature before the State Bar of Texas and BODA are confidential, it stands to reason that the person responsible for the content of BV Files is, in fact, Defendant.

5.9  There is additional circumstantial evidence that Defendant is responsible for the content of BV Files. Specifically, the website contains numerous personal photographs of Defendant and copies of pleadings and papers from court proceedings involving Defendant. The posting of such pleadings and papers are typically made on the same date that they are filed with the court (such was the case with the notice of removal in this proceeding).

5.10  Between March 25, 2018 and April 11, 2018, Defendant made the following statements of fact concerning Plaintiff:

(a) Plaintiff is a Nazi;

(b) Plaintiff is a pedophile;

(c) Plaintiff is a drug addict; and

(d) Plaintiff has a criminal record for abusing women.

5.11 Although his statements to the State Bar of Texas are not the subject of this lawsuit, Defendant also referred to Plaintiff as a white supremacist and a drug addict in filings with the State Bar.

5.12 On March 25, 2018, Defendant post a picture of Plaintiff on BV Files with the following caption "[t]his man claims to be a 'Nazi' but he has a criminal record for abusing women and he likes to file frivolous and vexatious LOLsuits."

5.13 On March 25, 2018, Defendant posted pictures of the principals of KLR and Texas Title, referring specifically to Robert Karlseng as a "paymaster to 'Nazis' / white supremacists."

5.14 On March 25, 2018, Defendant posted pictures of three members of the Texas Title management with the caption "How about one of these three people. Are any of them Nazis?"

5.15 On March 25, 2018, Defendant posted "So why does Bob Karlseng give money and economic support to racists?" A true and correct copy of the relevant excepts from the posts referred to in paragraphs 5.9 - 5.14 is attached hereto as Exhibit "C" and incorporated by reference herein.

5.16 In addition to the foregoing, Plaintiff learned that Retzlaff sent numerous e-mail messages to Robert Karlseng and Claude Rich. In one e-mail communication he wrote:

> "I thought that I would contact management before I go to Facebook and Twitter and blast this out all over the world. This guy has been working for you for a

        very long time and I am shocked that nothing has been done."

5.17    In the same e-mail string, Defendant threatened "to contact every judge and opposing counsel in every case that [Plaintiff] is currently involved in." Similar threats were made to Plaintiff in the electronic communications attached hereto as Exhibit "D" and incorporated by reference herein.

5.18    On March 27, 2018, Plaintiff was informed that he was being terminated from his employment with KLR due to the postings made by Defendant. But for the harassment of KLR and its principals by Defendant, Plaintiff would not have lost his job.

5.19    On April 1, 2018, Defendant posted that "Denton, Texas attorney Jason Lee Van Dyke (DOB: April 3, 1980) is a pedophile, according to recently filed court documents!" This was an apparent reference to the statement by Defendant in his state court filing on March 30, 2018 stating "No doubt Van Dyke is a pedophile, too. He has that "look" about him."

5.20    On April 1, 2018, Defendant also wrote "[w]e will post more later about Denton attorney Jason Van Dyke and our efforts at identifying ALL of his clients, as well as the court records regarding him being a pedophile."

5.21    On April 6, 2018, Plaintiff was the primary target of Defendant's blog posting, which began with the statement "[d]o we here at the BV Files give two shits about restraining orders from small town judges way far away? No! We do not - 100% verified!! Thus we will continue to talk about [Plaintiff] as much as we want to, as well as conducting a public awareness campaign aimed at informing the public that this is a bad man."

5.22    On April 6, 2018, Defendant wrote that "Denton, Texas, attorney Jason Lee Van Dyke, in addition to being a Nazi drug addict, is clearly a mentally retarded person."

THIRD AMENDED COMPLAINT

5.23  On April 6, 2018, Defendant wrote that Plaintiff has a profile on a white supremacist website known as "Stormfront."

5.24  An update to the April 6, 2018 post was made on April 10, 2018, wherein Defendant wrote, in reference to the removal to this court, as follows: "Does anyone here think that Christine [referring to the Magistrate Judge initially assigned to this case] is a big fan of Nazi's or drug addicted crazy people who file $100 million LOLsuits?"

**( Additional Tortious Conduct and Criminal Stalking Behavior Since the Stay )**

5.25  This case was stayed on or around July 31, 2018 to allow the 5th Circuit Court of Appeals time to consider this Court's denial of a motion to dismiss this case under the Texas Citizens Participation Act.

5.26  During the stay, Retzlaff has continued to criminally stalk Plaintiff. In communications to both Defendant and his counsel in this case, Plaintiff has repeatedly demanded that Defendant leave him, his family members, and his clients alone.

5.27  While counsel has been courteous and professional in his communication with Plaintiff, Defendant has repeatedly responded to e-mail communications intended only for Defendant's counsel. Defendant's most frequent response to Plaintiff's requests that Plaintiff should "go f--- [himself] long and hard".

5.28  Defendant sent Plaintiff unwanted and harassing e-mails to Plaintiff on (i) August 5, 2018; (ii) August 26, 2018; (iii) harassing e-mail attached hereto as Exhibit "C" and incorporated by reference herein; (iii) September 18, 2018; (iv) October 17, 2018; (v) October 24, 2018; (vi) November 10, 2018; (vii) November 11, 2018; (viii) November 14, 2018; (ix) November 18, 2018; (x) November 19, 2018; (xi) November 22, 2018; (xii) November 28, 2018; (xiii) December 11, 2018; (ixv) December 12, 2018; (xv)

December 19, 2018. All of these e-mails were received after Plaintiff repeatedly told Defendant's counsel that he did not wish to speak with Defendant or receive e-mail communication from him.

5.29  On October 24, 2018, Defendant published the home address and employment information of Plaintiff's mother, as well as the employment information of Plaintiff's brother, on his "BV Files" website for the purpose of harassing Plaintiff and for the purpose of harassing members of Plaintiff's family. On October 30, 2018, Defendant made another post containing the home address of Plaintiff's mother and suggesting that members of the domestic terrorist collective known as "Antifa" should make themselves present on her property.

5.30  On November 25, 2018, Defendant wrote a blog post on BV Files concerning one of Plaintiff's clients, Tucker Albin & Associates, Inc., in which he made false and defamatory statements about Plaintiff and about Plaintiff's employers. He posted pictures of many of these employees, as well as pictures of their minor children.

5.31  On information and belief, Defendant also contacted Plaintiff's supervisor (William Allen Humphris Jr.) directly by electronic mail using his "Dean Anderson" pseudonym. Since that time, Mr. Humphris has frequently been the target of vicious personal attacks on BV Files.

5.32  On December 6, 2018 and December 11, 2018 Defendant sent false, defamatory, and harassing communications to the University of North Texas concerning Plaintiff and his coaching and mentorship of the "Texas Marksmen" student organization, and his previous involvement with Theta Chi fraternity.

5.33  On information and belief, Defendant conspired with Deborah Armintor. Mrs.

        Armintor may be named as a defendant at a later date as discovery progresses.

5.34    On December 17, 2018 and December 23, 2018, Defendant made blog posts on his BV Files blog concerning Plaintiff that were false and defamatory. Specifically, Defendant repeatedly referred to Plaintiff as a Nazi, a white supremacist, and a pedophile.

5.35    On January 19, 2019, Defendant made a post on his BV Files blog in which he posted personal information concerning two of Plaintiff's former clients for the intent of harassing them and harassing Plaintiff.

5.36    On February 19, 2019, Defendant made a post on is BV Files blog in which he harassed another of Plaintiff's former clients (Trent Hackney) and falsely alleged that Plaintiff was involved in illegal revenge pornography. In reality, Plaintiff was previously counsel in several lawsuits fighting against revenge pornography. It should be noted that Defendant and his BV Files blog frequently target attorneys and other individuals who have previously assisted victims of revenge pornography (including James McGibney, Marc Randazza, John Morgan, and Kyle Bristow).

5.37    On March 24, 2019, Defendant made a post in his BV Files blog in which he refers to Plaintiff as both a Nazi, a white supremacist, and a pedophile. He also published a picture of Plaintiff suggesting that Plaintiff has sent unwanted sexual solicitations to other individuals. Specifically, he published a photograph of Plaintiff captioned with "I showed you my dick please respond").

5.38    The same post (on March 24, 2019) also falsely claimed that Plaintiff had a homosexual relationship with a young African-American man who was a potential witness in another case concerning Plaintiff, published personal and employment information concerning Plaintiff's father, and attempted to interfere with the sale of Plaintiff's home by

harassing Plaintiff's realtor (Austin Killian).

5.39    On or around April 30, 2019, Defendant posted comments on his BV Files blog referencing Plaintiff's prescription for the anti-convulsant drug Keppra and stated that Plaintiff suffers from bipolar disorder or other mental illness. Plaintiff has never been diagnosed with a mental illness and is prescribed Keppra to treat his epilepsy.

5.40    On or around May 27, 2019, Defendant made a post on his BV files blog where he repeatedly refers to Plaintiff as a Nazi, a white supremacist, and a pedophile. He also published a photograph of Plaintiff's relator and the person who purchased Plaintiff's old house for the purpose of harassing them and harassing Plaintiff.

5.41    On May 27, 2019, despite Plaintiff's efforts to conceal his new address and contact information from Defendant, he published a picture of Plaintiff's new home in Wise County, Plaintiff's address, and a map to Plaintiff's home on his BV Files blog.

5.42    On June 9, 2019, Defendant made a blog post attacking a former employer of Plaintiff, White Jacobs & Associates, and did so for the sole purpose of harassing Plaintiff. This post included photographs of the owners, as well as a number of current and former employees of White Jacobs & Associates. It also contains photographs of some children of those owners/employees. The post repeatedly refers to Plaintiff as a Nazi and a white supremacist and accused Plaintiff of being a supporter of revenge pornography.

5.43    In the comment section of the post referenced in paragraph 5.37 above, Defendant published Plaintiff's social security number. This is approximately the fifth time that Defendant is believed to have published Plaintiff's social security number to unauthorized persons.

### ( Defendant's Abuse of State Bar Disciplinary Procedures )

5.44   Although Plaintiff is not suing Defendant for filing grievances against him with the State Bar of Texas solely because Defendant is immune from liability for the same. However, Defendant has abused state bar disciplinary procedures as part of his ongoing course of conduct to stalk Plaintiff. Unfortunately, the current disciplinary procedures in the states where Plaintiff is licensed to not sufficiently contemplate the abuse of the attorney discipline process by a vexatious litigant such as Defendant.

5.45   Since December of 2017, Defendant has filed fourteen grievances against Plaintiff in Texas alone (although some of these were consolidated).

5.46   In addition to the frivolous grievances he has filed against Plaintiff, Defendant has attempted to intimidate attorneys representing Plaintiff in different matters by filing fictitious grievances against them. On information and belief, Defendant has filed grievances against Texas attorneys John Morgan, Evan Stone, and Alan Taggart in retaliation for their representation of a client. On information and belief, has abused the grievance procedures to harass and intimidate Nevada attorney Marc Randazza and California attorney Jay Liederman as well.

5.47   Additionally, an investigation by Plaintiff determined that Defendant committed perjury during a deposition that was taken in a bar disciplinary proceeding involving Plaintiff on October 25, 2018. Specifically, Defendant made several references to seeing his daughter and going golfing with her during the deposition. It was later discovered that, approximately two months prior to the deposition, Defendant's daughter had obtained a restraining order against him after he had made threats against her.

5.48   Plaintiff is also investigating efforts made by Defendant to suborn perjury from Plaintiff's

former roommate in a different case.

5.49 Defendant had admitted in electronic communications to Plaintiff that it is his goal to "destroy his ability to earn an income". He has succeeded, and the time has come not only to put his reign of terror to an end, but for this Court to protect the attorney discipline process in Texas and elsewhere by placing reasonable limitations on Defendant's utilization of the same.

## VI. CAUSES OF ACTION

6.1 Plaintiff incorporates paragraphs 1.1 – 5.49 above into each cause of action below by reference.

**( Count One - Libel Per Se - BV Files )**

6.2 Defendant, through his BV Files Blog, published certain statements of fact concerning Plaintiff to a website that Defendant owns, which is under Defendant's control, or for which Defendant creates all or substantially all of the content. To wit (a) Plaintiff is a Nazi; (b) Plaintiff is a white supremacist; (c) Plaintiff is a pedophile; (c) Plaintiff is a drug addict; (d) Plaintiff has a criminal record for abusing women; (e) Plaintiff in involved in revenge pornography; (f) Plaintiff has engaged in unwanted sexual solicitations; and (g) Plaintiff has engaged in other sexual misconduct including, but not limited to, a homosexual relationship with one or more witnesses.

6.3 These statements are defamatory

6.4 These statements are false.

6.5 With regard to making the statements, the Defendant was acting with actual malice.

6.6 Damages are presumed in favor of Plaintiff and against Defendant because he made statements which allege which tended to injure Van Dyke in his office, profession, or

occupation.

6.7 Damages are also presumed because Defendant falsely accused Plaintiff of committing sexual offense, being involved in acts of revenge pornography, and acts involving violence against women which he did not commit.

6.8 Damages are also presumed because Defendant has made false allegations that Plaintiff takes medication for bipolar disorder, or some other mental disorder, when in fact Plaintiff has never been diagnosed with a mental illness and takes no medication for the same.

6.9 Plaintiff lost his job with KLR primarily because of the posts made by Defendant about both Plaintiff and KLR on BV Files. The posts involving Plaintiff's other clients, and his communications through e-mail with the same, have permanently damaged the relationships that Plaintiff. Even if Plaintiff could return to the practice of law, the repeated false allegations of white nationalism and sexual misconduct have rendered him Plaintiff permanently unemployable in law and beyond.

6.10 Plaintiff specifically alleges that he can prove his claims against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of punitive damages on his claims for libel per se.

### ( Count Two - Intrusion on Seclusion )

6.11 Defendant intentionally intruded on Plaintiff's solitude, seclusion or private affairs. While this tort has always included physical intrusions, it has also included non-physical intrusions such as harassing telephone calls, following, spying-on, or harassing a plaintiff. *Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App. – Dallas 1984, writ ref'd n.r.e).

6.12  This type of intrusion into one's private affairs (in this case, contacting an private employer for the purpose of having Plaintiff's employment terminated) would be highly offensive to a reasonable person. *Household Credit Servs. v. Driscol*, 989 S.W.2d 72, 84-85 (Tex. App. – El Paso 1998, pet. denied); *Donnel v. Lara*, 703 S.W.2d 257, 259 (Tex. App. – San Antonio 1985, writ ref'd n.r.e). The same can be said of repeated unwanted e-mail communications; especially after Plaintiff had informed Defendant's counsel that he did not wish any further communications with Defendant.

6.13  Plaintiff has suffered injury as a result of Defendant's intrusion. In this case, Plaintiff has lost his job due to Defendant's tortious conduct and has suffered severe emotion distress concerning the loss of his entire life's work. He has also suffered emotional distress due to the ongoing and continuing harassment by Defendant through unwanted electronic mail communications, blog postings, and blog comments (including Defendant's posting of his sensitive financial information)

### ( Count Three - Tortious Interference with an Existing Contract )

6.14  Plaintiff had an existing contract with KLR for employment. To wit, Plaintiff was employed as an associate attorney with KLR for a salary of sixty thousand dollars ($60,000) per year, plus health and other employment benefits.

6.15  Through the actions outlined in paragraphs 5.9 - 5.16 above, Defendant willfully and intentionally interfered with the contract between Plaintiff and KLR.

6.16  Defendant's interference with the contract was the proximate cause of Plaintiff's injury, to wit, the loss of his employment.

6.17  Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of

punitive damages on his claim for tortious interference.

( Alternative Theory – Intentional Infliction of Emotion Distress )

6.18    In the event that Plaintiff is unable to recover against Defendant on his other causes of action in this case, Plaintiff can still recover against him for intentional infliction of emotional distress.

6.19    Plaintiff is a natural person. The conduct complained of in paragraphs 5.1 – 5.43 above constitutes an ongoing pattern of extreme and outrageous conduct which Defendant has intentionally directed against Plaintiff. Defendant's ongoing criminal staking of Plaintiff has caused severe emotional distress to Plaintiff due to the permanent loss of his career, loss of his employment, loss of his home, and alienation from practically all of his family members and friends.

## VII.    INJUNCTIVE RELIEF

7.1     Plaintiff incorporates the above paragraphs by reference.

7.2     In addition to damages, Plaintiff seeks a permanent injunction against Defendant, enforceable by criminal contempt proceedings, permanently enjoining and restraining Defendant from committing any of the following acts, either personally or through a third person:

   (a)   Having any contact with Plaintiff, or any member of Plaintiff's family or household, except through a licensed attorney;

   (b)   Publishing the address, telephone number, electronic mail address, social security number, date of birth, medical information, or employment information of Plaintiff or any member of Plaintiff's family or household;

   (c)   Having any contact with any person who is an employer of Plaintiff, or who is

        known by Defendant to be a prospective employer of Plaintiff;

(d)     Having any contact with any person who has employed Plaintiff as an independent contractor, or who is known by Defendant to be considering the hiring of Plaintiff as an independent contractor;

(e)     Having any contact with any person who is an employer of a member of Plaintiff's family or household, or who is known by Defendant to be a prospective employer of a member of Plaintiff's family or household;

(f)     Having any contact with any person who has employed a member of Plaintiff's family or household as an independent contractor, or who is known by Defendant to be considering the hiring of a member of Plaintiff's family or household as an independent contractor;

(g)     From filing any type of professional grievance with any state bar disciplinary authority in any state, against any person currently or previously licensed to practice law in that state, including but not limited to Plaintiff, unless:

    (i)     Defendant is filing said grievance against an attorney who was hired or appointed to represent Defendant; or

    (ii)     The grievance is prepared by an attorney licensed to practice law in the jurisdiction where said professional grievance is prepared by said attorney, signed by said attorney, and filed on behalf of Defendant by said attorney

## VIII. PRAYER

8.1     For these reasons, Plaintiff asks for a judgment against Defendant for the following:

    a.     Plaintiff be awarded actual damages against Defendant that were incurred as a result of his wrongful conduct including, but not limited to, damages

    for mental anguish, loss to personal reputation, loss to professional reputation, and loss of business, in the amount of at least thirty million dollars ($30,000,000.00);

  b. Plaintiff be awarded punitive damages against Defendant in the amount of at least seventy million dollars ($70,000,000.00);

  c. Plaintiff be granted permanent injunctive relief as set forth in paragraph 7.2 above;

  d. Plaintiffs be granted judgment for all costs of suit; and

  e. All other relief the Court deems appropriate.

          Respectfully submitted,

          <u>/s/ Jason Lee Van Dyke</u>
          Jason L. Van Dyke
          PO Box 2618
          Decatur, TX 76234
          P – (940) 305-9242
          Email: jasonleevandyke@protonmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant.

          <u>/s/ Jason Lee Van Dyke</u>
          JASON LEE VAN DYKE