## IN THE UNITED STATES DISTRICT FOR THE
## EASTERN DISTRICT OF TEXAS,
## SHERMAN DIVISION

| | |
|---|---|
| **JASON LEE VAN DYKE**, § <br> *Plaintiff*, § <br> **v.** § <br> § <br> **THOMAS CHRISTOPHER** § <br> **RETZLAFF, a/k/a DEAN** § <br> **ANDERSON, d/b/a BV FILES, VIA** § <br> **VIEW FILES, L.L.C., and VIAVIEW** § <br> **FILES**, § <br> *Defendants* § | **NO. 4:18-CV-247-ALM** |

### RETZLAFF'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Defendant Thomas Retzlaff files his opposition to plaintiff's motion for leave to file plaintiff's Third Amended Complaint (Doc. 89).

### I. INTRODUCTION

1. Plaintiff is Jason Van Dyke; defendants are Thomas Retzlaff, a/k/a Dean Anderson, d/b/a BV Files, Via View Files, L.L.C., and ViaView Files.[1]

2. On July 30, 2018, Retzlaff appealed from this Court's order holding that the Texas Citizens Participation Act does not apply in federal court.

3. On July 31, 2018 this Court stayed all proceedings pending resolution of the appeal—No. 18-40710; ***Van Dyke v. Retzlaff***; in the U.S. Court of Appeals for the Fifth Circuit. (Doc. 79.) As of the date of this response, the appeal has not been resolved. The Court's stay remains in effect.

---

[1] The "a/k/a" and "d/b/a" designations are plaintiff's. No evidence establishes that these defendants are alter egos of Retzlaff.

## II. FACTS

4. Originally a **$100,000,000.00** suit for allegedly libelous statements to the State Bar of Texas in a grievance (Doc. 7, ¶ 5.3), plaintiff's second amended complaint (Doc. 7) altered the basis of this suit to statements plaintiff claims were made in correspondence to a state judge and on a "blog" allegedly controlled by Retzlaff. Plaintiff did not provide the statements themselves—only plaintiff's *characterizations* of them as having included the following "statements of fact:"

    (i)    plaintiff is a Nazi;

    (ii)    plaintiff is a pedophile;

    (iii)    plaintiff is a drug addict;

    (iv)    plaintiff has a criminal record for abusing women;

    (v)    plaintiff has committed professional conduct against Retzlaff.

(Doc. 7, ¶ 6.2). Based on these claimed statements, plaintiff sued for:

    (i)    libel per se;

    (ii)    intrusion upon seclusion; and

    (iii)    tortious interference with existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC);

    (iv)    internal infliction of emotional distress.

(Doc. 7, ¶ 6.2). Plaintiff later abandoned all claims based on statements in Retzlaff's grievance. (Doc. 40, ¶ 16.)

5. On December 3, 2018, plaintiff moved for "court-ordered dismissal" all of his own claims and causes of action and withdrew all of his pending motions. (Doc. 84.) Plaintiff stated the "grounds" for dismissal with this:

> **Plaintiff wishes to dismiss this lawsuit because he is of the opinion that, short of locking [Retzlaff] in a prison cell for the rest of his natural life, there is nothing this or any other court can do that will stop Defendant from continuing to harass plaintiff.**

(Doc. 84, ¶ 6.) Plaintiff advised the Court he had "no opinion" on whether the dismissal ought to be with or without prejudice. (*Id.*, ¶ 9.) Retzlaff joined plaintiff's motion, but asked for dismissal *with* prejudice. As of the date hereof, the Court has not ruled—either because of the stay, want of jurisdiction, or both.[2]

6. Plaintiff's stated frustration with Retzlaff then precipitated a torrent of remarkably abusive communications. On December 12, 2018, plaintiff e-mailed Retzlaff:

> **Go fuck yourself and what's left of your miserable life. You have destroyed my life, and for that offense, you will pay with your own. That's not a threat. That's a PROMISE motherfucker.**

Exhibit 1. Plaintiff sent a second e-mail to Retzlaff stating:

> **I promise you this motherfucker: If my law career dies, you die with it.**

*Id.*

---

[2] Even apart from the stay, the Court may lack jurisdiction to grant plaintiff's motion because of the pending appeal, in which Retzlaff seeks dismissal of plaintiff's claims pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE § 27.001. *See **Griggs v. Provident Consumer Discount Co**.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")

Incredibly, *plaintiff* sent copies of his murder threats to:

- Retzlaff's counsel;
- the state bar prosecutor (Kristin Brady);
- the chief disciplinary counsel of the state bar (Linda Acevedo);
- two news reporters; and
- FBI special agent Walker Wicevich.

Shortly afterward plaintiff's murder threats were circulated, a warrant was issued for plaintiff's arrest and he was charged with the felony offenses of obstruction of justice and retaliation against a witness. *Id*.

    7.    Now, plaintiff has apparently changed his mind about dismissing his suit. Plaintiff asks for leave to file his Third Amended Complaint (Doc. 89) in order to add claims for injunctive relief prohibiting Retzlaff from filing grievances against plaintiff and five attorneys allegedly representing plaintiff, including John Morgan, Evan Stone, Alan Taggart, Marc Randazza, and Jay Leiderman. (Doc. 90 at ¶5.46.) While it is true that Retzlaff has filed grievances against plaintiff and three of the attorneys named, all evidence is that the grievances were meritorious. For example:

(i) Plaintiff has been indefinitely suspended from the practice of law in Texas, Colorado, and the District of Columbia, and a disciplinary trial is pending in Georgia.

(ii) Attorney John S. Morgan is facing a Texas State Bar disciplinary hearing on September 26, 2019.

(iii) Attorney Marc Randazza has been disciplined and suspended by both the Massachusetts state bar and the Nevada state bar for a period of 12 months, and is facing disbarment tribunals or disciplinary proceedings in Florida, Arizona, and California.

(iv) Attorney Jay Leiderman was "counseled" by the California State Bar and ordered to undergo additional CLE classes.

8. Retzlaff is unaware of any pending disciplinary proceedings against Texas attorney Alan Taggart (unless it arises from for Taggart's two felony indictments for tampering with governmental records in Collin County, Texas. Nor is Retzlaff aware of any pending disciplinary proceedings against attorney Evan Stone, (unless it arises from federal court sanctions against Stone of approximately $25,000.00 that were upheld by the Fifth Circuit in Case No. 11-10977).

### III. ARGUMENT & AUTHORITIES

#### A. Undue Delay

9. A court may deny leave to amend if the record shows undue delay. ***Foman v. Davis***, 371 U.S. 178, 182 (1962); ***In re Southmark Corp.***, 88 F.3d 311, 315-16 (5th Cir. 1996) (court may consider whether facts in the live complaint were known to the party when it was filed). Plaintiff has known most of the "facts" allegedly giving rise to plaintiff's proposed third amended complaint (the state bar grievances and the alleged "stalking" and "harassment" by "blog postings") for over 12 months. In fact, they were the subject of two earlier legal actions plaintiff filed against Retzlaff in Arizona:

(i) No. CV-2018-01856; ***Van Dyke v. Retzlaff***; in the Superior Court of Maricopa County, Arizona (filed November 7, 2018); and

(ii) No. 2:18-CV-04003; ***Van Dyke v. Retzlaff***; in the U.S. District Court for Arizona (filed on November 8, 2018).

**Exhibits 2 and 3**. Both cases were resolved in Retzlaff's favor. **Exhibit 4**.

#### B. Bad Faith

10. A court may deny leave to amend if a party makes the motion in bad faith or with dilatory motive. ***Foman*** 371 U.S. at 182; ***Optivus Tech., Inc. v. Ion Beam Applications S.A.***, 469 F.3d 978, 993 (Fed. Cir. 2006). As noted above, the allegations in the proposed third amended complaint were the subject of two previous legal actions and are intended to retaliate against Retzlaff for exercising his constitutional rights of free speech and to petition.

## C. Futility

11. A court may deny leave to amend if the amendment is futile. ***Foman***, 371 U.S. at 182; ***Flores-Silva v. McClintock-Hernandez***, 710 F.3d 1, 4-5 (1st Cir. 2013). An amendment is futile if the amended complaint would not withstand a motion to dismiss. *See* ***National Wrestling Coaches Ass'n v. Department of Educ.***, 366 F.3d 930, 945 (D.C. Cir. 2004), *overruled on other grounds*, ***Perry Capital LLC v. Mnuchin***, 848 F.3d 1072 (D.C. Cir. 2017). Plaintiff's proposed injunction would clearly not withstand a motion to dismiss under FED. R. CIV. P. 12(b)(6). There are three reasons for this.

### 1. Plaintiff's Requested Prior Restraint on Retzlaff's Future Speech Would Be Unconstitutional

12. A hallmark of free speech under both the U.S. and Texas Constitutions is the maxim that prior restraints are a heavily disfavored infringement of that right. ***Kinney v. Barnes***, 443 S.W.3d 87, 87 (Tex. 2014).

> **So great is our reticence to condone prior restraints that we refuse to allow even unprotected speech to be banned if restraining such speech would also chill a substantial amount of protected speech.**

*Id*. Enshrined in the Texas Constitution since 1836,[3] the fundamental "liberty to speak, write, or publish" one's opinions recognizes the "transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions,

---

[3] *See* TEX. CONST. art. I, § 8. The provision as currently worded dates back only to 1876, but a similar provision was part of the 1836 Texas Independence Constitution. ***Davenport v. Garcia***, 834 S.W.2d 4, 7-8 (Tex. 1992).

and the happiness of individual men." TEX. CONST. art. I, § 8 interp. commentary (West 2007).

13. The Texas Supreme Court has long held that—while abuse of the right to speak subjects the speaker to proper penalties—"'pre-speech sanctions' are presumptively unconstitutional." *Kinney*, 443 S.W.3d at 87, quoting *Davenport v. Garcia*, 834 S.W.2d 4, 9 (Tex. 1992). The First Amendment of the U.S. Constitution is also suspicious of prior restraints, which include judicial orders "forbidding certain communications" that are "issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation and internal quotation marks omitted). The U.S. Supreme Court has long recognized that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also id*. As such, they "bear[] a heavy presumption against [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). This cornerstone of First Amendment protections has been reaffirmed time and again by the U.S. Supreme Court,[4] the Texas Supreme Court,[5] Texas courts of appeals,[6]

---

[4] *See, e.g., Stuart*, 427 U.S. at 561 ("[I]t is … clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

[5] *Davenport*, 834 S.W.2d at 9; *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (per curiam).

[6] *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.) ("[P]rior restraints on speech are presumptively

legal treatises,[7] and even popular culture.[8] As the Texas Supreme Court reaffirmed in 2014:

> **We have squarely held that a temporary injunction prohibiting allegedly defamatory speech is an unconstitutional prior restraint….**

*Kinney*, 443 S.W.3d at 87.

14. "The traditional rule of Anglo-American law is that equity has no jurisdiction to enjoin defamation." Chemerinsky, 57 SYRACUSE L. REV. at 167 (explaining that the rule dates back to eighteenth-century England and was adopted "with remarkable uniformity" by nineteenth- and twentieth-century American courts). United States federal courts also so hold.

> **[T]he maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law.**

See ***Kramer v. Thompson***, 947 F.2d 666, 677 (3d Cir. 1991). The Texas Supreme Court's treatment of the temporary injunctions in ***Ex parte Tucker***[9] and ***Hajek***[10] and its recent decision in ***Kinney*** leave no doubt that Texas law is in accord with the traditional rule with regard to future speech. The injunction plaintiff seeks would be unconstitutional and void. The proposed amendment is futile.

---

unconstitutional."); ***San Antonio Express-News v. Roman***, 861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding) (per curiam).

[7] *See* Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 173 (2007) ("[N]ever in the 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case…"); A. Siegel, *Injunctions for Defamation, Juries, and the Clarifying Lens of 1868*, 56 BUFF. L. REV. 655, 656 (2008).

[8] THE BIG LEBOWSKI (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint.").

[9] 220 S.W. 75, 76 (Tex. 1920).

y

### 2. Retzlaff's Filing of Grievances and Criminal Complaints Against Plaintiff is Protected by the Judicial or Quasi-Judicial Communications Privilege

15. Under the judicial communications privilege, statements made in the due course of judicial proceedings cannot serve as the basis of civil actions for libel or slander, regardless of the negligence or malice with which the statements may have been made. ***James v. Brown***, 637 S.W.2d 914, 916 (Tex. 1982); ***Johnson-Todd v. Morgan***, 480 S.W.3d 605, 610 (Tex. App.—Beaumont 2015, pet. denied). This privilege is properly understood as an immunity, and extends to statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including in any pleadings or other papers filed in a case. ***James***, 637 S.W.2d at 916-17.

16. The judicial communications privilege extends to quasi-judicial proceedings and other instances in which the benefit to the general public outweighs the potential harm to an individual. ***Bird v. W.C.W.***, 868 S.W.2d 767, 771 (Tex. 1994). A quasi-judicial proceeding is any proceeding, "conducted by a governmental executive officer, board, or commission that has the authority to hear and decide the matters coming before it or to redress the grievances of which it takes cognizance." ***5-State Helicopters, Inc. v. Cox***, 146 S.W.3d 254, 257 (Tex. App.—Fort Worth 2004, pet. denied).

---

<sup>10</sup> 647 S.W.2d 253, 255 (Tex. 1983).

> **The public policy behind the application of the absolute privilege to judicial proceedings is that the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation. Similarly, the rationale for extending the absolute privilege to statements made during quasi-judicial proceedings rests in the public policy that every citizen should have the unqualified right to appeal to governmental agencies for redress without the fear of being called to answer in damages and that the administration of justice will be better served if witnesses are not deterred by the threat of lawsuits. The absolute privilege is intended to protect the integrity of the process and ensure that the quasi-judicial decision-making body gets the information it needs.**

*5-State Helicopters, Inc.*, 146 S.W.3d at 256-57 citing *James,* 637 S.W.2d at 916-17; *Attaya v. Shoukfeh*, 962 S.W.2d 237, 239 (Tex. App.—Amarillo 1998, pet. denied).

17. The absolute quasi-judicial privilege applies to communications sent in anticipation of proposed quasi-judicial proceedings, as well as communications made in existing quasi-judicial proceedings. *5-State Helicopters, Inc.*, 146 S.W.3d at 256-57, citing *James,* 637 S.W.2d 9 at 916-17). Retzlaff's complaints are communications made in anticipation of judicial or quasi-judicial proceedings. Accordingly, such communications are absolutely privileged and cannot form the basis of plaintiff's defamation or tortious interference allegations.

18. Plaintiff's claims of defamation and tortious interference are based on *absolutely* privileged quasi-judicial communications. Because Retzlaff can prove the affirmative defense of privilege, the Court will be obliged to dismiss plaintiff's claims. *Johnson-Todd*, 480 S.W.3d at 610. Therefore, the proposed amendment is futile.

### 3. Retzlaff's Grievances and Criminal Complaints Against Plaintiff Are Protected by the Absolute Defense of Truth

19. The following exhibits appended to this response show that Retzlaff's disciplinary grievances and criminal complaints against plaintiff—while plaintiff may well experience them as "harassing"—have resulted in multiple disciplinary actions and criminal proceedings against plaintiff. Therefore, independent judicial or quasi-judicial agencies have obviously considered Retzlaff's complaints meritorious, not frivolous. In many instances, plaintiff has actually *admitted* to the violations alleged under oath, establishing their truth. And as also shown by the following exhibits, Retzlaff has hardly been the sole originator of actions against plaintiff:

   a. **Exhibit 5** is a State Bar Disciplinary Petition filed against plaintiff in Case No. 2017-07583 based upon 17 different threats of violence or murder against Retzlaff and his family.

   b. **Exhibit 6** is the State Bar disciplinary petition filed against plaintiff in Case No. 2017-06276, based upon threats of violence and the filing of false police reports by plaintiff against Dallas dentist Dr. Ryan Daniel, whom plaintiff was suing in state court.

   c. **Exhibit 7** is an agreed disciplinary judgment and order of suspension signed by plaintiff in the Daniel case in which plaintiff *admitted* making threats and false police reports.

   d. **Exhibit 8** is an February 21, 2019, agreed Texas State Bar disciplinary judgment and order of suspension signed by Van Dyke in the December 2017 Retzlaff grievance case in which Van Dyke admitted his guilt to making **numerous** threats of violence and murder against Retzlaff. Van Dyke is under an indefinite suspension by the Texas State Bar as a result.

e. **Exhibit 9** is the Colorado Supreme Court's March 4, 2019, disciplinary judgment against plaintiff in Case # 19PDJ021.

f. **Exhibit 10** is a June 10, 2019, order to show cause why plaintiff should not be immediately suspended by the Colorado Supreme Court in Case No. 2019-SA-121 based upon Retzlaff's complaint.

g. **Exhibit 11** is a May 6, 2019, Stipulation & Agreement filed in Colorado Supreme Court Disciplinary Case No. 19-PDJO27 in which plaintiff admitted under oath to making threats of violence against Retzlaff.

h. **Exhibit 12** is a May 15, 2019, letter advising that the Georgia State Bar is petitioning the Georgia Supreme Court to appoint a special master to prosecute Retzlaff's grievance against plaintiff in Case No. S19B1223.

i. **Exhibits 13-15** are documents related to plaintiff's *Proud Boys* white supremacist gang, which are certificates of Formation he filed with the Texas Secretary of State's Office, as well as a copy of the Proud Boys by-laws signed by plaintiff.

j. **Exhibit 16** is a recently-filed federal lawsuit against plaintiff's *Proud Boys* and other white supremacist gangs arising from their role in the August 2017 Charlottesville, Virginia, riot, murder of a young girl, and the injury of over 30 people. *See* No. 2-19-CV-02006; ***Burke v. James Alex Fields***; in the U.S. District Court for Southern District of Ohio.

k. **Exhibit 17** is a June 6, 2019, Order of Suspension from the District of Columbia Court of Appeals in Case No. 19-BG-222, suspending plaintiff for 18 months based upon Retzlaff's grievances.

l. **Exhibit 18** is a November 12, 2013, e-mail from plaintiff warning an opposing party: "I have sued everyone who has ever filed a formal grievance against me with the State Bar. If you file some sort of groundless grievance with the State Bar I will make your life a living hell unlike anything you could imagine."

*Van Dyke v. Retzlaff*
Retzlaff's Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint

13

m. **Exhibit 19** is a letter from the Texas State Bar requesting Retzlaff's appearance as a witness in a disciplinary hearing for yet another grievance he filed against Van Dyke, Case No. 2018-07880. Retzlaff appeared and testified against plaintiff on May 24, 2019.

n. **Exhibit 20** is a representative sample of Van Dyke's recent social media postings in which Van Dyke makes violent, racial statements, poses with numerous weapons, and makes threats of murder and violence against people and groups whom he disagrees with.

o. **Exhibit 21** is a June 20, 2019, letter from the Texas Board of Disciplinary Appeals ordering the State Bar of Texas to conduct disciplinary proceedings against Van Dyke based upon a complaint Retzlaff directly filed with the BDA informing them that Van Dyke was in violation of his state bar suspension by continuing to act as a lawyer and representing clients while under suspension.

21. Plaintiff's proposed Third Amended Complaint would be futile because Retzlaff's statements in the complaints and grievances are protected by the absolute defense of truth. The Court may deny plaintiff leave to amend because plaintiff's amended claims are frivolous. ***Becker v. Univ. of Neb., at Omaha***, 191 F.3d 904, 907-08 (8th Cir. 1999).

## IV. CONCLUSION

22. Plaintiff's proposed Third Amended Complaint is based on facts that plaintiff has long known, and which have even been the subject of prior litigation against Retzlaff. Therefore, plaintiff has delayed unduly to seek leave to amend. Plaintiff's proposed amendment is filed in bad faith, and would not survive Retzlaff's motion to dismiss because:

(i) prior restraints on speech are presumptively unconstitutional;

(ii) Retzlaff's disciplinary and criminal complaints against plaintiff are absolutely privileged; and

(iii) Retzlaff's complaints have resulted in disciplinary and criminal proceedings against plaintiff in which plaintiff has actually *admitted* to the truth of many of the allegations Retzlaff made.

## V. PRAYER

23. For these reasons, defendant Thomas Retzlaff prays the Court to deny plaintiff's motion for leave to file his Third Amended Complaint, and for such other and further relief, at law or in equity, as to which Retzlaff shall show himself justly entitled.

Respectfully submitted,

**HANSZEN✦LAPORTE**

By:       /s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF SERVICE

      I certify that on _____7-12____, 2019, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

    Mr. Jason Lee Van Dyke
    Plaintiff, Pro Se
    P.O. Box 2618
    Decatur, Texas 76234
    Telephone: 940-305-9242
    jasonleevandyke@protonmail.com


           /s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**