**IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JASON LEE VAN DYKE,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THOMAS CHRISTOPHER** | § | **NO. 4:18-CV-247-ALM** |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a BV FILES, VIA** | § | |
| **VIEW FILES, L.L.C., and VIAVIEW** | § | |
| **FILES,** | § | |
| *Defendants* | § | |

**RETZLAFF'S <u>FIRST AMENDED</u> MOTION TO DISMISS PLAINTIFF'S CLAIMS
PURSUANT TO FED. R. CIV. P 12(b)(6)**

> **Pursuant to FED. R. CIV. P 12(b)(6), the Court should dismiss Van Dyke's claims for (i) libel per se; (ii) intrusion upon seclusion; and (iii) tortious interference with existing contract.  Van Dyke's scant, conclusory complaint fails to set forth factual allegations sufficient to plausibly allege each element of each such cause of action.**

## I. INTRODUCTION

1.    Plaintiff is Jason Van Dyke; defendant is Thomas Retzlaff.

2.    On March 28, 2018, plaintiff filed this $100,000,000.00 defamation suit after Retzlaff filed a grievance against him with the State Bar of Texas.[1]

3.    On July 24, 2018, the Court denied Retzlaff's motion to dismiss under the Texas Citizens Participation Act.  (Doc. 71.)  Retzlaff unsuccessfully appealed.  The Fifth Circuit issued its mandate on December 23, 2019.

4.    This case is not set for trial.

---

[1]    Van Dyke disclaims the grievance as the basis of his claims. (SAC ¶ 5.10).

## II. FACTS

### A. The Allegations of Van Dyke's Complaint

5.  Van Dyke sues Retzlaff for the following three causes of action:

(i)  libel per se; (Doc. 7, Plaintiff's Second Amended Complaint ("SAC"), ¶¶ 6.2-6.8)

(ii)  intrusion upon seclusion; (SAC ¶¶ 6.9-6.11) and

(iii)  tortious interference with existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC) (SAC ¶¶ 6.12-6.15).

Complaining that Retzlaff filed an allegedly "frivolous" grievance against him with the State Bar of Texas, (SAC ¶ 5.3[2]), Van Dyke bases his claims on statements posted on a "blog"[3] Retzlaff allegedly owns[4] and in e-mails Retzlaff allegedly sent.[5]  The offending states are:

(i)  plaintiff is a Nazi;

(ii)  plaintiff is a pedophile;

(iii)  plaintiff is a drug addict;

(iv)  plaintiff has a criminal record for abusing women; and

(v)  plaintiff has committed professional misconduct against Retzlaff.

SAC, ¶ 6.2.  Van Dyke also complains that Retzlaff commented, "Van Dyke, in addition to being a Nazi drug addict, is clearly a mentally retarded person."  (SAC, ¶ 5.21).  Van Dyke alleges these were "statements of fact."

---

[2]  The SAC contains two paragraphs number 5.3.  Retzlaff's allegedly "frivolous grievance" is referenced in the second of the two.

[3]  The blog is known as "BV Files" and can be found at www.viaviewfiles.net.

[4]  See SAC ¶¶ 5.6-5.9, 5.18-5.20 and Exhibit "C."

6.      Retzlaff's pungent comments were made after being sued, and were in response to, among other things, Van Dyke's projection of his violent, racist beliefs onto an Internet audience of 7.5 billion people with posts such as this:



As shown below, no matter how acrid or offensive, Retzlaff's comments were constitutionally protected—and thus nonactionable—expressions of opinion and rhetorical hyperbole about a limited-purpose public figure.

---

5       *See* SAC ¶¶ 5.15-5.16 and Exhibit "D."

## **B. Van Dyke's Status as a Limited Purpose Public Figure**

7.     Van Dyke is a limited-purpose public figure[6] plaintiff—a person who "thrust[] [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved" or because he "voluntarily inject[ed] himself or is drawn into a particular public controversy."  ***Gertz v. Robert Welch, Inc***., 418 U.S. 323, 351 (1974).  Van Dyke has done this through his involvement with—and active leadership and legal representation of[7]—a group known as the "Proud Boys."[8]  The "Proud Boys" have achieved international notoriety by engaging in demonstrations so vicious that they have been called "terroristic neo-Nazi and white supremacist protestors"[9] and designated a "hate

---

[6]     Public figures fall into two categories: (i) all-purpose public figures and (ii) limited-purpose public figures.  ***WFAA-TV, Inc. v. McLemore***, 978 S.W.2d 568, 571 (Tex. 1998).  General-purpose public figures are those who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts.  *Id*. (citing ***Gertz***, 418 U.S. at 351).  Limited-purpose public figures are public figures for only a limited range of issues surrounding a public controversy.  *Id*.

[7]     One case held an attorney became a limited purpose public figure by "voluntarily assuming a particularly visible position in the forefront of a very public issue."  *See **Schwartz v. Worrall Publ'ns, Inc***., 610 A.2d 425, 426 (N.J. Super. Ct. App. Div. 1992).  Another held a lawyer who volunteered to represent a group of white supremacists was a public figure because, by virtue of his representation, he had voluntarily injected himself into public controversies concerning the group.  *See **Steel v. Spokesman-Review***, 61 P.3d 606, 609 (Idaho 2002).

[8]     *See* **Exhibit 1**, Certificate of Formation of "Proud Boys of Texas, LLC," signed and filed by Van Dyke with the State of Texas on November 20, 2017; **Exhibit 2**, Certificate of Formation of "Proud Boys International, LLC, signed and filed by Van Dyke with the State of Texas on November 26, 2018;" **Exhibit 3**, a public statement signed and published by Van Dyke on June 14, 2018, on behalf of the "Pacific Northwest Proud Boys" denying published reports that the organization intended to interfere with a "Gay Pride" parade in Portland, Oregon; **Exhibit 4**—a Proud Boys press release announcing Van Dyke had been elected "chairman of the Proud Boy Elders" on November 21, 2018, and noting that Van Dyke was at that time a "fourth degree brother" and "current Sergeant-at-Arms of the Dallas/Fort Worth chapter."

[9]     *See* **Exhibit 5**, ¶ 2, the original complaint in Cause No. 2:19-CV-02006-EPD; ***Burke v. Fields***, in the U.S. District Court for the Southern District of Ohio; in which the "Proud Boys" is a named defendant.  This suit arises from the organized activities that took place on August 12, 2017, in Charlottesville, Virginia, and led to the death of one woman and injuries to

---

group" by the Southern Poverty Law Center.  The Southern Poverty Law Center's
website includes the following:

> **Although [Proud Boys founder Gavin] McInnes has attempted to distance his organization from the violence of Charlottesville, violence is firmly entrenched in Proud Boy dogma. McInnes was filmed punching a counter-protestor outside of the Deploraball in January 2017, and after a speaking engagement at New York University the next month turned violent, he wryly declared, "I cannot recommend violence enough. It's a really effective way to solve problems." In fact, in early 2017, the Proud Boys added another degree to their membership hierarchy: in order to enter the 4th degree, a member needs to "get involved in a major fight for the cause."**

*See*  https://www.splcenter.org/fighting-hate/extremist-files/group/proud-boys,  last
accessed January 3, 2020.  As shown in **Exhibit 4**, Van Dyke was a "fourth-
degree brother" in the "Proud Boys" as of November 21, 2018.

8.   Retzlaff does not offer the public criticisms of the "Proud Boys" to
show that any accusation about the Proud Boys is true, but rather to show that the
"Proud Boys" are the subject of frequent, widespread controversy, into the center
of which Van Dyke repeatedly injects himself.  This makes him a public figure.

9.   More generally, public figures include governmental employees who
have, or appear to have, substantial responsibility for or control over the conduct
of governmental affairs.  Van Dyke alleges Retzlaff cost him a job as a felony
prosecutor in Victoria County, Texas[10]—a governmental office of public trust—by

---

several others.  *Id*.  The protests were internationally reported in various media.  Service of the
summons and complaint in the suit was upon the "Proud Boys" through Van Dyke. **Exhibit 6**.

[10]      **Exhibit 7**, pp. 2-3, a pleading Van Dyke signed and filed on December 19, 2019,
in Cause No. 4:19-CV-00786-SDJ-KPJ, ***Van Dyke v. Shackleford***; in the U.S. District Court for
the Eastern District of Texas; alleging Retzlaff "took responsibility for interfering with [Van
Dyke's] job offer to become an "assistant felony prosecutor with the Victoria County District
Attorney's Office"].

informing the Victoria County District Attorney that Van Dyke was a "lunatic" and "white nationalist" who "regularly gets into 'flame-wars' and disputes with random people on the internet."  (Doc. 1-2, ¶¶ 3.3, 4.10-4.13).  Retzlaff's speech regarding Van Dyke's suitability to be an assistant district attorney obviously regards Van Dyke as a public figure.  ***Pardo v. Simons***, 148 S.W.3d 181, 189 (Tex. App.—Waco 2004, no pet.).

10.     The rationale behind the public figure doctrine is that the public figure has reached such a level of prominence in the affairs of society that he is risking or inviting the spotlight of public attention and comment, or that he is attempting to influence resolution of issues involved in the controversy.  *See **Time, Inc. v. Firestone***, 424 U.S. 448, 453 (1976); ***Gertz***, 418 U.S. at 345.   The significance of Van Dyke's status as a public figure defamation plaintiff is that he must sufficiently allege Retzlaff's actual malice.   ***New York Times Co. v. Sullivan***, 376 U.S. 254, 279-80 (1964); ***Walker v. Beaumont Ind. Sch. Dist.***, 938 F.3d 724, 744-45 (5th Cir. 2019) (dismissing defamation claim under FED. R. CIV. P 12(b)(6) for failure to sufficiently plead malice).  Actual malice in this context does not mean bad motive or ill will.  ***Walker***, 938 F.3d at 744.  It means the statement was made with actual knowledge of its falsity or with reckless disregard for the truth.  *Id*.

11.     As shown below, Van Dyke fails to state a claim upon which relief can be granted.  Accordingly, the Court should dismiss his claims pursuant to FED. R. CIV. P 12(b)(6).

### III. ARGUMENT & AUTHORITIES

### A. What Can the Court Consider in Deciding Retzlaff's Motion to Dismiss Under Rule 12(b)(6)?

12.     To determine whether Van Dyke's claims survive Retzlaff's Rule 12(b)(6) motion to dismiss, information Court considers includes (i) facts set forth in the complaint; (ii) documents attached to the complaint; and (iii) matters of which judicial notice may be taken under FED. R. EVID. 201. *See Walker*, 938 F.3d at 735; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). The Court may judicially notice facts "determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference...." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts may judicially notice materials that show things said in the press and not offered for the truth of the matter asserted. *Staehr v. Harford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Benak v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 401 (3d Cir. 2006); *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991).

13.     Both above and below, Retzlaff has incorporated or appended exhibits reflecting such matters. Retzlaff does not ask the Court to base its decision on anything but what is properly within the Court's power to consider.

## B. When Should Claims Should Be Dismissed Under Rule 12(b)(6)?

14.     Federal rules authorize the filing of motions to dismiss asserting as a defense a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P 12(b)(6); **Walker v. Beaumont Ind. Sch. Dist**., 938 F.3d 724, 734 (5th Cir. 2019).  Thus, claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law." *Id*., citing **Neitzke v. Williams**, 490 U.S. 319, 326 (1989).  Dismissal under Rule 12(b)(6) also is warranted if the complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." **Walker**, 938 F.3d at 734, citing **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009) (quoting **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007).

> **Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—<u>but has not shown</u>—"that the pleader is entitled to relief."**

**Walker**, 938 F.3d at 734, citing **Iqbal**, 556 U.S. at 678 (quoting FED. R. CIV. P 8(a)(2)) [emphasis added].  Accordingly, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." **United States ex rel. Grubbs v. Kanneganti**, 565 F.3d 180, 186 (5th Cir. 2009).

15.     To survive a motion to dismiss, Van Dyke must set forth factual allegations sufficient to plausibly allege each element of the stated cause of action. **Iqbal**, 556 U.S. at 678.  These factual allegations must "'raise a right to relief above the speculative level.'"  **Twombly**, 550 U.S. at 555-56; *see also* **Walker**, 938 F.3d at 734-35; **Michel v. NYP Holdings, Inc.**, 816 F.3d 686, 694 (11th Cir. 2016).  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555, 557); *see also* *Turner v. Wells*, 879 F.3d 1254, 1273

(11th Cir. 2018) (rejecting "conclusory" allegations in defamation case).

16.     "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Twombly*, 550 U.S. at 555.  Factual allegations that are "merely consistent with a

defendant's liability stop short of the line between possibility and plausibility of

entitlement to relief," and thus are inadequate.  *Id*. (internal quotations omitted).

Rigorous application of the plausibility standard takes on particular importance in

cases arising from speech that implicates constitutional rights. In such cases "there

is a powerful interest in ensuring that free speech is not unduly burdened by the

necessity of defending against expensive yet groundless litigation" and because

"[f]orcing publishers to defend inappropriate suits through expensive discovery

proceedings in all cases would constrict th[e] breathing space" that is "needed to

ensure robust reporting on public figures and events."  *Michel*, 816 F.3d at 702.

17.     Such claims are also susceptible to early dismissal for another

reason: "[U]nlike in most litigation, in a libel suit the central event—the

communication about which suit has been brought—is ordinarily before the judge

at the pleading stage. He or she may assess it upon a motion to dismiss, firsthand

and in context." 2 Robert D. Sack, *Sack on Defamation* § 16.2.1 at 16-3 (5th ed.

2018).  Courts frequently dismiss defamation claims on a motion to dismiss where,

as here, an examination of the challenged statements, in the context in which they

were disseminated, demonstrates that the statements are not actionable as a matter of law.  *Id.*; *see also **Turner***, 879 F.3d at 1273 (rejecting "conclusory" allegations in defamation case and affirming dismissal because the challenged statements were non-actionable opinion).   Elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  ***Christopher v. Harbury***, 536 U.S. 403, 416 (2002).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." ***Papasan v. Allain***, 478 U.S. 265, 286 (1986).

18.    Below, Retzlaff examines in turn the three causes of action Van Dyke pleads in the SAC for deficiencies that require dismissal under FED. R. CIV. P 12(b)(6):

(i)    libel per se;

(ii)    intrusion upon seclusion; and

(iii)    tortious interference with existing contract.

Discussed separately under "libel per se" are Van Dyke's failure to adequately plead actual malice and failure to plausibly allege that the statements sued upon were reasonably capable of a defamatory meaning (because they were opinion or rhetorical hyperbole).

## C. Van Dyke Fails to State a Valid Claim for Libel Per Se

19.     To survive Retzlaff's Rule 12(b)(6) motion to dismiss Van Dyke's

defamation claim, Van Dyke must plead the following elements:

(i)     publication of a false statement of fact to a third party;

(ii)    the statement must concern the plaintiff and be defamatory;

(iii)   the publication must be made with the requisite degree of fault; and

(iv)    the publication must cause damages.

*Walker*, 938 F.3d at 743, citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).

These elements require other showings that Van Dyke fails to sufficiently plead.

### 1. Van Dyke Fails to Sufficiently Plead Actual Malice

20.     In *Walker*, the Fifth Circuit held a defamation plaintiff's complaint

failed to sufficiently plead actual malice.  *Walker*, 938 F.3d at 745.  The complaint

alleged that the defendants "acted with actual malice, knowledge, negligence

and/or recklessness as to the truth of [the] statements." *Id*., at 744.  The complaint

also alleged defendants were "fully aware of the falsity of their statements but

continued making them." *Id*., at 745.  The *Walker* court held this was not enough.

> **Such scant assertions are insufficient to allow the court to infer more
> than the mere possibility of misconduct.**

*Walker*, 938 F.3d at 745.  Van Dyke's complaint is even more scant.  The *entirety*

of Van Dyke's malice pleading is his legal conclusion that Retzlaff was "acting

with actual malice."  (SAC ¶ 6.5).  The Court should dismiss Van Dyke's libel

claim under Rule 12(b)(6) for failure to sufficiently plead malice.

### 2. Van Dyke's Complaints About Retzlaff's Opinions and Rhetorical Hyperbole Fail to State a Valid Claim for Libel Per Se

20.     Van Dyke sues for libel per se.  (SAC ¶¶ 6.2-6.8).  "Libel" is "defamation expressed in written or other graphic form that tends to … injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or to impeach any person's honesty, integrity, virtue, or reputation…." TEX. CIV. PRAC. & REM. CODE § 73.001.  Libel is defamatory per se if, on its face, the statement falls into this statutory definition.  *Gartman v. Hedgpeth*, 157 S.W.2d 139, 140-41 (Tex. 1941).  Libel is also defamatory per se if it (i) injures a person in his office, profession, occupation;[11] (ii) imputes a crime;[12] or (iii) imputes a loathsome disease;[13] or (iv) imputes sexual misconduct.[14]  *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018), *cert. denied*, 139 S.Ct. 1216 (2019).[15]

21.     At first blush, the statements Van Dyke alleges Retzlaff published appear to fall within the definition of libel per se—that Van Dyke is a "Nazi," has "the look of a pedophile," is a "drug addict," has a criminal record for abusing women, has committed "professional misconduct" against Retzlaff, and is "clearly

---

[11]     *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017).
[12]     *D. Mag. Partners v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017).
[13]     *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14ᵗʰ Dist.  2013, no pet.).
[14]     *Memon*, 401 S.W.3d at 421.
[15]     In *Tatum*, the Texas Supreme Court presented a new, comprehensive framework for courts to use when evaluating defamation claims.   Courts historically used the terms "defamation per se" and "defamation per quod" to classify types of defamatory statements by their defamatory nature and the nature and type of proof required to establish damages.   In *Tatum*, the court limited the use of those terms to the damages issue and introduced new terms for courts to use when evaluating a statement's defamatory nature.

a mentally retarded person."  (SAC, ¶¶ 5.21, 6.2.)   But this does not end the Court's inquiry—not by a long shot.   The Court must determine whether each statement was reasonably capable of a defamatory meaning.  *Tatum*, 554 S.W.3d at 625.   This is a question of law that uses an objective standard.  *Id*. at 637.   The Court must consider the type of defamation alleged and whether the statement was ambiguous.  *Id*., at 631-32.

22.    A statement incapable of being proved true or false cannot be the basis of a defamation action.  *See, e.g.*, *Harvest House Publ'rs v. Local Ch*., 180 S.W.3d 204, 211 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (whether labeling a church as a "cult" is defamatory depends on religious beliefs).  Because the First Amendment allows only provably *false* statements to be potentially actionable as defamation, subjective characterizations and opinions cannot give rise to a valid claim as a matter of law.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990).  And even when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it is made' discloses that it is merely an opinion masquerading as fact."  *Tatum*, 554 S.W.3d at 639. "Even if susceptible to verification, [statements] do not expose the speaker to liability if their entire context discloses that they were not intended to assert a fact."  *Castleman v. Internet Money Ltd.*, 2018 WL 5093857, at *5 (Tex. App.—Amarillo 2018, pet. denied).  Statements not intended to assert a fact "are 'called an opinion.'" *Id.*

23.     "Both the U.S. Constitution and the Texas Constitution 'robustly protect freedom of speech.'"  ***Tatum***, 554 at 624.  "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."  ***Gertz v. Robert Welch, Inc.***, 418 U.S. 323, 340 (1974). The "Texas Supreme Court has repeatedly recognized that the Texas Constitution provides greater rights of expression than its federal equivalent." ***Dolcefino v. Turner***, 987 S.W.2d 100, 110-111 (Tex. App. 1998) (collecting cases).  The Texas Constitution *expressly* protects opinions:

> **Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.**

Tex. Const. art. I, § 8.

24.     In ***Greenbelt Cooperative Publishing Assn., Inc. v. Bresler***, 398 U.S. 6, (1970), a developer, Bresler, was negotiating with the city for a variance on certain of his land, while also negotiating on other land the city wanted to buy from him. A newspaper reported that some persons characterized his negotiating position as "blackmail."  Bresler sued for libel, claiming the articles imputed to him the crime of blackmail. *Id*. at 8. The Court held: "[A]s a matter of constitutional law, the word 'blackmail' in these circumstances was not slander when spoken, and not libel when reported in the Greenbelt News Review." *Id.* at 13. "It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it

was Bresler's public and wholly legal negotiating proposals that were being criticized." *Id.* at 14.

25.     The ***Bresler*** court further held:

> **No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense.  On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable.**

*Id.*; *see also **Hustler Magazine, Inc. v. Falwell***, 485 U.S. 46, 50 (1988) (First Amendment precluded recovery in state action for ad which "could not reasonably have been interpreted as stating actual facts about the public figure involved"); ***Letter Carriers v. Austin***, 418 U.S. 264 (1974) ("List of Scabs" in union newsletter, together with pejorative definition of "scab" using words like "traitor," held not to support a defamation action under labor law since terms were used "in a loose, figurative sense" and were "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members").

26.     "Rhetorical hyperbole" is "extravagant exaggeration … [used] for rhetorical effect."  ***Backes v. Misko***, 486 S.W.3d 7, 26 (Tex. App.—Dallas 2015, pet. denied) (internal quotation omitted).  "For example, the use of 'rewarding,' 'ripping off,' and 'bilking' when reviewed in context have been considered rhetorical hyperbole."  *Id.* (citing ***Rehak Creative Services, Inc. v. Witt***, 404 S.W.3d 716, 729 (Tex. App.—Houston [14th Dist. 2013, *disapproved on other grounds, **In re Lipsky***, 460 S.W.3d 579 (Tex. 2015)).

27.     "Context is important." **Rehak**, 404 S.W.3d at 729. "[P]ublications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor…." *Id.* "This is also true in determining whether a publication is an actionable statement of fact or a constitutionally protected expression of opinion." **Bentley v. Bunton**, 94 S.W.3d 561, 579 (Tex. 2003). "The statements … must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." **Ezrailson v. Rohrich**, 65 S.W.3d 373, 376 (Tex. App.—Beaumont 2001, no pet.).

28.     A communication is viewed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it. **Turner v. KTRK Television, Inc**., 38 S.W.3d 103, 114 (Tex. 2000). Falsity is determined based on "the meaning a reasonable person would attribute to a publication, and not to a technical analysis of each statement." **New Times, Inc. v. Isaacks**, 146 S.W.3d 144, 154 (Tex. 2004). The irreverent tone and format of the "BV Files" blog Van Dyke accuses Retzlaff of authoring[16] "notifies readers to expect speculation and personal judgment." *See* **Milkovich**, 110 S.Ct. at 2712 (Brennan, J., dissenting). It is "pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage." *Id*. The language is "loose and figurative," not precise and literal, and is "employed as a metaphor or hyperbole, not to convey actual facts." **Yiamouyiannis v. Thompson**, 764 S.W.2d 338,

339-40 (Tex. App.—San Antonio 1988, writ denied), *cert. denied*, 110 S.Ct. 722 (1990).  The court held, "[R]eferences to [plaintiff] as a quack, a hoke artist, and a fearmonger are assertions of pure opinion, as are the statements that he was exposed for quackery, lacks solid credentials, and expresses incomprehensible mumbo jumbo." *Id*. at 341.

> **These terms of derision, considered in context and in light of the fluoridation debate, are vintage hyperbole and … the speaker's shorthand way of opining [plaintiff] is not worthy of belief, his views are confused nonsense, and he is not qualified to instruct the public about fluoridation.**

*Id*.  "While other commentators might have taken a more ratiocinative approach, [defendant] was entitled to use instead these particular terms of invective in this context." *Id.*  "As to each of these utterances, the absolute constitutional privilege applies…." *Id.* at 341.

29.    The blog statements Retzlaff allegedly published upon were not "hard news" like that printed on the front page of a newspaper or in a full-length scholarly article or book.  *See Milkovich*, 497 U.S. at 32 ("Certain formats … signal the reader to anticipate a departure from what is actually known by the author as fact"); *see also e.g.*, *Gardner v. Martino*, 563 F.3d 981, 988 (9th Cir. 2009) ("elements that would reduce the audience's expectation of learning an objective fact [include]: drama, hyperbolic language, an opinionated and arrogant host [speaker] and heated controversy").  Such elements are scattered liberally across the "BV Files" blog.  For example:

---

[16]    *See* SAC Exhibits "C" and "D."

> **So why does Bob Karlseng give money and economic support to Nazis? And what do each and every one of the corporate clients of Maverick Title of Texas LLC dba Texas Title Company think about their monies going into the pocket of a racist ass-hat who likes to post ridiculous stuff on the interwebs?  That, our teeming MILLIONS of readers, listeners, and supporters will be the subject of an upcoming article.  STAY TUNED!**
>
> **We here at the BV Files have a very special message for Denton, TX, attorney Jason Lee Van Dyke:**
>
> **Go Fuck Yourself Jason Van Dyke.  Woof, bitch!**

SAC, Exhibit "D," pp. 9-10.  The blog shows a red flashing siren saying "Upset Alert" and a block in a child-like scrawl stating, "Now, On With the Show!"  *Id.* Of particular relevance to whether the blog presents "statements of fact" is this:

> *ALL CONTENT ON THIS BLOG, BEING A MIXTURE OF PARODY, SATIRE, AND LAME HUMOR, IS FOR ENTERTAINMENT PURPOSES ONLY AND NOT TO BE TAKEN SERIOUSLY. WHEN IT COMES TO PARODY, THE LAW REQUIRES A REASONABLE READER STANDARD, NOT A "MOST GULLIBLE PERSON ON FACEBOOK" STANDARD. THE FIRST AMENDMENT DOES NOT DEPEND ON WHETHER EVERYONE IS IN ON THE JOKE. NEITHER IS IT BOTHERED BY PUBLIC DISAPPROVAL, WHETHER TEPID OR RED-HOT.*[17]

30.     Given this context, Van Dyke fails to state a claim for libel per se upon which the Court may grant relief.  The blog statements are nonactionable statements of opinion or rhetorical hyperbole that no reasonable person of ordinary intelligence would believe were stating facts about Van Dyke.  The Court should dismiss Van Dyke's libel claim pursuant to FED. R. CIV. P 12(b)(6).

---

[17]     **Exhibit 8**, a portion of the "BV Files" website misleadingly omitted from Van Dyke's partial attachments to the SAC.  This language can be viewed by any visitor by clicking the "About" button.  *See* http://www.viaviewfiles.net/about/, last accessed January 3, 2020.

## **D. Van Dyke Fails to State a Valid Claim for Intrusion Upon Seclusion**

31.     Van Dyke's formbook recitation of the elements of a claim for intrusion upon seclusion (SAC ¶¶ 6.9-6.11) provides no facts showing how Retzlaff allegedly committed this tort except to allege that Retzlaff "contacted [Van Dyke's] private employer for the purpose of having [Van Dyke's] employment terminated."   Actionable "intrusion" has been held to include wiretapping,[18] putting a camera in plaintiff's bedroom without permission,[19] making harassing phone calls,[20] entering a home without permission,[21] and searching an employee's personal locker and her purse.[22]   If the intrusion involves a public place or public matters, the defendant is not liable.   *See, e.g.*, ***Floyd v. Park Cities People, Inc.***, 685 S.W.2d 96, 97-98 (Tex. App.—Dallas 1985, no writ). No authority supports an "intrusion upon seclusion" by making written comments about a person's qualifications or fitness to be a Texas lawyer or to be employed in a particular job.

32.     Van Dyke fails to state a claim for intrusion upon seclusion upon which the Court can grant relief.   The Court should dismiss this claim pursuant to FED. R. CIV. P 12(b)(6).

---

[18]     ***Billings v. Atkinson***, 489 S.W.2d 858, 860 (Tex. 1973).
[19]     ***Clayton v. Richards***, 47 S.W.3d 149, 156 (Tex. App.—Texarkana 2001, pet. denied).
[20]     ***Household Credit Servs. v. Driscoll***, 989 S.W.2d 72, 84-85 (Tex. App.—El Paso 1998, pet. denied).
[21]     ***Gonzales v. Southwestern Bell Tel. Co.***, 555 S.W.2d 219, 222 (Tex. App.—Corpus Christi 1977, no writ).
[22]     ***K-Mart Corp. v. Trotti***, 677 S.W.2d 632, 637-38 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

### E. Van Dyke Fails to State a Valid Claim for Tortious Interference With Existing Contract

33.     To sufficiently state a claim for tortious interference with an existing

contract, Van Dyke must plead:

(i)     Van Dyke had a valid contract;

(ii)    Retzlaff willfully and intentionally interfered with the contract;

(iii)   Retzlaff's interference proximately caused Van Dyke's injuries; and

(iv)    Van Dyke incurred actual damage or loss.

*Walker*, 938 F.3d at 749, citing *Butnuru v. Ford Motor Co*., 84 S.W.3d 198, 207

(Tex. 2002).  Van Dyke must plead that "some obligatory provision of a contract

has been breached." *Walker*, 938 F.3d at 749, citing *Better Bus. Bureau of*

*Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361 (Tex.

App.—Houston [1st Dist.] 2013, pet. denied).

34.     Van Dyke failed to allege that Retzlaff induced or caused another

party to breach its contract with Van Dyke. *John Paul Mitchell Sys. v. Randall's*

*Food Markets, Inc*., 17 S.W.3d 721, 730-31 (Tex. App.—Austin 2000, pet.

denied).  Inducing a party to do what it had a right to do does not constitute

tortious interference. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430

(Tex. 1977).  The Texas Supreme Court has strongly implied that an at-will

employment contract is incapable of being interfered with.  *See El Paso*

*Healthcare Sys. v. Murphy*, 518 S.W.3d 412, 422 (Tex. 2017) (at-will employee

of medical practice did not establish that hospital interfered with her employment

by asking medical practice not to schedule her for any shifts because the medical practice was not required to schedule her for any shifts at all).   There is no indication in Van Dyke's complaint that the contract Retzlaff allegedly interfered with was anything other than at-will employment.

35.     Furthermore, a defendant must have actual knowledge of a contract in order to interfere with it.   ***Frost Nat'l Bank v. Alamo Nat'l Bank***, 421 S.W.2d 153, 156 (Tex. App.—San Antonio 1967, writ ref'd n.r.e.).   Van Dyke does not allege that Retzlaff subjectively knew of any "contract" with Van Dyke's employer, much less induce its breach.   The failure to plead a breach of contract requires dismissal under Rule 12(b)(6).

> **[Plaintiff] does not identify an actual breach of the contract.   Rather, his actual complaint appears to be that his contract was not renewed at the end of its term.**

***Walker***, 938 F.3d at 749.   Van Dyke pleads only that Retzlaff's interference caused "the loss of [Van Dyke's] employment by KLR."   (SAC ¶ 6.13).   This is not enough.

36.     Van Dyke fails to state a claim for tortious interference with existing contract upon which the Court can grant relief.   The Court should dismiss this claim pursuant to FED. R. CIV. P 12(b)(6).

## IV. CONCLUSION

37.     Van Dyke's complaint does not contain sufficient factual matter, accepted as true, to plausibly allege each element of his claims for libel per se, intrusion upon seclusion, and tortious interference with existing contract. *Walker*, 938 F.3d at 734, citing *Iqbal*, 556 U.S. at 678.   Van Dyke's scant and conclusory factual allegations do not "'raise a right to relief above the speculative level.'" *Twombly*, 550 U.S. at 555-56; *see also Walker*, 938 F.3d at 734-35.   Van Dyke's allegations are "merely consistent with [Retzlaff's] liability."   *Twombly*, 550 U.S. at 555.   They "stop short of the line between possibility and plausibility of entitlement to relief," and thus are inadequate.  *Id*.

## V. PRAYER

38.     For these reasons, Retzlaff prays that the Court dismiss with prejudice Van Dyke's claims for libel per se, intrusion upon seclusion, and tortious interference with existing contract for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P 12(b)(6).   Retzlaff prays the Court grant him such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

**HANSZEN ✦ LAPORTE**

By: _____/s/ Jeffrey L. Dorrell_____

**JEFFREY L. DORRELL**
State Bar No. 00787386
Federal ID # 18465
jdorrell@hanszenlaporte.com
**ANTHONY L. LAPORTE**
State Bar No. 00787876
alaporte@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT TOM RETZLAFF**

## CERTIFICATE OF SERVICE

       I certify that on _____1-3_____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

       Mr. Jason Lee Van Dyke
       Plaintiff, Pro Se
       108 Durango Drive
       Crossroads, Texas 76227
       Telephone: 469-964-5346
       FAX: 972-421-1830
       jasonleevandyke@gmail.com


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**