### IN THE UNITED STATES DISTRICT FOR THE
### EASTERN DISTRICT OF TEXAS,
### SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON LEE VAN DYKE**, | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **THOMAS CHRISTOPHER** | § | **NO. 4:18-CV-247-ALM** |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a BV FILES, VIA** | § | |
| **VIEW FILES, L.L.C., and VIAVIEW** | § | |
| **FILES,** | § | |
| *Defendants* | § | |

## RETZLAFF'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Defendant Thomas Retzlaff files this response in opposition to plaintiff Jason Van Dyke's *most recent* motion for leave (Doc. 112) to file the *most recent* iteration of Van Dyke's third amended complaint (Doc. 113).

### I. PROCEDURAL BACKGROUND

1.     As of the date of this response, Van Dyke has filed three different motions for leave to amend his pleadings (Doc. 87, 89, and 112), accompanied by three different pleadings, *all* denominated "third amended complaint:"

(i)     Doc. 87-1 (Filed July 8, 2019);

(ii)    Doc. 90 (Filed July 8, 2019); and

(iii)   Doc. 113 (Filed January 14, 2020).

Retzlaff previously responded (Doc. 92) to Van Dyke's 2019 motions and does not do so again here.  Retzlaff here responds only to Van Dyke's most recent motion (Doc. 112) and most recent "third amended complaint" (Doc. 113).

2.     On December 3, 2018, Van Dyke moved for "court-ordered dismissal" of his own claims and causes of action and withdrew all of his pending motions.  (Doc. 84.)  Van Dyke stated the grounds for dismissal with this:

> **Plaintiff wishes to dismiss this lawsuit because he is of the opinion that, short of locking [Retzlaff] in a prison cell for the rest of his natural life, there is nothing this or any other court can do that will stop Defendant from continuing to harass plaintiff.**

(Doc. 84, ¶ 6.)  Van Dyke advised the Court he had "no opinion" on whether the dismissal ought to be with or without prejudice.  (*Id*., ¶ 9.)  Retzlaff joined Van Dyke's motion.  (Doc. 85.)   As of this filing, the Court has not yet ruled on the parties' joint motion.  <u>Obviously, if the Court grants the motion, this case would be terminated</u>. Yet, Van Dyke has been allowed to proceed with his baseless case for another 14 months since moving to dismiss it—and has recently launched a new round of motion practice intended to punish Retzlaff by exhausting his resources.

3.     Shortly after Van Dyke moved for dismissal (Doc. 84), Van Dyke's self-described frustration precipitated a torrent of remarkably abusive communications to Retzlaff.  On December 12, 2018, Van Dyke e-mailed Retzlaff:

> **Go fuck yourself and what's left of your miserable life. You have destroyed my life, and for that offense, you will pay with your own. That's not a threat. That's a PROMISE motherfucker.**

**Exhibit 1.**  Van Dyke sent a second e-mail to Retzlaff stating:

> **I promise you this motherfucker: If my law career dies, you die with it.**

*Id.*  These communications were sent over Van Dyke's law firm signature block, which even contains his photograph.

4. Incredibly, Van Dyke even sent copies of his murder threats to:

- Retzlaff's undersigned counsel;

- the Texas State Bar prosecutor (Kristin Brady);

- the chief disciplinary counsel of the state bar (Linda Acevedo);

- two news reporters; and

- FBI special agent Walker Wicevich.

Not surprisingly, a warrant was issued for Van Dyke's arrest. *Id.* Van Dyke was charged with felony obstruction of justice and retaliation against a witness. *Id.* And yet, Van Dyke blames the destruction of his career on *Retzlaff*—revenge against whom Van Dyke has made his singular preoccupation and abiding concern.

5. Seven months after moving to dismiss his claims, the mercurial Van Dyke changed his mind. After Retzlaff filed several criminal complaints and so-called "frivolous" grievances with state bar disciplinary authorities in multiple jurisdictions—most of which resulted in criminal prosecutions, professional discipline, or suspension[1]—Van Dyke retaliated by trying to "undismiss" the claims sought to be extinguished in the parties' joint dismissal motion. (Doc. 84.) On July 7, 2019, Van Dyke filed a "motion for withdrawal of dismissal motion." (Doc. 86.) Retzlaff opposed. (Doc. 94.) As of the date hereof, the Court had not ruled on Van Dyke's motion to "undismiss" his dismissal.

---

[1] *See* **Exhibits 1, 5, 8-12, 17, 19, and 21.**

## II. ARGUMENT & AUTHORITIES

### A. Undue Delay

6.      A court may deny leave to amend if the record shows undue delay.
*Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Southmark Corp.*, 88 F.3d 311,
315-16 (5th Cir. 1996) (court may consider whether facts in the live complaint
were known to the party when it was filed).  Van Dyke has known most of the
"facts" allegedly giving rise to Van Dyke's proposed third amended complaint
(Doc. 113) (the state bar grievances and the alleged "stalking" and "harassment"
by "blog postings") for over 12 months.  In fact—in addition to being included in
earlier versions Van Dyke's third amended complaint (Docs. 87-1 and 90) filed in
July 2019, they were the subject of two lawsuits Van Dyke filed against Retzlaff
in Arizona over one year ago:

(i)     No. CV-2018-01856; *Van Dyke v. Retzlaff*; in the Superior Court of
Maricopa County, Arizona (filed November 7, 2018); and

(ii)    No. 2:18-CV-04003; *Van Dyke v. Retzlaff*; in the U.S. District Court
for Arizona (filed on November 8, 2018).

Exhibits 2, 3.  Both suits were resolved in Retzlaff's favor.  Exhibit 4.

7.      The Court should not allow Van Dyke to make the Court his
unwitting accomplice in gleefully filing the same claims over and over, in a series
of lawsuits and complaints in two states.  These have been filed, disposed against
Van Dyke, refiled in different forums, amended, amended again, withdrawn,
"unwithdrawn," and are now brought anew as though none of the rest of this
chaotic legal flailing had ever occurred.

## B. Bad Faith

8.     A court may deny leave to amend if a party makes the motion in bad faith or with dilatory motive.  *Foman* 371 U.S. at 182; *Optivus Tech., Inc. v. Ion Beam Applications S.A.,* 469 F.3d 978, 993 (Fed. Cir. 2006).  As noted above, most of the allegations in the *latest* proposed third amended complaint (Doc. 113) were the subject of two previous legal actions.  Proposing to amend them once again is intended to retaliate against Retzlaff for exercising his constitutional rights of free speech and to petition.

## C. Futility

9.     A court may deny leave to amend if the amendment is futile. *Foman*, 371 U.S. at 182; *Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 4-5 (1st Cir. 2013).  An amendment is futile if the amended complaint would not withstand a motion to dismiss.  *See National Wrestling Coaches Ass'n v. Department of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004), *overruled on other grounds*, *Perry Capital LLC v. Mnuchin*, 848 F.3d 1072 (D.C. Cir. 2017).  The new requests for relief in Van Dyke's proposed third amended complaint (Doc. 113) would clearly not withstand a motion to dismiss under FED. R. CIV. P. 12(b)(6).  Retzlaff briefs six reasons for this below, including (i) Van Dyke's failure to comply with the Defamation Mitigation Act; (ii) the shield of the Communications Decency Act; (iii) Van Dyke's failure to state a claim for malicious prosecution; (iv) the unconstitutionality of prior restraints on speech; and (v) Retzlaff's judicial communications immunity.

<u>1. Van Dyke Cannot Maintain His Libel Suit Because He Failed to Comply With the Defamation Mitigation Act</u>

10.     Even assuming Retzlaff is the owner and author of the "BV Files" blog, Van Dyke cannot maintain his libel suit against Retzlaff because Van Dyke failed to make a timely pre-suit demand for retraction, correction, or clarification as required by TEX. CIV. PRAC. & REM. CODE § 73.055(d)(3).   Without having made such a request, Van Dyke may not state a claim for defamation.   *See **Tubbs v. Nicol***, 675 Fed.App'x. 437, 439 (5th Cir. 2017).

<u>2. Retzlaff is Immune Under § 230 of the Communications Decency Act for Van Dyke's Claims Based on the Blog's User Comments</u>

11.     Even assuming Retzlaff is the owner and author of the "BV Files" blog, he cannot be liable to Van Dyke for statements made by others on that blog.

> **No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.**

47 U.S.C. § 230.  The statute shields bloggers who act as intermediaries by hosting comments on their blogs.   *See **Green v. America Online (AOL)***, 318 F.3rd 465, 471(3rd Cir. 2003).  Bloggers are not liable for comments left by readers, the work of guest bloggers, or tips sent via email. This legal protection holds even if a blogger is aware of the objectionable content or makes editorial judgments. ***La'Tiejira v. Facebook, Inc***., 272 F.Supp. 981, 993-94 (S.D.Tex. 2017).

12.     Van Dyke proposes to sue for "comments" hosted by the "BV Files" blog.  (Doc. 113, ¶ 5.28.)  These also figure prominently in Van Dyke's request for injunctive relief.  (Doc. 114, ¶¶ 5, 6, 8, and 9.)  Retzlaff cannot be liable for these.

<u>3. Retzlaff Cannot Be Liable for "Malicious Prosecution" Because Retzlaff Did Not "Initiate" Van Dyke's Criminal Prosecution</u>

13.     Van Dyke seeks leave to plead a new cause of action for "malicious prosecution."  (Doc. 113, ¶¶ 6.31-37.)[2]   A defendant "initiates" a criminal prosecution by making a formal charge to law enforcement authorities.   A defendant does *not* "initiate" criminal proceedings when the complaint was executed by a police officer and the charging instrument was filed by the prosecutor.  ***Gonzalez v. Grimm***, 479 S.W.3d 929, 936-37 (Tex. App.—El Paso 2015, no pet.).   The affidavit initiating Van Dyke's criminal prosecution was signed by Oak Point Chief of Police Michael Shackleford on January 10, 2019.  Exhibit 1.   Indeed, in 2019, Van Dyke sued Shackleford for malicious prosecution for this *very act*.  *See* No. 19-CV-00786; ***Van Dyke v. Shackleford***; in the U.S. District Court for the Eastern District of Texas (Sherman Division).  Now, Van Dyke seeks to fracture his malicious prosecution claim into two suits, suing Shackleford in one suit and Retzlaff in the other—a tactic Van Dyke has used against Retzlaff before. *See* ¶ 6 above, Exhibit 2, 3.   Van Dyke's proposed new malicious prosecution claim against Retzlaff would not survive a motion to dismiss.

---

[2]     Although Van Dyke pleads that the malicious criminal prosecution complained of was commenced "on January 11, 20**20**," (Doc. 113, ¶ 6.31) the arrest actually took place on January 11, 20**19**.  Exhibit 1.

### 4. Van Dyke's Requested Prior Restraint on Retzlaff's Future Speech Would Be Unconstitutional

14.    A hallmark of free speech under both the U.S. and Texas Constitutions is the maxim that prior restraints are a heavily disfavored infringement of that right.  ***Kinney v. Barnes***, 443 S.W.3d 87, 87 (Tex. 2014).

> **So great is our reticence to condone prior restraints that we refuse to allow even unprotected speech to be banned if restraining such speech would also chill a substantial amount of protected speech.**

*Id*.  Enshrined in the Texas Constitution since 1836,[3] the fundamental "liberty to speak, write, or publish" one's opinions recognizes the "transcendent importance of such freedom to the search for truth, the maintenance of democratic institutions, and the happiness of individual men."  TEX. CONST. art. I, § 8 interp. commentary (West 2007).

15.    The Texas Supreme Court has long held that—while abuse of the right to speak subjects the speaker to proper penalties—"'pre-speech sanctions' are presumptively unconstitutional."  ***Kinney***, 443 S.W.3d at 87, quoting ***Davenport v. Garcia***, 834 S.W.2d 4, 9 (Tex. 1992).  The First Amendment of the U.S. Constitution is also suspicious of prior restraints, which include judicial orders "forbidding certain communications" that are "issued in advance of the time that such communications are to occur."  ***Alexander v. United States***, 509 U.S. 544, 550 (1993) (citation and internal quotation marks omitted).  The U.S. Supreme Court has long recognized that "prior restraints on speech and

publication are the most serious and the least tolerable infringement on First Amendment rights." ***Neb. Press Ass'n v. Stuart***, 427 U.S. 539, 559 (1976); *see also id*. As such, they "bear[] a heavy presumption against [their] constitutional validity." ***Bantam Books, Inc. v. Sullivan***, 372 U.S. 58, 70 (1963). This cornerstone of First Amendment protections has been reaffirmed time and again by the U.S. Supreme Court,[4] the Texas Supreme Court,[5] Texas courts of appeals,[6] legal treatises,[7] and even popular culture.[8] As the Texas Supreme Court reaffirmed in 2014:

> **We have squarely held that a temporary injunction prohibiting allegedly defamatory speech is an unconstitutional prior restraint….**

***Kinney***, 443 S.W.3d at 87.

16. "The traditional rule of Anglo-American law is that equity has no jurisdiction to enjoin defamation." Chemerinsky, 57 SYRACUSE L. REV. at 167 (explaining that the rule dates back to eighteenth-century England and was

---

[3]     *See* TEX. CONST. art. I, § 8. The provision as currently worded dates back only to 1876, but a similar provision was part of the 1836 Texas Independence Constitution. ***Davenport v. Garcia***, 834 S.W.2d 4, 7-8 (Tex. 1992).

[4]     *See, e.g., Stuart*, 427 U.S. at 561 ("[I]t is … clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); ***N.Y. Times Co. v. United States***, 403 U.S. 713, 714 (1971) (per curiam).

[5]     ***Davenport***, 834 S.W.2d at 9; ***Hajek v. Bill Mowbray Motors, Inc.***, 647 S.W.2d 253, 255 (Tex. 1983) (per curiam).

[6]     ***Tex. Mut. Ins. Co. v. Sur. Bank, N.A.***, 156 S.W.3d 125, 128 (Tex. App.—Fort Worth 2005, no pet.) ("[P]rior restraints on speech are presumptively unconstitutional."); ***San Antonio Express-News v. Roman***, 861 S.W.2d 265, 267 (Tex. App.—San Antonio 1993, orig. proceeding) (per curiam).

[7]     *See* Chemerinsky, *Injunctions in Defamation Cases*, 57 SYRACUSE L. REV. 157, 173 (2007) ("[N]ever in the 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case…"); A. Siegel, *Injunctions for Defamation, Juries, and the Clarifying Lens of 1868*, 56 BUFF. L. REV. 655, 656 (2008).

adopted "with remarkable uniformity" by nineteenth- and twentieth-century American courts). United States federal courts also so hold.

> [T]he maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law.

*See **Kramer v. Thompson***, 947 F.2d 666, 677 (3d Cir. 1991). The Texas Supreme Court's treatment of the temporary injunctions in ***Ex parte Tucker***[9] and ***Hajek***[10] and its recent decision in ***Kinney*** leave no doubt that Texas law is in accord with the traditional rule with regard to future speech. The injunction plaintiff seeks would be unconstitutional and void. The proposed amendment is futile.

### 5. Retzlaff's Filing of Grievances and Criminal Complaints Against Van Dyke is Protected by the Judicial or Quasi-Judicial Communications Privilege

17.     Under the judicial communications privilege, statements made in the due course of judicial proceedings cannot serve as the basis of civil actions for libel or slander, regardless of the negligence or malice with which the statements may have been made. ***James v. Brown***, 637 S.W.2d 914, 916 (Tex. 1982); ***Johnson-Todd v. Morgan***, 480 S.W.3d 605, 610 (Tex. App.—Beaumont 2015, pet. denied). This privilege is properly understood as an immunity, and extends to statements made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceedings, including in any pleadings or other papers filed in a case. ***James***, 637 S.W.2d at 916-17.

---

[8]     THE BIG LEBOWSKI (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint.").
[9]     220 S.W. 75, 76 (Tex. 1920).
[10]    647 S.W.2d 253, 255 (Tex. 1983).

18.    The judicial communications privilege extends to quasi-judicial proceedings and other instances in which the benefit to the general public outweighs the potential harm to an individual.  ***Bird v. W.C.W.,*** 868 S.W.2d 767, 771 (Tex. 1994).  A quasi-judicial proceeding is any proceeding, "conducted by a governmental executive officer, board, or commission that has the authority to hear and decide the matters coming before it or to redress the grievances of which it takes cognizance."  ***5-State Helicopters, Inc. v. Cox***, 146 S.W.3d 254, 257 (Tex. App.—Fort Worth 2004, pet. denied).

> **The public policy behind the application of the absolute privilege to judicial proceedings is that the administration of justice requires full disclosure from witnesses, unhampered by fear of retaliatory suits for defamation. Similarly, the rationale for extending the absolute privilege to statements made during quasi-judicial proceedings rests in the public policy that every citizen should have the unqualified right to appeal to governmental agencies for redress without the fear of being called to answer in damages and that the administration of justice will be better served if witnesses are not deterred by the threat of lawsuits**. **The absolute privilege is intended to protect the integrity of the process and ensure that the quasi-judicial decision-making body gets the information it needs.**

***5-State Helicopters, Inc.***, 146 S.W.3d at 256-57 citing ***James***, 637 S.W.2d at 916-17; ***Attaya v. Shoukfeh***, 962 S.W.2d 237, 239 (Tex. App.—Amarillo 1998, pet. denied).

19.    The absolute quasi-judicial privilege applies to communications sent in anticipation of proposed quasi-judicial proceedings, as well as communications made in existing quasi-judicial proceedings.  ***5-State Helicopters, Inc.***, 146 S.W.3d at 256-57, citing ***James***, 637 S.W.2d 9 at 916-17).  Retzlaff's complaints are communications made in anticipation of judicial or quasi-judicial proceedings.

Accordingly, such communications are absolutely privileged and cannot form the basis of plaintiff's defamation or tortious interference allegations.

20.     Plaintiff's claims of libel and tortious interference are based on *absolutely* privileged quasi-judicial communications.  Because Retzlaff can prove the affirmative defense of privilege, the Court will be obliged to dismiss plaintiff's claims. ***Johnson-Todd***, 480 S.W.3d at 610.  Therefore, the proposed amendment is futile.

### 6. Retzlaff's Grievances and Criminal Complaints Against Van Dyke Are Protected by the Absolute Defense of Truth

21.     The following exhibits appended to this response show that Retzlaff's disciplinary grievances and criminal complaints against plaintiff—while plaintiff may well experience them as "harassing"—have resulted in multiple disciplinary actions and criminal proceedings against Van Dyke.  Therefore, independent judicial or quasi-judicial agencies have obviously considered Retzlaff's complaints meritorious, not "frivolous."  In many instances, Van Dyke has actually *admitted* to the violations under oath, establishing their truth.  And as also shown by the following exhibits, Retzlaff has hardly been the sole originator of actions against Van Dyke:

   a.     **Exhibit 5** is a State Bar disciplinary petition filed against Van Dyke in Case No. 2017-07583 based upon 17 different threats of violence or murder against Retzlaff and his family.

   b.     **Exhibit 6** is the State Bar disciplinary petition filed against plaintiff in Case No. 2017-06276, based upon threats of violence and the filing of false police reports by plaintiff against Dallas dentist Dr. Ryan Daniel, whom Van Dyke was suing in state court.

c.      **Exhibit 7** is a December 28, 2018, agreed disciplinary judgment and order of suspension signed by Van Dyke in the Daniel case in which Van Dyke *admitted* making threats and false police reports.

d.      **Exhibit 8** is a February 21, 2019, agreed Texas State Bar disciplinary judgment and order of suspension signed by Van Dyke in the December 2017 Retzlaff grievance case in which Van Dyke admitted to making **numerous** threats of violence and murder against Retzlaff.  Van Dyke is under an indefinite suspension by the Texas State Bar as a result.

e.      **Exhibit 9** is the Colorado Supreme Court's March 4, 2019, disciplinary judgment against plaintiff in Case # 19PDJ021.

f.      **Exhibit 10** is a June 10, 2019, order to show cause why Van Dyke should not be immediately suspended by the Colorado Supreme Court in Case No. 2019-SA-121 based upon Retzlaff's complaint.

g.      **Exhibit 11** is a May 6, 2019, Stipulation & Agreement filed in Colorado Supreme Court Disciplinary Case No. 19-PDJO27 in which Van Dyke admitted under oath to making threats of violence against Retzlaff.

h.      **Exhibit 12** is a May 15, 2019, letter advising that the Georgia State Bar is petitioning the Georgia Supreme Court to appoint a special master to prosecute Retzlaff's grievance against Van Dyke in Case No. S19B1223.

i.      **Exhibits 13-15** are formation documents for Van Dyke's *Proud Boys* white supremacist "fraternity" filed with the Texas Secretary of State's Office, as well as a copy of the Proud Boys by-laws signed by Van Dyke.

j.      **Exhibit 16** is a federal lawsuit against Van Dyke's *Proud Boys* and other white supremacist gangs arising from their role in the August 2017 Charlottesville, Virginia, riot, murder of a young girl, and the injury of over 30 people. *See* No. 2-19-CV-02006; ***Burke v. James Alex Fields***; in the U.S. District Court for Southern District of Ohio.

k.      **Exhibit 17** is a June 6, 2019, Order of Suspension from the District of Columbia Court of Appeals in Case No. 19-BG-222, suspending Van Dyke for 18 months based upon Retzlaff's grievances.

l.      **Exhibit 18** is a November 12, 2013, e-mail from Van Dyke warning an opposing party: "I have sued everyone who has ever filed a formal grievance against me with the State Bar. If you file some sort of groundless grievance with the State Bar I will make your life a living hell unlike anything you could imagine."

m.     **Exhibit 19** is a letter from the Texas State Bar requesting Retzlaff's appearance as a witness in a disciplinary hearing for yet another grievance he filed against Van Dyke, Case No. 2018-07880. Retzlaff appeared and testified against Van Dyke on May 24, 2019.

n.      **Exhibit 20** is a representative sample of Van Dyke's social media postings in which Van Dyke makes violent, racial statements, poses with numerous weapons, and makes threats of murder and violence against people and groups with whom he disagrees.

o.      **Exhibit 21** is a June 20, 2019, letter from the Texas Board of Disciplinary Appeals ordering the State Bar of Texas to conduct disciplinary proceedings against Van Dyke based upon a complaint Retzlaff filed with the BDA informing them that Van Dyke was in violation of his state bar suspension by continuing to act as a lawyer and represent clients while under suspension.

22.     Van Dyke's proposed third amended complaint (Doc. 113) would be futile because Retzlaff's statements in the complaints and grievances are protected by the absolute defense of truth.  The Court may deny Van Dyke leave to amend because Van Dyke's amended claims for libel and business disparagement are frivolous.  ***Becker v. Univ. of Neb., at Omaha***, 191 F.3d 904, 907-08 (8th Cir. 1999).

## IV. CONCLUSION

23.     Van Dyke's most recent proposed third amended complaint (Doc. 113) is based on facts that Van Dyke has long known, and which have even been the subject of prior litigation against Retzlaff.  Therefore, Van Dyke has delayed unduly to seek leave to amend.  Van Dyke's proposed amendment is filed in bad faith, and would not survive Retzlaff's motion to dismiss because:

    (i)     Van Dyke failed to comply with the Defamation Mitigation Act;

    (ii)    Retzlaff's is immune under § 230 of the Communications Decency Act;

    (iii)   Retzlaff cannot be liable to Van Dyke for malicious prosecution because Retzlaff did not "initiate" the criminal prosecution against Van Dyke complained of—the chief of police did.

    (iv)   prior restraints on speech are presumptively unconstitutional;

    (iv)   Retzlaff's disciplinary and criminal complaints against plaintiff are absolutely privileged; and

    (vi)   Retzlaff's complaints have resulted in disciplinary and criminal proceedings against Van Dyke in which Van Dyke has actually *admitted* to the truth of many of the allegations Retzlaff made.

## V. PRAYER

24.     For these reasons, defendant Thomas Retzlaff prays the Court to deny Van Dyke's motion for leave to file his third amended complaint, grant the parties' pending joint motion to dismiss this suit (Doc. 84), and for such other and further relief, at law or in equity, as to which Retzlaff shall show himself justly entitled.

Respectfully submitted,

HANSZEN ✦ LAPORTE

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF SERVICE

I certify that on _____1-27____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

Mr. Jason Lee Van Dyke
Plaintiff, Pro Se
P.O. Box 2618
Decatur, Texas 76234
Telephone: 940-305-9242
jasonleevandyke@gmail.com

_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**