IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | |
|---|---|
| **JASON LEE VAN DYKE**, § | |
| *Plaintiff,* § | |
| v. § | |
| § | NO. 4:18-CV-247-ALM |
| **THOMAS CHRISTOPHER** § | |
| **RETZLAFF, a/k/a DEAN** § | |
| **ANDERSON, d/b/a BV FILES, VIA** § | |
| **VIEW FILES, L.L.C., and VIAVIEW** § | |
| **FILES,** § | |
| *Defendants* § | |

**RETZLAFF'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS BECAUSE OF PLAINTIFF'S NEWLY-DISCOVERED ASSASSINATION PLOT**

Defendant Thomas Retzlaff files his reply in support of Retzlaff's motion to dismiss the case because of the March 13, 2020, discovery of Van Dyke's plan to assassinate Retzlaff and the undersigned counsel. (Doc. 139).

**I. VAN DYKE'S RESPONSE TO RETZLAFF'S MOTION**

1. Characterizing Retzlaff's motion as "bizarre" and "wasteful," Van Dyke denounces the motion as "fl[ying] in the face of" this Court's directive that the parties "conduct themselves in a civilized manner and act as professionals." Doc. 141, ¶¶ 3.3-3.4. Apparently, Van Dyke believes plotting murders does not offend the Court's civility directive, but the victims' reporting the plot to this Court does. Van Dyke chides that Retzlaff "does not have any credible or admissible evidence" of the murder plot (*Id.*, ¶ 3.1) and declares Retzlaff's dismissal motion "frivolous," "outrageous," and "filed solely for the purpose of harassing" Van Dyke. *Id.*, ¶ 3.4.

## II. R‍ETZLAFF'S R‍EPLY

### A. The Audio Recording of Van Dyke's *Own Voice* Describing the Assassination Plans

2.  Evidence of Van Dyke's assassination plans consists of an official police report that refers to an *audio recording of Van Dyke himself describing them*. An FBI informant working with Special Agent Kevin Palomino of the Joint Terrorism Task Force in Dallas made the recording in Van Dyke's home. Doc. 139-4, p. 16. It is in the custody of the Oak Point Department of Public Safety. The quotes of Van Dyke describing the murder plans appear in the January 24, 2019, affidavit of Sgt. Brian Howard, Criminal Investigator of the Oak Point DPS, who listened to the recording along with DPS Director Mike Shackleford. Doc. 139-4, pp. 2, 16. The voice was identified as Van Dyke's by Denton County Sheriff's Office Captain Barrett. *Id*. Importantly, *no aspect* of Retzlaff's motion to dismiss is based on the testimony of informant Isaac Marquardt, whom Van Dyke attacks as not credible. Doc. 141, ¶ 3.2; Doc. 141-1.

3.  Van Dyke objects to the admissibility of the police report[1] as evidence and challenges Retzlaff's ability to prove the murder plot. However, conspicuous by its absence from Van Dyke's mockery of what he calls a "wild" conspiracy theory is a denial that any such plot existed. This is telling.

4.  Van Dyke taunts Retzlaff, daring him to "set this matter for a full evidentiary hearing and call witnesses capable of producing and authenticating the

---

[1] Doc. 139-4.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

2

so-called 'evidence' referenced in his motion." Doc. 141, ¶ 3.3. Retzlaff accepted Van Dyke's invitation.

5. But when counsel spoke with Van Dyke on March 19, 2020, to discuss an approach to scheduling the hearing, Van Dyke suddenly became evasive, saying he "does not remember" making any murder plans. Retzlaff pointed out that a hearing would afford Van Dyke the opportunity to deny the recording's authenticity. Van Dyke responded he would do "no such thing," would *not* testify, would "take the Fifth" in response to any questions, and, as something of an afterthought, declared he would "*not even show up to the hearing*." Van Dyke told counsel that the 15-month-old assassination plan is now "stale" and, therefore, no longer of any relevance. This, too, is telling.

6. The Court should not allow itself to be manipulated by Van Dyke's cynical claims of amnesia. If Van Dyke is unable to persuade the Court that the evidence of half a dozen agents of three different organs of criminal justice—the FBI, the Denton County Sheriff's Department, and the Oak Point Department of Public Safety—are unworthy of credence, the Court should dismiss Van Dyke's case.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

3

## B. Can the Court Consider the Six Documents Appended to Retzlaff's Motion to Dismiss?

7. Yes. Van Dyke urges objections to the admissibility of only three[2] of the six documents appended to Retzlaff's motion to dismiss. Van Dyke's objections are ill-grounded. Here is why.

### 1. Retzlaff's Exhibit 1 is Admissible

8. Retzlaff's Exhibit 1, Doc. 139-1, is a pleading in the State Bar's disciplinary case against Van Dyke. Van Dyke makes the unremarkable observation that "pleadings are not evidence." Doc. 141, ¶ 2.2. This is generally true. But Retzlaff does not offer Exhibit 1 for the truth of the matter asserted in the State Bar's pleadings, but to show the specific allegations to which Van Dyke *himself* was admitting when he signed the "Agreed Judgment of Partially Probated Suspension" appended as Retzlaff's Exhibit 2, Doc. 139-2. Retzlaff's Exhibit 1 is nonhearsay and admissible. And even if Retzlaff's Exhibit 1 were excluded, Retzlaff's Exhibit 2, Doc. 139-2, would remain, in which Van Dyke admits:

> **There is legally sufficient evidence to prove … that [Van Dyke] made threats of physical violence to [Retzlaff], thereby committing criminal acts that reflect adversely on [Van Dyke's] honesty, trustworthiness or fitness as a lawyer.**

Doc. 139-2, p. 2.

---

[2] Van Dyke challenges only (i) Retzlaff's **Exhibit 1**, Doc. 139-1; (ii) Retzlaff's **Exhibit 3**, Doc. 139-3; and (iii) Retzlaff's **Exhibit 4**, Doc. 139-4. Van Dyke's Response, Doc. 141, ¶¶ 2.1-2.3.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

4

## 2. Retzlaff's Exhibit 3 is Admissible

9. Retzlaff's Exhibit 3, Doc. 139-3, is a sealed copy of a January 11, 2019, file-stamped arrest warrant signed by Hon. Bruce McFarling, Judge of the 362nd District Court of Denton County, Texas, for the arrest of Van Dyke on the charge of felony obstruction or retaliation in violation of TEX. PEN. CODE § 36.06. Van Dyke objects that Exhibit 3 contains "hearsay" and should be excluded as "unfairly prejudicial" under FED. R. EVID. 403. Doc. 141, ¶ 2.2. As a public record, Retzlaff's Exhibit 3 is admissible over a hearsay objection pursuant to FED. R. EVID. 803(8)(A).

10. Van Dyke is generally correct that courts may exclude relevant evidence under FED. R. EVID. 403 if its probative value is "substantially outweighed" by unfair prejudice. Van Dyke seems not to fully appreciate that the purpose of Rule 403 "is to prevent evidence from 'inducing decision on a purely emotional basis." *U.S. v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

> **However, to warrant exclusion, the danger of unfair prejudice … must *substantially* outweigh the probative value of the evidence. Accordingly, we have recognized that Rule 403's scope is narrow. "[T]he application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." [Citation omitted.]**

*Id*. [emphasis in original]. Retzlaff's Exhibit 3 is relevant because the basis of Van Dyke's arrest was his December 12, 2018, *written* murder threats to Retzlaff—made within a month of recording his assassination plans. It is unlikely the Court will be so swept away by emotion as to rule unfairly to Van Dyke.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

5

### 3. Retzlaff's Exhibit 4 is Admissible

11. Retzlaff's Exhibit 4, Doc. 139-4, is a 58-page investigative report of the Oak Point Department of Public Safety obtained through a FOIA request. *Id*. The report bears the seal of the City of Oak Point DPS. *Id*. Here, Van Dyke appears to concede that an official police report is admissible over a hearsay objection under the "public records" exception of FED. R. EVID. 803(8)(A). Doc. 141, ¶ 2.3. Van Dyke is correct. However, Van Dyke argues that *statements within the admissible report* are "hearsay inasmuch as their only relevance is to prove the truth of the matters asserted." *Id*. Van Dyke cites no authority for this novel interpretation of the hearsay rule. Retzlaff can find none. If Exhibit 4 is admissible as a public record, then the exhibit's contents are evidence.

12. Van Dyke also offers his conclusory assertion that Retzlaff's Exhibit 4 is "inadmissible under [FED. R. EVID.] 1002." Van Dyke does not elaborate on why he contends this is so. Rule 1002 requires that original writings are required to prove their content. But Van Dyke ignores that Rule 1002 is subject to the exceptions of Rule 1003, which makes duplicates equally admissible unless a genuine question is raised about the original's authenticity. FED. R. EVID. 1003; ***U.S. v. Smith***, 566 F.3d 410, 413 (4th Cir. 2009). Van Dyke has raised no genuine question about the authenticity of Retzlaff's Exhibit 4. Therefore, Exhibit 4 is admissible.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

6

### 4. Judicial Notice of Retzlaff's Challenged Documents is Proper

13. A court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b)(2). "Courts routinely take judicial notice of public records, including court documents...." *Samsung Electronics Am., Inc. v. Yang Kun Chung*, 2020 WL 730522 at *2 (N.D.Tex. 2020), citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Retzlaff's Exhibits 1, 3, and 4 are all public records of which this Court may take judicial notice. The Court "must" take judicial notice if requested by a party and the court is given the necessary information. FED. R. EVID. 201(c); *Samsung Electronics*, 2020 WL 730522 at *2. Retzlaff respectfully so requests.

### C. Van Dyke's Suggestion of Innocence Rings Hollow

14. Although stopping just short of an affirmative representation to this Court that he is innocent, Van Dyke nevertheless attempts to suggest as much by pointing out that a grand jury no-billed him on a misdemeanor charge of harassment—notably *not* a felony charge of conspiracy to commit murder. According to Van Dyke, the misdemeanor no-bill "demonstrates not only that the case could not have been proven by beyond a reasonable doubt, but that the charge lacked probable cause to begin with." Van Dyke is wrong.

15. A no-bill from a grand jury is merely a finding that the specific evidence brought before that particular grand jury did not convince them to formally charge the accused with the offense alleged. *Rachal v. State*, 917

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

7

S.W.2d 799, 807 (Tex. Crim. App. 1996). It is well established that a no-bill is not collateral estoppel and does not prevent the State from seeking further indictments. **Shumake v. State**, 502 S.W.2d 758, 760 (Tex. Crim. App. 1973). A prior no-bill is "not material in any way to the defense of a case." *Id*.

16. Moreover, the Class B misdemeanor offense of "harassment" is not a lesser included offense of the felony offense of "obstruction or retaliation," as Van Dyke incorrectly states. *See, e.g.*, **Meyer v. State**, 366 S.W.3d 728, 731-32 (Tex. App.—Texarkana 2012, no pet.) (comparing and contrasting the different elements of retaliation under Tex. Pen. Code § 36.06 [merely requiring "harm by an unlawful act"] and harassment under Tex. Pen. Code § 42.07(a)(2) [requiring a threat of bodily injury or felony]); *see also* **Graves v. State**, 03-17-00493-CR, 2018 WL 4140663, at *3 (Tex. App.—Austin 2018, no pet.) (memo. op.) (same). The felony charge was not terminated in Van Dyke's favor and the Collin County grand jury's no-bill on a different and independent charge is irrelevant to the issue of probable cause to charge Van Dyke with a felony in Denton County.

### D. Request for Oral Hearing

17. Retzlaff believes an oral hearing would materially aid the Court's resolution of the issues and respectfully requests one. To the extent that the Court declines to take judicial notice of the public records appended to Retzlaff's motion and must make rulings on the admissibility of evidence supporting the existence of Van Dyke's assassination plot, these rulings can best be made at an oral hearing.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

8

### III. CONCLUSION

18. No litigant or his counsel should be forced to fear that hearings, depositions, discovery, or trial will be exploited to gain information or access to them for the purpose of carrying out an assassination. The shootings of John Lennon,[3] Ronald Reagan,[4] and others were carried out by assassins who were thought merely to be "odd" or eccentric until they committed their crimes. The evidence appended to Retzlaff's motion is ample evidence of Van Dyke's assassination plans, his obsession with Retzaff, and a mental derangement significant enough that he has *already* been ordered to undergo psychiatric treatment. These things cannot be ignored.

### IV. PRAYER

19. For these reasons, Retzlaff prays that the Court exercise its inherent power to dismiss this case with prejudice and grant such other and further relief, at law or in equity, as to which Retzlaff shall show himself justly entitled.

---

[3] Mark David Chapman murdered John Lennon on December 8, 1980. In the years leading up to the murder, Chapman developed a series of obsessions, including artwork and the music of Todd Rundgren. The novel *The Catcher in the Rye* took on great personal significance for Chapman, to the extent that he wished to model his life after the novel's protagonist, Holden Caulfield. Chapman also contemplated killing other public figures, including Johnny Carson, Elizabeth Taylor, Ronald Reagan, and Jacqueline Kennedy Onassis. At the time of the murder, he had no prior criminal convictions and had just resigned from a job as a security guard in Hawaii. *See* https://en.wikipedia.org/wiki/Mark_David_Chapman, last accessed March 21, 2020.

[4] John Warnock Hinkley, Jr., attempted to assassinate president Ronald Reagan on March 30, 1981. Hinkley was reported to have been driven by an obsessive fixation on actress Jodie Foster. He was found not guilty by reason of insanity and remained under institutional psychiatric care until September 10, 2016. *See* https://en.wikipedia.org/wiki/John_Hinckley_Jr., last accessed March 21, 2020.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

9

Respectfully submitted,

**HANSZEN✦LAPORTE**

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

10

## CERTIFICATE OF SERVICE

      I certify that on _____3-21_____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

    Mr. Jason Lee Van Dyke
    Plaintiff, Pro Se
    P.O. Box 2618
    Decatur, Texas 76234
    Telephone: 940-305-9242
    jasonleevandyke@protonmail.com

                 /s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Retzlaff's Motion to Dismiss Because of Plaintiff's Assassination Plot

11