IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JASON LEE VAN DYKE §<br>    Plaintiff §<br>§<br>v. §<br>§<br>THOMAS CHRISTOPHER RETZLAFF §<br>a/k/a Dean Anderson d/b/a BV Files, Via §<br>View Files L.L.C., and ViaView Files §<br>    Defendant § | Case No. 4:18cv247 |

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

Comes now Plaintiff, Jason Lee Van Dyke, and files this motion for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. Specifically, Plaintiff asks that this Court enter an order forbidding the discovery sought by Defendant through a subpoena to the Federal Bureau of Investigation. ECF 148. In the alternative, Plaintiff seeks entry of a protective order for the purpose of protecting the highly private and sensitive information contained in said discovery. As grounds therefore, Plaintiff states as follows:

**I.    GROUNDS**

1.1    Plaintiff's motion for a protective order is authorized under Rule 26(c) of the Federal Rules of Civil Procedure which states in relevant part:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (a) forbidding the disclosure or discovery; (b) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; (c) prescribing a discovery method other than the one selected by the party seeking discovery; (d) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . .

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as

distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998).

1.2   District courts have broad discretion in determining whether to grant a motion for a protective order. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) In re LeBlanc (5th Cir. 2014). Given the "extensive intrusion into the affairs of both litigants and third parties" that is both permissible and common in modern discovery, the use of protective orders is common in modern litigation. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984). Similarly, a trial court enjoys wide discretion in determining the scope and effect of discovery. *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982); *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir.1979). This is because a trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (declining to apply heightened scrutiny to a protective order limiting a civil litigant's ability to disseminate for its own benefit embarrassing information discovered in advance of trial).

## II.  FACTS

2.1   This case is the first in what has become a series of lawsuits and other legal claims between the parties. Defendant believes that he has the right to inject himself into every conceivable aspect of Plaintiff's life for the purpose of destroying it using any means and methods available to him. Plaintiff disagrees; hence, this lawsuit..

2.2   Defendant filed an artful motion to dismiss this case with prejudice as a "death penalty" sanction due to the discovery of a so-called "murder-plot". ECF 139. It should be noted that Plaintiff has not been arrested, let alone charged, with conspiring or attempting to kill Defendant (or, for that matter, anyone else). On March 30, 2020,

      Defendant subpoenaed information from the Federal Bureau of Investigation related to this so-called murder plot. Specifically, Defendant seeks to compel the turnover of certain audio recordings between Plaintiff and another individual that were made in the privacy of Defendant's home without his knowledge or consent. He also seeks discovery of the unknown contents of a yellow legal pad obtained from Plaintiff's home. Finally, Defendant seeks turnover of photographic "screen shots" of text messages between Plaintiff and another individual including, but not limited to, those sent through the encrypted messaging app known as "Signal". These screenshots were also taken without Plaintiff's knowledge or consent.

2.3    For the sake of brevity, Plaintiff asks the Court to take judicial notice of all the filings made into this case up until the date of filing this motion, which describe in detail and evidence the highly toxic relationship between the parties. In particular, Plaintiff asks this Court to take judicial notice of those portions of this case which deal with the contents of Defendant's website located at www.viaviewfiles.net (the "Website") with particular attention to the frequency with annoying, oppressing, embarrassing, and defamatory information has appeared on said website together with information concerning this case. See *infra* ¶ 3.3 – 3.4.

2.4    Of recent concern was an email sent to defense counsel and copied to Plaintiff (again, despite Plaintiff's repeated and ongoing demands that Defendant leave him alone and have no contact with him) in which Defendant wrote as follows:

> "Say Jeff – is it considered an "illegal" ex parte communication if I was able to get Judge Mazzant's personal cell phone number and I called him up last night and left him a voice mail saying 'you really need to listen to this' and I played onto his phone the audio recording I got from the cops of [Plaintiff's] murder plot?? Well, at least we all know now what he will be listening to this weekend!!!!!"

  A copy of this e-mail message is attached hereto as Exhibit "1" and incorporated by reference herein.

2.5 Retzlaff has also filed an open records request for this information from the City of Oak Point. Plaintiff filed an objection to the release of this information after receiving the letter attached hereto as Exhibit "2" on or around March 30, 2020. However, on March 28, 2020, a message quoting segments of a response to an open records act request filed by Defendant was quoted in the comments section of the Website. The last sentence of that comment stated:

> "Too bad for him the cat is already out of the bag and Judge Mazzant has already heard the audio recording."

A copy of this comment is attached hereto as Exhibit "3" and incorporated by reference herein.

2.6 Plaintiff does not believe the *ex parte* communications referenced in the e-mail and comment actually occurred and believes that, if such communications were actually made or attempted, that this Court would take appropriate action. However, there is no doubt in Plaintiff's mind that if any of this material is made available to defense counsel that it will inevitably end up on the Website and in the hands of the mainstream news media.

2.7 In making this determination, Plaintiff notes that the scope of discovery according to Rule 26(b)(1) of the Federal Rules of Civil Procedure is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance

of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

2.8 Plaintiff seeks a protective order forbidding the discovery or disclosure sought in Defendant's subpoena request. ECF 148. In the alternative, if this Court allows discovery of this nature either from the FBI or the City of Oak Point, Plaintiff requests that this Court issue some other protective order, as it in its discretion deems just and appropriate, to protect these materials from being obtained and abused by Defendant for an illegitimate purpose.

### III. ARGUMENT

### ( A Protective Order Under Rule 26(c) Is Appropriate )

3.1 The issue presented by Plaintiff to this Court for resolution was most recently addressed by the Second Circuit in *Brown v. Maxwell*. 929 F.3d 41 (2nd Cir. 2019). The *Brown* case related to an equally contentious cases concerning allegations of sexual assault, including sexual assault on minors, by friends and associates of the late Jeffrey Epstein. *Id*. at 45. In that case, the Second Circuit sought to clarify the legal tools available to district courts in protecting the integrity of their dockets. It noted:

> "While the law governing public access to these materials is largely settled, we have not yet adequately addressed the potential harms that often accompany such access. These harms are apparent. Over forty years ago, the Supreme Court observed that, without vigilance, courts' files might "become a vehicle for improper purposes." Our legal process is already susceptible to abuse. Unscrupulous litigants can weaponize the discovery process to humiliate and embarrass their adversaries. Shielded by the "litigation privilege," bad actors can defame opponents in court pleadings or depositions without fear of lawsuit and liability. Unfortunately, the presumption of public access to court documents has the potential to exacerbate these harms to privacy and reputation by ensuring that damaging material irrevocably enters the public record." *Id*. at 47.

3.2 While the Second Circuit directed that the various judicial documents in that case which related to a mass sealing of documents pertaining to discovery disputes and other exercises of judicial power, it specifically noted the proper use of Rule 26(c) to protect litigants from "annoyance, embarrassment, oppression, or undue burden", as well as on-the-record statements that such documents lack credibility. *Id*. at 51. It also notes the ability of a court to use Rule 12(f) to strike a document that is "redundant, immaterial, impertinent, or scandalous" and the imposition of sanctions under Rule 11(c). *Id*. at 51 – 52. While recognizing the First Amendment interests in public access, it also recognized that district courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation. *Id*. at 53.

3.3 Plaintiff is asking the Court to issue an order to protect him from the exact same type of abuse that the Second Circuit warned of in *Brown*. Defendant has used both the state and federal court filings in this case for the purpose in the past for the purpose of concocting false and defamatory headlines for the Website such as this:



3.4 The following is the most recent heading to appear on the Website:



The allegations in support of this filing were bolstered in the body of the blog post by two filings which we now know originated from Defendant's counsel: Defendant Thomas Retzlaff's Supplemental Rule 26(a)(1) Disclosure (ECF 138) and Defendant's Motion to Dismiss Because of Plaintiff's Newly Discovered Assassination Plot (ECF 139). This Court may take judicial notice of the fact that Plaintiff filed a motion to strike the scandalous disclosures the day after they were filed. ECF 140. Shortly after that motion was filed, it was mooted by Defendant's Unopposed Motion to Withdraw Inadvertently Filed Rule 26(a) Disclosures, which was granted by this Court. ECF 142.

3.5 It should further be brought to this Court's attention that Defendant used both the disclosures and the motion to manufacture adverse media attention concerning the Plaintiff. A copy of two of the stories published as a result of Defendant's voracious appetite for media attention are attached hereto as Exhibit "4" and Exhibit "5".

**(The Court Should Prohibit The Discovery Outright As Being Outside The Scope of Permissible Discovery and a Violation of Plaintiff's Common Law Privacy Rights)**

3.6 There is no dispute that Defendant has sought the discovery of the following materials from the Federal Bureau of Investigation: (a) a copy of an audio recording between

      Plaintiff and another individual purported made in Plaintiff's home without his knowledge or consent; (b) screenshots of a text message conversation between Plaintiff and another individual, having taken place using the encrypted messenger application known as "Signal", which were preserved without Plaintiff's knowledge or consent; and (c) the unknown contents of a yellow legal pad found on Plaintiff's desk during a search of his property. With the possible exception of medical records, Plaintiff cannot think of more obtrusive discovery.

3.7    There is no doubt that Plaintiff has a common law light to privacy with respect to the requested material. Now, Defendant seeks to obtain this material not only to aid him in the defense of this case but also for the purpose of broadcasting it to the world. Plaintiff sued Defendant for intrusion on seclusion due to repeated unwanted e-mails from Defendant (which continue to be sent today despite repeated requests by Plaintiff that Defendant leave him alone) and for interfering with his private employment and clients See ECF 113, ¶ 5.23 – 5.25, 6.18 – 6.20. The harassment of Plaintiff by Defendant has been constant, non-stop, and ongoing since before the filing of this lawsuit.

3.8    The materials sought clearly implicate far more explicit common-law privacy concerns which have been addressed in Texas courts. A plaintiff may maintain a cause of action for intrusion on seclusion based on wiretapping. *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973). It is also tortious to enter a plaintiff's home without permission. *Gonzales v. Southwestern Bell Tel. Co.*, 555 S.W.2d 219, 222 (Tex. App. – Corpus Christi 1977, no writ). In another case, setting up a video camera in a plaintiff's bedroom without permission was found to be legally actionable. *Clayton v. Richards*, 47 S.W.3d 149, 156 (Tex. App. – Texarkana 2001, pet. denied). In this case, there is no doubt that

publishing the private conversations and correspondence of Plaintiff as well as his personal notes is precisely the type of activity that would be highly offensive to a reasonable person. This Court should exercise its broad discretion with respect to discovery and enter a protective order prohibiting discovery of the materials requested by Defendant in his subpoena. ECF 148.

3.9 The material requested by Defendants is also outside the permissible scope of discovery in this case. There is no doubt that Defendant will argue that such materials are relevant to its defense against Plaintiff's claim of malicious prosecution. However, a cursory look at Plaintiff's pleadings and Defendant's own evidence demonstrates the weakness of such argument.

3.10 Plaintiff has specifically plead that Defendant caused him to be wrongfully arrested for the third-degree felony offense of obstruction or retaliation. ECF 113, ¶ 6.31. However, Defendant's own evidence submitted in support of its motion to dismiss demonstrates that this material is not relevant to its defense: the arrest warrant signed by Judge Bruce McFarling and the affidavit in support of the same make no mention of the audio recordings, the text messages, or the yellow legal pad in support of establishing probable cause. See ECF 139-3.

3.11 The offense of obstruction or retaliation are that a person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a . . . witness [or] . . . prospective witness. Tex. Penal Code § 36.06. The gravamen of the offense is the intent to harm, prevent, or delay a [witness]. *Christmas v. State*, 464 S.W.3d 832, 839 (Tex. Crim. App., 2015) There is no dispute in this case that no harm was done to Defendant.

This leaves the question of (1) whether a threat was made; and (2) whether the threat was related in some way to Defendant's status as a witness or prospective witness. In short, when prosecuting an offense, the state would have to prove both the existence of the threat and the intent. In seeking an arrest warrant, Chief Shackleford relied only on two (forged) e-mail communications purported from Plaintiff to Defendant. ECF 139-3. The private conversations and musings of Plaintiff are of no relevance to whether any threat of harm was made by Plaintiff to Defendant.

3.12 Despite Defendant's allegations of a conspiracy, an arrest warrant was not sought for attempted murder or conspiracy to murder – and Plaintiff seeks no relief from this Court for malicious prosecution of those offenses because they were never committed (and Plaintiff was never charged with them). This Court should exercise its broad powers and refuse to permit the discovery of highly private conversations and notes which are not relevant a defense against Plaintiff's claim for malicious prosecution and which are not reasonably likely to lead to the discovery of admissible evidence.

**(Alternative Relief Requested)**

3.13 In the event that this Court is inclined to allow the discovery of this material at all, there are other actions it may take under Rule 26(c) to prevent the information from being used in an abusive, embarrassing, and oppressive manner by Defendant. It may, for example, order that any materials produced be delivered directly to the Court and made available for in camera inspection only. It may also order that distribution of such materials only be to Plaintiff and defense counsel (and specifically prohibit Defendant himself from obtaining or retaining the material or any copies of the material). I may order that, to the

extent such materials are attached to any court filing in this case, that the material be filed under seal. If this Court disagrees with Plaintiff's assertion that these materials are outside the scope of permissible discovery in this case, it may issue any such orders it deems necessary to protect such materials from abuse by Defendant.

## IV. CONCLUSION

4.1 Defendant has no legitimate need for the information requested in his subpoena to the Federal Bureau of Investigation. ECF 148. It has been clearly established that Defendant has used the record in this case to annoy, embarrass or oppress Plaintiff and he is likely to continue doing so in the future. His intent to harm Plaintiff is clear to be seen in the contents of his e-mail communications. As the materials requested are not relevant to Defendant's defense of any claim brought against him in this lawsuit, discovery of such information should be prohibited by means of a protective order under Rule 26(c). If discovery of such information is permitted, this Court should issue such orders under Rule 26(c) as it deems just and appropriate to prohibit access to this material by Defendant and prevent inappropriate use.

## V. PRAYER

5.1 Plaintiff prays that this Honorable Court enter an enter a protective order in this case forbidding the discovery of those materials requested by Defendant in his subpoena to the Federal Bureau of Investigation. In the alternative, Plaintiff requests that this Court enter such orders as it deems just and appropriate to restrict access to this material by Defendant and it prohibit its use in a manner intended to annoy, oppress, or embarrass Plaintiff.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
State Bar No. 24057426
PO Box 2618
Decatur, TX 76234
P – (940) 305-9242
Email:  jasonleevandyke@protonmail.com

## CERTIFICATE OF CONFERENCE

I certify that, on March 31, 2020, I sent an e-mail message to Jeffrey Dorrell, attorney for Defendant, together with a copy of this motion for conference purposes. Mr. Dorrell stated to me that he is opposed to this motion. Accordingly, this matter is submitted to the Court for determination.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE