IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE, <br>   *Plaintiff,* <br> v. <br><br> THOMAS CHRISTOPHER RETZLAFF, a/k/a DEAN ANDERSON, d/b/a BV FILES, VIA VIEW FILES, L.L.C., and VIAVIEW FILES, <br>   *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | NO. 4:18-CV-247-ALM |

**RETZLAFF'S MOTION FOR FINAL SUMMARY JUDGMENT—VAN DYKE'S FAILURE TO COMPLY WITH THE DEFAMATION MITIGATION ACT**

> **The Court should grant final summary judgment in favor of defendant Thomas Retzlaff and against plaintiff Jason Van Dyke on all claims because Van Dyke failed to comply with the Defamation Mitigation Act.**

## I. INTRODUCTION

1.  Plaintiff Jason Van Dyke sued defendant Thomas Retzlaff for libel and other causes of action after Retzlaff filed a grievance against him with the State Bar of Texas.[1]

2.  The discovery period ends on June 23, 2020. (Doc. 117).

3.  The deadline file dispositive motions is July 31, 2020. (Doc. 146).

4.  This case is set for trial during the period January 4-29, 2021. (Doc. 117).

---

[1] Van Dyke denies the grievance is the basis of his claims. Plaintiff's Third Amended Complaint ("TAC") ¶ 5.33.

## II. FACTS

5.  Complaining that Retzlaff filed a "frivolous" grievance against him with the State Bar of Texas, (TAC ¶ 5.4), Van Dyke sues basing his claims on statements posted on a "blog"[2] Retzlaff allegedly owns[3] and in e-mails Retzlaff allegedly sent.[4] Van Dyke alleges Retzlaff made approximately ten false "statements of fact" about Van Dyke, including the following:

(i)    Van Dyke is a "Nazi;"

(ii)   Van Dyke is a pedophile;[5]

(iii)  Van Dyke is a drug addict;

(iv)   Van Dyke is a white supremacist;

(v)    Van Dyke is involved in revenge pornography;

(vi)   Van Dyke has a criminal record for abusing women;

(vii)  Van Dyke was being treated and was medicated for bipolar disorder;

(viii) Van Dyke has engaged in unwanted sexual solicitations;

(ix)   Van Dyke suffers from syphilis; and

(x)    Van Dyke has engaged in other sexual misconduct including, but not limited to, a homosexual relationship with one or more witnesses.

TAC, ¶ 6.2.

6.  The pungent comments on the "BV Files" blog use loose, figurative language to express the opinion that Van Dyke was ill-suited to be employed as

---

[2] The blog is known as "BV Files" and can be found at www.viaviewfiles.net.
[3] See TAC ¶¶ 5.5-5.11, 5.18-5.20 and Exhibit 3, 4, 9 and 10.
[4] See TAC ¶¶ 5.12 and Exhibit 5.
[5] The actual statement was that Van Dyke "has *the look of* a pedophile" (whatever that is).

either an assistant district attorney or an attorney with the firm of Karlseng, Leblanc, & Rich, LLC. The "BV Files" authors, whoever they are, are entitled to express their opinions about Van Dyke's frequent projection of his violent, racist beliefs onto an Internet audience of 7.5 billion people with posts such as this:



7. No matter how acrid or offensive, the statements attributed to Retzlaff are constitutionally protected expressions of opinion and rhetorical hyperbole. But *even if they were not*, Van Dyke's failure to comply with the Defamation Mitigation Act deprives him of the right to maintain this suit. Here is why.

## III. ARGUMENT & AUTHORITIES

### A. Why Did Texas Pass the Defamation Mitigation Act?

8.     Long before the Internet revolutionized the way the public experiences mass media, pundits remarked—in various formulations—that a lie can travel halfway around the world before the truth can get its pants on.[6]  And in 1710, Jonathan Swift lamented that "[f]alsehood flies, and the truth comes limping after it, so that when men come to be undeceived, it is too late."[7]  To address this problem, Texas enacted the Defamation Mitigation Act in 2013.

> **Recognizing that falsehoods spread quickly and are hard to dispel, the Defamation Mitigation Act (DMA) induces publishers and claimants to take prompt action to mitigate reputational injuries that may ensue from defamatory publications.**

*Warner Bros. Ent., Inc. v. Jones*, 2020 WL 2315280 at *1 (Tex. 2020).

9.     At common law, evidence of a defendant's retraction or correction was admissible to mitigate damages and negate actual malice.  Robert D. Sack, *Sack on Defamation* § 11:1 (5th ed. 2017).  But the common law did not view retraction as a complete defense to a defamation claim.  Courts reasoned that "a renunciation might never quite catch up with the original lie."  2 Rodney A. Smolla, *Law of Defamation* § 9.71 (2d ed.); *see* **Cass v. New Orleans Times**, 27 La. Ann. 214, 219 (La. 1875) ("Thousands may have read the libelous matter that never saw its refutation.").  Again, the old concern—the truth is habitually slow in getting its pants on.

---

[6]     Joshua Gillin, *NFL's Colin Kaepernick Incorrectly Credits Winston Churchill for Quote About Lies*, POLITIFACT (Oct. 9, 2017), https://www.politifact.com/punditfact/statements/2017/oct/09/colin-kaepernick/nfls-colin-kaepernick-incorrectly-credits-winston-/.

[7]     Jonathan Swift, *The Examiner No. 14* (Sept. 11, 1710), https://www.ourcivili

10. Legislatures nationwide have modified the common law to enhance these benefits by requiring potential plaintiffs to request—and potential defendants to quickly issue—corrections and retractions. The impetus for these statutes is an understanding that fulsome correction often provides greater relief than monetary damages:

> **[U]nlike personal injuries, harm to reputation can often be cured by other than monetary damages. The correction or clarification of a published defamation may restore the person's reputation more quickly and more thoroughly than a victorious conclusion to a lawsuit.**

Uniform Law Comm'n, Uniform Correction or Clarification of Defamation Act, refs. & annos. Thus, as supporters of the Texas Defamation Mitigation Act explained, better results with fewer lawsuits can be achieved by encouraging plaintiffs to timely request and defendants to issue retractions. *Id.*; House Comm. On Judiciary & Civil Jurisprudence, Bill Analysis at 1, Tex. H.B. 1759, 83rd Leg., R.S. (2013) (noting the DMA's proponents had observed that similar acts in other states had "led to less litigation").

11. At least 33 states have enacted retraction statutes. *Sack on Defamation* § 11:2. Amid this trend, the Uniform Law Commission promulgated a "Uniform Correction or Clarification of Defamation Act." The Uniform Act was intended to remedy flaws the Commission noted in some state statutes, while encouraging retraction "as an alternative to costly litigation." Uniform Act, refs. & annos. Texas modeled the DMA on the Uniform Act. House Comm. On

---

sation.com/smartboard/shop/swift/examiner/chap14htm.

Judiciary & Civil Jurisprudence, Bill Analysis at 1, Tex. H.B. 1759, 83rd Leg., R.S. (2013). But Texas made important modifications.

12. Like the DMA, the Uniform Act makes "maintaining an action" contingent on a timely request for correction or retraction. Uniform Act § 3(a)(1). But the Uniform Act also provides that if no previous request had been made, service of a pleading claiming defamation "constitutes an adequate request." *Id*. § 3(d). But Texas *rejected* Uniform Act § 3(d). The DMA requires a requested correction in a form other than an original petition, and it must have "*first* been made." *Id*., cmt. (emphasis added).

13. The DMA provides "a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." TEX. CIV. PRAC. & REM. CODE § 73.052.[8] The DMA provides "sticks and carrots to induce plaintiffs and defendants to take prompt action to rectify defamatory publications so any ensuing damages are ameliorated." *Warner Bros*., 2020 WL 2315280 at *5.

---

[8] As the Texas Supreme Court recently noted, the law has long required all tort plaintiffs to mitigate their damages before trial. *JCB, Inc. v. Horsburgh & Scott Co*., 597 S.W.3d 481, 487 (Tex. 2019). The DMA merely establishes a procedure for mitigation in defamation cases and provides specific consequences if the plaintiff fails to comply.

## B. What Does the Defamation Mitigation Act Require?

14. The DMA provides:

**A person may maintain an action for defamation *only if* the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant[.]**

§ 73.055(a)(1) [emphasis added]; ***Warner Bros***., 2020 WL 2315280 at *5. This language is to be liberally construed. § 73.051. A request for correction, clarification, or retraction is sufficient "if it states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of the publication." § 73.055(d)(3). Van Dyke never did this.

15. Van Dyke admitted he failed to comply with the DMA in his unqualified response to Retzlaff's Request for Admission No. 20:

**REQUEST FOR ADMISSION NO. 20.**

Admit that before filing the instant suit against Retzlaff, you did not make a demand for retraction, correction, or clarification of allegedly defamatory matter as required by TEX. CIV. PRAC. & REM. CODE § 73.055(d)(3), the Texas "Defamation Mitigation Act."

RESPONSE: **Admit**.

**Exhibit 1**. The Court now need only decide whether the DMA requires dismissal of all of Van Dyke's claims. It does. The DMA sweeps broadly:

**This subchapter applies to a claim for relief, <u>however characterized</u>, from damages arising out of harm to personal reputation caused by the false content of a publication.**

§ 73.054 [emphasis added]; ***Warner Bros***., 2020 WL 2315280 at *5. It does not matter how Van Dyke *characterizes* his claims. It matters only whether Van Dyke's damages arise out of "harm to personal reputation caused by the false content of a publication." They do. Summary judgment is proper.

## C. Which of Van Dyke's Seven Claims Arise Out of Alleged "Harm to Personal Reputation Caused by the False Content of a Publication"?

16. *All of them.* Van Dyke pleads the following seven torts:

(i) libel per se; (Doc. 113, Plaintiff's Third Amended Complaint ("TAC"), ¶¶ 6.2-6.11)

(ii) business disparagement; (TAC ¶¶ 6.12-6.17)

(iii) intrusion on seclusion; (TAC ¶¶ 6.18-6.20)

(iv) tortious interference with an existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC) (TAC ¶¶ 6.21-6.24).

(v) tortious interference with prospective relations (plaintiff's future relations with the law firm of Karlseng, Leblanc, & Rich, LLC) (TAC ¶¶ 6.25-6.30).

(vi) malicious criminal prosecution; (TAC ¶¶ 6.31-6.37) and

(vii) intentional infliction of emotional distress. (TAC ¶¶ 6.38-6.42)

17. Van Dyke factures his libel and business disparagement claims to yield five *additional* torts: intrusion upon seclusion, tortious interference with existing contract, tortious interference with prospective relations, malicious prosecution, and intentional infliction of emotional distress. But this does not alter the Court's DMA analysis. *All* acts Van Dyke alleges by Retzlaff involve speech. *All* of Van Dyke's claims arise from "harm to personal reputation" caused by the allegedly "false content of a publication." § 73.054; **Warner Bros**., 2020 WL 2315280 at *5. This places *all* of Van Dyke's claims squarely within the ambit of the DMA. § 73.054. Without complying with the DMA, Van Dyke may not maintain any of them. § 73.055(a)(1). Summary judgment is proper.

## D. Does Failure to Comply With the DMA Require Dismissal of a Cause of Action?

18.  In 2017, the Fifth Circuit answered this question "yes," holding that a person *may not* maintain an action if he has failed to make a request for correction, clarification, or retraction. ***Tubbs v. Nicol***, 675 Fed. App'x. 437, 439 (5th Cir. 2017). The Houston court of appeals is in accord. ***Zoanni v. Hogan***, 555 S.W.3d 321, 328-30 (Tex. App.—Houston [1st Dist.] 2018, pet. granted June 5, 2020) (dismissing claims for which the plaintiff had failed to make a DMA request for correction, clarification, or retraction).

19.  But Texas courts are not unanimous. Ignoring the plain language of § 73.055(a)(1), the Austin court of appeals held that a person *may* maintain a speech-related claim even if he *has not* made such a request. ***Warner Bros. Entm't, Inc. v. Jones***, 538 S.W.3d 781, 812 (Tex. App.—Austin 2017) (same), *reversed on other grounds*, 2020 WL 2315280 (Tex. 2020). One other court of appeals has reached the same conclusion. ***Hardy v. Comm. Workers of Am. Local 6215 AFL-CIO***, 536 S.W.3d 38, 48 (Tex. App.—Dallas 2017, pet. denied). The Texas Supreme Court has not resolved the split. ***Warner Bros***., 2020 WL 2315280 at *6 ("[W]e need not determine whether dismissal is required.").

20.  A federal court sitting in diversity generally applies the law of the forum state. *See* ***Gilbane Bldg. Co. v. Admiral Ins. Co***., 664 F.3d 589, 593-94 (5th Cir. 2011); ***Erie R. Co. v. Tomkins***, 304 U.S. 64, 78 (1938). If there is precedent from the state's highest court, that authority controls with respect to questions of state law. ***Gilbane***, 664 F.3d 593-94. If not, federal courts must make an "***Erie***

guess" as to how the state's highest court would decide the question. *Id*. Generally, an "*Erie* guess" is based on "cases that, while not deciding the issue, provide guidance as to how the [state high court] would decide the question." *Id*. These cases include decisions from lower state courts or others who have ventured a similar *Erie* guess. **Weatherly v. Pershing, LLC**, 945 F.3d 915, 920 (5th Cir. 2019).

21. Given the split of authority in Texas cases, this Court's "*Erie* guess" may be informed by considering the DMA's precise language and how similar language in other statutes has been interpreted. *See* **U.S. v. Ron Pair Enterprises, Inc**., 489 U.S. 235, 241 (1989). A statute's plain language "is the surest guide to the Legislature's intent." **Prairie View A & M Univ. v. Chatha**, 381 S.W.3d 500, 507 (Tex. 2012). The Texas Legislature frequently speaks in terms of who may "maintain an action," and when it does so it uses the phrase to define the circumstances under which a plaintiff is permitted to invoke the judicial power.

22. For instance, "[a] consumer *may maintain* an action" for deceptive trade practices if it suffers certain categories of damages. TEX. BUS. & COM. CODE § 17.50(a) (emphasis added). If the consumer fails to show it "may maintain" such an action, a court must dismiss his claims. *See* **DeVoll v. Demobreun**, 2014 WL 7440314, at *3 (Tex. App.—San Antonio 2014, no pet.); *see also* **Cushman v. GC Servs., L.P**., 657 F.Supp.2d 834, 842 (S.D. Tex. 2009)

(plaintiff did not have standing), *aff'd*, 397 F. App'x 24 (5th Cir. 2010).[9] Similar examples abound:

- Only licensed real estate agents or attorneys may "*maintain* an action to collect" a real estate commission. Tex. Occ. Code § 1101.806(b) (emphasis added). If the plaintiff is unlicensed, dismissal is appropriate. ***Corporate Realty Assocs. v. Dun & Bradstreet, Inc.***, 2017 WL 4510592, at *3 (W.D. Tex. 2017), *report and recommendation adopted*, 2017 WL 4506811 (W.D. Tex. 2017).

- "[T]he attorney general, district attorney, or county attorney *may maintain* an action" for civil penalties or injunctive relief related to certain violations of the Mental Health Code. TEX. HEALTH & SAFETY CODE § 571.023(d) (emphasis added). This language limits statutory standing to seek such relief to the persons enumerated in the statute. ***Gordon v. Neugebauer***, 57 F. Supp. 3d 766, 782 (N.D. Tex. 2014).

- "A person *may not maintain* an action against a complainant or witness in a[n attorney] disciplinary proceeding based on a communication made by the complainant or witness to the [commission], a grievance committee, or the chief disciplinary counsel." TEX. GOV'T CODE § 81.072(g) (emphasis added). This provision confers "absolute and unqualified" immunity from suit. *Id*.

These examples only scratch the surface.[10] The Texas Legislature's many and consistent "maintain" usages establish its specialized meaning, which is to set a condition precedent for the invocation of judicial power.

23. Courts have relied on abatement provisions such as those in the DMA to hold dismissal inappropriate where a plaintiff failed to comply with a

---

[9] *Accord*, ***Patchak v. Zinke***, 138 S. Ct. 897, 905 (2018) (plurality op.) (statute providing that certain actions "shall not be filed *or maintained* in a federal court" "strip[ped] federal jurisdiction over" pending suits in that category (emphasis added).

[10] *See also, e.g.*, TEX. AGRIC. CODE §§ 60.063(c), 131.104(a); TEX. BUS. ORGS. CODE §§ 9.051(a), 22.362(a), 153.309(a); TEX. EDUC. CODE §§ 13.205(f), 24.05(d), 132.121(a); TEX. ESTATES CODE § 505.101(a); TEX. HEALTH & SAFETY CODE §§ 171.104(b), 241.054(d), 241.152(f), 246.117(c), 571.022(b), 571.023(d), 611.007(c), 757.012(a), 785.004(a); TEX. HUM. RES. CODE § 121.004(b); TEX. LOC. GOV'T CODE § 212.153(b); TEX.

notice provision in the DTPA and Insurance Code. *See* TEX. BUS. & COM. CODE § 17.505; TEX. INS. CODE § 541.154-.155. *See* **Hines v. Hash**, 843 S.W.2d 464, 468-69 (Tex. 1992) (DTPA); **Dokesun v. State Farm Lloyd's**, 833 F. Supp. 662, 664-65 (S.D. Tex. 2011) (Insurance Code).

24. But in neither the DTPA nor the Insurance Code did the Legislature use language that premised the plaintiff's right to file suit—and the court's power to consider it—on compliance with that notice provision. Rather, both statutes require notice only as a tool to potentially resolve the litigation early. *See* **Hines**, 843 S.W.2d at 468-69. By contrast, the DMA's use of "*may maintain*" deprives a court of the power to hear speech-related claims when the plaintiff has not affirmatively directed the defendant to correct.

## IV. CONCLUSION

25. The Defamation Mitigation Act aims to deter speech-related lawsuits by conditioning a plaintiff's right to sue on first seeking a correction or retraction. Speech-related claims brought by a plaintiff without satisfying the DMA cannot survive a motion for summary judgment. Van Dyke judicially admits he did not seek a correction or retraction from Retzlaff before filing this suit. Accordingly, the Court should grant final summary judgment in favor of Retzlaff and against Van Dyke on all of Van Dyke's claims.

---

NAT. RES. CODE § 52.235(a); TEX. PROP. CODE §§ 53.175(b), 62.125(b), 76.401(e); TEX. WATER CODE § 51.185.

# V. PRAYER

26. For these reasons, Retzlaff prays that the Court make an "*Erie* guess" that the Texas Supreme Court would construe the Defamation Mitigation Act as requiring dismissal of speech-related claims when a plaintiff fails to request a correction or retraction. Given Van Dyke's unqualified admission that he failed to do this, Retzlaff prays that the Court grant final summary judgment under FED. R. CIV. P. 56 in favor of Retzlaff and against Van Dyke on all of Van Dyke's claims. Retzlaff prays for such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

HANSZEN✦LAPORTE

By:     /s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF SERVICE

       I certify that on _____6-8_____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

    Mr. Jason Lee Van Dyke
    Plaintiff, Pro Se
    P.O. Box 2618
    Decatur, Texas 76234
    Telephone: 940-305-9242
    jasonleevandyke@protonmail.com


             /s/ Jeffrey L. Dorrell
**JEFFREY L. DORRELL**