IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JASON LEE VAN DYKE §<br>  Plaintiff §<br> §<br>v. §<br> §<br>THOMAS CHRISTOPHER RETZLAFF §<br>a/k/a Dean Anderson d/b/a BV Files, Via §<br>View Files L.L.C., and ViaView Files §<br>  Defendant § | Case No. 4:18cv247 |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO QUASH

Movant, Jason Lee Van Dyke, asks this Court to enter an order denying the motion of Paul Johnson ("Movan") to quash his subpoena for production of documents (ECF 173). In support of said opposition, Plaintiff states as follows:

### I.   FACTS

1. For the purpose of this response only, Plaintiff stipulates to the facts set forth in section one of Movant's motion entitled "Introduction and Subpoena for Criminal District Attorney of Denton County Paul Johnson."

### II.   ARGUMENT

**A.   Movant Has Not Claimed Privilege In Accordance With The Rules**

2. Movant correctly states that this Court has the authority to quash or modify a subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A) and that this court has the authority to quash a subpoena or grant a protective order. However, Movant has insufficiently stated a claim of privilege under Rule 45(e)(2).

3. The first requirement of a person resisting a subpoena on the basis of privilege is for the claim of privilege to be expressly asserted. Fed. R. Civ. P. 45(e)(2)(A)(i). Movant has

    complied with this provision of the rules by expressly asserting a law enforcement privilege in his motion to quash. However, Fed. R. Civ. P. 45(e)(2)(A)(ii) requires the person resisting discovery to "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privilege or protected, will enable the parties to assess the claim." A person claiming a privilege or protection who fails to provide adequate information about the privilege or protection claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt under subdivision (e). See Fed. R. Civ. P. 45, Notes of Advisory Committee on Rules – 1991 Amendment (concerning prior Fed. R. Civ. P. 45(d)(2), now Fed. R. Civ. P. 45(e)(2)).

4.   By failing to properly identify and describe documents potentially responsive to Plaintiff's subpoena in accordance with Rule 45(e)(2)(A)(ii), this Court should find that Movant has waived privilege with respect to such documents, deny Movant's motion to quash, and order production of the documents forthwith.

**B.**     **Movant Has Not Demonstrated That The Law Enforcement Privilege Applies.**

5.   The Supreme Court first recognized a qualified privilege for certain information related to law enforcement activities in *Roviaro v. United States*. 353 U.S. 53, 59 (1957). In that case, the Supreme Court explained the qualified privilege of the government to withhold the identities of its confidential informants. *Id*. Such a privilege "further[s] and protect[s] the public interest in effective law enforcement," encouraging citizens to communicate their knowledge of crimes by preserving their anonymity. Id. The Court also noted that "[t]he scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the

identity of an informer, the contents are not privileged." *Id*. at 60.

6. Since that time, federal appellate courts have recognized the law enforcement privilege in other circumstances. For example, In *United States v. Cintolo*, the FBI had lawfully monitored conversations between the defendant and various associates with hidden microphones. 818 F.2d 980, 983-84 (1st Cir. 1987). The district court refused to allow the defense to question witnesses "concerning the precise location of the electronic surveillance devices" on the ground that such questioning would "jeopardize future criminal investigations." *Id*. at 1002. In upholding the district court's decision, the First Circuit noted that other circuits had found that the privilege could cover "sensitive investigative techniques" and recognized as qualified privilege for the "disclosure of confidential government surveillance information." *Id*.

7. Other circuits have taken a more expansive approach. The D.C. Circuit has explained that the privilege for investigatory materials is "rooted in common sense as well as common law," noting that "law enforcement operations cannot be effective if conducted in full public view" and that the public has an interest in "minimizing disclosure of documents that would tend to reveal law enforcement investigative techniques or sources." *Black v. Sheraton Corp. of Am*., 564 F.2d 531, 542, 545 (D.C.Cir.1977). Similarly, in *In re Department of Investigation of the City of New York*, the Second Circuit explained:

> [T]he law enforcement privilege . . . has been recognized in the absence of a statutory foundation, and . . . is largely incorporated into the various state and federal freedom of information acts. The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation. 856 F.2d 481, 483 - 84 (2d Cir. 1988),

8. When assessing a claim of law enforcement privilege, a district court must first determine if the law enforcement privilege applies to the documents at issue. While the question of initial burdens has not directly been addressed by the Fifth Circuit, other federal appellate courts have adopted the holding of the D.C. Circuit that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question. *Dinler v. City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) citing *In re Sealed Case*, 856 F. 2d 268, 271-72 (D.C. Cir. 1988).

9. To meet its burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect. *Id*. Such protected information includes information pertaining to "law enforcement techniques and procedures," information that would undermine "the confidentiality of sources," information that would endanger "witness and law enforcement personnel [or] the privacy of individuals involved in an investigation," and information that would "otherwise ... interfere[ ] with an investigation." *Id*. This is essentially the same standard cited by the Fifth Circuit for law enforcement *investigative* files. *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 568-69 (5th Cir. 2006) See also *Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970); *Swanner v. United States*, 406 F.2d 716 (5th Cir. 1969); *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991).

10. When a law enforcement privilege is asserted, the Fifth Circuit has has adopted the *Frankenhauser* factors in instructing a court to determine whether a party's interest in disclosure of privileged information is outweighed by the public interest in non-disclosure. *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 570.

C. **The *Frankenhauser* Case**

11. *Frankenhauser* was a civil rights action brought by parties seeking damages for the death of a relative at the hands of Philadelphia police officers. *Id*. at 339 – 340. At issue in the case was whether the plaintiff's were entitled to discovery of the following information: (1) reports of the analysis of physical evidence made by the police department; (2) the results of polygraph examinations conducted by the police; (3) statements, signed or unsigned, from police or civilian witnesses to the killing; (4) police investigation reports related to the killing; (5) police reports of previous incidents involving the deceased; and (6) communications among members of the police department and other law enforcement personnel. *Id*. at 341. The court held, as a preliminary matter, that the polygraph reports were not discoverable because it was protected under the attorney-client privilege and work product doctrine. *Id*. at 341 – 342. The court's analysis then turned to the rest of the requested discovery.

12. Although it cited the balancing test ultimately utilized by the Fifth Circuit and others, the *Frankenhouser* court ultimately *allowed* discovery of most materials requested by the plaintiffs. In so holding, the court noted it did "not perceive any impact of the disclosure of factual statements surrounding an investigation of a shooting upon the persons who gave them" and that disclosure would "not reveal any details of police self-evaluation, because we will limit disclosure to factual data, as opposed to evaluative summaries and recommendations." *Id*. at 344 – 345. In permitting the discovery, the court found that plaintiff's need for the police evaluation files was "manifest" and noted that, under the Federal Rules of Criminal Procedure, the plaintiffs might be entitled to such information anyway. *Id*. In fact, the *only* material for which the court insisted on an

inspection *in camera* were copies of previous police reports concerning the deceased and communications among members of the department and other law enforcement personnel. *Id*. at 346. The other documents, including witness statements (much like the communications requested by Plaintiff in this cases), were ordered produced. *Id.*

### D. The *Frankenhauser* Factors

13. The first two *Frankenhauser* factors for a court to consider relate to the identities of witnesses. Id. at 344. These factors are: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; and (2) the impact upon persons who have given information of having their identities disclosed. *Id*. Plaintiff's subpoena requests communications between Movant and Defendant (as well as his aliases and alleged aliases), persons purporting to represent Defendant, Isaac Lee Marquardt, and Deborah Armintor. There is no risk of the identities of any witnesses being disclosed; Plaintiff has requested communications from certain very specific individuals whose identities are already known to him. As Defendant and his associates have clearly manifest their intent to continue abusing the legal and judicial process to stalk and harass Plaintiff from now until the end of time, there is no realistic likelihood that the mere disclosure of these communications will discourage them, or anyone else, from doing so.

14. The third *Frankenhauser* factor is the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure. *Id*. In this case, there is no such risk. Plaintiff has only requested communications made by certain identifiable third parties to the Denton County District Attorney, copies of certain legal process obtained by that office, and affidavits in support of such process. The discovery

      requested does not implicate such programs and there is no allegation by Movant that disclosure would implicate such programs.

15.   The fourth of the *Frankenhauser* factors is whether the information sought is factual date or evaluative summary. *Id*. Just as the plaintiffs in the *Frankenhauser* case itself requested, and were ultimately provided, "statements, signed or unsigned, from police or civilian witnesses to the killing", Plaintiff is requesting nothing more than allegedly factual data received by the Denton County District Attorney from certain third parties, copies of certain legal process, and affidavits made in support of such legal process. Plaintiff has not requested any evaluative material from Movant.

16.   The fifth and sixth of the *Frankenhauser* factors are (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; and (6) whether the police investigation has been completed. *Id*. With respect to this factor, there is no question that Plaintiff has a writ of habeas corpus pending before the Second Court of Appeals in Fort Worth. Movant is also correct with respect to the statute of limitations concerning certain investigations. However, when considering the length of time between his wrongful arrest for obstruction or retaliation together with the fact that he received a no-bill on a harassment charge arising from the same set of circumstances, no further prosecution of Plaintiff is reasonably likely. Movant has not attached any evidence to its motion, in the form of an affidavit or otherwise, indicating that there has been any investigative activity with respect to Plaintiff since January of 2019. In fact, with respect to the search warrant for Plaintiff's computer, Plaintiff is in possession of information indicating that the computer was returned to the Oak Point Department of Public Safety

from Movant's office on February 12, 2019. A copy of this document is attached as Exhibit "1".

17. The seventh *Frankenhauser* factor is whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation. *Id*. It should be obvious that Plaintiff is not privy to any such proceedings which may have occurred, or which may yet occur, within office of the Denton County District Attorney related to his cases. Movant has failed to mention any.

18. The eighth, ninth, and tenth *Frankenhouser* factors are (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or other discovery or from other sources; and (10) the importance of the information sought to Plaintiff's case. *Id*. The crux of Plaintiff's malicious prosecution claim against Defendant is certainly his wrongful arrest for obstruction and retaliation at the insistence of Defendant. Specifically, either Defendant or another person acting upon his instructions or under his control, submitted forged e-mail communications alleged to have been sent on December 12, 2018 to the Oak Point Department of Public Safety.

19. Plaintiff has learned that the most likely person responsible for sending these communications is Isaac Marquardt, and his theory is based upon the fact that (a) Plaintiff has discovered an e-mail to Defendant from Mr. Marquardt – also sent on December 12, 2018 – offering Defendant damaging information on Plaintiff; (b) Mr. Marquardt's access to Plaintiff's home and office, including his computers, at the time the e-mails were sent; (c) the computer expertise of both Defendant and Mr. Marquardt; (d) the recent revelation that Mr. Marquardt taped certain conversations between him

and Plaintiff without Plaintiff's knowledge or consent (this information was obtained in response to a defense subpoena to the Oak Point Department of Public Safety); (e) Mr. Marquardt's decision to hide or flee the jurisdiction of Denton County following Plaintiff's release from jail together with his avoidance of subpoenas both from the Denton County District Attorney and Plaintiff; (f) Mr. Marquardt's subsequent invocation of his Fifth Amendment privilege with respect to his past communications with Defendant; and (g) Defendant's own invocation of his Fifth Amendment privilege with respect to both his communications to Mr. Marquardt and the Denton County District Attorney.

20. As both Defendant and Mr. Marquardt have invoked their Fifth Amendment privilege with respect to the discovery requested, together with the fact that Mr. Marquardt is transient, Plaintiff's only realistic hope of obtaining the information necessary for him to successfully prosecute his malicious prosecution claim against Defendant is to obtain copies these communications from the recipients rather than the senders. It was to this end that Plaintiff requested subpoenas for both the Denton County District Attorney and the Oak Point Police Department.

21. To prove his case for malicious prosecution, Plaintiff must show that (a) a criminal prosecution was commenced against him; (b) Defendant initiated or procured the prosecution; (c) the prosecution was terminated in Plaintiff's favor; (d) Plaintiff was innocent of the charge; (e) Defendant did not have probable cause to initiate or procure the prosecution; (f) Defendant acted with malice; and (g) Plaintiff suffered damages. *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). The discovery requested of the Denton County District Attorney is essential to demonstrate the extent of

Defendant's role in initiating and procuring the prosecution against him. Plaintiff also expects the communications obtained to demonstrate the extent to which Defendant acted with malice against Plaintiff, and possibly, indicia that Defendant knew that the charge itself was false.

E. **There Is A Strong Public Policy Argument Favoring Release of Warrant Information**

22. One of Plaintiff's requests with respect to the subpoena is "any and all warrants relating or pertaining to [Plaintiff] between September 1, 2018 and the date of this subpoena, together with any affidavits or materials submitted in support of such warrants. The scope of this request includes, but is not limited to, materials relating to warrants that were subsequently rescinded or recalled."

23. The specific genesis of this request comes from the documents attached hereto as Exhibit "2", which was obtained by Plaintiff in response to a Texas Public Information Act request to the Oak Point Department of Public Safety, which indicate the issuance of a prior warrant that was subsequently rescinded by the issuing Court. Plaintiff desires discovery of the warrant and the affidavit submitted in support of that warrant on the basis that it may bolster his assertion that Defendant knew the information he provided was false, as well as the fact that he was innocent of the charge.

24. Both an arrest and a search warrant carry heavy Fourth Amendment implications with them. When a peace officer makes sworn assertions to a magistrate for the purpose of searching private property or making a custodial arrest, there is a strong public policy argument favoring full disclosure of such proceedings. Although this warrant was not executed, there is a strong presumption in favor of such records being made available. See Tex. CCP Art. 15.26. The same is true of search warrants. Tex. CCP Art. 18.01(b).

  Movant has attached many of these warrants, and the supporting affidavits, to its motion and he has not demonstrated why there is a public interest in non-disclosure of a warrant that is unexecuted due to it being recalled by the issuing magistrate.

**F. In Camera Inspection**

26. If this Court is disinclined to deny Movant's motion to quash outright, Plaintiff joins Movant's request that this Court conduct an in-camera inspection of the requested information to determine which documents are subject to release and requests that this Honorable Court issue all appropriate orders necessary to effect in-camera inspection.

**H. Conclusion**

27. Movant's motion to quash should be denied because, aside from assertions concerning investigations that are allegedly ongoing, it has provided this Court with no information concerning the documents it has alleged to be privileged and has failed to describe responsive documents as required by FRCP 45(e)(2)(A)(ii) in a manner that permits either the parties or this court to assess its claim of privilege. He has made no showing that disclosure of the documents requested will jeopardize an ongoing investigation, reveal investigative or law enforcement techniques, or reveal sources not already known to Plaintiff. Without considering any of the other *Frankenhauser* factors, he has simply alleged that the documents should not be disclosed because his office considers the matter to be open and the investigation to be ongoing. He has even alleged that the subpoena to his office will reveal work product and discussions of trial strategy when, on its face, Plaintiff's subpoena to Movant requests only communications between his office and certain parties and witnesses. The motion to quash should be denied, or at the very least, an in-camera inspection of all requested documents should be ordered

### III. PRAYER

28. Movant prays that this Court enter an order denying the motion of Paul Johnson to quash the subpoena issued in this cause (ECF 173).

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
PO Box 2618
Decatur, TX 76234
P – (940) 305-9242
Email: jasonleevandyke@protonmail.com

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant, and Anthony Paul, Attorney for Movant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE