IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE <br>     Plaintiff | § <br> § <br> § | |
| v. | § <br> § | Case No. 4:18cv247 |
| THOMAS CHRISTOPHER RETZLAFF <br> a/k/a Dean Anderson d/b/a BV Files, Via <br> View Files L.L.C., and ViaView Files <br>     Defendant | § <br> § <br> § <br> § <br> § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION AND FACTS**

1. Plaintiff declines to further response to Defendant's baseless assertion that this lawsuit was filed against him in retaliation for a state bar grievance. However, Defendant is correct that this lawsuit is retaliatory in nature: it was filed in retaliation for Defendant's stalking behavior, which has spanned over three years, cost him his full time employment on two occasions, ruined his career, destroyed his business and business relationships, devastated both his personal reputation and financial condition, harmed his relationships with friends and family members, and taken a serious toll on his mental health and wellbeing.

1.2 Plaintiff has never misrepresented the nature or purpose of this lawsuit: it is intended to obtain compensation for this stalking behavior, to punish this stalking behavior, and to obtain a court order enforceable by contempt so as to ensure Defendant's incarceration if this stalking behavior continues. This lawsuit does not now, nor has it ever, had anything to do with a state bar grievance. The notion that Defendant's ongoing stalking behavior is entitled to First Amendment protection is outrageous. It is not entitled to

First Amendment protection any more than child pornography is entitled to such protections. In fact, it is subject to criminal prosecution under 18 U.S.C. 2261A.

## II. ARGUMENT

**A. Grounds**

2.1 A motion for summary judgment is subject to Fed. R. Civ. P. 56. There is no dispute among the parties as to the proper summary judgment standard with respect to an affirmative defense: he must show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The problem with Defendant's motion for summary judgment on his claim under the Defamation Mitigation Act ("DMA") is evidence from his own pleadings: he has denied committing any of the acts alleged by Plaintiff in his third amended complaint. See ECF 126, ¶ 16 – 90.

**B. Defendant's Denial That He Published The Material For Which He Has Been Sued Makes His Assertion Of A Defense Under The DMA Untenable**

2.2 Although a defamation case always involves issues concerning the First Amendment, cases where the identity of a publisher is disputed are comparably rare. No Texas appellate case has ever considered the question of how the DMA applies in cases where one of the major factual issues is the identity of the publisher or false and defamatory statements. This remains one of the major factual issues in this case as Defendant has not only denied them, but has invoked legal privilege under both the First and Fifth Amendment with respect to all of Plaintiff's discovery relating or pertaining to the identity of the person responsible for publishing the content at issue. See ECF 164, 165 and 167. In fact, during a May 2018 string of e-mails further referenced in paragraph 2.19 above, Mr. Dorrell denied that the person using the "Dean

RESPONSE TO MOT. S.J.

Page 2 of 14

  Anderson" pseudonym was his client and further denied any knowledge of Defendant's use of the "Dean Anderson" pseudonym. A copy of this correspondence is attached hereto as Exhibit "A".

2.3 The first requirement of the DMA is for a correction, clarification, or retraction to be served upon the publisher. Tex. Civ. Prac. & Rem. Code § 73.055(d)(1). The statute does not state "publisher or alleged publisher." *Id*. Thus, a reasonable interpretation of the DMA contemplates the scenario typical of most defamation lawsuits; one in which the identity of the publisher is undisputed. However, Defendant wishes to have things both ways. To establish a partial defense under the DMA, he has claimed to have never received a notice which must be served on a *publisher* to be legally sufficient. He does this while simultaneously claiming that he is not the person responsible for publishing *any* of the material that Plaintiff has attributed to Defendant in his complaint: he continues to assert that "Dean Anderson" is a separate and distinct person from him, that he is not one of the owners or publishers of "BV Files", and that he is privileged from answering any discovery concerning the true identity of the publisher.

2.4 Although this scenario has never been considered by a Texas appellate court in the context of the DMA, it has been considered by the Texas Supreme Court in the context of the *Texas Citizens Participation Act* ("TCPA"). In *Hirsch v. Tatum*, the court held that the TCPA was applicable to any lawsuit arising from an exercise of First Amendment speech regardless of whether the defendant admitted to engaging in the speech or not. 526 S.W.3d 462, 466 – 67 (Tex. 2017). While it would certainly be reasonable for Defendant to argue that the DMA applies to "all claims for relief . . . arising out of harm to personal reputation caused by false content of a publication",

such an argument would be incorrect for one major reason: the TCPA was designed to act as a bar to unmeritorious lawsuits based upon the exercise of a First Amendment right, while the DMA was intended to provide a person actually defamed by a publication or broadcast to mitigate damages prior to bringing an legitimate claim. Tex. Civ. Prac. & Rem. Code § 27.002; Tex. Civ. Prac. & Rem. Code § 73.052. Defendant acknowledges in his motion that statutes such as the DMA are provided to encourage retraction as "an alternative to costly litigation." Def.'s Mot. S.J. ¶ 11.

2.5 The application of the DMA in an instance where the identity of the publisher of a defamatory statement remains in factual dispute results in a legal absurdity. How could the Defendant have an ability to retract something that he denies publishing in the first place? He should be required to make a choice: Either admit that he is the person responsible for the "Dean Anderson" e-mails and the "BV Files" blog, or abandon his defense under the DMA.

**B.     The DMA Does Not Apply To Plaintiff's Claim For Malicious Prosecution**

2.6 The notion that the DMA applies to a claim for malicious criminal prosecution is a legal absurdity. The reason for this is simple: the act of sending a witness notice of a claim under the DMA could be construed as witness tampering. Specifically:

> "A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding, or he coerces a witness or a prospective witness in an official proceeding (1) to testify falsely; (2) to withhold any testimony, information, document, or thing; (3) to elude legal process summoning him to testify or supply evidence; (4) to absent himself from an official proceeding to which he has been legally summoned; or (5) to abstain from, discontinue, or delay the prosecution of another." Tex. Penal Code § 36.05(a).

2.7 There can be no question that the very nature of a formal request for correction, change, or retraction under the DMA carries with it the implied, if not the express, threat of a

RESPONSE TO MOT. S.J.

      lawsuit in the event that compliance is not forthcoming. As a person "initiating or procuring" a criminal action would undoubtedly be a witness in the underlying criminal proceeding, a demand tendered pursuant to the act could reasonably be construed as coercing a witness to "withhold any testimony, information, document, or thing." Although a criminal witness tampering prosecution for nothing more than sending a statutory notice under the DMA would obviously be unlikely, it would be unreasonable to read the DMA in such a manner as to state that it requires an action prohibited under the penal code.

2.8    In this case, even if Defendant was entitled to the dismissal of Plaintiff other claims, he would still not be entitled to dismissal of his claim for malicious prosecution. The statute of limitations on a claim for malicious prosecution is one year. Tex. Civ. Prac. & Rem. Code § 16.002(a); *Mead v. Property Owners' Ass'n of Terlingua Rach, Inc.*, 410 S.W.3d 434, 437 (Tex. App. – El Paso 2013, no pet.). A cause of action for malicious prosecution accrues when the criminal prosecution ends. *Id.* at 438. The date that the wrongful prosecution of Plaintiff ended was September 26, 2019. ECF 113, ¶ 6.32. Accordingly, even if the DMA can be fairly read as applying to malicious prosecution claims, Defendant's present remedy with respect to this claim is abatement.

**C.**    **The DMA Does Not Mandate Dismissal of Plaintiff's Claims**

2.9    Defendant correctly states that the Fifth Circuit has interpreted the DMA as requiring dismissal when there is a failure to comply with the statute. *Tubbs v. Nicol*, 675 Fed. App'x 437, 439 (5th Cir. 2017). This holding, however, is not precedential. 5th Cir. R. 47.5.4. He also correctly states that one Texas appellate court agrees with this decision. *Zoanni v. Hogan*, 555 S.W.3d 321, 328-30 (Tex. App. – Houston [1st Dist.] 2018, pet.

granted June 5, 2020). However, since the unpublished holding in *Tubbs* on January 12, 2017, there has been as split of authority among Texas intermediate appellate courts on this issue. The First Court of Appeals, with its holding in *Zoanni*, is the <u>only</u> Texas court that has reached the same determination as the 5th Circuit in *Tubbs*.

2.10 The issue was first considered by a Texas appellate court in *Hardy v. Communication Workers of Am. Local 6215 AFL-CIO*. 536 S.W.3d 38, 48 (Tex. App. – Dallas 2017). The Texas court was quick to rebuke the Fifth Circuit in its own consideration of the issue noting that, in affirming summary judgment in *Tubbs*, the Fifth Circuit failed to address whether the abatement procedure set out in § 73.062 of the statute indicated an intent by the legislature that a plaintiff's defamation claim was not subject to dismissal solely based on a failure to comply with § 73.055(a). *Id*. at n. 5.

2.11 The *Hardy* court conducted its own in-depth analysis of the statute considering whether the word "maintain" in § 73.055(a) demonstrated an intent by the legislature to bar an otherwise sound defamation claims. *Id*. at 46. Rather than finding an intent the dismiss, the court looked at the entire statute and found that the legislature intended this provision as meaning that the suit could not be maintained in the face of a plea in abatement authorized by § 73.062. *Id*. It also noted that the statute does not mention dismissal as a consequence for making a timely request, but rather, states the consequence as being a prohibition on the recovery of exemplary damages. *Id*. at 46 – 47.

2.12 When construing the whole of the statute, the court also took note of the mechanism enacted by the legislature affording a defendant the right to challenge the sufficiency of a request for correction, clarification, or retraction. *Id*. at 37. It reasoned that "if a

       plaintiff's claim were subject to dismissal solely due to her failure to request a correction, clarification, or retraction of the statement, a defendant would have no need to ever challenge whether a request was timely. Rather, the defendant would simply wait until the limitations period on the claim had expired and then move to dismiss the case." *Id.* (citing *City of Dallas v. TCI West End, Inc.,* 463 S.W.3d 53, 57 (Tex. 2015) (per curiam) ("[a]s a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous"). If a defendant who did not receive a request for correction, clarification, or retraction was entitled to dismissal, there would be no need for the provisions of the statute providing for a limitation on damages or abatement. *Id.*

2.13    Since the holding in *Hardy*, three other intermediate appellate courts have considered the question of whether the DMA requires dismissal of a claim in the absence of compliance with the DMA. As Defendant has pointed out, one has answered in the affirmative. See *supra* ¶ 2.9. The other three have relied on the holding of the *Hardy* court and answered the same question in the negative. *Cunningham v. Waymire*, Cause No. 14-17-00883-CV (Tex. App. – Houston [14th Dist.] 2019); *Warner Bros. Entertainment Inc. v. Jones*, 538 S.W.3d 781, 812 (Tex. App. – Austin 2017, aff'd, Cause No. 18-0068 (Tex. May 8, 2020)); *Cummins v. Lollar*, Cause No. 07-16-00337-CV (Tex. App. – Amarillo May 3, 2018, pet. denied).

2.14    The Texas Supreme Court has, at least thusfar, declined to intervene with respect to the split of the First Court of Appeals with other intermediate appellate courts in Texas. *Warner Bros. Entertainment. Inc. v. Jones*, Cause No. 18-0068 (Tex. May 8, 2020) (expressly declining to consider whether dismissal is required when the statute of

limitations has elapsed without a sufficient request or change under the DMA). In its response to the dissenting opinion the Court writes: "In discussing the DMA, we correctly observe the legislature has enacted specific remedies, including "a time-limited process by which a defendant can secure 'automatic abatement of the lawsuit when no timely or sufficient request has been made as required by Section 73.055. But we do not reach the hotly contested issue about the availability of any other remedies that may or may not be inferred from the statutory language." *Id*.

**D.    Plaintiff's Judicial Admission That He Did Not Comply with the DMA Is Not Dispositive of the Issue**

2.15   Although the Texas Supreme Court did not directly address the issue in *Warner* Bros., that decision demonstrates that Plaintiff's admission that he did not fully comply with the DMA is not necessarily dispositive of the issue. As this is a relatively new case, and one which has yet to be widely published, Plaintiff attaches a courtesy copy of the court's opinion to this response as Exhibit "B".

2.16   Defendant appears to mistakenly believe that the crux of this case relates to the false and defamatory allegations posted to his blog. ECF 175, ¶ 5. The defamatory statements contained in his blog, however, are more akin to a major sub-issue in this case. The origin of this case, and its primary focus from its onset, has been Defendant's contact and targeting of Plaintiff's employers and clients, and his publications both to them and concerning him, which were designed and intended to cause the termination of Plaintiff's employment. After all, if Plaintiff was required to send notice under the DMA on every single occasion this Defendant made a defamatory per se statement about him to a third person, he would be required to hire a staff and open a branch of the U.S. Postal Service in his living room simply to deal with the volume of requests

that this Defendant would generate.

2.17 Plaintiff's answer to Defendant's request that he admit his non-compliance with the DMA was correct: Plaintiff did not strictly comply with the statutory language of the DMA through a singular communication to Defendant or his counsel (after Mr. Dorrell made an appearance) and is ethically prohibited from claiming otherwise. Pursuant to the statute, a request for correction, clarification, or retraction is sufficient if it (1) is served on the publisher; (2) is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to have been defamed or by the person's authorized attorney or agent; (3) states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication; (4) alleges the defamatory meaning of the statement; and (5) specifies the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication. Tex. Civ. Prac. & Rem. Code § 73.055(d).

2.18 Notwithstanding the express language of the statute, the *Warner Bros.* case saw the Texas Supreme Court consider whether a responsive update, made by a *defendant*, to an allegedly false and defamatory story was sufficient to establish *plaintiff's* compliance with the DMA. See Ex. B. It held that, because there was a change to the story at issue based upon a communication by either the plaintiff or his counsel, compliance with the DMA was established. *Id*. This was despite the fact that strict compliance with § 73.055(d) – concerning respect to a request for correction, retraction, or change - had clearly not been established by the plaintiff. *Id*. The dissent strongly criticized the opinion of the majority noting that "under the Court's standards – or lack of standards

– any Twitter message complaining of a story will be a request, any response by the publisher a change, and a plaintiff can proceed without further effort." *Id*.

2.19   In this case, in May of 2018, there was considerable discussion between Plaintiff and Defendant's attorney, Mr. Dorrell, concerning the resolution of this case. In these communications, Plaintiff clearly insisted to Mr. Dorrell that the disparaging communications by Defendant to Plaintiff's employers and clients needed to cease immediately and made several offers of settlement for the purpose of securing a quick resolution to this case and an end to Defendant's stalking behavior. A copy of these communications is attached hereto as Exhibit "C".

2.20   Mr. Dorrell did not make any formal responses to Plaintiff's settlement offers. Instead, Plaintiff read responses in the "comments" section of the "BV Files" blog (purporting to be from Defendant himself) and continued to receive harassing e-mails from Defendant's "Dean Anderson" pseudonym indicating that the behavior would continue unabated. Plaintiff attaches copies of these comments and e-mail communications as Exhibit "D". These demands and communications indicating an intent that Defendant cease and desist in contacting his clients and disparaging him are similar to those sent by the attorney for the plaintiff in *Warner Bros*. In fact, they are far more explicit.

2.21   The process for a correction/change/retraction under the DMA works as follows: (a) the person makes a timely request for correction, clarificiation, or retraction not later than the 90th day after receiving knowledge of the publication; (b) the person requested to make the correction, clarification, or retraction may ask for additional information regarding the falsity not later than the 30th day after the request is received; and (c) a correction, clarification, or retraction is made not later than the 30th day after receipt of

RESPONSE TO MOT. S.J.

the request or receipt of the additional information concerning the falsity. Tex. Civ. Prac. & Rem. Code §§ 73.055 – 73.057.

2.22  Although there is no dispute that Plaintiff's correspondence with Mr. Dorrell did not contain all the information required under § 73.055(d), Plaintiff did make a communication to Defendant's counsel which clearly indicated his insistence that the communications to his employers and clients immediately cease as well as a willingness to settle if such communications did cease. See Ex. C. Likewise, Defendant made a clear, unequivocal, and public response to Plaintiff's demand: pound sand. See Ex. D. Thus, under the holding of *Warner Bros.*, this Court should analyze whether Plaintiff's correspondence to Mr. Dorrell during the month of May 2018 together with Defendant's responses to that correspondence constitute compliance with the DMA under the unique circumstances of this case and whether, by failing to object to the adequacy of such correspondence as notice, whether Defendant has waived his right to challenge such sufficiency under § 73.058(c)-(d).

**E.    The Abatement Provision of the DMA Operates in a Similar Manner to the *Texas Deceptive Trade Practices Act* and the *Texas Insurance Code.***

2.23  Defendant attempts to distinguish decisions under the *Texas Deceptive Trade Practices Act* ("DTPA") and *Texas Insurance Code* in which courts have found dismissal inappropriate where a plaintiff failed to comply with a notice provision. ECF 175, ¶ 23. He notes that both of these statutes require notice only as a tool to potentially resolved the litigation early. ECF 175, ¶ 24 (citing *Hines v. Has*, 843 S.W.2d 464, 468-69 (Tex. 1992)). However, this is exactly what the *Hardy* court determined as being the purpose of the DMA: "[t]he statutory provisions, and related legislative history, reveal that the public policy objective of the DMA is to ensure prompt mitigation of injury and

2.24 The same manner attempted by Defendant in his motion, the *Hardy* court itself took special note of examples in which the legislature used clear statutory language indicating its intent to bar a plaintiff's claim. It took specific note of Tex. Civ. Prac. & Rem. Code § 147.046 an Tex. Loc. Gov't Code § 89.0041(a),(c), both of which contain statutory language directing a court to dismiss claims absent proper notice. 536 S.W.2d at n. 6.

2.25 The legislature clearly intended the abatement provision of the DMA to operate in a manner that is the same, or substantially the same, as the abatement procedure under the DTPA. The abatement provision of the DMA permits a defendant who did not timely receive a written request for retraction to file a plea in abatement within 30 days after answering the suit. Tex. Civ. Prac. & Rem. Code § 73.062(a). The suit is then automatically abated in its entirety beginning eleven days after the plea in abatement is filed if the plea is verified and not controverted by affidavit of the plaintiff before the eleventh day. Tex. Civ. Prac. & Rem. Code § 73.062(b). If abated, the abatement continues (potentially indefinitely) until sixty days after the date the written request is served, or some later date as agreed. Tex. Civ. Prac. & Rem. Code § 73.062(c).

2.26 In this case, rather than seeking any abatement of Plaintiff's lawsuit, Defendant elected instead to pursue dismissal and sanctions under the *Texas Citizen's Participation Act*. As this Court is painfully aware, this resulted in an appeal which delayed the lawsuit for nearly eighteen months while the Fifth Circuit considered an interlocutory appeal. By not timely filing a plea in abatement, Defendant waived his right to do so. Assuming

that this Court rejects the other arguments of Plaintiff contained in this response, Defendant's only remedy is to seek a ruling from this Court prohibiting the recovery of exemplary damages in this matter.

### III. CONCLUSION

3.1 By creating a genuine issue of material fact with respect to his status as the publisher of the defamatory materials referenced in Plaintiff's Third Amended Complaint, Defendant has plead himself out of court with respect to his motion for summary judgment under the DMA. Under the circumstances of this case, strict compliance with the DMA was not possible. Defendant should not be permitted to take advantage of the protections afforded to a publisher under the DMA while simultaneously denying that he published anything at all. In light of the unique factual circumstances of this case, the Court should also analyze Plaintiff's early settlement communications to Mr. Dorrell, as well as Defendant's responses, to determine whether it can find substantial compliance with the DMA consistent with the holding of the Texas Supreme Court in *Warner Bros.*

3.2 Regardless of whether compliance with the DMA was possible, the *Tubbs* opinion by the Fifth Circuit concerning the DMA is not precedential. Since the Fifth Circuit's holding in Tubbs, every intermediate appellate court in Texas (with the exception of the First Court of Appeals) has adopted the reasoning of the Fifth Court of Appeals in *Hardy* that the remedy for a failure to comply with the DMA is abatement; not dismissal. This is consistent with similar remedies under the DTPA and the Insurance Code requiring abatement rather than dismissal, as well as the clear intent of the legislature when construing the DMA as a whole. Defendant's remedy under the DMA,

if any, is a prohibition on the recovery of exemplary damages; not dismissal.

## IV.   PRAYER

4.1   Plaintiff prays that Defendant's motion for summary judgment be denied.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
PO Box 2618
Decatur, TX 76234
P – (940) 305-9242
Email:  jasonleevandyke@protonmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE
