IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JASON LEE VAN DYKE §<br>  Plaintiff §<br> §<br>v. §<br> §<br>THOMAS CHRISTOPHER RETZLAFF §<br>a/k/a Dean Anderson d/b/a BV Files, Via §<br>View Files L.L.C., and ViaView Files §<br>  Defendant § | Case No. 4:18cv247 |

## PLAINTIFF'S RESPONSE IN SUPPORT OF MOTION TO QUASH

Plaintiff, Jason Lee Van Dyke, files this response in support of the motion to quash filed by James McGibney.

### I.   FACTS

1. Plaintiff has little to add to the facts stated by James McGibney in support of his motion to quash. However, in supporting Mr. McGibney's motion, Plaintiff believes that it would be helpful for this Court to have knowledge of certain additional information concerning discovery abuses by Defendant (but not Defendant's counsel) leading up to the subpoena of Mr. McGibney.

2. Defendant, acting as a pro se litigant, filed a frivolous lawsuit for a protective order against Plaintiff on March 20, 2020 pursuant to Rule 7A of the Texas Code of Criminal Procedure. The case was assigned to the 431st District Court in and for Denton County, Texas and, although Defendant sought *ex parte* relief, it was denied. Plaintiff sought to have the case dismissed through the vexatious litigant procedures contained in Chapter 11 of the Texas Civil Practice and Remedies Code due to Defendant's failure and refusal to seek permission from the local administrative judge prior to filing, but the Honorable

Brody Shanklin allowed the case to proceed. Plaintiff prosecuted a writ of mandamus on the issue up to the Texas Supreme Court, but mandamus relief was denied.

3. After being denied *ex parte* relief in the 431st District Court, Defendant filed an identical frivolous proceeding against Plaintiff in the 271st District Court in and for Wise County, Texas, but did not immediately seek service on Plaintiff. During a routine check, Plaintiff learned of this proceeding on or around April 17, 2020 and invoked the vexatious litigant statute in that case. The case was dismissed pursuant to the vexatious litigant statute on May 6, 2020.

4. Prior to the dismissal of the Wise County case, Plaintiff was served with a *third* frivolous protective order from the Superior Court of Maricopa County, Arizona on April 30, 2020. In an expedited proceeding, Plaintiff successfully defended himself from the protective order and prevailed at a telephonic hearing on the merits, which was held on May 15, 2020. The only one of the remaining frivolous protective order proceedings filed by Defendant is set for trial before the 431st District Court on June 29, 2020. The discovery period closed on May 30, 2020.

5. All of these protective orders are frivolous and were filed by Defendant solely for the purpose of gaining an improper advantage in this case. Email correspondence to this effect, in which Defendant – through counsel - demands $500,000.00 plus dismissal of this action with prejudice in exchange for dismissal of the protective order actions, is attached hereto as Exhibit "1". There were several follow-up e-mails to this effect as Plaintiff attempted to negotiate with defense counsel concerning possible settlement of all cases – where defendant responds by stating "no check from the Nazi bitch, no dismissal" are attached hereto as Exhibit "2".

6.  On May 21, 2020, Defendant noticed Plaintiff for a deposition in the protective order case. On May 28, 2020, Defendant deposed Plaintiff for six hours before Plaintiff suspended the deposition pursuant to Rule 199.5(c) and 199.5(g) of the Texas Rules of Civil Procedure. The following day, Defendant immediately stated his intention to depose Mr. McGibney during the week of May 31, 2020 – June 6, 2020. Plaintiff stated his opposition to a deposition outside the discovery period and Defendant filed a motion not only to take Mr. McGibney's deposition outside the discovery period in that case, but to retake Plaintiff's deposition as well as that of four other people (including Plaintiff's mother).  A copy of the correspondence between Plaintiff and Defendant on this issue is attached hereto as Exhibit "3".

7.  There have been three notices filed to take the deposition of Mr. McGibney and it is unclear from the record as to whether Mr. McGibney has ever been properly served with a subpoena. However, based upon the documents requested of Mr. McGibney, it is clear to Plaintiff that Defendant is attempting to use a subpoena and deposition in this case as a means through which to obtain discovery not otherwise available to him in the protective order proceeding. This is based upon the following fact:

    A.  Defendant filed a pro se motion in the 431st District Court seeking a bench warrant for the arrest of Mr. McGibney based upon his inability to serve him with a subpoena in this case. A copy of that motion is attached hereto as Exhibit "4" and incorporated by reference herein. It should be noted that, rather than making any legal argument concerning his entitlement to a bench warrant, Defendant used the motion as a means though which to harass and defame Mr. McGibney.

    B.    Defendant abused the Texas e-filing system in an attempt to deliver copies of the subpoena and deposition notice to Mr. McGibney, falsely stating in attached correspondent that Mr. McGibney had legally been "served", despite the fact that this Court has not authorized service on Mr. McGibney in this manner, Mr. McGibney is not a party to the Texas proceeding, and there is no other rule expressly permitted the service of a federal discovery subpoena on Mr. McGibney in this manner. A copy of this "notice" is attached hereto as Exhibit "5".

    C.    Defendant, in the course of conducting discovery in the Texas case and attempting discovery in this case, has sent multiple abusive and harassing e-mails to both Plaintiff and Mr. McGibney. A copy of this correspondence from Defendant is attached hereto as Exhibits "6" and "7".

8.    Plaintiff also reminds the Court of his pending motion in this case concerning Defendant's invocation of his Fifth Amendment privilege in response to substantially all of Plaintiff's written discovery. Between this case and the protective order case, Defendant has failed and refused to meaningfully participate in the discovery process. Plaintiff wishes to stress that he does **not** believe that defense counsel is complicit in these discovery abuses; only that defense counsel is unable to control the behavior of an uncontrollable client.

## II. ARGUMENT

### A. Compliance With The Subpoena Is Impossible

9.    First and foremost, Defendant's third notice of intent to take Mr. McGibney's depositions was filed on June 18, 2020. ECF 182. However, the proposed subpoena has

a date of appearance for June 17, 2020. ECF 182-1. The subpoena should be quashed on this basis alone because, based upon Defendant's filing, compliance with the subpoena by Mr. McGibney is impossible.

**B.   The Subpoena Requests Information Outside The Scope of Discovery**

10.   Plaintiff's purpose in naming Mr. McGibney as a witness in his responses to Defendant's interrogatories is because (a) he is another one of Defendant's victims; and (b) he too has devoted substantial resources into identifying Defendant as the person behind the "BV Files" blog and "Dean Anderson" e-mail accounts which are the subject of this litigation.

11.   When considering the documents requested of Mr. McGibney, it is abundantly clear that Defendant intends for a deposition of Mr. McGibney to go far beyond evidence that is within the scope of discovery in this case.

12.   It is well settled law that all civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First and foremost, the matter sought must be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is not, on its own, a high bar. There may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative. Rule 26 therefore imposes another requirement: discovery must also be "proportional to the needs of the case." *Id.*

13.   Proportionality requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. This relieves parties from the burden of taking unreasonable steps to ferret out every relevant document. When discovery is sought from nonparties, however, its scope must be limited even

more. Nonparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. *VA Dept. of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. *Id*. For example, a party's email provider might well possess emails that would be discoverable from the party herself, but unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider. *Id*.

14. A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty "subjects a person to undue burden" and must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. Id. (citing *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018). Courts must give the recipient's nonparty status "special weight," leading to an even more "demanding and sensitive" inquiry than the one governing discovery generally. *Id*. (citing *In re Public Offering PLE Antitrust Litig*., 427 F.3d 49, 53 (1st Cir. 2005).

15. When considering a motion to quash a subpoena, a court should consider not just the relevance of information sought, but the requesting party's need for it. *Id*. See also: *Wiwa v. Royal Dutch Petrol. Co*., 392 F.3d 812, 818 (5th Cir. 2004). It should consider whether the information sought will likely (not just theoretically) have marginal benefit in litigating important issues as well as whether the information is available from other

sources. *Id*. On the burden side, this court should consider the dollars-and-cents costs associated with both the deposition itself and the documents requested. *VA Dept. of Corr.*, 921 F.3d at 189. A court should consider all of the matters in which a subpoena may pose a burden, including privacy, confidentiality, and this case, the preservation of Mr. McGibney's right to counsel. *Id*. See also *Modern Plastics*, 890 F.3d at 251–52.

16. The following is the potentially relevant testimony of Mr. McGibney: (a) the distress he, like Plaintiff, has suffered as a victim of Defendant (which may be relevant to the question of exemplary/punitive damages in this case); and (b) any independent research conducted by him to ascertain that Defendant is responsible for the BV Files blog and the "Dean Anderson" e-mails. Thus, if this Court is disinclined to prohibit Mr. McGibney's deposition outright, the matters of inquiry (by either party) should be strictly limited to these issues. This Court should also disallow Defendant from seeking documents from Mr. McGibney as all of the deposition notices have clearly allowed one week or less for compliance. Plaintiff agrees that this is not a reasonable amount of time to produce documents potentially dating back to 2014.

**C. The Burden On Mr. McGibney, Who Is Another One of Defendant's Victims, Is Great.**

17. Plaintiff agrees that the burden that this deposition will impose in Mr. McGibney is substantial. In addition to the fact that Defendant is likely to publish (or cause the publication of) the entire deposition on the Internet, Plaintiff knows that Mr. McGibney is presently involved in litigation with another third party to this case who is represented by Mr. Dorrell. While Plaintiff believes that Mr. Dorrell will conduct himself professionally during deposition, an intrusion of this nature into the relationship between an attorney and client and of the right to counsel should be of grave concern to this

court. Plaintiff has no doubt that Mr. McGibney will incur the financial burdens described in his motion to quash if his deposition is permitted.

### III. CONCLUSION

18. Plaintiff acknowledges that Mr. Dorrell has been very cooperative with him in working around scheduling conflicts with respect to Mr. McGibney's proposed deposition. Defendant's behavior, however, has been beyond reprehensible. Plaintiff believes that Mr. Dorrell will conduct any deposition in this case as a professional, but has little doubt that Mr. Dorrell's client will attempt to use this deposition as a conduit through which to abuse a man who has been one of his victims since 2013. Plaintiff also acknowledges the ethical and constitutional implications of permitting an attorney to take the deposition of a witness who is both (a) a witness in this case; and (b) a party adverse to another of Mr. Dorrell's clients in a separate proceeding. There can be no doubt that Mr. McGibney, presented with this circumstance, will be required to hire independent counsel at his own expense.

19. Plaintiff shares all of Mr. McGibney's assertions that this deposition has been noticed, at least in part, for an improper purpose and that it seeks information far beyond the discovery needs of this case. Accordingly, if this Court is inclined to modify (rather than quash) the subpoena for Mr. McGibney, Plaintiff requests that Mr. McGibney's deposition be strictly limited concerning the distress he has suffered as a victim of Defendant and research or other work he had conducted in determining that Defendant is responsible for the "BV Files" blog and the "Dean Anderson" e-mails. Except to the extent that these issues are potentially relevant to both cases, Plaintiff's asks that both parties be specifically prohibited from inquiring into matters relevant only to

Defendant's *pro se* protective order lawsuits against Plaintiff.

20. If this Court is inclined to permit Mr. McGibney's deposition, Plaintiff requests that this Court enter orders necessary to protect both Mr. McGibney and Plaintiff from abuse of the deposition process by Defendant. This would include, but not be limited to: (a) permitting Mr. McGibney a reasonable time to retain counsel; and (b) requiring that any deposition be conducted occur *after* final resolution of Defendant's *pro se* protective order lawsuit.

## IV. PRAYER

21. Plaintiff prays that this Honorable Court enter an order granting Mr. McGibney's motion to quash or, in the alternative, that this Court enter a protective order for the benefit of Mr. McGibney limiting the scope of his deposition testimony and the documents he may be required to produce. Plaintiff also requests that, if the deposition is permitted by this Court at all, that it be permitted only after the final resolution of Defendant's frivolous protective order proceeding in Denton County.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason Lee Van Dyke
PO Box 2618
Decatur, TX 76234
P – (940) 305-9242
E – jasonleevandyke@protonmail.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE