**IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JASON LEE VAN DYKE,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **THOMAS CHRISTOPHER** | § | **NO. 4:18-CV-247-ALM** |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a BV FILES, VIA** | § | |
| **VIEW FILES, L.L.C., and VIAVIEW** | § | |
| **FILES,** | § | |
| *Defendants* | § | |

**RETZLAFF'S <u>AMENDED</u> MOTION FOR NO-EVIDENCE SUMMARY JUDGMENT**

> **The Court should grant no-evidence summary judgment in favor of defendant Thomas Retzlaff and against plaintiff Jason Van Dyke on all claims because Van Dyke lacks evidence of key elements of his four surviving claims as a matter of law.**

## I. INTRODUCTION

1.      Plaintiff Jason Van Dyke sued defendant Thomas Retzlaff for $100,000,000.00 for libel and other causes of action after Retzlaff filed an allegedly frivolous grievance against him with the State Bar of Texas.[1]

2.      The discovery period ended on June 23, 2020. (Doc. 117).

3.      Retzlaff's original motion for no-evidence summary judgment (Doc. 194) was filed on July 31, 2020. This amended motion reflects Van Dyke's stipulation of dismissal of three causes of action on August 12, 2020. Retzlaff's motion for leave to file this motion is filed contemporaneously herewith.

4.      This case is set for trial during January 4-29, 2021. (Doc. 117).

## II. FACTS

5.      Complaining that Retzlaff filed a "frivolous" grievance against him with the State Bar of Texas, (TAC ¶ 5.4), Van Dyke sues basing his claims on statements posted on a "blog"[2] Retzlaff allegedly owns[3] and in e-mails Retzlaff allegedly sent.[4]   Van Dyke alleges Retzlaff made approximately ten false "statements of fact" about Van Dyke, including the following:

(i)      Van Dyke is a "Nazi;"

(ii)     Van Dyke is a pedophile;[5]

(iii)    Van Dyke is a drug addict;

(iv)     Van Dyke is a white supremacist;

(v)      Van Dyke is involved in revenge pornography;

(vi)     Van Dyke has a criminal record for abusing women;

(vii)    Van Dyke was being treated and was medicated for bipolar disorder;

(viii)   Van Dyke has engaged in unwanted sexual solicitations;

(ix)     Van Dyke suffers from syphilis; and

(x)      Van Dyke has engaged in other sexual misconduct including, but not limited to, a homosexual relationship with one or more witnesses.

TAC, ¶ 6.2.

6.      The pungent comments on the "BV Files" blog use loose, figurative language to express the opinion that Van Dyke was ill-suited to be employed as

---

[1]      The current version of Van Dyke's complaint removes Retzlaff's grievance as the basis of any of Van Dyke's claims.  Plaintiff's Third Amended Complaint ("TAC") ¶ 5.33.

[2]      The blog is known as "BV Files" and can be found at www.viaviewfiles.net.

[3]      See TAC ¶¶ 5.5-5.11, 5.18-5.20 and Exhibit 3, 4, 9 and 10.

[4]      See TAC ¶¶ 5.12 and Exhibit 5.

either an assistant district attorney or an attorney with the firm of Karlseng, Leblanc, & Rich, LLC. The "BV Files" authors, whoever they are, are entitled to express their opinions about Van Dyke's frequent projection of his violent, racist beliefs onto an Internet audience of 7.5 billion people with posts such as this:



7.     No matter how acrid or offensive, the statements attributed to Retzlaff are constitutionally protected expressions of opinion and rhetorical hyperbole.

---

[5]     The actual statement was that Van Dyke "has *the look of* a pedophile"—clearly a matter of highly subjective opinion.

## III. ARGUMENT & AUTHORITIES

8.     The purpose of a summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1984).   Summary judgment is particularly appropriate when the questions to be decided are questions of law.  *Flath v. Garrison Pub. Sch. Dist*., 82 F.3d 244, 246 (8th Cir. 1996).  Retzlaff moves for summary judgment pursuant to FED. R. CIV. P. 56(b) in favor of Retzlaff and against Van Dyke on *all* claims Van Dyke asserts. Retzlaff need not submit evidence in support of his motion on claims on which Van Dyke bears the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Retzlaff need only "point to an absence of evidence" in order to shift the burden to Van Dyke.  *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994 (per curiam).

9.     Retzlaff is entitled to summary judgment if Van Dyke fails to bring forth evidence to support each challenged element of Van Dyke's causes of action against Retzlaff.   FED. R. CIV. P. 56(c).   "The plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party has the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

10.     Rule 56(e) requires Van Dyke to go beyond the pleadings and by his own affidavits, or by "depositions, answers to interrogatories, and admissions on

file" designate "specific facts showing that there is a genuine issue for trial." FED.

R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

11.     On August 12, 2020, Van Dyke filed a stipulation of partial

dismissal (Doc. 195) of Van Dyke's claims for:

> (i)      intentional infliction of emotional distress;
>
> (ii)     tortious interference with existing contract; and
>
> (iii)    intrusion upon seclusion.

Assuming the Court approve the stipulation, the case has now been streamlined.

Therefore, in the interests of clarity and judicial economy, Retzlaff shortens his

motion to seek no-evidence summary judgment on just the following *four* claims,

instead of the original *seven*:

> (i)      libel per se; (Doc. 113, Plaintiff's Third Amended Complaint
>          ("TAC"), ¶¶ 6.2-6.11)
>
> (ii)     business disparagement; (TAC ¶¶ 6.12-6.17)
>
> (iii)    tortious interference with prospective relations (plaintiff's future
>          relations with the law firm of Karlseng, Leblanc, & Rich, LLC)
>          (TAC ¶¶ 6.25-6.30) and
>
> (iv)     malicious criminal prosecution; (TAC ¶¶ 6.31-6.37).

12.     Retzlaff's June 8, 2020, motion for traditional summary judgment

because of Van Dyke's failure to comply with the Defamation Mitigation Act

(Doc. 175) is not affected by this amended no-evidence motion.   Retzlaff's

traditional motion for summary judgment (Doc. 175) remains pending and is ripe

for the Court's consideration.

### A. Summary Judgment on Van Dyke's Claim for Libel Per Se is Proper Because Van Dyke's Evidence is of Merely Opinion and Rhetorical Hyperbole

13.     Van Dyke sues for libel per se.  (TAC ¶¶ 6.2-6.11).  "Libel" is "defamation expressed in written or other graphic form that tends to … injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or to impeach any person's honesty, integrity, virtue, or reputation…." TEX. CIV. PRAC. & REM. CODE § 73.001.  Libel is defamatory per se if, on its face, the statement falls into this statutory definition.  *Gartman v. Hedgpeth*, 157 S.W.2d 139, 140-41 (Tex. 1941).  Libel is also defamatory per se if it (i) injures a person in his office, profession, occupation;[6] (ii) imputes a crime;[7] or (iii) imputes a loathsome disease;[8] or (iv) imputes sexual misconduct.[9]  *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018), *cert. denied*, 139 S.Ct. 1216 (2019).[10]

14.     At first blush, some of the statements Van Dyke alleges Retzlaff published appear to come close to the definition of libel per se—that Van Dyke (i) is a "Nazi;" (ii) is a "pedophile;" (iii) is a "drug addict;" (iv) has a criminal record for abusing women; (v) "i[s] involved with revenge pornography;" (vi) has engaged in unwanted sexual solicitations; (vii) has been treated for bipolar

---

[6]     *Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017).
[7]     *D. Mag. Partners v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017).
[8]     *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App.—Houston [14th Dist.  2013, no pet.).
[9]     *Memon*, 401 S.W.3d at 421.
[10]     In *Tatum*, the Texas Supreme Court presented a new, comprehensive framework for courts to use when evaluating defamation claims.  Courts historically used the terms "defamation per se" and "defamation per quod" to classify types of defamatory statements by their defamatory nature and the nature and type of proof required to establish damages.  In

disorder, and other mental illness; (viii) has syphilis; and (ix) has engaged in "a homosexual relationship with one or more witnesses."  (TAC, ¶ 6.2.)  But the Court must determine whether each statement was reasonably capable of a defamatory meaning.  *Tatum*, 554 S.W.3d at 625; *see also **Clifford v. Trump***, 2020 WL 4384081 at *1 (9th Cir. July 31, 2020) (applying Texas defamation law to hold tweet calling a sketch a "total con job" not actionable because it reflected Trump's opinion).  This is a question of law that uses an objective standard.  *Tatum*, 554 S.W.3d at 637.

15.     A statement incapable of being proved true or false cannot be the basis of a defamation action.  *See **Harvest House Publ'rs v. Local Ch***., 180 S.W.3d 204, 211 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (whether labeling a church as a "cult" is defamatory depends on religious beliefs).  Because the First Amendment allows only provably *false* statements to be actionable as defamation, subjective characterizations and opinions cannot give rise to a valid claim as a matter of law.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); *Clifford*, 2020 WL 4384081 at *1.   And even when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it is made' discloses that it is merely an opinion masquerading as fact." *Tatum*, 554 S.W.3d at 639. "Even if susceptible to verification, [statements] do not expose the speaker to liability if their entire context discloses that they were not intended to assert a fact." *Clifford*, 2020 WL 4384081 at *1, citing *Tatum*, 664 S.W.3d at

---

*Tatum*, the court limited the use of those terms to the damages issue and introduced new terms for courts to use when evaluating a statement's defamatory nature.

638. ***Castleman v. Internet Money Ltd***., 2018 WL 5093857, at *5 (Tex. App.—
Amarillo 2018, pet. denied).  Statements not intended to assert a fact "are 'called
an opinion.'" *Id.*

16.     "However pernicious an opinion may seem, we depend for its
correction not on the conscience of judges and juries but on the competition of
other ideas." ***Gertz v. Robert Welch, Inc***., 418 U.S. 323, 340 (1974).  As noted
above, the "Texas Supreme Court has repeatedly recognized that the Texas
Constitution provides greater rights of expression than its federal equivalent."
***Dolcefino v. Turner***, 987 S.W.2d 100, 110-111 (Tex. App.—Houston [14th Dist.]
(collecting cases).  The Texas Constitution *expressly* protects opinions:

> **Every person shall be at liberty to speak, write or publish his opinions
> on any subject, being responsible for the abuse of that privilege; and
> no law shall ever be passed curtailing the liberty of speech or of the
> press.**

TEX. CONST. art. I, § 8.

17.     In ***Greenbelt Cooperative Publishing Assn., Inc. v. Bresler***, 398
U.S. 6 (1970), a developer, Bresler, was negotiating with the city for a variance on
certain of his land, while also negotiating on other land the city wanted to buy
from him. A newspaper reported that some persons characterized his negotiating
position as "blackmail."  Bresler sued for libel, claiming the articles imputed to
him the crime of blackmail. *Id*. at 8. The Court held: "[A]s a matter of
constitutional law, the word 'blackmail' in these circumstances was not slander
when spoken, and not libel when reported in the Greenbelt News Review." *Id.* at
13. "It is simply impossible to believe that a reader who reached the word

'blackmail' in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized." *Id.* at 14.

18.     The ***Bresler*** court further held:

> **No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense.  On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable.**

*Id.*; *see also **Hustler Magazine, Inc. v. Falwell***, 485 U.S. 46, 50 (1988) (First Amendment precluded recovery for ad which "could not reasonably have been interpreted as stating actual facts about the public figure involved"); ***Letter Carriers v. Austin***, 418 U.S. 264 (1974) ("List of Scabs" in newsletter, together with pejorative definition of "scab" using words like "traitor," did not support a defamation action since terms were used "in a loose, figurative sense" and were "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members").  "Rhetorical hyperbole" is "extravagant exaggeration … [used] for rhetorical effect." ***Backes v. Misko***, 486 S.W.3d 7, 26 (Tex. App.—Dallas 2015, pet. denied) (internal quotation omitted).  "For example, the use of 'rewarding,' 'ripping off,' and 'bilking' when reviewed in context have been considered rhetorical hyperbole." *Id.* (citing ***Rehak Creative Services, Inc. v. Witt***, 404 S.W.3d 716, 729 (Tex. App.—Houston [14th Dist. 2013, *disapproved on other grounds, **In re Lipsky***, 460 S.W.3d 579 (Tex. 2015)).

19.     "Context is important." **Rehak**, 404 S.W.3d at 729. "[P]ublications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor…." *Id.* "This is also true in determining whether a publication is an actionable statement of fact or a constitutionally protected expression of opinion." **Bentley v. Bunton**, 94 S.W.3d 561, 579 (Tex. 2003). "The statements … must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances." **Ezrailson v. Rohrich**, 65 S.W.3d 373, 376 (Tex. App.—Beaumont 2001, no pet.).

20.     A communication is viewed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it. **Turner v. KTRK Television, Inc**., 38 S.W.3d 103, 114 (Tex. 2000). Falsity is determined based on "the meaning a reasonable person would attribute to a publication, and not to a technical analysis of each statement." **New Times, Inc. v. Isaacks**, 146 S.W.3d 144, 154 (Tex. 2004). The irreverent tone and format of the "BV Files" blog Van Dyke accuses Retzlaff of authoring "notifies readers to expect speculation and personal judgment." *See* **Milkovich**, 110 S.Ct. at 2712 (Brennan, J., dissenting). It is "pointed, exaggerated, and heavily laden with emotional rhetoric and moral outrage." *Id*. The language is "loose and figurative," not precise and literal, and is "employed as a metaphor or hyperbole, not to convey actual facts." **Yiamouyiannis v. Thompson**, 764 S.W.2d 338, 339-40 (Tex. App.—San Antonio 1988, writ denied), *cert. denied*, 110 S.Ct. 722 (1990). The **Yiamouyiannis** court held, "[R]eferences to [plaintiff] as a quack, a

hoke artist, and a fearmonger are assertions of pure opinion, as are the statements

that he was exposed for quackery, lacks solid credentials, and expresses

incomprehensible mumbo jumbo." *Id*. at 341.

> **These terms of derision, considered in context and in light of the fluoridation debate, are vintage hyperbole and … the speaker's shorthand way of opining [plaintiff] is not worthy of belief, his views are confused nonsense, and he is not qualified to instruct the public about fluoridation.**

*Id*.  "While other commentators might have taken a more ratiocinative approach,

[defendant] was entitled to use instead these particular terms of invective in this

context." *Id.*  "As to each of these utterances, the absolute constitutional privilege

applies…." *Id*.

21.     The Supreme Court has made a point of vigilantly enforcing the Free

Speech Clause even when the speech at issue made no great contribution to public

debate.  *See **Iancu v. Brunetti***, 239 S.Ct. 2294 (2019), upholding the right of a

manufacturer of jeans to register the trademark "F.U.C.T."  In ***Matal v. Tam***, 137

S.Ct. 1744 (2017) the court held that a rock group called "The Slants" had the

right to register its name.  In earlier cases, the court went even further.  In ***United***

***States v. Alvarez***, 567 U.S. 709 (2012), the court held that the First Amendment

protected a man's false claim that he had won the Congressional Medal of Honor.

In ***Snyder v. Phelps***, 562 U.S. 443 (2011) the successful party had viciously

denigrated a deceased soldier outside a church during his funeral.  In ***United States***

***v. Stevens***, 559 U.S. 460, 466 (2010), the First Amendment claimant had sold

videos of dog fights.  If the speech in all of these cases had been held to be

unprotected, our nation's system of self-government would likely not have been

placed in serious jeopardy.  Yet, the protection of even speech as trivial as a naughty trademark can serve an important purpose: it can demonstrate that the U.S. Supreme Court is deadly serious about protecting freedom of speech.

22.    The blog statements Retzlaff allegedly published were not "hard news" as on the front page of a newspaper or a scholarly article.  *See **Milkovich***, 497 U.S. at 32 ("Certain formats … signal the reader to anticipate a departure from what is actually known by the author as fact"); *see also **Obsidian Fin.**,* 740 F.3d at 1293 ("[T]he general tenor of Cox's blog posts negates the impression that she was asserting objective facts."); ***Gardner v. Martino***, 563 F.3d 981, 988 (9th Cir. 2009) ("elements that would reduce the audience's expectation of learning an objective fact [include]: drama, hyperbolic language, an opinionated and arrogant host [speaker] and heated controversy").  The Court should consider that such elements are scattered liberally across the "BV Files" blog.  For example, on March 25, 2018, was this:

> **So why does Bob Karlseng give money and economic support to Nazis? And what do each and every one of the corporate clients of Maverick Title of Texas LLC dba Texas Title Company think about their monies going into the pocket of a racist ass-hat who likes to post ridiculous stuff on the interwebs?** **That, our teeming MILLIONS of readers, listeners, and supporters will be the subject of an upcoming article. STAY TUNED!**
>
> **We here at the BV Files have a very special message for Denton, TX, attorney Jason Lee Van Dyke:**
>
> **Go Fuck Yourself Jason Van Dyke.  Woof, bitch!**

www.viaviewfiles.net, last accessed February 26, 2020.  Especially relevant to whether the blog makes statements of *fact* is this:

> *ALL CONTENT ON THIS BLOG, BEING A MIXTURE OF PARODY, SATIRE, AND LAME HUMOR, IS FOR ENTERTAINMENT PURPOSES ONLY AND NOT TO BE TAKEN SERIOUSLY. WHEN IT COMES TO PARODY, THE LAW REQUIRES A REASONABLE READER STANDARD, NOT A "MOST GULLIBLE PERSON ON FACEBOOK" STANDARD. THE FIRST AMENDMENT DOES NOT DEPEND ON WHETHER EVERYONE IS IN ON THE JOKE. NEITHER IS IT BOTHERED BY PUBLIC DISAPPROVAL, WHETHER TEPID OR RED-HOT.*[11]

23.     Given this context, Van Dyke cannot bring forth evidence of actionable libel by Retzlaff.  The blog statements are nonactionable statements of opinion or rhetorical hyperbole that no reasonable person of ordinary intelligence would believe stated facts about Van Dyke.

24.     Therefore, the Court should grant no-evidence summary judgment in favor of Retzlaff and against Van Dyke on Van Dyke's claim for libel per se.

---

[11]     This language can be viewed by any visitor to the BV Files blog by clicking the "About" button.  *See* http://www.viaviewfiles.net/about/, last accessed January 3, 2020.

## B. Summary Judgment is Proper on Van Dyke's Claim for Tortious Interference With Prospective Relations Because There is No Evidence of an Underlying Tort

25.     Throughout his third amended complaint, Van Dyke complains of Retzlaff's alleged "criminal stalking" behavior and "criminally harassing" acts.[12] Although Van Dyke does not attempt a civil cause of action for stalking or harassment, Van Dyke nevertheless affirmatively pleads these allegedly "criminal acts" as the basis for his claim for tortious interference with prospective relations.[13] But there is a problem with this predicate that appears to have escaped Van Dyke's notice—it is not a crime to repeatedly send e-mails *even if the e-mails are sent with the intent to harass, annoy, alarm, abuse, torment, or embarrass the recipient.*  Here is why.

26.     Since 2001, there *has been* a statute entitled "Harassment" that criminalizes the act of sending "repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass or offend another."[14] TEX. PEN. CODE § 42.07(a)(7).  Although Van Dyke never cites this statute, this is almost certainly the statute he is relying on to describe Retzlaff's behavior as "criminally harassing" and "criminal stalking." There is a separate "stalking" statute, TEX. PEN. CODE § 42.072, but—despite Van Dyke's repeated use of the phrase "criminal stalking" in the TAC—it is unlikely that Van Dyke is

---

[12]     *See, e.g.*, TAC ¶ 5.3 (Retzlaff's decision to "criminally stalk" Van Dyke); heading on p. 7, ("Criminal Stalking Behavior"); ¶ 5.21 ("criminal acts"), ¶ 5.23 ("harassing e-mails"); ¶ 5.31 ("criminally harassing acts");  ¶ 6.28 ("criminal harassment"); and ¶ 6.39 ("Retzlaff's ongoing tortious activity and criminal staking (sic)").

[13]     *See, e.g.*, TAC ¶ 6.27 (basis for Van Dyke's claim for tortious interference with prospective relations.

relying on § 42.072. This is because TEX. PEN. CODE § 42.072 requires (i) "conduct" (as distinguished from electronic communication); and (ii) a threat of "bodily injury or death." *See* TEX. PEN. CODE § 42.072; ***Fernandez v. State***, No. 02-18-00483-CR, 2020 WL 1057323 at *8-*9, (Tex. App.—Fort Worth March 5, 2020, pet. filed) (comparing and contrasting the "stalking" and "harassment" statutes). Unlike the "harassment" statute, § 42.07(a)(7), the "stalking" statute is limited to conduct between the plaintiff and persons with whom the plaintiff had a familial, household, or "dating" relationship. *Id*. Van Dyke has never alleged Retzlaff committed any "conduct" putting Van Dyke in "fear of bodily injury or death," or had any dating or familial, household, or dating relationship with Van Dyke. Van Dyke has alleged only that Retzlaff sent electronic communications that Van Dyke found "annoying" and "harassing."

27.     Despite Van Dyke's use of the word "stalking," the "stalking" statute, § 42.072, cannot possibly apply under the facts of the case at bar. The underlying tort supporting Van Dyke's claim for tortious interference with prospective relations must be Retzlaff's alleged violation not of the "stalking" statute, but of the "harassment" statute, § 42.07(a)(7). That statute is facially unconstitutional. Therefore, Van Dyke has no evidence of an underlying tort.

28.     The U.S. Supreme Court has repeatedly held that criminalizing "annoying" behavior—without any objective measurement or standard—is unconstitutionally vague.

---

14      *See* Act of June 15, 2001, 77th Leg., R.S., ch. 1222, 2001 Tex. Gen. Laws 2795 (amended 2013) (current version at TEX. PEN. CODE § 42.07(a)(7).)

> **What renders a statute vague is not the possibility that it will
> sometimes be difficult to determine whether the incriminating fact it
> establishes has been proved; but rather the indeterminacy of precisely
> what that fact is. <u>Thus, we have struck down statutes that tied
> criminal culpability to whether the defendant's conduct was
> "annoying" or "indecent"—wholly subjective judgments without
> statutory definitions, narrowing context, or settled legal meanings</u>.**

*United States v. Williams*, 553 U.S. 285, 306 (2008) [emphasis added], citing

*Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) and *Reno v. ACLU*, 321 U.S. 844

870-71, n.35 (1997).

29.     Texas courts have held Texas's harassment statute, TEX. PEN.

CODE § 42.07(a)(7), unconstitutionally vague and overbroad on its face. *Ex Parte*

*Barton*, 586 S.W.3d 573, 575 (Tex. App.—Fort Worth 2019, pet. granted);

*Karenev v. State*, 258 S.W.3d 210, 213 (Tex. App.—Fort Worth 2008), *rev'd on*

*other grounds*, 281 S.W.3d 428 (Tex. Crim. App. 2009).

> **A statute is overbroad in violation of the First Amendment guarantee
> of free speech if in addition to proscribing activity that may be
> constitutionally forbidden, it sweeps within its coverage a substantial
> amount of expressive activity that is protected by the First
> Amendment.**

*Ex Parte Barton*, at 580-81.  The *Barton* court held that § 42.07(a)(7) did this:

> **Experience has taught us that whether the President's tweets—or an
> ex-spouse's emails—are annoying or offensive is a highly subjective
> inquiry, and the view of whether these communications are
> innocuous, humorous, annoying, or offensive will differ greatly from
> person to person. [Citations omitted.] Consequently, we agree with
> Barton that the electronic-communications subsection [§ 42.07(a)(7)]
> is facially unconstitutional as vague and overbroad; as such, it is void
> and unenforceable.**

*Id.*, at 585.[15]

---

[15]     The *Barton* court acknowledges that at least four other courts of appeals have concluded
that § 42.07(a)(7) does not reach "communicative conduct," and therefore does not "implicate the free-
speech guarantee of the First Amendment."  *See Ex Parte Barton*, 586 S.W.3d 573, 578 n.11 (Tex. App.—

30.     Both the Fifth Circuit and the Texas Court of Criminal Appeals have also held prior versions of § 42.07 unconstitutionally vague because of the words used to describe the offensive behavior—"harass, annoy, alarm, abuse, torment, or embarrass."   *Kramer v. Price*, 723 F.2d 1164, 176 (5th Cir. 1984) (en banc opinion); *Long v. State*, 931 S.W.2d at 285, 297 (Tex. Crim App. 1996).   And while § 42.07 was amended September 1, 2017, there appears to be no change to § 42.07(a)(7)'s language held unconstitutionally vague by the *Barton* court in 2019. The Fort Worth Court of Appeals reaffirmed its holding in *Barton* that the "harassment" statute, § 42.07(a)(7), is facially unconstitutional in *Fernandez*, 2020 WL 1057323 at *8-*9, (Tex. App.—Fort Worth March 5, 2020, pet. filed) ("[T]he stalking statute [§ 42.072] is materially different from the harassment statute [§ 42.07(a)(7)] that this court has declared unconstitutional….").[16]

31.     Nor can "libel per se" constitute the underlying tort, for the reasons extensively briefed above.   Thus, as a matter of law, Van Dyke cannot bring forth evidence of the underlying tort required to support Van Dyke's claim of tortious interference with prospective relations.   Accordingly, the Court should grant no-evidence summary judgment in favor of Retzlaff and against Van Dyke on his claim for tortious interference with prospective relations.

---

Fort Worth 2019, pet. granted) (collecting cases).  The *Barton* court writes, "We disagree with those courts for the reasons stated herein."  *Id.*   At least one other court has also disagreed with *Barton* in a non-precedential opinion. *See Tarkington v. State*, 2020 WL 1283899, at *7 (Tex. App.—Tyler 2020, n.p.h.) (memo. op.).

[16]     In a private communication with Retzlaff's counsel, Van Dyke pointed out that "[T]he {Second} Court of Appeals examined the stalking statute in light of its holding in *Barton* and found that it was constitutional in *Fernandez v. State*."  Van Dyke e-mail of August 5, 2020.   This is true but immaterial.   The "stalking statute," TEX. PEN. CODE § 42.072, is not at issue in the case at bar.   As noted above, the *Fernandez* court *reaffirmed* its holding in *Barton* that that "harassment" statute, TEX. PEN. CODE § 42.07(a)(7), is facially unconstitutional.

## C. Summary Judgment is Proper on Van Dyke's Claim for Business Disparagement Because There is No Evidence of Malice

32.     To survive Retzlaff's challenge to a business disparagement claim, Van Dyke must bring forth evidence of the following elements:

(i)     Retzlaff's publication of disparaging words about Van Dyke;

(ii)    Retzlaff's words were false;

**(iii)   Retzlaff published the words with malice**;

(iv)    Retzlaff published the words without privilege; and

(v)     Retzlaff's published words caused Van Dyke special damages.

*In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015).  Retzlaff challenges Van Dyke's evidence of the element of malice.

33.     Van Dyke mechanically recites that Retzlaff's words "cast doubt on the existence, quality, or ownership of plaintiff's land, chattels, or intangible things."  (TAC ¶ 6.13.)  But Van Dyke has no evidence that any words published by Retzlaff referred to "the existence, quality, or ownership of plaintiff's land, chattels, or intangible things."  Van Dyke claims Retzlaff's statements "concerned a product that Plaintiff was forced to sell, its financial position, or the character of his business."  (TAC ¶ 6.14.)  However, Van Dyke's evidence thereof is lacking.

34.     Business disparagement is not properly understood as "an alternative theory of recovery" to a libel claim, as Van Dyke mistakenly appears to believe.[17]  Statements referring to a plaintiff personally—as Van Dyke alleges in his Third

---

[17]     "Plaintiff contends as an alternative theory of recovery that Retzlaff is liable to him for business disparagement."  (TAC ¶ 6.12.)

Amended Complaint—are governed by defamation law.  ***Hurlbut v. Gulf Coast Atl. Life Ins***., 749 S.W.2d 762, 766 (Tex. 1987).

35.     In an action for business disparagement by a public figure such as Van Dyke,[18] the ***New York Times*** standard for "actual malice" applies.[19]  ***Forbes, Inc, v. Granada Biosciences, Inc***., 124 S.W.3d 167, 170-71 (Tex. 2003).     The Texas Supreme Court—in recognizing that the Texas Constitution provides greater rights of free expression than its federal equivalent[20]—has consistently held that proof of actual malice requires sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication.[21] Van Dyke has no such evidence.

36.     The Court should grant summary judgment in favor of Retzlaff and against Van Dyke Van Dyke on Van Dyke's claim for business disparagement.

---

[18]     Extensive evidence of Van Dyke's status as a public figure was appended to Retzlaff's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Doc. 129).   Retzlaff respectfully requests that the Court take judicial notice of this evidence in its file.

[19]     Under the ***New York Times*** standard, "actual malice" means the statement was made with actual knowledge of its falsity or with reckless disregard for the truth.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964.)

[20]     *See, e.g.*, ***Cain v. Hearst Corp.***, 878 S.W.2d 577, 584 (Tex. 1994); ***Davenport v. Garcia***, 834 S.W.2d 4, 8 (Tex. 1992) (noting that the continued inclusion in our state constitution of "an expansive freedom of expression clause and rejection of more narrow protections indicates a desire in Texas to ensure broad liberty of speech); ***O'Quinn v. State Bar of Texas***, 763 S.W.2d 397, 402 (Tex. 1988) (concluding "it is quite obvious that the Texas Constitution's affirmative grant of free speech is more broadly worded than the first amendment.").

[21]     *See, e.g.*, ***Hagler v. Proctor & Gamble Mfg. Co.***, 884 S.W.2d 771, 772 (Tex. 1994) (holding ill will cannot prove malice); ***Channel 4, KGBT v. Briggs***, 759 S.W.2d 939, 941 (Tex. 1988) (mistake was not actionable where broadcaster denied subjective awareness of the error); ***Doubleday & Co., Inc. v. Rogers***, 674 S.W.2d 751, 755-57 (Tex. 1984) (proof that a prudent person would not have published or would first have investigated is not actual malice); ***Foster v. Upchurch***, 624 S.W.2d 564, 566 (Tex. 1981) (naming the wrong person as a killer was a "mistake" and not actual malice); ***Dun & Bradstreet, Inc. v. O'Neil***, 456 S.W.2d 896, 900 (Tex. 1970) (no evidence of actual malice where publisher admitted, "I didn't look at it, I'm afraid, as carefully as I should," because of "an executive breathing down my neck"); ***El Paso Times, Inc. v. Trexler***, 447 S.W.2d 403, 406 (Tex. 1969) (complete failure to investigate amounted to no evidence of constitutional malice).

### D. Summary Judgment is Proper on Van Dyke's Claim for Malicious Criminal Prosecution

37.     To survive Retzlaff's motion for no-evidence summary judgment on a claim for malicious criminal prosecution, Van Dyke must have evidence to show:

(i)     A criminal prosecution was commenced against Van Dyke;

**(ii)    Retzlaff initiated or procured the prosecution;**

(iii)    The prosecution was terminated in Van Dyke's favor;

**(iv)    Van Dyke was innocent of the charge;**

**(v)    Retzlaff did not have probable cause to initiate or procure the prosecution;**

(vi)    Retzlaff acted with malice; and

(vii)    Van Dyke suffered damages as a result of the prosecution.

*Kroger Tex., L.P. v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). Van Dyke can bring forth no evidence of at least elements (ii) and (iv) and (v).

38.     As to element (ii), Retzlaff did not initiate or procure the prosecution.  A defendant "initiates" a criminal prosecution by making a formal charge to law enforcement authorities.  A defendant does *not* "initiate" criminal proceedings if the complaint was executed by a police officer and the charging instrument is filed by the prosecutor.  *Gonzalez v. Grimm*, 479 S.W.3d 929, 936-37 (Tex. App.—El Paso 2015, no pet.).  "Causation is an indispensable element" of malicious prosecution.  *In re Bexar County Criminal District Attorney's Office*, 224 S.W.3d 182, 185 (Tex. 2007).  Van Dyke has no evidence that the affidavit *initiating Van Dyke's criminal prosecution* was signed by Retzlaff.

> **[T]o recover for malicious prosecution when the decision to prosecute is within another's discretion, the plaintiff has the burden of proving that that decision would not have been made but for the false information supplied by the defendant.**

*In re Bexar County Criminal District Attorney's Office*, 224 S.W.3d at 185, quoting *King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (per curiam).  Van Dyke has claimed that the criminal prosecution against him was commenced "on the special request and insistence of Retzlaff."  (TAC ¶ 6.31.)  This is not enough.  Van Dyke cannot bring forth evidence that the decision to prosecute "would not have been made *but for* false information supplied by" Retzlaff.

39.     As to element (iv), Van Dyke lacks evidence that he was innocent of the crime alleged.  There is no presumption of innocence in a civil case.  *Missouri, Kan. & Tex. Ry. v. Groseclose*, 110 S.W. 477, 480 (Tex. App.—Texarkana 1908, no writ). Van Dyke must bring forth evidence of innocence.  Although a grand jury no-billed Van Dyke for the charge, this is a far cry from the proof of innocence required to support his malicious prosecution claim. Nothing prevents a district attorney from presenting additional facts to a different grand jury—who might very well reach a different conclusion—and then prosecuting Van Dyke.

40.     As to element (v), it is also Van Dyke's burden to prove that Retzlaff lacked probable cause to initiate or procure the prosecution.  *Kroger Tex. L.P. v. Suberu*, 216 S.W.2d 788, 792 n.3 (Tex. 2006).   In the context of malicious prosecution, probable cause is defined as the existence of facts and circumstances that would create a belief in a reasonable person, acting on the facts within his knowledge, that the person charged was guilty of a crime.  *Akin v. Dahl*, 661

S.W.2d 917, 921 (Tex. 1983); *Rico v. L-3 Comms.*, 420 S.W.3d 431, 439 (Tex.

App.—Dallas 2014, no pet.).    Even if Retzlaff knowingly provided false

information to the authorities, this is irrelevant to the probable-cause inquiry.

*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 519 (Tex. 1997).  It would

also be irrelevant even if Van Dyke had been *acquitted.*  *Kroger Tex.*, 216 S.W.3d

794.  The question is not what the facts actually were, but what Retzlaff honestly

and reasonably believed the facts to be.  *Id.*, 792-93.  Even though events after the

initiation of criminal proceedings may seem relevant to the issue of probable

cause, they are immaterial to Retzlaff's belief and motives before initiation of the

prosecution.  *Turner v. Roadway Express, Inc.*, 911 S.W.2d 224, 226-27 (Tex.

App.—Fort Worth 1995, writ denied).  Van Dyke has no evidence of Retzlaff's

subjective state of mind at the time the prosecution was initiated.

41.    For these reasons, the Court should grant no-evidence summary

judgment on Van Dyke's claim for malicious criminal prosecution.

### IV. CONCLUSION

42.    As shown above, various issues of law are dispositive against Van

Dyke on all of his claims and demonstrate that he do9es not have evidence to

support key elements of his claims. Accordingly, the Court should grant final

summary judgment in favor of Retzlaff and against Van Dyke on all of Van

Dyke's claims.

## V. PRAYER

43.     For these reasons, Retzlaff prays that the Court grant final summary judgment in favor of Retzlaff and against Van Dyke on all of Van Dyke's claims. Retzlaff prays for such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

## HANSZEN ✦ LAPORTE

By: _____ /s/ Jeffrey L. Dorrell _____
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF SERVICE

I certify that on _____8-12_____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

Mr. Jason Lee Van Dyke
Plaintiff, Pro Se
P.O. Box 2618
Decatur, Texas 76234
Telephone: 940-305-9242
jasonleevandyke@protonmail.com


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**