## IN THE UNITED STATES DISTRICT FOR THE
## EASTERN DISTRICT OF TEXAS,
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON LEE VAN DYKE,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **THOMAS CHRISTOPHER** | § | **NO. 4:18-CV-247-ALM** |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a BV FILES, VIA** | § | |
| **VIEW FILES, L.L.C., and VIAVIEW** | § | |
| **FILES,** | § | |
| *Defendants* | § | |

### RETZLAFF'S FIRST AMENDED AND SUPPLEMENTAL RESPONSES TO PLAINTIFF'S (SECOND) "FIRST SET" OF INTERROGATORIES

To:     Jason Lee Van Dyke, plaintiff pro se.

Defendant Thomas Retzlaff serves these, his first amended and supplemental responses to plaintiff's (second) "first set" of interrogatories in obedience to the Court's memorandum opinion and order of April 14, 2020. (Doc. 153.)   To the extent not objected to, Retzlaff makes the following answers under oath in accordance with FED. R. CIV. P. 33(b)(3).

The Court ordered Retzlaff to file amended or supplemental answers to:

(i)     Interrogatories 2, 3(c)-(f), 8-10, and 16, to which Retzlaff did not previously answer or object.[1] (Doc. 153, Part II(A).)

(ii)    Interrogatories 3(a), 4-7, 11, 13, and 15, as to which the Court either found Retzlaff's previous answers inadequate or overruled Retzlaff's objection. (Doc. 153, Part II(B).)

Previous answers to Van Dyke's interrogatories that the Court did not order Retzlaff to amend or supplement are not repeated below.

---

[1]     Retzlaff did not previously answer or object to Van Dyke's Interrogatories 2, 3(c)-(f), 8-10, and 16 because Retzlaff pointed out he was not required to respond to more than 25 interrogatories.  (Doc. 153, Part III.)  Although finding for Van Dyke and ordering Retzlaff to respond, the Court nevertheless found Retzlaff's failure to respond on this ground "substantially justified." (*Id.*)

## AMENDED AND SUPPLEMENTAL RESPONSES

**INTERROGATORY NO. 2**:[2]

Identify Dean Anderson.  For the purpose of this interrogatory, Dean Anderson is the person who utilizes, or who previously utilized, the following email address: dean714@yandex.com. If you and Dean Anderson are one and the same person, you must state this fact in your response to this interrogatory.

RESPONSE:  **Assertions of Privilege**.

(i)     Under the First Amendment to the U.S. Constitution, a party cannot be compelled to disclose the identities of anonymous speakers.  ***Watchtower Bible and Tract Soc. of New York v. Village of Stratton***, 536 U.S. 150, 166-67 (2002); ***Buckley v. American Constitutional Law Foundation, Inc***., 525 U.S. 182 (1999). "Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent." ***McIntyre v. Ohio Elections Comm.***, 514 U.S. 334, 356 (1995).  A court order—even when issued at the behest of a private party—constitutes state action.  ***New York Times v. Sullivan***, 364 U.S. 254, 265 (1964).  Thus, the amputation of a speaker's First Amendment right of anonymity is subject to limitations with constitutional timbre.  It is well settled that this principle applies equally to anonymous speech on the Internet.  ***Reno v. ACLU***, 521 U.S. 844, 853 (1997); *see also* ***ApolloMedia Corp. v. Reno***, 19 F. Supp. 1081 (N.D. Cal. 1998) (protecting anonymous denizens of www.annoy.com, a website "created and designed to annoy" legislators), *aff'd by ApolloMedia Corp. v. Reno*, 526 U.S. 1061 (1999).  Because compelled identification affects the First Amendment right of anonymous speakers to remain anonymous, justification for an incursion upon that right requires proof of a compelling interest.  *McIntyre*, 514 U.S. at 347.  Among other things, a person seeking to discover the identity of an anonymous speaker has the burden to show that disclosure of the identity of the anonymous speaker is necessary because the party seeking disclosure is likely to prevail on all other issues in the case.  *See* ***United States v. Caporale***, 806 F.2d 1487 (11th Cir. 1986); ***Miller v. Transamerican Press***, 621 F.2d 721, 726 (5th Cir. 1980).  Until plaintiff has made such showing, compelled disclosure of information that would destroy the speaker's anonymity is premature.

(ii)     Retzlaff asserts that any response might unfairly tend to incriminate him.  *See* ***Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'").  Van Dyke alleges content published on the "BV Files" blog constitutes "criminal stalking" by Retzlaff.  *See* Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

---

[2]     Retzlaff did not previously answer or object to this request as it exceeded the maximum number of 25 interrogatories a party may serve.

**INTERROGATORY NO. 3**:

Identify any persons who have care and control over BV Files. This includes, but is not limited to:

(a)    The person who owns the following domain name: viaviewfiles.net.[3]

(b)    The person who pay, or who previously paid for, the registration of the following domain name:  viaviewfiles.net.

(c)    Persons who provide, or who previously provided, website hosting services for BV Files.

(d)    Persons who pay for, or who previously paid for, website hosting services for BV Files.

(e)    Persons who pay for, or who previously paid for, services provided to BV Files by Cloudflare, Inc.

(f)    Persons capable of publishing, changing, moderating or editing of any content displayed on BV Files, except in the "comments" section.

RESPONSE:    **Answer**.  In accordance with the Court's April 14, 2020, ruling, Retzlaff answers <u>Interrogatory 3(a)</u> that, according to publicly available information,[4] the registered owner of the domain name "viaviewfiles.net" is OnlineNIC, Inc.

**Assertions of Privilege**.

(i)    As to Interrogatory 3(c)-(f),[5] Retzlaff objects under the First Amendment to the U.S. Constitution that a party cannot be compelled to disclose the identities of anonymous speakers.  ***Watchtower Bible and Tract Soc. of New York v. Village of Stratton***, 536 U.S. 150, 166-67 (2002); ***Buckley v. American Constitutional Law Foundation, Inc***., 525 U.S. 182 (1999). "Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent." ***McIntyre v. Ohio Elections Comm.***, 514 U.S. 334, 356 (1995).  A court order—even when issued at the behest of a private party—constitutes state action.  ***New York Times v. Sullivan***, 364 U.S. 254, 265 (1964). Thus, the

---

[3]    Retzlaff originally objected that the answer this discrete subpart of Van Dyke's Interrogatory No. 3 was "equally available" to Van Dyke, "as the owners of domain names are public information." (Doc. 156, Part II(B).)  The Court was "not persuaded" that this objection was valid. Citing ***Tango Transp., L.L.C. v. Transp. Int'l Pool, Inc***., 2009 WL 2390312 at *2 (W.D.La. 2009), the Court held, "The fact that a party could find the information does not necessarily mean the information is not discoverable." Retzlaff construes the Court's ruling to mean that his objection to Van Dyke's Interrogatory 3(a) is overruled and that Retzlaff must answer fully without objection.

[4]    *See, e.g.,* <u>www.whois.net</u>, last accessed April 27, 2020.

[5]    Retzlaff did not previously answer or object to these requests as they exceeded the maximum number of 25 interrogatories a party may serve.

amputation of a speaker's First Amendment right of anonymity is subject to limitations with constitutional timbre.  It is well settled that this principle applies equally to anonymous speech on the Internet.  ***Reno v. ACLU***, 521 U.S. 844, 853 (1997); *see also **ApolloMedia Corp. v. Reno***, 19 F. Supp. 1081 (N.D. Cal. 1998) (protecting anonymous denizens of www.annoy.com, a website "created and designed to annoy" legislators), *aff'd by **ApolloMedia Corp. v. Reno***, 526 U.S. 1061 (1999).  Because compelled identification affects the First Amendment right of anonymous speakers to remain anonymous, justification for an incursion upon that right requires proof of a compelling interest.  ***McIntyre***, 514 U.S. at 347.  Among other things, a person seeking to discover the identity of an anonymous speaker has the burden to show that disclosure of the identity of the anonymous speaker is necessary because the party seeking disclosure is likely to prevail on all other issues in the case.  *See **United States v. Caporale***, 806 F.2d 1487 (11th Cir. 1986); ***Miller v. Transamerican Press***, 621 F.2d 721, 726 (5th Cir. 1980).  Until plaintiff has made such showing, compelled disclosure of information that would destroy the speaker's anonymity is premature.

(ii)    Retzlaff asserts that any response might unfairly tend to incriminate him. *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has repeatedly alleged that content published on the "BV Files" blog constitutes "criminal stalking" by Retzlaff.  *See*Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

**INTERROGATORY NO. 4**:

Identify any material and communication relating to Plaintiff that you have sent to or received from KLR. The scope of this request is materials and communications sent or received between March 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE:  **Privilege**.  Retzlaff asserts that any response might unfairly tend to incriminate him.  *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has repeatedly alleged that content published on the "BV Files" blog constitutes "criminal stalking" by Retzlaff.  *See*Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

**INTERROGATORY NO. 5**:

Identify any material and communication relating to Plaintiff that you have sent to or received from Denton DA. The scope of this request is materials and communications sent or received between March 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him. *See Ohio v. Reiner*, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has repeatedly alleged that content published on the "BV Files" blog constitute "criminal stalking" by Retzlaff. *See*Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.) Van Dyke has alleged that "materials and communications" allegedly sent by Retzlaff to "Denton DA" constitute "criminal stalking" by Retzlaff. *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

**INTERROGATORY NO. 6**:

Identify any material and communication relating to Plaintiff that you have sent to or received from Collin DA. The scope of this request is materials and communications sent or received between March 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him. *See Ohio v. Reiner*, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has repeatedly alleged that content published on the "BV Files" blog constitute "criminal stalking" by Retzlaff. *See*Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)Van Dyke has alleged that such communications constitute "criminal stalking" by Retzlaff. *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

**INTERROGATORY NO. 7**:

Identify any material and communications relating to Plaintiff that you have sent to or received from from any Law Enforcement Agent. The scope of this request is materials and communications sent or received between March 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

*Van Dyke v. Retzlaff*
Defendant's First Amended and Supplemental Responses to Plaintiff's (Second) "First Set" of Interrogatories to Retzlaff

5

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him.  *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has alleged that such communications constitute "criminal stalking" by Retzlaff.  *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)   Van Dyke also claims Retzlaff is involved in a criminal conspiracy with Law Enforcement Agencies to violate his civil rights. (Doc. 113, ¶ 6.31.)  *See also **Van Dyke v. Shackelford***, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

## INTERROGATORY NO. 8:[6]

Identify any material communications *of any kind* that you have sent to or received from Isaac Lee Marquart a/k/a Sam Benneth. The scope of this request is materials and communications sent or received between August 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him.  *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has alleged that such communications constitute "criminal stalking" by Retzlaff.  *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)   Van Dyke also claims Retzlaff is involved in a criminal conspiracy with this individual and law enforcement agencies to violate Van Dyke's civil rights.  (Doc. 113, ¶ 6.31.)  *See also **Van Dyke v. Shackelford***, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

## INTERROGATORY NO. 9:[7]

Identify any communications *of any kind* that you have sent to or received from Jason Ryan De Keresforth Armitage. The scope of this request is materials and communications sent or received between August 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

---

[6]        Retzlaff did not previously answer or object to this request as it exceeded the maximum number of 25 interrogatories a party may serve.

[7]        Retzlaff did not previously answer or object to this request as it exceeded the maximum number of 25 interrogatories a party may serve.

*Van Dyke v. Retzlaff*
        Defendant's First Amended and Supplemental Responses to Plaintiff's (Second) "First Set" of Interrogatories to Retzlaff

6

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him. *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has alleged that such communications constitute "criminal stalking" by Retzlaff. *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.) Van Dyke also claims Retzlaff is involved in a criminal conspiracy with this individual and law enforcement agencies to violate Van Dyke's civil rights.  (Doc. 113, ¶ 6.31.)   *See also **Van Dyke v. Shackelford***, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

**INTERROGATORY NO. 10**:[8]

Identify any material communications *of any kind* that you have sent to or received from Corey Deonta Momot or any attorney representing Corey Deonta Momot. The scope of this request is materials and communications sent or received between August 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him. *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has alleged such communications constitute "criminal stalking" by Retzlaff. *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.) Van Dyke also claims Retzlaff is involved in a criminal conspiracy with this individual and law enforcement agencies to violate Van Dyke's civil rights.  (Doc. 113, ¶ 6.31.)  *See also **Van Dyke v. Shackelford***, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

**INTERROGATORY NO. 11**:

Identify any communications relating to Plaintiff that you have sent to or received from any current or former client of Plaintiff. The scope of this request is materials and communications sent or received between March 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE: **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him. *See **Ohio v. Reiner***, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke alleges such communications constitute "criminal stalking" by Retzlaff. *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶

---

[8]          Retzlaff did not previously answer or object to this request as it exceeded the maximum number of 25 interrogatories a party may serve.

5.3.).  Van Dyke also claims Retzlaff is involved in a criminal conspiracy with this individual and law enforcement agencies to violate Van Dyke's civil rights.  (Doc. 113, ¶ 6.31.)  *See also Van Dyke v. Shackelford*, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

**INTERROGATORY NO. 13**:

Identify any communications relating to Plaintiff that you have sent to or received from any Judicial or Quasi-Judicial Officer. The scope of this request is materials and communications sent or received between March 1, 2018 and January 29, 2020. This interrogatory includes material and communications sent by you or by *any* person acting on your behalf, including your attorneys.

RESPONSE:   **Privilege**. Retzlaff asserts that any response might unfairly tend to incriminate him.  *See Ohio v. Reiner*, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke alleges such "communications" constitute "criminal stalking" by Retzlaff.  *See, e.g.*, Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.).  Van Dyke also claims Retzlaff is involved in a criminal conspiracy with these individuals and law enforcement agencies to violate Van Dyke's civil rights.   (Doc. 113, ¶ 6.31.)   *See also Van Dyke v. Shackelford*, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

**Answer**.  Van Dyke judicially admits to possession of "communications" to "Judge Coby Waddill, Judge Robert Ramirez, and Presiding Panel Member Rick Hagen." (Doc. 113, ¶ 5.23.)

**INTERROGATORY NO. 15**:

Identify any material or communications relating to Plaintiff that you have posted on BV File or elsewhere on the Internet between March 1, 2018 and January 29, 2020.

RESPONSE:   **Assertions of Privilege**.

(i)      Under the First Amendment to the U.S. Constitution, a party cannot be compelled to disclose the identities of anonymous speakers.  *Watchtower Bible and Tract Soc. of New York v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *Buckley v. American Constitutional Law Foundation, Inc*., 525 U.S. 182 (1999). "Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent." *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 356 (1995).  A court order—even when issued at the behest of a private party—constitutes state action.  *New York Times v. Sullivan*, 364 U.S. 254, 265 (1964). Thus, the amputation of a speaker's First Amendment right of anonymity is subject to limitations with constitutional timbre.  It is well settled that this

principle applies equally to anonymous speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 853 (1997); *see also ApolloMedia Corp. v. Reno*, 19 F. Supp. 1081 (N.D. Cal. 1998) (protecting anonymous denizens of www.annoy.com, a website "created and designed to annoy" legislators), *aff'd by ApolloMedia Corp. v. Reno*, 526 U.S. 1061 (1999). Because compelled identification affects the First Amendment right of anonymous speakers to remain anonymous, justification for an incursion upon that right requires proof of a compelling interest. *McIntyre*, 514 U.S. at 347. Among other things, a person seeking to discover the identity of an anonymous speaker has the burden to show that disclosure of the identity of the anonymous speaker is necessary because the party seeking disclosure is likely to prevail on all other issues in the case. *See United States v. Caporale*, 806 F.2d 1487 (11th Cir. 1986); *Miller v. Transamerican Press*, 621 F.2d 721, 726 (5th Cir. 1980). Until plaintiff has made such showing, compelled disclosure of information that would destroy the speaker's anonymity is premature.

(ii)     Retzlaff asserts that any response might unfairly tend to incriminate him. *See Ohio v. Reiner*, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has repeatedly alleged that content published on the "BV Files" blog constitute "criminal stalking" by Retzlaff. *See* Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.) Van Dyke also claims Retzlaff is involved in a criminal conspiracy with various individuals and Law Enforcement Agencies to violate his civil rights. (Doc. 113, ¶ 6.31.) *See also Van Dyke v. Shackelford*, No. 4:19-CV-00786-ALM. (Doc. 1, ¶¶ 5.1-5.14.)

## INTERROGATORY NO. 16:[9]

List all electronic mail addresses and social media accounts that you utilized in any way between March 1, 2018 and January 28, 2020.

RESPONSE:   **Assertions of Privilege**.

(i)     Under the First Amendment to the U.S. Constitution, a party cannot be compelled to disclose the identities of anonymous speakers. *Watchtower Bible and Tract Soc. of New York v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999). "Under our Constitution, anonymous pamphleteering is not

---

[9]     Retzlaff did not previously answer or object to this request as it exceeded the maximum number of 25 interrogatories a party may serve.

a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent." *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 356 (1995). A court order—even when issued at the behest of a private party—constitutes state action. *New York Times v. Sullivan*, 364 U.S. 254, 265 (1964). Thus, the amputation of a speaker's First Amendment right of anonymity is subject to limitations with constitutional timbre. It is well settled that this principle applies equally to anonymous speech on the Internet. *Reno v. ACLU*, 521 U.S. 844, 853 (1997); *see also ApolloMedia Corp. v. Reno*, 19 F. Supp. 1081 (N.D. Cal. 1998) (protecting anonymous denizens of www.annoy.com, a website "created and designed to annoy" legislators), *aff'd by ApolloMedia Corp. v. Reno*, 526 U.S. 1061 (1999). Because compelled identification affects the First Amendment right of anonymous speakers to remain anonymous, justification for an incursion upon that right requires proof of a compelling interest. *McIntyre*, 514 U.S. at 347. Among other things, a person seeking to discover the identity of an anonymous speaker has the burden to show that disclosure of the identity of the anonymous speaker is necessary because the party seeking disclosure is likely to prevail on all other issues in the case. *See United States v. Caporale*, 806 F.2d 1487 (11th Cir. 1986); *Miller v. Transamerican Press*, 621 F.2d 721, 726 (5th Cir. 1980). Until plaintiff has made such showing, compelled disclosure of information that would destroy the speaker's anonymity is premature.

(ii) Retzlaff asserts that any response might unfairly tend to incriminate him. *See Ohio v. Reiner*, 121 S.Ct. 1252, 1254 (2001) (A "basic function" of the Fifth Amendment "is to protect *innocent* men ... 'who otherwise might be ensnared by ambiguous circumstances.'"). Van Dyke has repeatedly alleged that content published on the "BV Files" blog constitutes "criminal stalking" by Retzlaff. *See, e.g.,* Exhibits 1 and 2; plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

*Van Dyke v. Retzlaff*
Defendant's First Amended and Supplemental Responses to Plaintiff's (Second) "First Set" of Interrogatories to Retzlaff

10

Respectfully submitted,

HANSZEN✦LAPORTE

By: _____ /s/ Jeffrey L. Dorrell _____

**JEFFREY L. DORRELL**
State Bar No. 00787386
Federal ID # 18465
jdorrell@hanszenlaporte.com
**ANTHONY L. LAPORTE**
State Bar No. 00787876
alaporte@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT TOM RETZLAFF**

## CERTIFICATE OF SERVICE

I certify that on _____4-28_____, 2020, the foregoing interrogatories were electronically served upon Jason Van Dyke by e-mail.

Mr. Jason Lee Van Dyke
Plaintiff, Pro Se
P.O. Box 2618
Decatur, Texas 76234
Telephone: 940-305-9242
jasonleevandyke@protonmail.com


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**

# AFFIDAVIT OF TOM RETZLAFF

On this day, Tom Retzlaff appeared before me, a Notary Public, and after I administered an oath to him, upon his oath, he said:

     1.    "My name is Tom Retzlaff.  I am more than 18 years of age and capable of making this affidavit.  I am the named defendant in the suit in which this affidavit is filed.  I declare under penalty of perjury that the facts stated in the foregoing amended and supplemental answers to plaintiff's interrogatories are within my personal knowledge and are true and correct."

FURTHER AFFIANT SAYETH NOT.

_____

**TOM RETZLAFF**

     SWORN TO and SUBSCRIBED before me by Tom Retzlaff, personally known to me or identified to be the same, on April 25, 2020.

_____
Notary Public in and for the State of Arizona



DENISE HOLLAS
Notary Public
My Commission Expires
August 28, 2020
Maricopa County

**From:** Jason Van Dyke <jason@vandykelawfirm.com>
**Subject: FW: Notice of Representation**
**Date:** October 26, 2018 at 9:40:33 AM CDT
**To:** "Wicevich, Walker (PX) (FBI)" <wwicevich@fbi.gov>
**Cc:** Jeffrey Dorrell <JDorrell@hanszenlaporte.com>, Kristin Brady
<Kristin.Brady@TEXASBAR.COM>

Special Agent Wicevich –

I just received this from Mr. Retzlaff.  It appears to be a letter to his attorney that he
copied me on.  He clearly intends to continue harassing and stalking my mother – a
seventy year old senior citizen who is battling breast cancer – through interstate
commerce.  I understand that this is a violation of 18 U.S.C. 2281(A).  If the FBI doesn't
want to do its job and put a stop to this, I understand.  I am happy to speak with the
officer at the Frisco Police Department who took my mother's report.



Mr. Jason L. Van Dyke
The Van Dyke Law Firm P.L.L.C.

108 Durango Drive
Crossroads, TX 76227
(469) 964-5346 Work
(972) 421-1830

jason@vandykelawfirm.com

## TEXAS INCIDENT REPORT
APPROVED (Lieutenant Anissa R. Satterfield)

| | | |
|---|---|---|
| **PAGE #** 1 | **ORI NUMBER** TX2490000 | |

**INCIDENT**

| INCIDENT NUMBER | | |
|---|---|---|
| 19-0601108 | | |

| DATE(S) OF INCIDENT | R | AGENCY NAME |
|---|---|---|
| 06/04/2019 | | Wise County Sheriff's Office |

| TIME(S) OF INCIDENT | DAY(S) OF INCIDENT |
|---|---|
| 08:57 | Tuesday |

**INTERNAL INCIDENT STATUS:**
- ☐ (A) Active
- ☐ (CA) Closed by Arrest
- ☐ (CE) Closed by Exception
- ☐ (CO) Closed by Other Means
- ☐ (I) Inactive
- ☐ (U) Unfounded

**EXCEPTIONAL CLEARANCE STATUS:**
- ☐ (A) Death of the Offender
- ☐ (B) Prosecution Declined
- ☐ (C) Extradition Denied
- ☐ (D) Victim Ref. to Cooperate
- ☐ (E) Juvenile, No Custody
- ■ (N) Not Applicable

| DISPATCHER | TIME RECEIVED | TIME ARRIVED | REPORTING AREA | EXCEPT. CLEAR. DATE |
|---|---|---|---|---|
| meinenh - meinenh | 9:05 | 9:16 | | |

| OFFENSE # | UCR CODE | OFFENSE STATUS: | OFFENDER USED: | Burglary (220) Location 14&19: | FORCED ENTRY? |
|---|---|---|---|---|---|
| 1 | 13C | ☐ (A) Attempted  ■ (C) Completed | ☐ (N) Not Applicable  ☐ (A) Alcohol  ■ (C) Cptr. Equip.  ☐ (D) Drugs | # PREMISES ENTERED? | ☐ Yes  ☐ No |

| OFFENSE DESCRIPTION | STATUTE | ADDRESS OF OFFENSE |
|---|---|---|
| OBSTRUCTION OR RETALIATION-13990026 | 36.06(c) | 117 HILLCREST LANE, WISE COUNTY |

**OFFENSE**

LOCATION CODE (Enter 1)
- ☐ (01) Air/Bus/Train Terminal
- ☐ (02) Bank/Savings & Loan
- ☐ (03) Bar/Night Club
- ☐ (04) Church/Synagogue/Temple/Mosque
- ☐ (05) Commercial/Office Building
- ☐ (06) Construction Site
- ☐ (07) Convenience Store
- ☐ (08) Department/Discount Store
- ☐ (09) Drug Store/Doctor's Office/Hospital
- ☐ (10) Field/Woods
- ☐ (11) Government/Public Building
- ☐ (12) Grocery/Supermarket
- ☐ (13) Highway/Road/Alley/Street/Sidewalk
- ☐ (14) Hotel/Motel/Etc.
- ☐ (15) Jail/Prison/Penitentiary/Corrections Facility
- ☐ (16) Lake/Waterway/Beach
- ☐ (17) Liquor Store
- ☐ (18) Parking Lot/Drop Lot/Garage
- ☐ (19) Rental/Storage Facility
- ☐ (20) Residence/Home
- ☐ (21) Restaurant
- ☐ (23) Service/Gas Station
- ☐ (24) Specialty Store
- ☐ (25) Other/Unknown
- ☐ (37) Abandoned/Condemned Structure
- ☐ (38) Amusement Park
- ☐ (39) Arena/Stadium/Fairgrounds/Coliseum
- ☐ (40) ATM Separate From Bank
- ☐ (41) Auto Dealership New/Used
- ☐ (42) Camp/Campground
- ☐ (44) Daycare Facility
- ☐ (45) Dock/Wharf/Freight/Modal Terminal
- ☐ (46) Farm Facility
- ☐ (47) Gambling Facility/Casino/Race Track
- ☐ (48) Industrial Site
- ☐ (49) Military Installation
- ☐ (50) Park/Playground
- ☐ (51) Rest Area
- ☐ (52) School - College/University
- ☐ (53) School - Elementary/Secondary
- ☐ (54) Shelter - Mission/Homeless
- ☐ (55) Shopping Mall
- ☐ (56) Tribal Lands
- ☐ (57) Community Center

WEAPON FORCE:   (Max. 3)
(For 11-15, place "A" in space next to box if weapon was an Automatic.)
- ___ ☐ (11) Firearm (Type not stated)   ☐ (90) Other
- ___ ☐ (12) Handgun   ☐ (95) Unknown
- ___ ☐ (13) Rifle   ☐ (99) None
- ___ ☐ (14) Shotgun
- ___ ☐ (15) Other Firearm
- ☐ (20) Knife/Cutting Instru. (Ax, etc.)
- ☐ (30) Blunt Object (Club, etc.)
- ☐ (35) Motor Vehicle (As weapon)
- ☐ (40) Personal Weapons (Hands, etc.)
- ☐ (50) Poison
- ☐ (60) Explosives
- ☐ (65) Fire/Incendiary Device
- ☐ (70) Narcotics/Drugs/Sleeping Pills
- ☐ (85) Asphyxiation

TYPE CRIMINAL ACTIVITY:   (Max. 3)
- ☐ (B) Buying
- ☐ (C) Cultivate/Manufacture/Publish
- ☐ (D) Distributing/Selling
- ☐ (E) Exploiting Children
- ☐ (O) Operating/Promoting/Assisting
- ☐ (P) Possessing/Concealing
- ☐ (T) Transport/Transmit/Import
- ☐ (U) Using/Consuming

TYPE GANG ACTIVITY:   (Max. 3)
- ☐ (G) Other Gang
- ☐ (J) Juvenile Gang
- ☐ (N) None/Unknown

BIAS MOTIVATED CRIME:
None (No Bias)

**VICTIM**

| VICTIM # | NAME: Last, First, Middle | DRIVER'S LICENSE | DR. LL STATE | SOC. SEC. NO. | DATE OF BIRTH |
|---|---|---|---|---|---|
| 1 | VANDYKE, JASON LEE | | | | |

| RESIDENT ADDRESS: | Street | City | State | ZIP |
|---|---|---|---|---|
| | | | | |

| OCCUPATION | RESIDENT PHONE |
|---|---|
| ATTORNEY | |

| EMPLOYMENT PHONE | SEX: |
|---|---|
| | ■ (M) Male   ☐ (F) Female   ☐ (U) Unknown |

ETHNIC:
- ☐ (H) Hispanic   ■ (N) Nonhispanic   ☐ (U) Unknown

AGE:
Exact Age ___ 39

RACE:
- ■ (W) White   ☐ (I) American Indian   ☐ (U) Unknown
- ☐ (B) Black   ☐ (A) Asian/Pacific Islander

Range ___ / ___
- ☐ (NN) Under 24 Hrs. Old
- ☐ (NB) 1-6 Days Old
- ☐ (BB) 7-364 Days Old
- ☐ (99) Over 98 Yrs. Old
- ☐ (00) Unknown

RES. STATUS:
- ■ (R) Resident   ☐ (N) Nonresident   ☐ (U) Unknown

VICTIM TYPE:
- ■ (I) Individual   ☐ (B) Business   ☐ (F) Financial Institution   ☐ (U) Unknown
- ☐ (G) Government   ☐ (R) Religious   ☐ (S) Society/Public   ☐ (O) Other

VICTIM INJURY:   (Max. 5)   ☐ (M) Apparent Minor Injury
- ☐ (N) None
- ☐ (B) Apparent Broken Bones   ☐ (O) Other Major Injury
- ☐ (I) Possible Internal Injury   ☐ (T) Loss of Teeth
- ☐ (L) Severe Laceration   ☐ (U) Unconsciousness

THIS VICTIM RELATED TO WHICH OFFENSES?
- ☐ #1  ☐ #4  ☐ #7  ☐ #10
- ☐ #2  ☐ #5  ☐ #8  others:
- ☐ #3  ☐ #6  ☐ #9

RELATIONSHIP OF THIS VICTIM TO OFFENDERS:
(check relationship under appropriate offender number):
#1 #2 #3 #4 #5 #6 #7 #8 #9 #10

VICTIM WAS:
- (SE) Spouse
- (CS) Common-Law Spouse
- (PA) Parent
- (SB) Sibling
- (CH) Child
- (GP) Grandparent
- (GC) Grandchild
- (IL) In-Law
- (SP) Stepparent
- (SC) Stepchild
- (SS) Stepsibling
- (OF) Other Family Member
- (AQ) Acquaintance
- (FR) Friend
- (NE) Neighbor
- (BE) Babysittee (baby)
- (BG) Boyfriend/Girlfriend
- (CF) Child of Boyfriend/Girlfriend
- (HR) Homosexual Relationship
- (XS) Ex-Spouse
- (EE) Employee
- (ER) Employer
- (OK) Otherwise Known
- (RU) Relationship Unknown
- (ST) Stranger
- (VO) Victim was Offender

AGGRAVATED ASSAULT/HOMICIDE CIRCUMSTANCES

Aggravated Assault/Murder:   (max. 2)
- ☐ (01) Argument
- ☐ (02) Assault On Law Enf. Officer
- ☐ (03) Drug Dealing
- ☐ (04) Gangland
- ☐ (05) Juvenile Gang
- ☐ (06) Lover's Quarrel
- ☐ (07) Mercy Killing
- ☐ (08) Other Felony Involved
- ☐ (09) Other Circumstances
- ☐ (10) Unknown Circumstances

Negligent Manslaughter:   (enter 1)
- ☐ (30) Child Playing With Weapon
- ☐ (31) Gun-Cleaning Accident
- ☐ (32) Hunting Accident
- ☐ (33) Other Negligent Weapon Handling
- ☐ (34) Other Negligent Killing

Justifiable Homicide:   (enter 1)
- ☐ (20) Criminal Killed by Private Citizen
- ☐ (21) Criminal Killed by Police Officer

ADDITIONAL JUSTIFIABLE HOMICIDE CIRC.: (enter 1)
- ☐ (A) Criminal Attacked Police Officer
- ☐ (B) Criminal Attacked Fellow Police Officer
- ☐ (C) Criminal Attacked Civilian
- ☐ (D) Criminal Attempted Flight from a Crime
- ☐ (E) Criminal Killed in Commission of a Crime
- ☐ (F) Criminal Resisted Arrest
- ☐ (G) Unable to Determine/Not Enough Information

**ADM**

| REPORT DATE | DAY | TIME (Military) | REPORTING OFFICER | CODE # | APPROVING SUPERVISOR | CODE # | DATE APPROVED |
|---|---|---|---|---|---|---|---|
| 06/04/2019 | Tue | 8:57 | Sergeant John C. Mosley | 9385 | Lieutenant Anissa R. Satterfi | 6229 | 06/05/2019 |

## INCIDENT REPORT

| AD | PAGE # | DATE | INCIDENT NUMBER | OR# ("B") | REPORTING OFFICER | | CODE # | VICTIM NAME |
|---|---|---|---|---|---|---|---|---|
| | 2 | 06/04/2019 | 19-0601108 | TX2490000 | Sergeant John C. Mosley | | 9385 | VANDYKE, JASON LEE |

### OFFENDER / ARRESTEE

| ARRESTEE # | NAME | Last, | | First, | | Middle, | | AKA | |
|---|---|---|---|---|---|---|---|---|---|
| | | RETZLAFF, THOMAS CHRISTOPHER | | | | | | | |

| OFFENDER # | RESIDENT ADDRESS | Street | | City | | State | Zip | DATE OF BIRTH |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 78249 | |

| RESIDENT PHONE | EMPLOYMENT/SCHOOL PHONE | DRIVER'S LICENSE | DR. LI STATE | SSN |
|---|---|---|---|---|
| | | | | |

| ARREST LOCATION | OCCUPATION | PLACE OF EMPLOYMENT | ARREST TYPE: ☐ (O) On View Arrest ☐ (S) Summons/Cited ☐ (T) Taken Into Cust. |
|---|---|---|---|
| | | | |

| SEX: ■ (M) Male ☐ (F) Female ☐ (U) Unk. | AGE: EXACT AGE 53 AGE RANGE: ___ to ___ | MULT. ARREST INDIC.: ☐ (C) Count Arrestee | ☐ (M) Multiple ☐ (N) N/A | WEAPONS AT ARREST: (Max. 2) *(Place "A" in blank if automatic)* |
|---|---|---|---|---|
| ETHNIC: ☐ (H) Hispanic ☐ (N) Nonhisp. ■ (U) Unk. | | | | ☐ (01) Unarmed ☐ (16) Illegal Cutting Instr. |
| RACE ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ■ (U) Unknown | ☐ (99) Over 98 Yrs. Old ☐ (00) Unknown | DISPOSITION OF JUVENILE: ☐ (H) Handled within Department. ☐ (R) Referred outside Department | | ☐ (11) Firearm ☐ (12) Handgun ☐ (13) Rifle ☐ (17) Club / ☐ (14) Shotgun Blackjack / ☐ (15) Other Firearm Brass Kn. |
| RES. STATUS: ☐ (R) Resident ☐ (N) Nonres. ■ (U) Unknown | UCR ARR. CODE | OFFENSE NAME | ARREST DATE | ARREST TRANSACT. # |

| HEIGHT | WEIGHT | BUILD | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | SKIN TONE |
|---|---|---|---|---|---|---|---|
| 5'09" | 180 | | BRO - Brown | | | BRO - Brown | |

### OFFENDER / ARRESTEE

| ARRESTEE # | NAME | Last, | | First, | | Middle, | | AKA | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| OFFENDER # | RESIDENT ADDRESS | Street | | City | | State | Zip | DATE OF BIRTH |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| RESIDENT PHONE | EMPLOYMENT/SCHOOL PHONE | DRIVER'S LICENSE | DR. LI STATE | SSN |
|---|---|---|---|---|
| | | | | |

| ARREST LOCATION | OCCUPATION | PLACE OF EMPLOYMENT | ARREST TYPE: ☐ (O) On View Arrest ☐ (S) Summons/Cited ☐ (T) Taken Into Cust. |
|---|---|---|---|
| | | | |

| SEX: ☐ (M) Male ☐ (F) Female ☐ (U) Unk. | AGE: EXACT AGE ___ AGE RANGE: ___ to ___ | MULT. ARREST INDIC.: ☐ (C) Count Arrestee | ☐ (M) Multiple ☐ (N) N/A | WEAPONS AT ARREST: (Max. 2) *(Place "A" in blank if automatic)* |
|---|---|---|---|---|
| ETHNIC: ☐ (H) Hispanic ☐ (N) Nonhisp. ☐ (U) Unk. | | | | ☐ (01) Unarmed ☐ (16) Illegal Cutting Instr. |
| RACE ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ☐ (U) Unknown | ☐ (99) Over 98 Yrs. Old ☐ (00) Unknown | DISPOSITION OF JUVENILE: ☐ (H) Handled within Department. ☐ (R) Referred outside Department | | ☐ (11) Firearm ☐ (12) Handgun ☐ (13) Rifle ☐ (17) Club / ☐ (14) Shotgun Blackjack / ☐ (15) Other Firearm Brass Kn. |
| RES. STATUS: ☐ (R) Resident ☐ (N) Nonres. ☐ (U) Unknown | UCR ARR. CODE | OFFENSE NAME | ARREST DATE | ARREST TRANSACT. # |

| HEIGHT | WEIGHT | BUILD | HAIR COLOR | HAIR STYLE | HAIR LENGTH | EYE COLOR | SKIN TONE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

### SUBJECT DESCRIPTORS

# INCIDENT REPORT

| PAGE # | DATE | INCIDENT # | REPORTING OFFICER | | | CODE # | VICTIM NAME |
|---|---|---|---|---|---|---|---|
| 3 | 06/04/2019 | 19-0601108 | Sergeant John.C. Mosley | | | 9385 | VANDYKE, JASON LEE |

## VEHICLE/LEAD

| YEAR | MAKE | | MODEL | | STYLE | VIN | | | LICENSE NUMBER | | STATE |
|---|---|---|---|---|---|---|---|---|---|---|---|

| OWNER'S NAME | | | | ADDRESS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| TOP/SOLID COLOR | | | SECOND COLOR | | | DISPOSITION OF RECOVERY: ☐ (I) Impounded ☐ (R) Released To Owner | | |
|---|---|---|---|---|---|---|---|---|

| YEAR | MAKE | | MODEL | | STYLE | VIN | | | LICENSE NUMBER | | STATE |
|---|---|---|---|---|---|---|---|---|---|---|---|

| OWNER'S NAME | | | | ADDRESS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| TOP/SOLID COLOR | | | SECOND COLOR | | | DISPOSITION OF RECOVERY: ☐ (I) Impounded ☐ (R) Released To Owner | | |
|---|---|---|---|---|---|---|---|---|

## PROPERTY

| OF. CODE | P. LOSS | P. DES. | QTY. | DESCRIPTION (Include serial number, make, model, primary color) | OWNER | ITEM VALUE | RECOV. DATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| TOTAL NUMBER VEHICLES STOLEN: | TOTAL NUMBER VEHICLES RECOVERED: | TOTAL VALUE STOLEN: | TOTAL VALUE RECOVERED: |
|---|---|---|---|

## PROPERTY CODES

**PROPERTY LOSS:** (1) None (2) Burned (3) Counterfeited/Forged (4) Damaged/Destroyed/Vandalized (5) Recovered (6) Seized (7) Stolen, etc. (8) Unk.

**PROPERTY DESCRIPTION:**
(01) Aircraft
(02) Alcohol
(03) Automobiles
(04) Bicycles
(05) Buses
(06) Cloths/Furs
(07) Computer Hardware/Software
(08) Consumable Goods
(09) Credit/Debit Cards
(10) Drugs/Narcotics
(11) Drug/Narcotic Equipment
(12) Farm Equipment
(13) Firearms
(14) Gambling Equipment
(15) Heavy Construction/Industrial Equipment
(16) Household Goods
(17) Jewelry/Precious Metals/Gems
(18) Livestock
(19) Merchandise
(20) Money
(21) Negotiable Instruments
(22) Nonnegotiable Instruments
(23) Office-Type Equipment
(24) Other Motor Vehicles
(25) Purses/Handbags/Wallets
(26) Radios/TVs/VCRs/DVD Players
(27) Recordings-Audio/Visual
(28) Recreational Vehicles
(29) Structures-Single Occupancy
(30) Structures-Other Dwellings
(31) Structures-Commercial/Business
(32) Structures-Industrial/Manufacturing
(33) Structures-Public/Community
(34) Structures-Storage
(35) Structures-Other
(36) Tools
(37) Trucks
(38) Vehicle Parts/Accessories
(39) Watercraft
(41) Aircraft Parts/Accessories
(42) Artistic Supplies/Accessories
(43) Building Materials
(44) Camping/Hunting/Fishing Equipment/Supplies
(45) Chemicals
(46) Collections/Collectibles
(47) Crops
(48) Documents/Personal or Business
(49) Explosives
(59) Firearm Accessories
(64) Fuel
(65) Identity Documents
(66) Identity - Intangible
(67) Law Enforcement Equipment
(68) Lawn/Yard/Garden Equipment
(69) Logging Equipment
(70) Medical/Medical Lab Equipment
(71) Metals, Non-Precious
(72) Musical Instruments
(73) Pets
(74) Photographic/Optical Equipment
(75) Portable Electronic Communications
(76) Recreational/Sports Equipment
(77) Other
(78) Trailers
(79) Watercraft Equipment/Parts/Accessories
(80) Weapons - Other
(88) Pending Inventory (of Property)

## DRUG INFO.

| DRUG TYPE | WHOLE DRUG QUANTITY | FRACTIONAL DRUG QUANTITY | DRUG MEASUREMENT | TYPE DRUG MEASUREMENT: |
|---|---|---|---|---|
| | | | | |

TYPE DRUG MEASUREMENT:

| WEIGHT | | CAPACITY | |
|---|---|---|---|
| (GM) Gram | | (ML) Milliliter | |
| (KG) Kilogram | | (LT) Liter | |
| (OZ) Ounce | | (FO) Fluid Ounce | |
| (LB) Pound | | (GL) Gallon | |

UNITS
(DU) Dosage Unit (Pills, etc.)
(NP) Number of Plants

**DRUG TYPE:**
(A) "Crack" Cocaine
(B) Cocaine
(C) Hashish
(D) Heroin
(E) Marijuana
(F) Morphine
(G) Opium
(H) Other Narcotics
(I) LSD
(J) PSP
(K) Other Hallucinogens
(L) Amphetamines/Methamphetamines
(M) Other Stimulants
(N) Barbiturates
(O) Other Depressants
(P) Other Drugs
(U) Unknown Type Drug
(X) Over 3 Drug Types

## COMPLNT.

| NAME: Last, | First, | Middle | SEX: ☐ (M) Male ☐ (F) Female ☐ (U) Unk. | AGE: _____ ☐ (00) Unknown | RACE: ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander ☐ (U) Unknown |
|---|---|---|---|---|---|
| RESIDENT ADDRESS: Street | City | State | Zip | RESIDENT PHONE | EMPLOY'T. PHONE |

## CONFIDENTIAL SUPPLEMENT

| PAGE # | DATE | INCIDENT NUMBER | REPORTING OFFICER | | CODE # | VICTIM NAME | |
|---|---|---|---|---|---|---|---|
| 4 | 06/04/2019 | 19-0601108 | Sergeant John C. Mosley | | 9385 | VANDYKE, JASON LEE | |

| | NAME: Last, First, Middle | | | | SEX: ☐ (U) Unk. ☐ (M) Male ☐ (F) Female | AGE: ☐ (00) Unknown | RACE: ☐ (U) Unk. ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander |
|---|---|---|---|---|---|---|---|
| **W I T N E S S E S** | RESIDENT ADDRESS: Street City State Zip | | | | RESIDENT PHONE | EMPL. PHONE | |
| | NAME: Last, First, Middle | | | | SEX: ☐ (U) Unk. ☐ (M) Male ☐ (F) Female | AGE: ☐ (00) Unknown | RACE: ☐ (U) Unk. ☐ (W) White ☐ (B) Black ☐ (I) American Indian ☐ (A) Asian/Pacific Islander |
| | RESIDENT ADDRESS: Street City State Zip | | | | RESIDENT PHONE | EMPL. PHONE | |

NARRATIVE:

1. On 6-4-2019 at approximately 0905 hours, Sgt. Mosley was dispatched to the WCSO lobby in regards to a harassment/retaliation report. Upon arrival, Mosley met with the complainant identified as Jason Lee Van Dyke

2. Jason stated he was being stalked/harassed/retaliated ag  by an individual named Thomas Christopher Retzlaff (DOB        . Jason believes the issues started after he worked pro bono as an attorney to shut down a revenge pornography website PinkMeth and the identity theft website Dox6in.

3. Jason has tried to file multiple reports with other law enforcement agencies. Jason has also sued Thomas twice in an attempt to stop the harassment. On or around December 2018, Jason changed his phone number and e-mail address to prevent further contact from Thomas. In February 2019, Jason moved from Crossroads, Texas. In April 2019, Jason moved to Wise County.

4. Thomas continues to file false reports with the State Bar of Texas against Jason and post on a website called www.viaviewfiles.net.  Jason's current address, photograph of his residence, and a map were published to this website.

5. Some of Jason's former supervisors have been targeted also. The website states a new article would be published soon. This has also occurred with some of his prior employers.

6. Jason completed a witness statement and signed a prosecution form. The documents were scanned into this report. Mosley cleared with this offense report.

SUPPLEMENT #1    Lieutenant Anissa R. Satterfield - 6229    06/05/2019    09:11

1.  Report reviewed and apprvoed. Case forwarded to CID.   6-5-19

# WITNESS STATEMENT OF FACTS

CFS NUMBER: _19-0601108_

DATE: _6-4-19_          PLACE: _WCSO_          TIME STARTED: _9:40 Am_

My name is _JASON Lee VAN DYKE_, I am _39_ years of age,
having been born on _____. I have completed _20_ years of formal education. I
understand that I am not under arrest or detained in any manner concerning the events I am about to make known to
_WCSO_, and that I am, in fact, free to leave at any time. I reside at
(Address)_____, (City) _____, (State) _____,
(Zip)_____. My occupation is _____ and I am employed by
_____. My home telephone number is (_____)__
my work telephone number is (____) _Same_, my pager telephone number is (____) _Same_,
and my cellular telephone number is (____) _Same_.

I have been harrassed/stalbed by Thomas Christopher Retzlaff,
who I believe is domiciled in Maricopa County, Arizona for
approximately 27 months. I have filed multiple reports with
law enforcement, sued him twice, and tried to get him to leave
me alone on many occasions. On or around December of 2018,
I changed my telephone number and e-mail address to
prevent him from contacting me or publishing that information.
In February of 2019, I sold my house at

I have read each page of this statement consisting of _3_ page(s), each page of which bears my signature, and
corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct. I also declare that I was
not told or prompted what to say in this statement.

This statement was completed at _1006_ (time) on the _4th_ day of _June_, _2019_.

WITNESS: _SLCMJ 9385_

WITNESS: _____

_____
Signature of person giving voluntary statement

Page _1_ of _3_.

WCSO Witness Statement of Facts

Witness Statement of Facts (continued)

so he would no longer have my address. I moved to Wise County on or around April 5, 2019. Since moving here, he has continued to harass me through false reports to the State Bar of Texas and a website: www. viaviewfiles. net Retzlaff denies owning this website. I believe that he either owns this website or provides its content because the website has previously published information that could only be known to him or his attorney.

Retzlaff, and/or persons acting in concert with him, published my new address, a picture of my home, and a map to my home on the website on or around May 27, 2019. On or around June 4, 2019 a comment appeared on the website indicating that a new article would be published soon about Edward LaMonica, Ashley Mitchell and Hailey Kemp. LaMonica / Mitchell are my prior supervisors at White, Jacobs + Associates in Plano, TX. Kemp is a former client and daughter to one of my prior supervisors/clients (Nick Siatka) at Tucker Albin + Associates Inc. in Richardson, Texas. Retzlaff has previously contacted my clients directly and the website has previously published pictures of my clients, their homes, and their children.

WITNESS: _____ 9385

WITNESS: _____

Signature of witness giving statement

Page 2 of 3 .

WCSO Witness Statement of Facts
Page 2 and up

Witness Statement of Facts (continued)

It is my opinion that Mr. Retzlaff is doing this in retaliation for my role in shutting down the revenge pornography website Pink Meth and the identity theft website Doxbin. Other Attorneys and individuals he has harassed are:

Marc Randazza —
John Morgan —
Philip Klein —
Evan Stone —
Kyle Bristow —
Jay Lieberman — Phone Number not known
James McGibney —

Retzlaff has been convicted of multiple felonies in Texas, has had his parental rights to his children terminated in Texas, and has been declared a vexatious litigant in Texas. I do not believe that Retzlaff will physically harm me, but I do believe he will continue to harass me and others until action is taken against him in court. I ask that a warrant be issued for the arrest of Thomas Christopher Retzlaff for the third degree felony offense of stalking. Tex. Penal Code 42.072. End of statement.

WITNESS: _____ 9385

WITNESS: _____

Signature of witness giving statement

Page 3 of 3

WCSO Witness Statement of Facts
Page 2 and up



# Wise County Sheriff's Office
## Sheriff Lane Akin
200 Rook Ramsey Drive
Decatur, Texas 76234

(940) 627-5971

Fax (940) 627-3797

Date: **6-4-19**

CFS #: **19-060 1108**

I certify the information I provided to **LT Mosley**, a certified peace officer, is true fact. I understand if the information is false or deceptive I have committed the following offense:

> § 37.08. FALSE REPORT TO PEACE OFFICER OR LAW ENFORCEMENT EMPLOYEE. (a) A person commits an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes the statement to:
>
> (1) a peace officer conducting the investigation; or
>
> (2) any employee of a law enforcement agency that is authorized by the agency to conduct the investigation and that the actor knows is conducting the investigation.
>
> (b) In this section, "law enforcement agency" has the meaning assigned by Article 59.01, Code of Criminal Procedure.
>
> (c) An offense under this section is a Class B misdemeanor.

I **Do** / Do Not . wish to prosecute in this matter. My signature below indicates I have read the above statue, and agree to make a true statement to the above stated deputy of the Wise County Sheriff's Office.

_____
Complainant's Signature

**Jason Lee Van Dyke**
Complainant's Printed Name

_____
Date of Birth

_____ 9385
Deputy Signature

_____
Witness Signature

Safe and Sound

## IN THE UNITED STATES DISTRICT FOR THE
## EASTERN DISTRICT OF TEXAS,
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON LEE VAN DYKE,** | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | |
| **THOMAS CHRISTOPHER** | § | **NO. 4:18-CV-247-ALM** |
| **RETZLAFF, a/k/a DEAN** | § | |
| **ANDERSON, d/b/a BV FILES, VIA** | § | |
| **VIEW FILES, L.L.C., and VIAVIEW** | § | |
| **FILES,** | § | |
| *Defendants* | § | |

**RETZLAFF'S SECOND AMENDED RESPONSE TO INTERROGATORY NO. 3 OF
PLAINTIFF'S (SECOND) "FIRST SET" OF INTERROGATORIES**

To:     Jason Lee Van Dyke, plaintiff pro se.

Defendant Thomas Retzlaff serves this, his second amended and supplemental response to plaintiff's Interrogatory No. 3 of plaintiff's (second) "first set" of interrogatories. *See* Court's memorandum opinion and order of April 14, 2020. (Doc. 153.) To the extent not objected to, Retzlaff makes the following answers under oath in accordance with FED. R. CIV. P. 33(b)(3).

**<u>INTERROGATORY NO. 3</u>**:

Identify any persons who have care and control over BV Files. This includes, but is not limited to:

(a)     The person who owns the following domain name: viaviewfiles.net.[1]

(b)     The person who pay, or who previously paid for, the registration of the following domain name:  viaviewfiles.net.

(c)     Persons who provide, or who previously provided, website hosting services for BV Files.

---

[1]     Retzlaff originally objected that the answer this discrete subpart of Van Dyke's Interrogatory No. 3 was "equally available" to Van Dyke, "as the owners of domain names are public information." (Doc. 156, Part II(B).)  The Court was "not persuaded" that this objection was valid. Citing ***Tango Transp., L.L.C. v. Transp. Int'l Pool, Inc***., 2009 WL 2390312 at *2 (W.D.La. 2009), the Court held, "The fact that a party could find the information does not necessarily mean the information is not discoverable."  Retzlaff construes the Court's ruling to mean that his objection to Van Dyke's Interrogatory 3(a) is overruled and that Retzlaff must answer fully without objection.

(d)     Persons who pay for, or who previously paid for, website hosting services for BV Files.

(e)     Persons who pay for, or who previously paid for, services provided to BV Files by Cloudflare, Inc.

(f)     Persons capable of publishing, changing, moderating or editing of any content displayed on BV Files, except in the "comments" section.

RESPONSE:   **Objection.**  The information sought is not relevant to any party's claims or defenses and not reasonably calculated to the lead to the discovery of admissible evidence.  FED. R. CIV. P. 26(b)(1).  The request is vague and ambiguous.

**Answer**.  In accordance with the Court's April 14, 2020, ruling, Retzlaff answers <u>Interrogatory 3(a)</u> that, according to publicly available information,[2] the registered owner of the domain name "viaviewfiles.net" is OnlineNIC, Inc.

Secondly, without waiving any of his assertions of privilege below, Retzlaff says:  James McGibney has repeatedly accused Neal Rauhauser, Lora Lusher, Lane Lipton, Jennifer D'Alessandro, some pseudonymous individuals he has identified as "Jane Does 1-5," and me of acting as a group and having group care and control over the *BV Files* blog. I have repeatedly denied this allegation before and do so again now.  I am not in a conspiracy with any individuals to do anything.  Before James McGibney sued me in 2014, I had never heard of my co-defendants or had any contact with them.

**Assertions of Privilege**.

(i)     As to Interrogatory 3(b)-(f),[3] Retzlaff declines to respond because the First Amendment to the U.S. Constitution has been repeatedly construed to prevent compulsory disclosure of the identities of anonymous speakers. ***Watchtower Bible and Tract Soc. of New York v. Village of Stratton***, 536 U.S. 150, 166-67 (2002); ***Buckley v. American Constitutional Law Foundation, Inc.***, 525 U.S. 182 (1999). "Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent." ***McIntyre v. Ohio Elections Comm.***, 514 U.S. 334, 356 (1995).  A court order—even when issued at the behest of a private party—constitutes state action.  ***New York Times v. Sullivan***, 364 U.S. 254, 265 (1964). Thus, the amputation of a speaker's First Amendment right of anonymity is subject to limitations with constitutional timbre.  It is well settled that this principle applies equally to anonymous speech on the Internet.  ***Reno v. ACLU***, 521 U.S. 844, 853

---

[2]      *See, e.g.,* <u>www.whois.net</u>, last accessed April 27, 2020.
[3]      Retzlaff did not previously answer or object to these requests as they exceeded the maximum number of 25 interrogatories a party may serve.

(1997); *see also **ApolloMedia Corp. v. Reno***, 19 F. Supp. 1081 (N.D. Cal. 1998) (protecting anonymous denizens of www.annoy.com, a website "created and designed to annoy" legislators), *aff'd by **ApolloMedia Corp. v. Reno***, 526 U.S. 1061 (1999).  Because compelled identification affects the First Amendment right of anonymous speakers to remain anonymous, justification for an incursion upon that right requires proof of a compelling interest.  ***McIntyre***, 514 U.S. at 347.  Among other things, a person seeking to discover the identity of an anonymous speaker has the burden to show that disclosure of the identity of the anonymous speaker is necessary because the party seeking disclosure is likely to prevail on all other issues in the case.  *See **United States v. Caporale***, 806 F.2d 1487 (11th Cir. 1986); ***Miller v. Transamerican Press***, 621 F.2d 721, 726 (5th Cir. 1980).  Until plaintiff has made such showing, compelled disclosure of information that would destroy the speaker's anonymity is premature.

(ii)    Retzlaff further declines to respond pursuant to his rights under the Fifth Amendment due to Van Dyke's having made police reports against Retzlaff regarding the subject of this discovery request.  Van Dyke has alleged that the individuals responsible for this blog are engaging in acts that constitute "criminal stalking", "terrorist threats," and "identity theft," and claims Retzlaff is involved.  *See* attached Exhibits 1 and 2 to the previous version of this answer; *see also* plaintiff's live pleading. (Doc. 113, ¶ 5.3.)

Respectfully submitted,

# HANSZEN✦LAPORTE

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
State Bar No. 00787386
Federal ID # 18465
jdorrell@hanszenlaporte.com
**ANTHONY L. LAPORTE**
State Bar No. 00787876
alaporte@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT TOM RETZLAFF**

## CERTIFICATE OF SERVICE

I certify that on _____6-28_____, 2020, the foregoing interrogatories were electronically served upon Jason Van Dyke by e-mail.

Mr. Jason Lee Van Dyke
Plaintiff, Pro Se
P.O. Box 2618
Decatur, Texas 76234
Telephone: 940-305-9242
jasonleevandyke@protonmail.com


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**

# DECLARATION OF TOM RETZLAFF

1.      "My name is Tom Retzlaff.  I am more than 18 years of age and capable of making this declaration.  I am the named defendant in the suit in which this affidavit is filed.  I declare under penalty of perjury that the facts stated in the foregoing amended and supplemental answers to plaintiff's interrogatories are within my personal knowledge and are true and correct."

EXECUTED June 28, 2020

_____

**TOM RETZLAFF**