IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE, § | | |
| *Plaintiff,* § | | |
| v. § | | |
| § | | |
| THOMAS CHRISTOPHER § | NO. 4:18-CV-247-ALM | |
| RETZLAFF, a/k/a DEAN § | | |
| ANDERSON, d/b/a BV FILES, VIA § | | |
| VIEW FILES, L.L.C., and VIAVIEW § | | |
| FILES, § | | |
| *Defendants* § | | |

**RETZLAFF'S REPLY IN SUPPORT OF HIS AMENDED MOTION FOR NO-EVIDENCE SUMMARY JUDGMENT (DOC. 196)**

Retzlaff files this reply in support of his motion for no-evidence summary judgment (Doc. 196) to address arguments in Van Dyke's response (Doc. 206).

**I. ARGUMENT & AUTHORITIES**

1. The constitutional principle overarching this case—which Van Dyke either fails to understand or refuses to acknowledge—is that the First Amendment protects speech intended to cause embarrassment, insult, and outrage. *See* ***Boos v. Barry***, 485 U.S. 312, 322 (1988) ("[C]itizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment."); ***Hustler Magazine, Inc. v. Falwell***, 485 U.S. 46, 55 (1988) (noting the court's "longstanding refusal" to allow damages because speech may have an adverse emotional impact.) The First Amendment "may indeed serve its high purpose when it induces a condition of unrest … or even stirs people to anger." ***Terminello v. City of Chicago***, 337 U.S. 1, 4 (1949).

## A. No-Evidence Summary Judgment on Van Dyke's Claim for Libel Per Se Is Proper

2. Van Dyke is outraged, insulted, and embarrassed (Doc. 206, ¶¶ 17-26) at being referred to as a "Nazi" in, among other things, Retzlaff's March 30, 2018, letter[1] to Hon. Jonathan Bailey, judge of the 431st Texas State District Court (Doc. 40-4, pp. 34-38). Van Dyke argues such a reference "implies knowledge of facts which lead to the conclusion that Plaintiff is, in fact, a Nazi…." (Doc. 206, ¶ 17). But Retzlaff is entitled to hold—and to caustically express—his *opinion* that Van Dyke is "a person with extreme racist or authoritarian views," or "a person who seeks to impose his views on others in a very autocratic or inflexible way"—a common meaning of the word "Nazi" in wide usage:

> Nazi | ˈnätsē |
> noun (plural **Nazis**)
> - *historical* a member of the National Socialist German Workers' Party.
> - ***derogatory* a person with extreme racist or authoritarian views.**
> - a person who seeks to impose his views on others in a very autocratic or inflexible way: *I learned to be more open and not such a Nazi in the studio*.

*See, e.g.*, Oxford University Press, *New Oxford American Dictionary*, 2010. Stating that the plaintiff a "Nazi" cannot be libel per se, as Van Dyke contends.

3. Van Dyke is also outraged, insulted, and embarrassed at being called a "white supremacist" (Doc. 206, ¶¶ 23-24). After a dissertation on the evolution

---

[1] Van Dyke claims Retzlaff "completely fails" to address communications Retzlaff allegedly made in messages other than on the BV Files blog. (Doc. 206, ¶ 12.) Van Dyke points to a March 25, 2018, e-mail (Doc. 206-7, p.2) allegedly sent to Van Dyke's former employer, Karlseng, LeBlanc, & Rich, LLC, by "Dean Anderson." Van Dyke conclusorily alleges that "Dean Anderson" is a Retzlaff pseudonym. But even assuming "Dean Anderson" is Retzlaff, the

of defamation law with changing societal norms (*Id*., ¶¶ 21-23), Van Dyke relies on a statement in a single court's opinion that "words *like* liar' and 'racist' have clear, well understood meanings, which are capable of being defamatory." (Doc. 206 ¶ 25, citing ***Armstrong v. Shirvell***, 596 Fed. Appx. 433, 442 (6th Cir. 2015) (not selected for pub.) [emphasis added]). Van Dyke does not explain what "words *like* 'liar' and 'racist'" might be, but eagerly leaps to this conclusion:

> **[R]eferring to someone as a Nazi or a white supremacist in modern society is certainly the type of statement that meets the criteria for defamation per se under the Texas statute.**

(*Id.*, ¶ 23.)

4. A weaker authority than ***Armstrong*** is difficult to imagine. In addition to being nonprecedential,[2] ***Armstrong's*** facts are markedly different from those of the case at bar. Unlike the "BV files" blog—which expressly *denies* its content is intended to convey facts—Shirvell characterized his blog as a "watch site," providing "testimony," and "an exposé of the REAL Chris Armstrong." ***Armstrong***, 596 Fed. Appx. at 442. In television interviews, Shirvell claimed the blog "breaks news." *Id*. Based on these statements, the ***Armstrong*** court held Shirvell had "made it abundantly clear that he wanted others to interpret the statements on his blog as facts." *Id*. Van Dyke offers no evidence of any such statements by Retzlaff. ***Armstrong*** does not support Van Dyke's position.

5. The ***Armstrong*** court cites ***Taylor v. Carmouche***, 214 F.3d 788, 793-94 (7th Cir. 2000) (holding the statement, "Felton is a racist," defamatory).

---

"Dean Anderson" e-mail Van Dyke proffers as evidence of Retzlaff's libel per se *never mentions Van Dyke's name*.

But ***Taylor***, too, is inapposite. The ***Taylor*** plaintiff was not a public figure, *id*., at 794, and the court held the statements at issue were "internal personnel matters," not "matters of general public concern." *Id*., at 791. Given that ***Taylor*** was decided nine years before ***Snyder v. Phelps***, 562 U.S. 443 (2011), ***Taylor's*** value as authority on what constitutes a "matter of public concern" is in grave doubt. And Van Dyke neglects to consider that—outside the context of a purely private dispute such as in ***Taylor***—racism is a matter inherently of public concern. ***Connick v. Myers***, 461 U.S. 138, 148 n.8 (1983). This is especially true when, as here, the speaker criticizes violent, racist threats posted on the Internet by a licensed attorney and officer of the courts of this state. (*See, e.g.,* Doc. 196, p. 3.)

      6.      Arguing that Retzlaff's "other statements" are also libel per se, Van Dyke grossly distorts the meaning of the actual words used to argue that "each and every one" of Retzlaff's alleged assertions imputes a "felony or crime of moral turpitude" to Van Dyke. (Doc. 206, ¶¶ 27-30.) For example, Van Dyke falsely equates (i) pedophilia ("sexual feelings directed toward children,"[3] which is *not* a crime) to the *crime* of "sexual assault of a child;" (ii) involvement in "revenge pornography" (posting sexually revealing photographs of a person on the Internet without consent to cause distress or embarrassment,[4] which is *not* a crime) to the *crime* of "possession of child pornography;" and (iii) engaging in a homosexual relationship with a witness, which is *not* a crime, to the *crime* of witness tampering. (Doc. 206, ¶ 27.) Until now, even *Van Dyke* has never claimed

---

    2    FED. R. APP. P. 32.1.
    3    Oxford University Press, *New Oxford American Dictionary*, 2010.

*Van Dyke v. Retzlaff*
Retzlaff's Reply in Support of Amended Motion for No-Evidence Summary Judgment     4

Retzlaff accused him of sexual assault of a child, possession of child pornography, witness tampering, or possession of a controlled substance. Now, in order to support a claim of libel per se, Van Dyke struggles woefully to force a very large foot into a very small glass slipper. It will not fit. The highly opinionated language attributed to Retzlaff is fair criticism of Van Dyke on a matter of public concern, not actionable misrepresentations of fact.

7. Finally, Van Dyke again denies he is a public figure (Doc. 206, ¶¶ 39-43, disingenuously claiming that Retzlaff's motion for no-evidence summary judgment (Doc. 196) "provided neither evidence nor argument on the question of whether [Van Dyke] is a public figure." (Doc. 206, ¶ 43.) This comes perilously close to a breach of Van Dyke's duty of candor to the Court (if he has one). Retzlaff's motion expressly notes the "extensive evidence of Van Dyke's status as a public figure" appended to his Rule 12(b)(6) motion to dismiss (Doc. 129) and "respectfully requests that the Court take judicial notice of this evidence in its file." (Doc. 196, p. 19, n.18.) This is enough. It is not necessary for Retzlaff to have copied and pasted briefing from his Rule 12(b)(6) motion and attach the same exhibits already in the Court's file.

8. The Court should grant no-evidence summary judgment in favor of Retzlaff and against Van Dyke on Van Dyke's claim for libel per se.

---

[4] Oxford University Press, *New Oxford American Dictionary*, 2010.

### B. No-Evidence Summary Judgment is Proper on Van Dyke's Claim for Tortious Interference With Prospective Relations

9. For the first time, Van Dyke alleges (in a single sentence) that the tort underlying his tortious interference claim is Retzlaff's violation of the *federal* stalking statute, 18 U.S.C. § 2261A. (Doc. 206, ¶ 38.) Section 2261A(1)(A) criminalizes placing a person in reasonable fear of death or serious bodily injury. Van Dyke presents no evidence that Retzlaff did this. Section 2261A(2)(B) criminalizes "electronic communications" that cause "substantial emotional distress" to a person. Van Dyke presents no argument or authority regarding what constitutes "substantial emotional distress" under § 2261A(2)(B) and no evidence that an electronic communication from Retzlaff caused him "substantial emotional distress." No-evidence summary judgment is proper.

### C. No-Evidence Summary Judgment is Proper on Van Dyke's Claim for Business Disparagement

10. As shown above and in Retzlaff's motion, Van Dyke was a limited-purpose public figure. Therefore, the *New York Times* standard for "actual malice" applies.[5] *Forbes, Inc, v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170-71 (Tex. 2003). The argument and authorities of Retzlaff's motion (Doc. 196) are not repeated here. Van Dyke brings forth no evidence of Retzlaff's actual malice. No-evidence summary judgment in favor of Retzlaff and against Van Dyke on Van Dyke's claim for business disparagement is proper.

---

[5] Under the *New York Times* standard, "actual malice" means the statement was made with actual knowledge of its falsity or with reckless disregard for the truth. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964.)

### D. No-Evidence Summary Judgment is Proper on Van Dyke's Claim for Malicious Criminal Prosecution

11. Van Dyke appends to his response e-mails from Retzlaff to the Oak Point Police Department requesting a criminal prosecution of Van Dyke. (Doc. 206-8, -9, -10, and -11.) Van Dyke then declares these documents "conclusively prove that [Van Dyke] would not have wrongfully arrested … but for the false report made by Retzlaff." (Doc. 206, ¶ 47.) Conspicuous by its absence is any explanation from Van Dyke of how information in Retzlaff's report was "false."

12. And even if information in Retzlaff's e-mails or affidavit was false, this is irrelevant to a probable-cause inquiry. ***Richey v. Brookshire Grocery Co***., 952 S.W.2d 515, 519 (Tex. 1997). Assuming that Van Dyke's conclusory characterization of Retzlaff's affidavit (Doc. 206-10) as "perjured" (Doc. 206, ¶ 47) refers to Van Dyke's denial that he sent the "death-threat" e-mails—and even taking Van Dyke's claim of innocence as true—Retzlaff had probable cause to believe that Van Dyke sent the "death-threat" e-mails. The e-mails purport to have been sent by Van Dyke and bear Van Dyke's electronic signature. This is enough to constitute facts and circumstances that would create a belief in a reasonable person, acting on the facts within his knowledge, that the person charged was guilty of a crime. ***Akin v. Dahl***, 661 S.W.2d 917, 921 (Tex. 1983).

13. Van Dyke brings forth no evidence that Retzlaff lacked probable cause to request Van Dyke's criminal prosecution. No-evidence summary judgment on Van Dyke's claim for malicious criminal prosecution is proper.

## II. CONCLUSION

14. As shown above, various issues of law are dispositive against Van Dyke and demonstrate that he does not have evidence to support key elements of his claims for libel per se (because there is no evidence that the statements are capable of a defamatory meaning); business disparagement (because there is no evidence of actual malice); tortious interference with prospective relations (because there is no evidence of an underlying tort); and malicious criminal prosecution (because there is no evidence that Retzlaff lacked probable cause to believe that a crime had been committed).

## III. PRAYER

15. For these reasons, Retzlaff prays that the Court grant final summary judgment in favor of Retzlaff and against Van Dyke on all of Van Dyke's claims. Retzlaff prays for such other and further relief, at law or in equity, as to which he shall show himself justly entitled.

Respectfully submitted,

**HANSZEN✦LAPORTE**

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF SERVICE

      I certify that on _____8-23_____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

      Mr. Jason Lee Van Dyke
      Plaintiff, Pro Se
      P.O. Box 2618
      Decatur, Texas 76234
      Telephone: 940-305-9242
      jasonleevandyke@protonmail.com


      _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**