```
 1                UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF TEXAS

 3                       SHERMAN DIVISION

 4                          --oOo--

 5

 6   JASON LEE VAN DYKE,                )
                                         )
 7                Plaintiff,             )
                                         )
 8        vs.                            ) 4:18-CV-247-ALM
                                         )
 9   THOMAS CHRISTOPHER RETZLAFF,        )
     a/k/a DEAN ANDERSON, d/b/a BV       )
10   FILES, VIA VIEW FILES, LLC, and     )
     VIAVIEW FILES,                      )
11                                       )
                  Defendants.            )
12   _____

13                   VIDEO DEPOSITION OF

14                   JASON LEE VAN DYKE

15                    August 31, 2020

16   _____

17

18        DEPOSITION OF JASON LEE VAN DYKE, produced

19   as a witness, duly sworn by me at the instance of

20   the DEFENDANTS, was taken in the above-styled and

21   numbered cause on August 31, 2020, from 10:05 A.M.

22   to 5:07 P.M., before BRANDON D. COMBS, CSR, RPR, in

23   and for the State of Texas, reported by computerized

24   machine shorthand, at 110 South US 287, Decatur,

25   Texas.
```

www.huseby.com       Huseby, Inc. Regional Centers       800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

Exhibit 1

1  Q.  Okay.  The Second Court of Appeals' first
2  opinion in McGibney versus Rauhauser was issued in
3  2014.  Is it possible that you knew who Retzlaff was
4  as far ago as in 2014?
5  A.  It's possible I had heard his name.  I
6  certainly hadn't done any research on him.  So it is
7  certainly possible that I had heard about it then.
8      All I know is that when I saw his name in
9  2017, what I can recall is I'd definitely heard his
10 name before, and when I Googled about the -- of who
11 he was, that was one of the first things to come up.
12 Q.  Okay.  And when you said saw his name in
13 2017, you were referring to the grievance that was
14 filed against you?
15 A.  Yes, sir, that's correct.
16     (Discussion off the record.)
17 BY MR. DORRELL:
18 Q.  Have you ever met James McGibney?
19 A.  Not in person, no.
20 Q.  How often have you talked to him on the
21 phone over the last two or three years?
22 A.  Well, in -- from the time I had first
23 heard of Mr. Retzlaff's name, I would say from 2018
24 until, I'd say mid 2019, late 2019, a couple times a
25 month, maybe.

```
 1                More recently, as Mr. Retzlaff has become
 2   more aggressive with both of us, it's been closer to
 3   once or twice a week.
 4        Q.   Okay.  Can you specify what you mean by
 5   more aggressive?
 6        A.   Well, as Mr. Retzlaff has been
 7   aggressively trying to take Mr. McGibney's
 8   deposition in this case, in several other cases.
 9                Since Mr. Retzlaff has posted the address
10   to Mr. McGibney's new residence, which my
11   understanding was he had tried to keep away from
12   Mr. Retzlaff since that's -- that's what I meant.
13                I can say certainly since Mr. Retzlaff
14   filed the now-dismissed protective order against me
15   in March of 2020, we certainly began speaking more
16   often.
17        Q.   Okay.  You understand you have a duty to
18   amend disclosures to disclose the addresses and
19   contact information of persons that you've listed as
20   having knowledge of relevant facts in this lawsuit;
21   right?
22        A.   I do.  I did not know of his new address
23   until afterwards, however.  He did not tell me that
24   he had moved to Texas.
25        Q.   Why would you have said that he was trying
```

1  and say, hey, you'll never believe what was filed in
2  a -- in the Tarrant County case.  And I'll just say,
3  well, he filed this in this case.
4         And stuff like, oh, well, it's too bad
5  that law enforcement won't do something about this
6  guy; he belongs in prison.  Things of that nature.
7  Just updates as far as both of our proceedings that
8  involve Mr. Retzlaff or his cronies.
9       Q.   Okay.  Just curious, have you spoken to
10  Mr. McGibney today?
11      A.   No.
12      Q.   How about yesterday?
13      A.   Yeah, he called me to wish me good luck in
14  the deposition today.
15      Q.   Okay.  Did you talk about anything else?
16      A.   No.  He actually called me while I was
17  having dinner with my mother yesterday, so I didn't
18  -- I didn't speak to him long.  I said -- I thanked
19  him and congratulated him on what he said was a win
20  in Tarrant County on Friday.
21         And that was all -- that's all we said.
22      Q.   Okay.  Consider him a friend?
23      A.   Yeah, I do.
24      Q.   In your opinion is he supportive of your
25  position in the lawsuit you're now testifying in?

```
 1   is that right?
 2        A.   That's correct.
 3        Q.   No one else; we can forget about anybody
 4   else?
 5        A.   Yeah, I won't be calling anyone else.
 6        Q.   All right.  What -- is there some other
 7   knowledge of James McGibney that you intend to call
 8   in to testify about?
 9        A.   I don't intend to call James McGibney to
10   testify for any reason whatsoever.
11        Q.   Is -- can you explain to me why that seems
12   to have changed since the date that my office tried
13   to obtain a deposition of him?
14        A.   Actually, it -- because I learned that
15   Mr. McGibney was involved as a material witness in
16   an FBI investigation of Mr. Retzlaff.
17             And I want to make absolutely, positively,
18   100 percent sure that nothing I do in this case
19   operates in such a manner as to jeopardize that FBI
20   investigation in any way, shape, or form.
21        Q.   Okay.  So I don't know what that would be,
22   and you don't have to guess at it.
23             But suffice to say, you have determined
24   that the risk of that you might do something to
25   compromise that investigation is enough that you
```

 1          MR. DORRELL:  Okay.  Let's take a short
 2   break, please.
 3          THE VIDEOGRAPHER:  We're off the record at
 4   4:49.
 5          (Recess taken.)
 6          THE VIDEOGRAPHER:  We're on the record at
 7   4:54.
 8          THE WITNESS:  He just announced we're back
 9   on the record, Mr. Dorrell.
10   BY MR. DORRELL:
11      Q.  Thank you for telling me.  I couldn't hear
12   one -- a peep.
13      A.  I'm aware.  We're doing the best we can
14   here.
15      Q.  Okay.  Do you have any idea why there
16   would already be comments posted on the BV Files
17   blog about Mr. Retzlaff being present here for this
18   deposition today?
19      A.  Pardon?
20      Q.  Do you have any idea who might have posted
21   comments on the BV Files blog already about
22   Mr. Retzlaff being present and in attendance for
23   your deposition?
24      A.  No idea.
25      Q.  Have you talked to James McGibney today?

```
 1      A.    Just now, yes.
 2      Q.    Did you text him or speak to him?
 3      A.    I texted him.
 4      Q.    And what did he say?
 5      A.    He asked me if it was still going.  I
 6  said, in response, I think we're trying to set a new
 7  record and Dorrell is much smarter than his client.
 8      Q.    Well, thank you for not saying that my
 9  technological incompetence slowed us down for an
10  hour.
11      A.    You asked a question, I answered it.
12      Q.    Kind answer.  Could have been an ugly one.
13            What has McGibney told you about the FBI
14  trying to quash his deposition?
15      A.    He hasn't personally told me anything
16  outside of what's been filed in the court.  When
17  that document was filed, it was as big a surprise to
18  me as it may have been to you because I was
19  blindsided by it.
20      Q.    Well, there's obviously the information in
21  the Wescovich affidavit.
22      A.    Well, yes.  And based on
23  Special Agent Wescovich's communications or lack
24  thereof with me, I was actually especially surprised
25  to see that Special Agent Wescovich was involved.
```

```
 1                CERTIFICATE OF REPORTER
 2              I, BRANDON D. COMBS, a Certified Shorthand
 3    Reporter, hereby certify that the witness in the
 4    foregoing deposition was by me duly sworn to tell
 5    the truth, the whole truth, and nothing but the
 6    truth in the within-entitled cause;
 7              That said deposition was taken in
 8    shorthand by me, a disinterested person, at the time
 9    and place therein stated, and that the testimony of
10    the said witness was thereafter reduced to
11    typewriting, by computer, under my direction and
12    supervision;
13              That before completion of the deposition,
14    review of the transcript was requested.  If
15    requested, any changes made by the deponent (and
16    provided to the reporter) during the period allowed
17    are appended hereto.
18              I further certify that I am not of counsel
19    or attorney for either or any of the parties to the
20    said deposition, nor in any way interested in the
21    event of this cause, and that I am not related to
22    any of the parties thereto.
23              DATED: September 10, 2020
24    _____
25    BRANDON D. COMBS, RPR, CSR 10927
```