IN THE UNITED STATES DISTRICT FOR THE
EASTERN DISTRICT OF TEXAS,
SHERMAN DIVISION

| | | |
|---|---|---|
| **JASON LEE VAN DYKE,** § | | |
| *Plaintiff,* § | | |
| § | | |
| **v.** § | | |
| § | | |
| **THOMAS CHRISTOPHER** § | **NO. 4:18-CV-247-ALM** | |
| **RETZLAFF, a/k/a DEAN** § | | |
| **ANDERSON, d/b/a BV FILES, VIA** § | | |
| **VIEW FILES, L.L.C., and VIAVIEW** § | | |
| **FILES,** § | | |
| *Defendants* § | | |

### RETZLAFF'S FIRST AMENDED MOTION TO AWARD EXPENSES AND ATTORNEY'S FEES AS A SANCTION UNDER 28 U.S.C. § 1927

Retzlaff moves the Court to award attorney's fees against Van Dyke under

28 U.S.C. § 1927.  This amended motion replaces the original motion. (Doc. 229.)

### I. INTRODUCTION

1.      Plaintiff is Jason Van Dyke; defendants are Thomas Retzlaff, a/k/a

Dean Anderson, d/b/a BV Files, Via View Files, L.L.C., and ViaView Files.[1]

2.      On September 19, 2020—while Retzlaff's motions for summary

judgment were pending—Van Dyke moved to dismiss all of his remaining claims.

(Doc. 214.)  Retzlaff opposed unless dismissal was with prejudice.  (Doc. 220.)

3.      On November 9, 2020, the Court issued an opinion (Doc. 228)

granting Van Dyke's motion and dismissing his claims *without* prejudice.

---

[1]      The "a/k/a" and "d/b/a" designations are Van Dyke's.  No evidence ever
established that these defendants were alter egos or assumed names of each other.

## II. ARGUMENT & AUTHORITIES

4.      "Under the bedrock principle known as the 'American Rule,' '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Marc v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). However, as this Court and others have long recognized, one such statute is 28 U.S.C.§ 1927, which permits courts to assess "excess costs, expenses, and attorneys' fees reasonably incurred" by an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." *See, e.g., Diamond Consortium, Inc. v. Hammervold*, 2020 WL 836896 at *2 (E.D. Tex. February 20, 2020) (Mazzant, J.).

5.      Litigation abuse is hardly new.  Since 1813—just 24 years after the Constitution was ratified—a federal statute has authorized monetary sanctions against attorneys who misuse the litigation process.[2]  Even in the earliest days of the Republic, the Founding Fathers knew the importance of protecting the public from abusive conduct by those called to the bar.  The penalty started off light.  For the first 167 years, lawyers who vexatiously and unreasonably multiplied legal proceedings were liable only for excess costs.[3]  But since 1980, 28 U.S.C. § 1927 has taken a harder line against abusive litigation tactics, broadening a lawyer's personal financial exposure to include "expenses *and attorney's fees*." *Morrison*,

---

[2]      Ch. 14, § 3, 3 Stat. 21 (1813).
[3]      This modest exposure may explain why, in the 150 years following its enactment, § 1927 was invoked in only seven reported cases.  Seth Katsuya Endo, *The Propriety of Considering an Attorney's Ability to Pay Under § 1927*, 61 DRAKE L. REV. 291, 292-93 (2013).

939 F.3d at 635 (affirming § 1927 sanction of $29,592.50).  This has made a difference.  As the *Morrison* court put it:

> **Incentives matter.  For more than a generation, now, pocket-conscious parties have sought hefty § 1927 sanctions, and docket-conscious courts have granted them.**

*Morrison*, 939 F.3d at 635.  This Court should do likewise.

6.     Thus, the version of § 1927 that Retzlaff invokes today has a long pedigree:

> **Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.**

28 U.S.C. § 1927; *Morrison* 939 F.3d at 637.  For § 1927 to apply, the conduct multiplying the proceedings must be both "unreasonable" and "vexatious."  *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002), citing *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994).

> **An award of attorney's fees under § 1927 requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."**

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 871 (5th Cir 2014), quoting *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 180 (5th Cir. 2007).  Conduct is "unreasonable and vexatious" if there is evidence of the "persistent prosecution of a meritless claim" and of a "reckless disregard of the duty owed the court."  *Morrison*, 939 F.3d at 637-38.  An attorney acts with "reckless disregard" of his duty to the court when, without reasonable inquiry, he advances a baseless claim despite clear evidence undermining his factual

contentions.  *See* FED. R. CIV. P. 11 (imposing a duty on attorneys to reasonably inquire into the evidentiary support for their factual contentions filed with the court); *Morrison*, 939 F.3d at 638, citing *Mercury Air Grp., Inc*., 237 F.3d 548-49. Pursuing frivolous claims is one example of bad faith.  *See Dow Chemical Pacific Ltd. v. Rascator Maritime, S.A*., 782 F.2d 329, 345 (2d Cir. 1986) ("[T]he appropriate focus for the court in applying the bad faith exception to the American Rule is the conduct of the party in instigating and maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by, for example, *its pursuit of frivolous contentions*….") [emphasis added].

7.     A motion for sanctions and attorney's fees under § 1927 is not subject to the "safe harbor" provisions of FED. R. CIV. P. 11.  *See In re Schaefer Salt Recovery, Inc*., 542 F.3d 90, 102 (3rd Cir. 2008); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223-24 (10th Cir. 2006).  Furthermore, while Rule 11 requires the least severe sanction necessary to deter misconduct, § 1927 is punitive in nature and permits a court to compensate the victims of abusive litigation practices, not merely to deter and punish offenders.  Accordingly, the Court may order compensation for Retzlaff under § 1927 without considering whether a less severe sanction might deter Van Dyke's offending conduct.  *See Stalley ex rel. United States v. Mountain States Health Alliance*, 644 F.3d 349, 352 (6th Cir. 2011) (sanctions imposed under § 1927 are punitive and, therefore, may be greater than the amount necessary for deterrence); *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-06 (10th Cir. 2008).

8.    In addition to pursuing frivolous contentions as detailed below, Van Dyke demonstrated bad faith by sending e-mails offering to dismiss the case at bar if Retzlaff would meet Van Dyke "for a fight" or submit to an "ass-kicking" **Exhibit 3** (November 11, 2018).  Van Dyke even explained why he sued Retzlaff:

> **You've fucked with the wrong man.  You've absolutely fucked with the wrong family.  And <u>I will keep coming after you in court</u> until you either leave me and my family the fuck alone or I have a goddam tag on my toe.**
>
> **Is that easy enough for you to understand you lowlife scrotum gargling sub-human mongrel?**

*Id.*, Van Dyke's e-mail of November 10, 2018 [emphasis added.] No further evidence of Van Dyke's bad faith or the personal nature of his scorched-earth litigation war is needed.  Van Dyke was prosecuting a vendetta and acting as anything but a dispassionate advocate seeking justice.

9.    The Court cannot properly impose § 1927 sanctions for mere negligence.  *Morrison*, 939 F.3d at 637; *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995).  Retzlaff does not ask the Court to do so.[4]  Retzlaff asks the Court to shift only about half of his **$279,333.84** in attorney's fees and expenses incurred to Van Dyke because he persisted in prosecuting meritless claims.  *Morrison*, 939 F.3d at 637-38; *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 549 (5th Cir. 2001) (affirming sanctions when counsel pursued the lawsuit despite the "lack of extrinsic evidence" to support the claim).

---

[4]    The instant motion is not brought out of personal animus toward Van Dyke. While counsel finds fault with the manner in which he prosecuted the instant case, Van Dyke has been courteous, professional, and even friendly toward counsel.

### A. Fees and Expenses Retzlaff *Does Not* Seek to Recover

10.     General categories of fees and expenses *excluded* from the instant

request for recovery of fees under 28 U.S.C. § 1927 are:

(i)     All attorney's fees and expenses incurred by Retzlaff in the
approximately 16 months between the filing of suit on March 28,
2018, and Van Dyke's filing his motion (Doc. 86) to withdraw his
first dismissal motion on July 7, 2019;

(ii)    All attorney's fees and expenses incurred by Retzlaff to appeal this
Court's denial of his motion to dismiss pursuant to TEX. CIV. PRAC.
& REM. CODE § 27.001 (the "TCPA") to the U.S. Court of Appeals
for the Fifth Circuit; and

(iii)   All attorney's fees and expenses incurred by Retzlaff to petition for a
writ of certiorari from the Supreme Court of the United States.

**Exhibit 2** (see included spreadsheet).  The excluded fees total **$119,290.85**.

### B. Fees and Expenses Retzlaff *Does* Seek to Recover

11.     In the Fifth Circuit, attorney's fees are calculated using the lodestar

method.  ***Black v. Settlepou, P.C***., 732 F.3d 492, 502 (5th Cir. 2013).  "The lodestar

is calculated by multiplying the number of hours an attorney reasonably spent on

the case by the appropriate hourly rate, which is the market rate in the community

for this work."  *Id*.  After calculating the lodestar, a district court may enhance or

decrease the amount of attorney's fees based on the relative weights of the twelve

factors set forth in ***Johnson v. Georgia Highway Express, Inc***., 488 F2d 714 (5th

Cir. 1974).  *See **Black***, 732 F.3d at 502.  The ***Johnson*** factors are:

(i)     The time and labor required;

(ii)    The novelty and difficulty of the questions;

(iii)   The skill requisite to perform the legal service properly;

(iv)    The preclusion of other employment by the attorney due to acceptance of the case;

(v)     The customary fee;

(vi)    Whether the fee is fixed or contingent;

(vii)   Time limitations imposed by the client or by the circumstances;

(viii)  The amount involved and the results obtained;

(ix)    The experience, reputation, and ability of the attorneys;

(x)     The "undesirability" of the case;

(xi)    The nature and length of the professional relationship with the client; and

(xii)   Awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

12.    As shown in detail below and in **Exhibit 2**, considering these factors and using the lodestar method, Retzlaff incurred **$152,224.90** in "excess" fees and **$6,749.14** in "excess" expenses to defend Van Dyke's unreasonably and vexatiously multiplied claims pursued long after the lack of legal merit or extrinsic evidence was obvious.  It is fair for the Court to shift these "excess" fees and expenses to Van Dyke.

## C. The Allegations of Van Dyke's Third Amended Complaint

13.     Van Dyke sued Retzlaff for the following seven causes of action:

(i)     libel per se; (Doc. 113, Plaintiff's Third Amended Complaint ("TAC"), ¶¶ 6.2-6.11)

(ii)    business disparagement; (TAC ¶¶ 6.12-6.17)

(iii)   intrusion on seclusion; (TAC ¶¶ 6.18-6.20)

(iv)    tortious interference with an existing contract (plaintiff's at-will employment by the law firm of Karlseng, Leblanc, & Rich, LLC) (TAC ¶¶ 6.21-6.24).

(v)     tortious interference with prospective relations (plaintiff's future relations with the law firm of Karlseng, Leblanc, & Rich, LLC) (TAC ¶¶ 6.25-6.30).

(vi)    malicious criminal prosecution; (TAC ¶¶ 6.31-6.37) and

(vii)   intentional infliction of emotional distress. (TAC ¶¶ 6.38-6.42)

Complaining that Retzlaff filed an allegedly "frivolous" grievance against him with the State Bar of Texas, (TAC ¶ 5.4), Van Dyke based his claims on statements posted on a "blog"[5] Retzlaff allegedly owned[6] and in e-mails Retzlaff allegedly sent.[7]   Van Dyke alleged Retzlaff made approximately ten false "statements of fact" about Van Dyke, including the following:

---

[5]     The blog is known as "BV Files" and can be found at www.viaviewfiles.net.
[6]     *See* TAC ¶¶ 5.5-5.11, 5.18-5.20 and Exhibit 3, 4, 9 and 10.
[7]     *See* TAC ¶¶ 5.12 and Exhibit 5.

    (i)     Van Dyke is a "Nazi;"

    (ii)    Van Dyke is a pedophile;[8]

    (iii)   Van Dyke is a drug addict;

    (iv)   Van Dyke is a white supremacist;

    (v)    Van Dyke is involved in revenge pornography;

    (vi)   Van Dyke has a criminal record for abusing women;

    (vii)  Van Dyke was being treated and was medicated for bipolar disorder;

    (viii) Van Dyke has engaged in unwanted sexual solicitations;

    (ix)   Van Dyke suffers from syphilis; and

    (x)    Van Dyke has engaged in other sexual misconduct including, but not limited to, a homosexual relationship with one or more witnesses.

TAC, ¶ 6.2.

14.    No matter how acrid or offensive, the statements Van Dyke attributed to Retzlaff were constitutionally protected expressions of opinion and rhetorical hyperbole about a limited-purpose public figure.  As shown below, some were true.

---

[8]    The actual statement was that Van Dyke "has *the look of* a pedophile" (whatever that is).

## D. How Van Dyke's Claims Were Frivolous—Not Merely Weak or Negligent

15.    Facts showing that Van Dyke's claims were so devoid of legal merit and evidentiary support as to constitute "persistent prosecution of a meritless claim" and a "reckless disregard of the duty owed the court," **Morrison**, 939 F.3d at 637-38, include the following.   (Retzlaff's motions for traditional and no-evidence summary judgment were pending when Van Dyke moved to dismiss.)

(i)    Retzlaff was absolutely immune from Van Dyke's claim for libel based on filing state bar grievances. TEX. R. DISCIPLINARY PROCEDURE 17.09; **Commission for Lawyer Discipline v. Rosales**, 577 S.W.3d 305, 313 (Tex. App.—Austin 2019, pet. denied).

(ii)    Van Dyke adduced no extrinsic evidence that Retzlaff was the owner of the "BV Files" blog (www.viaviewfiles.net) or the author of any of its content, for which Van Dyke sued Retzlaff.

(iii)    Van Dyke's defamation and business disparagement claims were barred because Van Dyke failed to comply with the Defamation Mitigation Act, TEX. CIV. PRAC. & REM. CODE § 73.055(d)(3).   *See* **Tubbs v. Nicol**, 675 Fed.App'x. 437, 439 (5th Cir. 2017).

(iv)    Retzlaff brought forth extensive evidence proving Van Dyke was a limited-purpose public figure[9]—a person who "thrust[] [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved" or because he "voluntarily inject[ed] himself or is drawn into a particular public controversy." **Gertz v. Robert Welch, Inc**., 418 U.S. 323, 351 (1974). Van Dyke's public figure status required him to plead and prove Retzlaff's actual malice.   **Walker v. Beaumont Ind. Sch. Dist**., 938 F.3d 724, 744-45 (5th Cir. 2019).   Actual malice means that statements were made with actual knowledge of falsity or with reckless disregard for the truth. *Id*.   Van Dyke never brought forth extrinsic evidence of Retzlaff's actual malice.

---

[9]    Public figures may be (i) all-purpose public figures or (ii) limited-purpose public figures. **WFAA-TV, Inc. v. McLemore**, 978 S.W.2d 568, 571 (Tex. 1998). All-purpose public figures have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. *Id*.  (citing **Gertz**, 418 U.S. at 351).  Limited-purpose public figures are public figures for only a limited range of issues surrounding a public controversy. *Id*.

(v)     Van Dyke's formbook recitation of the elements of a claim for intrusion upon seclusion (TAC ¶¶ 6.18-6.20) provided no facts showing how Retzlaff allegedly committed this tort except to allege that Retzlaff "contacted [Van Dyke's] private employer for the purpose of having [Van Dyke's] employment terminated." Actionable "intrusion" has been held to include wiretapping,[10] putting a camera in plaintiff's bedroom without permission,[11] making harassing phone calls,[12] entering a home without permission,[13] and searching an employee's personal locker and purse.[14]  If the intrusion involves a public place or public matters, the defendant is not liable.  *See Floyd v. Park Cities People, Inc.*, 685 S.W.2d 96, 97-98 (Tex. App.—Dallas 1985, no writ).

(vi)    Van Dyke's claim for tortious interference with an existing contract required Van Dyke to plead and prove he had a valid contract which Retzlaff induced some party to breach.  *Walker*, 938 F.3d at 749, citing *Butnuru v. Ford Motor Co*., 84 S.W.3d 198, 207 (Tex. 2002). Additionally, a defendant must have actual knowledge of a contract in order to interfere with it.  *Frost Nat'l Bank v. Alamo Nat'l Bank*, 421 S.W.2d 153, 156 (Tex. App.—San Antonio 1967, writ ref'd n.r.e.).  Van Dyke never adduced evidence of a valid contract known to Retzlaff, the breach of which Retzlaff somehow induced.

(vii)   Van Dyke's claim for tortious interference with prospective relations required him to prove he was reasonably likely to enter into a future business relationship with a third person. *Coinmatch Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  It also required showing Retzlaff's conduct was independently tortious.  *Id*. Van Dyke never brought forth extrinsic evidence of either element.

(viii)  Van Dyke's claim for intentional infliction of emotional distress required him to prove that Retzlaff inflicted emotional distress on Van Dyke in so unusual a manner that Van Dyke had "no other recognized theory of redress." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  Where the gravamen

---

[10]      *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973).

[11]      *Clayton v. Richards*, 47 S.W.3d 149, 156 (Tex. App.—Texarkana 2001, pet. denied).

[12]      *Household Credit Servs. v. Driscoll*, 989 S.W.2d 72, 84-85 (Tex. App.—El Paso 1998, pet. denied).

[13]      *Gonzales v. Southwestern Bell Tel. Co.*, 555 S.W.2d 219, 222 (Tex. App.—Corpus Christi 1977, no writ).

[14]      *K-Mart Corp. v. Trotti*, 677 S.W.2d 632, 637-38 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

of a complaint is another tort—such as defamation—IIED is not available as a cause of action.  *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

(ix)    Van Dyke's claim for malicious criminal prosecution required him to plead and prove he was innocent of the charge of making death threats to Retzlaff.  *Kroger Tex., L.P. v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). Van Dyke's pleading that he "ha[d] no recollection" of making death threats to Retzlaff was *not* a pleading of innocence. (TAC ¶ 6.33.) Furthermore, Van Dyke later even admitted the evidence was sufficient to show his guilt.  **Exhibit 1**.  Further still, under the "independent intermediary doctrine," Retzlaff could never have been liable to Van Dyke for malicious criminal prosecution because the facts supporting the warrant were put before an independent intermediary—Hon. Bruce McFarling of the 362nd District Court—whose independent decision broke the chain of causation no matter what Retzlaff did.  **Exhibit 4**.  *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988), quoting *Smith v. Gonzales*, 670 F.2d 522, 536 (5th Cir. 1982).  This was well-settled law when Van Dyke sued Retzlaff for $100 million for malicious prosecution. Magistrate Judge Kimberly Priest so held in Van Dyke's companion malicious prosecution case, Cause No. 4:19-CV-00786-SDJ-KPJ; *Van Dyke v. Shackleford*; in the U.S. District Court for the Eastern District of Texas.  **Exhibit 4**.  U.S. District Judge Sean D. Jorden signed a memorandum order adopting Magistrate Priest's report and recommendation and dismissed Van Dyke's malicious prosecution claim based on the *identical* arrest as that which formed the basis of Van Dyke's malicious prosecution claim in the case at bar.  *Id*.

(x)    Retzlaff raised the affirmative defense to Van Dyke's defamation claims that any statements that Van Dyke was a "Nazi" or a "white supremacist" were substantially true.  (Doc. 126, ¶ 94.)  "The common law of libel … overlooks minor inaccuracies and concentrates upon substantial truth."  *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 516 (1991) (internal citations omitted).  Small discrepancies "do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Id*. at 517; *see also Turner v. KTRK Television, Inc*., 38 S.W.3d 103, 115 (Tex. 2000) (substantial truth doctrine "precludes liability for publication that correctly conveys a story's 'gist' or 'sting' although erring in the details").  On December 8, 2020, an audio recording of Van Dyke emerged.  Accessing the link below allows the listener to hear Van Dyke in his own distinctive and easily recognizable voice stating the following at the 40-second mark:

If we want to make America great again, we need to make America white again. Because it is my opinion that non-whites, especially Jews, coming into the United States, or remaining in the United States, is what's causing more harm than anything else to America and to the white race at this point.

https://www.youtube.com/watch?v=UCrG_tAbhQk&feature=youtu.be.

These are clearly the words of an antisemitic white supremacist. The recording is authenticated by Retzlaff's unsworn declaration appended as **Exhibit 5**. In his Third Amended Complaint (Doc. 113), Van Dyke sued Retzlaff for $100 million for making allegedly false statements that Van Dyke was a "Nazi" and a "white supremacist." (TAC ¶ 6.2.) Whoever made the statements sued upon—and Van Dyke failed ever to show it was *Retzlaff*—the statements were *not* false. Van Dyke's misrepresentation that they *were false* breached his duty of candor to the Court. Few things show Van Dyke's bad faith in maintaining this suit more clearly than this.

### E. Retzlaff's "Prevailing Party" Status and Prior Rulings of This Court

16.     When awarding attorney's fees pursuant to a court's *inherent power* under the "*bad faith*" exception to the American Rule, "the essential element in triggering the award of fees" is "bad faith on the part of the *unsuccessful litigant*."[15]  **Batson v. Neal Spelce Assocs.**, 805 F.2d 546, 550 (5th Cir. 1986) (emphasis added), citing **Hall v. Cole**, 412 U.S. 1, 6 (1973). "[T]he standard for imposing sanctions using the Court's *inherent* powers is extremely high." **Goldin v. Bartholomew**, 166 F.3d 710, 723 (5th Cir. 1999) (emphasis added). The Court "must make specific findings as to the frivolousness of the suit," **Morris v. V4V1 Vehicles for Veterans**, 2017 WL 3034664 at *2 (E.D. Tex. 2017) (Mazzant, J.). "[G]eneral complaints about the" party against whom sanctions are sought are

insufficient.  ***Goldin***, 166 F.3d at 723.  "[A] finding of bad faith must be supported by clear and convincing proof."  ***In re Moore***, 739 F.3d 724, 730 (5th Cir. 2014).

17.  In ***Diamond Consortium***, this Court denied sanctions under its inherent power because "the Hammervold Defendants [never] attempted to argue that Plaintiffs were unsuccessful litigants in this case."  ***Diamond Consortium***, 2020 WL 836896 at *3.  As the Court also noted, the Diamond Consortium plaintiffs "voluntarily dismissed their case … with no adverse rulings on dispositive motions looming."  *Id*.  Those are not the facts of the instant case.

18.  Here, although Retzlaff marshals evidence showing Van Dyke's bad faith, Retzlaff requests his attorney's fees and expenses under 28 U.S.C. § 1927—*not* the Court's inherent powers.  Thus, no requirement of clear and convincing proof of bad faith exists—although Retzlaff's proof clearly meets this standard.  Nor must Van Dyke have been the "unsuccessful litigant" for the Court to award Retzlaff fees for "unreasonable and vexatious multiplication of proceedings" under § 1927—although he clearly was under the Supreme Court's standard set forth in ***CRST***, 136 S. Ct. at 1652.  An award of attorney's fees to Retzlaff in the instant case would not in any way be in conflict with this Court's prior rulings denying sanctions in ***Diamond Consortium***, ***Morris***, or ***Obey v. Frisco Med. Ctr., L.L.P***., 2015 WL 2148063 (E.D. Tex. 2015) (Mazzant, J.).

---

[15]  A defendant can be considered prevailing if the plaintiff's claim was "frivolous, unreasonable, or groundless."  ***CRST Van Expedited, Inc. v. E.E.O.C***., 136 S. Ct. 1642, 1652 (2016) (quotations omitted); *see* ***Diamond Consortium***, 2020 WL 836896 at *3 (Mazzant, J.).

### F. Requirements of the Court's Sanctions Order

19.     For a district court's § 1927 sanction to be affirmed, the court must

have made detailed factual findings, including:

> (i)     identifying the sanctionable conduct as distinct from the case's
> merits;

> (ii)    linking the sanctionable conduct and the sanction's size; and

> (iii)   identifying the legal basis for each sanction.

***Morrison***, 939 F.3d at 638, citing ***Procter & Gamble***, 280 F.3d at 526.

## III. REQUEST FOR ORAL HEARING

20.     Pursuant to Local Rule CV-7(g), Retzlaff respectfully requests an

oral hearing on this motion.  The facts and law are in some respects complex, and

Retzlaff believes oral argument would materially aid the Court's resolution of the

issues.

## IV. CONCLUSION & PRAYER

21.     For the foregoing reasons, Retzlaff prays the Court exercise its broad

discretion under 28 U.S.C. § 1927 to order Van Dyke to pay Retzlaff **$152,224.90**

in "excess" attorney's fees and **$6,749.14** in "excess" expenses incurred as a result

of Van Dyke's "unreasonable and vexatious" multiplication of the proceedings—

slightly more than half of the total of **$279,333.84** paid to defend this suit.

Retzlaff prays for such other and further relief, at law or in equity, as to which he

shall show himself justly entitled.

Respectfully submitted,

# HANSZEN✦LAPORTE

By: _____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**
Texas Bar No. 00787386
Federal ID #18465
jdorrell@hanszenlaporte.com
14201 Memorial Drive
Houston, Texas 77079
Telephone 713-522-9444
FAX: 713-524-2580
**ATTORNEYS FOR DEFENDANT THOMAS RETZLAFF**

## CERTIFICATE OF CONFERENCE

I certify that, pursuant to Local Rule CV-7(h), on December 10, 2020, I conferred with plaintiff pro se Jason Van Dyke, who advised he was **OPPOSED** to Retzlaff's motion to award attorney's fees and expenses to Retzlaff and against Van Dyke pursuant to 18 U.S.C. § 1927.


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**

## CERTIFICATE OF SERVICE

I certify that on _____12-11____, 2020, the foregoing was electronically filed using the Court's CM/ECF filing system, which will provide notice and a copy of this document to the following if a registered ECF filer in the United States District Court for the Eastern District of Texas, Sherman Division.

Mr. Jason Lee Van Dyke
Plaintiff, Pro Se
P.O. Box 2618
Decatur, Texas 76234
Telephone: 940-305-9242
jasonleevandyke@protonmail.com


_____/s/ Jeffrey L. Dorrell_____
**JEFFREY L. DORRELL**